2021 Hadley Family Real Estate Trust
c/o Robert C. Hadley and Laura A. Hadley
246 Durfee Street
Fall River, MA 02720
(774) 644-5661

UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| The Devol Pond Association, a 501(c)(3), 2021 Hadley Family Real Estate Trust, Robert C. Hadley, individually and as Trustee for the 2021 Hadley Family Real Estate Trust, Laura Hadley, individually and as Trustee, for the 2021 Hadley Family Real Estate Trust, Christopher Hadley, an individual, and Jane Does, beneficiaries of the 2021 Hadley Family Real Estate Trust<br><br>Plaintiffs,<br>vs.<br><br>Chris Capone, Paul Joncas, Pamela Wilkinson, Mary Lou Quigley, Brian Tripp, Karen Tripp Martin, the Estate of Paul Capone, Mark Bartow, Jim Straub, Brian St. Pierre, Jason Powell, Jacob McGuigan, Grace Greenwood, Philip Weinberg, Kevin Carter, Bryan Burton, Dani LaFarrier, Hugh E. McGovern, Michael J. Perry, Brenda and Timothy Palmer, Dean Martin, Dream Homes, LLC, Westport Conservation Commission, Massachusetts Department of Environmental Protection, Massachusetts Department of Conservation and Recreation, and John Does,<br>Defendant(s) | Case No.: No. __________________<br><br>Complaint |

:

## I. NATURE OF THE CASE

Introduction

This action involves a recently discovered series of rackets designed to extort and otherwise wrongfully obtain land, money, and other real and personal property rights from Plaintiffs/the Hadley's, and likely others, using increasingly severe threats of violence and under the color of official right. The Hadley's/Plaintiffs recently discovered that the family oasis/Property/cottages owned by their grandparents and great grandparents, respectively (the late Robert C. Hadley "RCH" and Mildred M. Hadley, "Mimi") was both purchased by Mimi and RCH, and inherited. As initially discovered in 2021 and continuing to be uncovered, Mimi's family had owned and protected the same property and water since at least 1652. The 'property' lovingly referred to as "Cozy Camp" is comprised of woods, wetlands, waters, and structures located in Westport, MA, and as recently discovered, likely also in Fall River, Adamsville, and Tiverton, RI. Everyone was referred to as a 'cousin', there was an open-door policy, and regular communal meals and campfire singalongs. The late Elmer Wilkinson, RCH's nieces' husband managed the Property during his life, including mowing 'the field' and leasing other fields on the property to farmers, etc. The two families, and later their respective families and friends peacefully enjoyed the Property. Due to the harmonious family dynamic, no one questioned property ownership or control, nor were comprehensive title searches or surveys based on comprehensive searches ever conducted. A series of unusual, and constitutionally reprehensible events led Plaintiffs/the Hadley's to commence a comprehensive title search in late 2020, the full extent of which is still ongoing; results to date yielded horrifying revelations and elucidated a series of disturbing overlapping, ongoing, and increasingly severe rackets. Plaintiffs/the Hadley's discovered a pattern of forged deeds and cross-conveyances being recorded and accepted for recording, along with dozens of other deeds and encumbrances procured by false pretenses, fraud, et al., on the Property, recently discovered and now understood to be owned in fee simple

by Plaintiffs/the Hadley's, with other property rights (ie water) also held by likely many others including but not limited to the Watuppa Water Board, City of Fall River Water Department and other Jane Does.

The '2021 title search' initially resulted from the repeated and flagrant disregard for constitutional rights by environmental administrators and local volunteers in Westport MA, which as Plaintiffs recently realized, is and was in furtherance of two overlapping extortion rackets, facilitated and furthered by, among others, environmental 'officials'. Co-conspirators in these two rackets have and continue to act under the guise of color of official right and are also using threats of violence in furtherance of these rackets; misusing and frustrating the purpose of the Clean Water Act and other environmental regulations, the United States Constitution, et al., and usurping 'enforcement' authority and the color of official right to wrongfully obtain property from Plaintiffs/the Hadley's, and likely others, to which neither they nor their co-conspirators are entitled to.

Plaintiffs recently discovered two ongoing real estate fraud scheme and extortion rackets intentionally facilitated and orchestrated by local environmental administrators, their family members, other individuals and co-conspirators via mail fraud and wire fraud, purported/attempted takings under the guise of color of law via extortion in violation of RICO, the Hobbs Act, the Civil Rights Act, the United States Constitution, Clean Water Act, Migratory Bird Treaty Act, et al., as described more fully herein.

Two overlapping schemes, CCREFS[1] and CSES[2], are increasing in severity and began with what the Hadley's/Plaintiffs thought was an isolated incident. In August 2018, without any

[1] The Capone Concom Real Estate Fraud Scheme (hereinafter "CCREFS") is an association in fact.
[2] The Concom Scheme and Extortion Syndicate (hereinafter "CSES") is also an association in fact and an enterprise involved in interstate commerce.

notice to Plaintiffs/the Hadley's and against the guidance of state regulatory officials, Defendant Christopher Capone ("C. Capone" or "Capone") entered Plaintiff's/the Hadley's real property, seized and destroyed Laura Hadley's ("L. Hadley") personal property and disposed of her personal property in the town dumpster; Defendant Paul Joncas ("P. Joncas" or "Joncas") executed an Enforcement Order ("EO #1), and one week later, individual members of the local Conservation Commission named herein unanimously ratified EO#1 at a secret Ratification Hearing—Plaintiffs/the Hadley's were provided no notice prior to the illegal search and seizure, nor were they provided notice of the Ratification Hearing or given opportunity to be heard before Capone's crimes and torts, and 'Joncas's EO#1' was unanimously ratified. Appalled by the flagrant disregard for constitutional rights, Plaintiffs Laura and her father Robert Hadley ("R. Hadley") filed an Administrative Appeal ("Admin Appeal") seeking compensation for the property destroyed and to defend basic constitutional rights.[3] C. Capone and his co-conspirators purported to act under the color law, C. Capone as Conservation Commission Agent for the Town of Westport, P. Joncas as Conservation Commission Chair, and other Defendants as more fully described herein, as volunteer members of the local Conservation Commission. The late Elmer Wilkinson's daughter, Defendant Pamela Wilkinson ("P. Wilkinson") was engaged to C. Capone's father, the late Paul Capone, for many decades. Plaintiffs/the Hadley's knew and regularly saw C. Capone, his father, and P. Wilkinson in the summer so were aghast to learn of C. Capone's crimes and torts after they had been committed—under the guise of the color of law--without so much as a phone call; and Defendant Conservation Commission's ("ConCom")

[3] Administrative appeals in MA are brought pursuant to M.G.L. 249 § 4, with the limited procedure governed under MA Superior Court Standing Order 1-96 which prescribes a limited, expedited process based solely on the Administrative Record decided as a matter of law. The case is still pending in Bristol County Superior Court 1873CV00907 due to Defendants repeated and ongoing abuse of process for the ulterior motive of extorting land and water rights for co-conspirators, including Defendant Capone personally, et al.

unanimous ratification at a secret hearing one week later, where again, Plaintiffs/the Hadley's were provided no notice whatsoever. Plaintiffs/the Hadley's filed a limited Admin Appeal challenging the unconstitutional actions between August 8th-August 14, 2018. The Admin Appeal led to threats of violence and extortion, which Plaintiffs/the Hadley's recently learned are in furtherance of the two overlapping rackets, which are increasing in severity and will get worse absent intervention from this Honorable Court.

For example, in August of 2019, P. Wilkinson told L. Hadley 'to stop with the float nonsense and leave Chris [Capone] alone or I'll kill you myself.' Threats of violence and extortion under the color of official right increased thereafter and continue to get worse, as described more fully herein, particularly by Capone, members of his family, and other co-conspirators. On another occasion, Capone and co-conspirator D. Lafarrier were cutting down trees on Plaintiffs/the Hadley's Property when Capone remarked 'they [referring to Plaintiffs/the Hadley's] want privacy, I'll give them privacy..' to which D. Lafarrier remarked 'they [referring to Plaintiffs/the Hadley's] need to have their f***ing legs broken'. On another occasion, Capone threatened Plaintiffs/the Hadley's by irately exclaiming something to the effect of 'I can play games. . .to start, just try to get out'. Capone then used his truck to block Jane Doe Hadley's car to prevent her from leaving. Plaintiffs/the Hadley's called the police because Jane Doe Hadley was shaking with fear and crying; Jane Doe Hadley and L. Hadley were able to escape in their vehicle before Capone's threats escalated further. On another occasion, Capone informed L. Hadley, something to the effect of, 'you'll get what's coming to you . . .and so will he' [referring to Plaintiffs/the Hadley's 35lb chocolate lab]. Plaintiffs/the Hadley's recently realized that these acts and threats of violence are in furtherance of two overlapping rackets to extort money, land, etc. from Plaintiffs/the Hadley's and bring the matter before this Honorable Court seeking

protection from imminent further threats and harm; to protect themselves and the water; to defend constitutional rights, and to address the recently discovered forged and wild deed chains.

In mid-2020, as part of the—still ongoing—limited Admin Appeal, a Bristol County Superior Court Judge issued three orders holding Capone personally liable for conversion, and Defendants Town of Westport and Conservation Commission liable for Civil Rights violations, and noting the unique jurisdictional question regarding trespass claims due to the precedent established by the Watuppa Cases, specifically Watuppa III.[4] The Hadley's/Plaintiffs commenced a comprehensive title review of their family's property, including water rights, beginning in late 2020, which yielded disturbing results and partly elucidate the diabolical plots underlying this action.

During 'the 2021 title search', Plaintiffs/the Hadley's first discovered and continue to uncover two overlapping schemes whereby Defendants are attempting to wrongfully take water rights, real property, money and personal property from the Hadley's/Plaintiffs, and likely others, through extortion, fraud, et al. Plaintiffs/the Hadley's recently realized their real property is jurisdictionally unique because it is located on the MA/RI line which changed many times throughout history; unbeknownst to Plaintiffs/the Hadley's until 2021, their family, predecessors-in-interest, and others continuously owned and protected the land and water since at least 1652. Defendants are currently misusing environmental regulations, purporting to act under the guise of the color of law, and using threats of violence to extort real and personal property in furtherance of these two ongoing rackets for their own personal gain, and for their co-conspirators.

---

[4] Watuppa Reservoir Co. v. Fall River ("Watuppa III"), 28 N.E. 257 (Mass. 1891); see also, Watuppa Reservoir Co. v. Fall River ("Watuppa I "), 134 Mass. 267, 268 (1883) and Watuppa Reservoir Co. v. City of Fall River ("Watuppa II"), 18 N.E. 465, 470 (Mass. 1888).

The first enterprise or association in fact recently discovered, the Concom Syndicate and Extortion Scheme ("CSES"), involves Defendants C. Capone, P. Joncas, Mark Bartow, Jim Straub, Jason Powell, Jacob McGuigan, Grace Greenwood, Philip Weinberg, Kevin Carter, Bryan Burton, Westport Conservation Commission, Town of Westport, MA, Massachusetts Department of Environmental Protection, Massachusetts Department of Conservation and Recreation, and John Does. The individuals and entities are conducting this enterprise and association in fact, conspiring to and attempting to misuse the limited Admin. Appeal process and state environmental regulations to wrongfully usurp law enforcement authority whilst frustrating the objective of the Clean Water Act, expressly violating the Hobbs Act, and undermining rights and privileges guaranteed by the United States Constitution, et al., in order to wrongfully extort water rights, real property, money and personal property from Plaintiffs/the Hadley's; and intentionally and willfully violating and conspiring to violate the Civil Rights Act by depriving Plaintiffs/the Hadley's of basic Constitutional Rights purporting to act under the color of law.

The broader plans elucidated by the Admin Appeal and '2021 title search', the full extent of which is still being discovered/uncovered requiring preliminary discovery in this case, were also in furtherance of a recently discovered real estate fraud scheme orchestrated by C. Capone, his 'functional' step-mother P. Wilkinson, and P. Joncas, in collusion with many others--the Capone Concom Real Estate Fraud Scheme ("CCREFS"). This fraud racket is being perpetrated by Capone, members of his family, and other co-conspirators and involves a real estate fraud scheme including dozens of forged and fraudulent deeds and chapter 61 liens, prepared, executed, and recorded, and/or void deeds wrongfully obtained by false pretenses by Defendants conspiring toward the common goal of stealing land, water, and money from the

Hadley's/Plaintiff's, and likely many others. In late 2022, Plaintiffs/the Hadley's also discovered C. Capone and P. Joncas are foresters employed by MA DCR; Capone is also employed by the town as the Conservation Commission Agent[5] and co-conspirator Paul Joncas ("P. Joncas" or "Joncas") is the Chair of the Westport Conservation Commission.[6] Capone, Joncas and other co-conspirators are managing and facilitating this real estate fraud racket, CCREFS, acting under the color of law and using threats of violence in an attempt to extort water rights, other personal, and real property rights from the Hadley's/Plaintiffs and likely many others, for the benefit of Capone personally, his family members, Defendants, and other John Doe individuals and groups, to be further uncovered during initial, limited discovery by Plaintiffs, and as further described herein. The pattern first discovered by Plaintiffs/the Hadley's in 2022 involves Defendants, including John Doe co-conspirators, preparing, executing, 'receiving' and recording forged deeds for property (often described as "vacant land") which they do not own, know they do not own, and which belongs to Plaintiffs/the Hadley's and likely others, and seeking and approving 'Orders of Conditions' from Capone, Joncas, and other co-conspirators to build houses and structures on land they know to be owned by Plaintiffs/the Hadley's. In furtherance of CSES and CCREFS, in late October 2022, Plaintiffs/the Hadley's discovered Capone and Joncas are local and state approving 'chapter 61 liens' for property in MA and RI, extorting money, water, and land from the Hadley's/Plaintiffs and others purporting to act under color of official right whilst facilitating and managing the overarching CCREFS and CSES along with co-conspirators. CCREFS and CSES co-conspirators, including Defendants Capone and Joncas, also now appear to be using and attempting to expand the use of federal funds, and other state and local public

[5] Thus he could be his own 'approving authority' which is in violative of M.G.L. 268A § 19, et al.
[6] Thus he too, in collusion with C. Capone, votes and is an 'approving authority' at the local and state level, which is also violative of M.G.L. 268A § 19, et al.

funds to exercise 'rights of first refusal' on property with void deeds and forged chapter 61 liens, et al.in furtherance of these ongoing rackets. Individual members of the Westport Conservation Commission, Capone, Joncas, and other co-conspirators have been and continue to purport to act under the color of law, and are intentionally misusing these positions to deny Plaintiffs' constitutional rights, and wrongfully obtaining money, easement access rights, riparian and littoral rights, and other real and personal property from Plaintiffs/the Hadley's and others for themselves and other co-conspirators.

## II. THE PARTIES

1. Plaintiff, the Devol Pond Association, a community group and 501(c)(3), with a mailing address of Attn: Robert Hadley, 246 Durfee St., Fall River, MA 02720.

2. Plaintiff Robert C. Hadley, ("R. Hadley") individually and in his capacity as trustee of the 2021 Hadley Family Real Estate Trust with a mailing address of 246 Durfee Street, Fall River, MA.

3. Plaintiff Laura A. Hadley, ("L. Hadley") individually and in her capacity as a trustee of the 2021 Hadley Family Real Estate Trust, with a mailing address of P.O. Box 4021, Westport MA, 02790.

4. Plaintiff Jane Does, members of the Hadley family and beneficiaries of the 2021 Hadley Family Real Estate Trust, and other unknown property owners whose identities shall remain confidential for their safety; collectively with the Devol Pond Association, R. Hadley and L. Hadley hereafter referred to as "Plaintiffs/the Hadley's" for simplicity sake.

5. Plaintiff Jana Does, yet to be ascertained water rights co-owners of the Greater Watuppa Ponds Watersheds whose chains of title also derive from conveyances to the Original Proprietors and ancient deed chains which included littoral and riparian rights.

6. Defendant Christopher Capone ("C. Capone"), an individual, and in his capacity as Westport Conservation Commission Agent, resides at 49 Doherty Avenue, Somerset, Massachusetts.

7. Defendant Paul Joncas ("P. Joncas"), an individual and in his capacity as Westport Conservation Commission Chair, resides at 11 Sandpiper Drive, Westport, MA.

8. Defendant Mark Bartow ("M. Bartow") individually and in his capacity as an employee of the Massachusetts Department of Environmental Protection, upon information and belief resides at 12 Grandview Ave. Mattapoisett, MA 02739

9. Jim Straub ("J. Straub") individually and in his capacity as an employee of the Massachusetts Department Conservation and Recreation, upon information and belief resides at 20 E. Princeton Road, Princeton, MA 01541.

10. Defendant Dani LaFarrier ("D. Lafarrier"), an individual, upon information and belief resides at 435 Cherry Street, Fall River, MA.

11. Defendant Karen Tripp Martin ("K.T. Martin"), individually, in her capacity as a real estate broker or agent, as trustee for the Karen Martin Nominee Trust, et al., resides at 51 Amory Petty Way, Westport, MA, although the ownership and jurisdiction of the 'parcels' are in question.

12. Defendant Dean Martin ("D. Martin"), individually, resides at 51 Amory Petty Way, Westport, MA, although the ownership, size, and jurisdictions of the 'parcels' are in question.

13. Defendant Brian J. Tripp ("B. Tripp"), an individual, resides at 115 Narrow Ave., Westport, MA, although the ownership, jurisdiction, and size of the parcel are in question.

14. Defendant Geraldine Tripp ("G. Tripp"), an individual, resides at 187 Narrow Ave., Westport, Massachusetts, although the ownership, size, and jurisdiction of the parcel is in question.

15. Defendant Pamela Wilkinson ("P. Wilkinson"), an individual, upon information and belief, owns and resides at 540 Weetamoe Street, Fall River, Massachusetts.

16. Defendant Mary Lou Quigley ("M.L. Quigley"), an individual, resides at 5455 N Main Street, Fall River, Massachusetts.

17. The Estate of Paul Capone, ("Estate of P. Capone") an individual recently deceased, who owned and resided at 49 Doherty Avenue, Somerset, Massachusetts.

18. Hugh McGovern, ("H. McGovern") an individual, resides at 82 Kemp Street, Dunstable, MA.

19. Michael Perry, ("M. Perry") an individual and in his capacity as trustee of the Elizabeth Q. Perry Trust -2009, resides at 592 Sodom Road, although the size and ownership is in question.

20. Elizabeth Q. Perry, individually and in her capacity as Trustee of the Elizabeth Q Perry Trust –2009 ("E. Perry"), resides at 592 Sodom Road, Westport, MA, although the size and ownership of this parcel is in question.

21. Anothny Ferreira, Jr., ("A. Ferreira") an individual and in his capacity as estate representative, resides at 42 Narrow Ave, Westport, MA 02790 although the size and ownership of this parcel are in question.

22. Brenda and Timothy Palmer, ("B&T Palmer") are individuals, and reside at 392 North Avenue, Rochester, MA.

23. The Estate of Estelle Ferreira, ("Estate of Ferreira") upon information and belief is represented by her children Brenda Palmer and Anthony Ferreira, Jr., named herein.

24. Mark Ferreira, ("M. Ferreira") an individual residing at 617 Sodom Rd., Westport, MA, although the size and ownership of this parcel are in question.

25. Manuel and Caroline Ferry, ("M&C Ferry") individuals residing at 132 Narrow Ave., Westport, MA although the size, ownership and jurisdiction of this parcel are in question.

26. Deborah Diaz ("D. Diaz"), an individual resides at 1D Narrow Ave., Westport, MA although the size and ownership of this parcel is in question.

27. Rachel Swicker ("R. Swicker"), an individual resides at 7 Stage Rd., Deerfield, MA 01373.

28. Jason Powell, ("J. Powell") individually and in his capacity as Conservation Commission Member, resides at 878 Pinehill Road, Westport, MA 02790.

29. Jacob McGuigan, ("J. McGuigan") individually and in his capacity as Conservation Commission Member, resides at 210 Drift Road, Westport, MA 02790.

30. Grace Greenwood, ("G. Greenwood") individually and in her capacity as Conservation Commission Member, resides at 29 Green Street, Westport, MA 02790.

31. Philip Weinberg, ("P. Weinberg") individually and in his capacity as Conservation Commission Member, upon information and belief, resides atm 1702 Drift Road, Westport, MA 02790.

32. Kevin Carter, ("K. Carter") individually and in his capacity as Conservation Commission Member, upon information and belief, resides at 488 Sodom Road, Westport, MA although ownership and size of the parcel is in question.

33. Plaintiffs, John Does 1-20, including specific Selectboard members, are individuals not yet known, to be added to an Amended Complaint following preliminary, limited, perforce discovery by Plaintiffs in this matter.

III. JURISDICTION AND VENUE

34. This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) as a federal question, 18 U.S.C. § 1952, et seq., and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

35. This Court has subject matter jurisdiction as this case involves attempted takings claims under the Fifth and Fourteenth Amendments, and intentional deprivation of Plaintiffs/the Hadley's Civil Rights in violation of 42 U.S.C. §§ 1983, and 1988, as they are Constitutional claims.

36. Venue is proper in this district pursuant to 18 U.S. Code § 1343 because Defendants devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmissions by means of wire, radio, or television communication in interstate or foreign commerce.

37. This Court has jurisdiction pursuant to 18 U.S. Code § 1343 because Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate

commerce, of the mails, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

38. Venue is proper in this district pursuant to 28 U.S. Code § 1331 because this action arises under the Constitution, federal law, Clean Water Act, the Migratory Bird Treaty Act of 1918, and involve real property and water rights in Massachusetts and Rhode Island.

39. This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

40. This Court further has personal jurisdiction over Parties under 28 U.S.C. § 1965(b) because any action brought pursuant to RICO statutes may be brought in a U.S. District Court, and the "ends of justice require" it.

41. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

42. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found and/or transacts his affairs in this District given each defendant's participation in the CCREFS Enterprise, and CSES as further described herein.

43. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c)(3) or the alien-venue rule as codified in Federal question: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## IV. FACTUAL BACKGROUND COMMON TO ALL COUNTS

Overview

44. As already noted above, in late 2020, the Hadley's/Plaintiffs began a comprehensive title search of the family property, lovingly referred to as "Cozy Camp" and discovered dozens of fraudulent cross conveyances, forged and wild deed chains, and 'chapter 61 liens', for properties now understood to be owned by Plaintiffs/the Hadley's, the full extent of which is still being uncovered and is set forth more fully herein. on 'parcels' and 'neighboring parcels', now known to be part of the Hadley's/Plaintiffs real property.
45. Plaintiffs/the Hadley's recently discovered P. Wilkinson and M. Quigley's father, the late Elmer Wilkinson, held a life estate only to part of the Property, and while he managed the Property, ownership reverted back to Plaintiffs/the Hadley's upon his death in 2001.
46. P. Wilkinson, M. Quigley, C. Capone and other Defendants described more fully herein began with increasing severity and veracity knowingly and intentionally recording forged and fraudulent deeds, marketed, sold, and encumbered property recently discovered in 2021 to be owned by Plaintiffs/the Hadley's, continue to do so, and also began extortionary acts to obtain other property interests in facilitation of the CCREFS and CSES.
47. John Doe co-conspirators and employees at the Bristol County Registry of Deeds ("Registry of Deeds") record these forged and fraudulent conveyances.
48. Plaintiffs/the Hadley's and upon information and belief, the Westport Town Assessors Office reasonably relied on these recorded, forged and fraudulent deeds, and the public records regarding ownership which resulted therefrom.

49. Plaintiffs/the Hadley's recently discovered and continue to uncover, Defendants and others began forging and executing, and continue to forge and execute deeds, and record fraudulent and forged deeds and other transactions for property where 'title' is based on deeds obtained by forgery, false pretenses and fraud.

50. For example, Defendants knowingly made false representations of material fact, intending to induce reliance, and reasonably inducing reliance to obtain title and possession of real and personal property including land and waters Plaintiffs/the Hadley's learned in 2022 is located in both MA and RI.

51. Plaintiffs/the Hadley's recently learned the Property in question has been owned by their family members (specifically, the children of the late Mildred M. Hadley, hereinafter "Mimi") since at least 1652.

52. Defendants have been conspiring to wrongfully extort money and obtain title to real property, riparian rights, and other property by forging deeds and chapter 61 applications, making false representations of material fact, intended to induce reliance, which Plaintiffs/the Hadley's relied on, and which caused and continues to cause damage to Plaintiffs/the Hadley's.

53. The Property is one undivided whole owned by Plaintiffs/the Hadley's; while the property was never properly subdivided (as previous 'surveys' were based on forged deeds, and other void and voidable conveyances in furtherance of CCREFS and CSES), the current tax assessors records show 'parcels' 'owned' by Defendants, which include several tracts of woodlands, wetlands, water, and structures.

54. Plaintiffs/the Hadley's recently discovered the Property was purchased by Mimi's ancestors and other Original Proprietors in 1652 as part of an undivided whole, claimed and purchased by Philip Taber, et al.
55. The historic chains of title includes several of Mildred M. Hadley's "Mimi" (Frank's mother) and Frank B. Hadley's ancestors, including but not limited to the Original Proprietors.
56. While Frank Hadley and Plaintiffs/the Hadley's previously believed the chains of title derived solely from purchases made by Mimi and the late Robert C. Hadley beginning in approximately 1938, Plaintiffs/the Hadley's recently learned Mimi and her children also inherited interests in the property, including remainder interests which vested sequentially, and to which they now hold title via the doctrine of merger.
57. In addition to those parcels purchased in the 1930's and 1940's Plaintiffs/the Hadley's own other portions of the Property as remaindermen, heirs, grantees from Mimi's 1973-1974 deeds, and bone fide purchasers for value based on their subsequent purchase and exercise of rights of first refusal, et al.
58. Defendants have and continue to forge deeds, record void and voidable deeds, and to market and 'sell' 'parcel's' they knew and know to be owned by the Hadley's/Plaintiffs in furtherance of CCREFS, and CSES.

**Character of property-- how major problems and rackets began to take form**

59. Some sections of the property were subject to a life estate in joint tenancy for the life of Elmer Wilkinson, who also acted as property manager.

60. Title to those 'parcels' reverted back to Plaintiffs/the Hadley's following his death June 1, 2001; other sections of the Property are currently occupied by Defendants K. T. Martin and B. Tripp and others, which Plaintiffs/the Hadley's recently discovered, title to said 'parcels' was obtained by forged deeds, fraud and false pretenses, and other void and voidable deeds, and based on 'wild deed chains' derived from forged or fraudulent cross-conveyances to large swaths of land owned by other people, often in neighboring jurisdictions hundreds of years earlier.[7]

61. The property is made up of several large tracts of woodlands, wetlands, fields, and water, and now seasonally occupied structures and full time residences.

62. The portion of the property known and "Cozy Camp" includes a series of cottages located on and near Lake Pogansett[8].

63. The state line between MA and RI runs through the property; both state lines and town lines changed locations and names many times throughout history.

64. Until approximately 2018, everyone who 'stayed' at Cozy Camp was referred to as a 'cousin' and the Property was understood to be for the benefit of the family, and to protect the ecosystem; accordingly, title to the real property, including 'Cozy Camp' and 'structures' thereon, was not regularly or fully examined.[9]

---

[7] See, e.g., New Bedford Registry of Deeds [insesrt ferreria and mcgovern crossconveyances; see also willie Kirby and albert Kirby; Book__, page, and book, page ---; whereby _____and_____cross-convey parcels to land they do not own to each other and then record same.

[8] Lake Pogansett was the name most commonly used in the 17th and 18th century. At some points throughout history, it was collectively referred to as part of the Watuppa Ponds, now separately referred to as Sawdy, Devol, Stafford, North Watuppa, South Watuppa, etc. The ponds in question have also been referred to as Davol Pond, then the Devoll Pond, so-called, the fresh pond, the fresh ponds, Sandy Pond, and most recently Devol Pond and Sawdy Pond.

[9] Plaintiffs commenced a comprehensive title review beginning in late 2020, early 2021, the results of which led to the action before this Court. While surveys and other divisions have taken place over the years, most if not all were based on incomplete title searches, or deed chains and title otherwise procured by forged deed chains, fraud or false pretenses and as such are void or voidable, depending on the deed/chain/survey in question.

65. Shortly before Elmer Wilkinson died, and after his death, his daughters, Defendants P. Wilkinson and M. Quigley began making a series of conveyances and assertions regarding title that were reasonably relied upon by their 'cousins' Plaintiffs/the Hadley's.
66. Elmer Wilkinson died June 1, 2001; his three children, Hadley Wilkinson, M. Quigley, and P. Wilkinson spent several years 'probating' and contesting Elmer's estate.
67. During the probate process, Elmer Wilkinson's daughters Defendant P. Wilkinson and Defendant M. Quigley, forged or caused to be forged several 'deeds' and made several intentionally false representations about the ownership of certain 'parcels' to the Hadley's/Plaintiffs, including but not limited to R. Hadley, his siblings, and Sandra McKenna and Lynn Lott, Frank Hadley's nieces.
68. Defendants' false statements were reasonably relied on by the Hadley's/Plaintiffs to their detriment.
69. In reliance on Defendants forged deeds, intentional misstatements of material fact, et al., the Hadley's/Plaintiffs executed deeds based on false pretenses, were induced to execute same, or otherwise relied on the series of void and voidable subsequent conveyances, facilitated by Defendants in furtherance of CCREFS and CSES.

**The Scheme begins to increase in veracity**

70. Unbeknownst to Plaintiffs/the Hadley's until recently, the Wilkinson's--P. Wilkinson and M. Quigley's interest in the real property located partly in Westport, MA and

partly located in RI, on and near Narrow Ave.[10] and Sodom Road terminated on the death of Elmer J. Wilkinson on June 1, 2001.

71. P. Wilkinson and M. Quigley knew at least as of 2001, though likely earlier, that they had no interest in the Property following the death of their father Elmer Wilkinson evidenced by the initial probate inventory of Elmer Wilkinson, submitted under penalty of perjury to the Bristol County Superior Court in 2001 showing the Wilkinsons, specifically the estate of Elmer Wilkinson, did not own land in Westport, MA. See, Bristol County Probate Court docket no. 01P1849-EP.

72. Beginning in at least 2001, P. Wilkinson, M. Quigley, K. T. Martin, Capone, B. Tripp, and others began the association-in-fact CCREFS, conspiring to obtain real and personal property by forging deeds, obtaining deeds by false pretenses and fraud, including facilitating and recording same for land and other property which they knew to be owned by Plaintiffs/the Hadley's, which was done intentionally and in furtherance of CCREFS, and CSES.

73. In furtherance of these rackets, Defendants, including K. T. Martin and others 'subdivided' and 'sold' several 'parcels' of land based on forged deeds for property now known to be owned by Plaintiffs/the Hadley's, and likely others, which was discovered in 2021; the full extent of which is still being uncovered.

**2003-2004 Forged Deeds**

74. As recently discovered, increasing in veracity in approximately 2003, P. Wilkinson and M. Quigley, K. T. Martin, C. Capone, B. Tripp and others began making

[10] The 'paths' in the area were referred to as 'old road', 'new road', 'that certain road' et al. throughout history; conveyances in the 1970's describe many different 'Narrow Avenues' including but not limited to Narrow Ave (S), Narrow Ave (SE), Narrow Ave (N), Narrow Ave (NE), etc.

knowingly false representations and/or omissions about the ownership of real property to the Hadley family/Plaintiffs, upon information and belief, the Town of Westport Assessors offices, and possibly others.

75. Several wild deed chains derive from common forged cross-conveyance including but not limited to those of Wiliam W. Kirby and Alber E. Kirby (See Bristol County Registry Book 547, page 265), Lizzie Whiteside and Evelyn Richer (NB Registry Book 966, page 206) for ‘land’ she already conveyed/released (NB Registry Book 6659, Page 202), [INSERT hugh and estelle, tripp fam cross conveyances, et al—obvious, clear and unequivocal ones only

76. Beginning in at least 2003, K. T. Martin conspired with P. Wilkinson, M. Quigley, C. Capone, and John Does, to wrongfully obtain title to property by forging deeds, obtaining deeds by false pretenses and fraud, including filing void and voidable deeds in furtherance of CCREFS and CSES.

77. In reliance on the knowingly false representations made by Defendants in furtherance of CSES and CCREFS, beginning in approximately 2004, the Hadley’s/Plaintiffs were ticked into permitting M. Quigley, P. Wilkinson and her partner the late Paul Capone (C. Capone’s father) and members of the Wilkinson, Tripp and Capone families, et al., to occupy cottages and structures which are located on Property recently discovered to be owned by Plaintiffs/the Hadley’s, but for Defendants forged and fraudulent deed chains, etc.

78. In 2003 or 2004, C. Capone performed ‘field work’ for a survey, upon information and belief, purporting to act on behalf of Sitec Inc.

79. C. Capone made knowingly false statements regarding property boundaries, locations and ownership in furtherance of CCREFS and CSES.
80. Plaintiffs/the Hadley's and others reasonably relied on these knowingly false statements of material fact which caused and continues to cause damage.
81. The late Elmer Wilkinson (P. Wilkinson's father) granted a license to P. Wilkinson's 'fiance' of 50+ years Paul Capone (recently deceased), C. Capone's father, allowing him to seasonally occupy a cottage located on Plaintiffs/the Hadley's Property.
82. As recently discovered, the late Paul Capone and Raymond Pelletier forged cross-conveyances and deeds to a structure measured from an unfixed point, cross-conveyed to each other and recorded same. See Book___, page___
83. Upon information and belief, K. T. Martin, her brother B. Tripp, and other co-conspirators began actively conspiring with M. Quigley, Capone, P. Wilkinson, R. Swicker and others in at least 2003 or 2004 to obtain money and title to property by forged deeds, false pretenses, and fraud.
84. Upon information and belief, K.T. Martin began working as a real estate broker in 2003.
85. K.T. Martin and D. Martin recorded deeds to land and other property located in Rhode Island, yet recorded in Massachusetts only based on forged deeds, wild deed chains, et al., including but not limited to Bristol County Massachusetts Registry book 6066, page 7-9 and book 1941, page 210 et seq.[11]

[11] A non-exhaustive list of void and voidable deeds is included below, with complete title chains, defects therein, etc., to be included as exhibits and described with particularity in subsequent motions.

86. The late Paul Capone (now represented by the Estate of Paul Capone) and his children, including C. Capone, were permitted on Plaintiffs/the Hadley's property based on an oral license from Elmer Wilkinson to his daughter's fiancé the late Paul Capone, and later by P. Wilkinson to co-conspirators as part of and in furtherance of CCREFS and CSES.

**2004-2006**

87. Upon information and belief, C. Capone began working as the Westport Conservation Commission Agent in 2003 or 2004.

88. On July 13, 2004, the Conservation Commission and upon information and belief Conservation Commission Agent C. Capone, obtained/granted 'interim approval' for a dock license on Plaintiffs/the Hadley's property at 1 Narrow Ave., (NB Registry 7156, Page 50; Dock License Number 10045), extending into Lake Pogansett, sometimes called Devol Pond, showing the property listed as 1J Narrow Ave.[12]

89. The application for said dock permit showed the 'property' to the west as being owned by Frank Hadley, which is the same 'parcel' P. Wilkinson purported to 'buy' from co-conspirator R. Swicker and the Swicker Trust, title to which resulted from the wild deed chain from cross-conveyances book___, page___; and book___, page___.

[12] In the 1600's the Ponds on the property were called "Aponagensett" and later "Pogansett" which means 'little lake by the bigger lake' in Wampanoag. There are two ponds in the vicinity which fit this description. In some historical deeds they are called "the fresh pond or ponds"; in others they are called "Pogansett". Later in the conveyances, there arises a distinction between "Davol Pond" and "Sawdy Pond", with a few other names given to the waterbodies. Thereafter (roughly the 1890's) the two ponds start to be referred to as "Sandy Pond", "Watuppa Ponds", and later "the Devoll Pond, so called" and "Sawdy Pond" with more consistency.

90. Upon information and belief, K.T. Martin in approximately 2003 was involved in or otherwise facilitated changing 'parcel' locations and boundaries in furtherance of CCREFS and CSES, knowingly and intentionally.[13]

91. C. Capone knew neither he, nor his father Paul Capone, nor his father's fiancé P. Wilkinson had valid title nor any interest in the Property at Cozy Camp and in Westport, MA and were only permitted to be there because of a license granted by Elmer and later because of forged deeds and other void 'conveyances' by P. Wilkinson, M. Quigley, and other co-conspirators of CCREFS, and CSES.

92. C. Capone, in his individual capacity and as Agent of the Conservation Commission, in furtherance of CREFS, and CSES made false representations of the ownership of the 'parcel' to the Conservation Commission, the Commonwealth of Massachusetts, Massachusetts Department of Environmental Protection, and others in an attempt to obtain 'interim approval' for a dock, to begin a fraudulent attempt to wrongfully obtain an interest in Plaintiffs/the Hadley's property, including part of the pond through extortion, Larceny by Trick and/or Theft by False Pretenses and acting under the color of official right in furtherance of CCREFS and CSES.

93. C. Capone and other co-conspirators intended for the Conservation Commission, the DEP, State of Massachusetts, assessors office, registries of deeds, and others to rely on forged deeds, and false representation of material fact that he or his family members or co-conspirators had any right, title, or interest in Devol Pond, the Watuppa Ponds, Lake Pogansett or Plaintiffs/the Hadley's Property and other property including land and water in MA and RI.

[13] See list of void and voidable deeds below.

94. Upon information and belief, some employees at the MA DEP and State of Massachusetts did rely on these forged deeds, documents procured by false pretenses and fraud, and the knowingly false statements made by C. Capone, his co-conspirators et al., beginning as at least as of 2004 in furtherance of CCREFS and CSES.

95. C. Capone sought, received, and approved this Order of Conditions based on forged deeds, ‘conveyances’ obtained by false pretenses, and other false representations of material fact intended to induce reliance, which did induce reliance, and which are causing Plaintiffs/the Hadley’s damage, in an attempt to begin extorting a property interest for himself, his family members, co-conspirators, and Defendants, by misusing his official position.

96. The issuance of the Interim Approval for Dock License no 10045, (recorded at New Bedford Registry 7156, Page 50) caused and is causing Plaintiffs/the Hadley’s damage.

97. C. Capone, and CCREFS and CSES co-conspirators are knowingly and wrongfully attempting to extort an interest in Davol Pond (a private pond) for Conservation Commission Agent/Defendant C. Capone and his family and co-conspirators, and purporting to extort then ‘give’ riparian and littoral rights to the Property, including water and land in the pond to himself, Defendant Town of Westport, the state of MA and other co-conspirators.

98. It is unclear whether that ‘portion’ of Plaintiffs/the Hadley’s Property is currently in MA or RI because ‘title’ is based on a wild deed chain measured from an unfixed

point based on forged cross-conveyances by William W. Kirby and Albert E. Kirby, and the state line changed several times throughout history.[14]

99. Capone, Joncas, and John Doe co-conspirators, in furtherance of CCREFS and CSES, used and continue to use their official positions with the Conservation Commission and MA Department of Conservation and Recreation to approve Chapter 61, 61A and 61B liens on properties for themselves, family members, Defendants, and other co-conspirators in CCREFS and CSES who knew they did not own the land and other property interests.

**Continuity of the Acts 2007-2009**

100. On January 7, 2007, B. Tripp and his parents, the late Isaac Tripp and his wife Defendant G. Tripp, recorded a forged deed for "Vacant Land on Narrow Ave." partly on land "now or formerly owned by Harold Hadley, et ux." [15]

101. On September 15, 2008, Capone, and other co-conspirators approved an Order of Conditions[16], Capone in his capacity as Agent for the Westport Conservation Commission, in furtherance of CCREFS and CWTFS 'allowing' B. Tripp to destroy and 'fill in' large amounts of wetlands on land B. Tripp, Capone, and other co-conspirators knew and know to be owned by Plaintiffs/the Hadley's.

102. Capone conspired with B. Tripp in furtherance of CCREFS by purporting to 'authorize' B. Tripp to build a house on Plaintiffs/the Hadley's real property in furtherance of CCREFS and CSES. (See DEP file no 080-1741).

[14] See complete list of book and page numbers contained herein.
[15] See Bristol County Southern District Registry Book 8489, Page 218; and for Plaintiffs/the Hadley's controlling deeds see Book, 1678 page, 481-487.
[16] Book 9174, page 103, Order of Conditions number SE80-1741

103. B. Tripp, his sister K.T. Martin, C. Capone, his 'stepmother' P. Wilkinson, and other co-conspirators intentionally forged deeds or otherwise knew the 'deeds' and Orders of Conditions were forged or obtained by false pretenses, and knew representations of the material fact regarding property ownership were false and intended for Plaintiffs/the Hadley's, upon information and belief the Commonwealth of Massachusetts, and others to rely on their knowingly false statements.

104. Upon information and belief, the Commonwealth of MA, and others relied on these false statements of material fact and the Conservation Commission approved the Order of Conditions; or alternatively conspired with Capone and others to wrongfully obtain property interests purporting to act under the color of official right.

105. Until recently, Plaintiffs/the Hadley's reasonably relied on Defendants false statements of material fact regarding ownership of that portion of the Property including land and water contained thereunder currently occupied by B. Tripp, K.T. Martin, D. Martin, B&T Palmer, A. Ferreira, M. Perry, et al., which caused and continues to cause Plaintiffs/the Hadley's damage.[17]

106. The ongoing and increasingly severe destruction and alteration of the Property owned by Plaintiffs/the Hadley's violates the Migratory Bird Treaty Act ("MBTA"), Clean Water Act, Hobbs Act, et al.

107. Beginning in approximately 2008, Capone and Dani Laferrier started cutting down trees and harvesting wood on Plaintiffs/the Hadley's Property, which Plaintiffs/the Hadley's recently discovered.

[17] See complete list of book and page numbers contained herein.

108. Plaintiffs/the Hadley's reasonably relied on forged deeds, 'conveyances' procured by false pretenses, and other fraudulent statements made by co-conspirators of CCREFS and CSES including P. Wilkinson, C. Capone, and others including false representations of material facts or omissions of material facts, and reasonably relied on these false statements and material omissions, and in reliance thereon, allowed P. Wilkinson, Capone and others to occupy portions of real and personal property owned by the Hadley's/Plaintiffs (hereinafter 'the Property').

109. Defendants intended to establish claims to the properties described in the forged deeds via forgery, larceny by trick, false pretenses, extortion, and fraud, in furtherance of CCREFS, and CSES.

110. Plaintiffs/The Hadley's allowed Defendants to enter the Property and to engage in the activities described herein in reasonable reliance on the forged deeds, documents procured by false pretenses and other fraudulent statements and other material omissions made by Defendants; and as was consistent with the property being a 'harmonious family compound' where property ownership and use was loosely controlled, if at all.

**Probate Chicanery**

111. Between 2001 and 2008, P. Wilkinson, M. Quigley, and their brother, the late Hadley B. Wilkinson engaged in a contested probate dispute.

112. During the contentious probate proceedings, Hadley Wilkinson suffered a heart attack and died on March 6, 2008.

113. On October 4, 2008, the probate matters of Elmer J. Wilkinson, Robert C. Hadley, Mildred M. Hadley, and Harold M. Hadley were mysteriously 'disposed on conversion'.[18]

114. The same day, P. Wilkinson dismissed a paternity suit against the father of her adult daughter which had been pending in the same probate court since approximately 1986.

115. Frank B. Hadley was the sole surviving executor for the estates of Mildred M. Hadley and the late Robert C. Hadley following the death of his brother Harold in 1999.

116. Upon information and belief, Frank B. Hadley was not aware of or included in these probate proceedings.

117. Upon information and belief, no other members of the Hadley family/Plaintiffs were aware of these proceedings nor were they consulted regarding the 'disposal' of these estates.

118. None of the Hadley's estates contained final accountings, although they were required in October 2008.

**2009**

119. Bank of America, NA was approved as Trustee of the Elmer Wilkinson Trust (EJW Trust) on May 22, 2009.

[18] See Bristol County Probate Record nos.BR93P1693-E1, BR14P1980EA, BR00P0276, and 108892 in 2003; probates were required to contain final recordings as of this date, yet these probate records are incomplete or otherwise require further discovery and subpoenas to obtain final accountings for these matters, documents for which appear to be are 'missing' or otherwise nonexistent in Bristol County Superior Court Probate Records.

120. On October 28, 2009 Bank of America NA issued a fiduciary deed recorded at NB Registry Book 9551, Page 234 to a 3,750 square foot 'parcel' purporting to be located in Westport on the Property recently discovered to be owned solely by Plaintiffs/the Hadley's;

121. In approximately 2009, Defendant K. T. Martin her husband D. Martin made knowingly made false statements to Plaintiffs/the Hadley's, and others, regarding the ownership of 'the Indian Trail'—land and water located west of the cottages, and surrounding land, located on the Property.

122. Upon information and belief, this land and water is located partly, if not entirely in RI.

123. K.T. Martin and D. Martin intended for Plaintiffs/the Hadley's and others to rely on these false statements of material fact and omissions of material facts

124. Plaintiffs/the Hadley's reasonably relied on D. Martin and K. T. Martin's false statements and suffered and continue to suffer damages as a result.

**2013-2014 Schemes Continue**

125. In early 2013, Mary Hadley (Widow of Frank's brother Harold) died.

126. On March 25, 2014, P. Wilkinson and M. Quigley knowingly forged and recorded a 'conveyance' at NB Registry Book 111053, Page 81 to M. Quigley for Life, for a 'parcel' purported to be located on the Property.

127. P. Wilkinson and M. Quigley knew they did not have valid title for this 'parcel' and that the deeds were forgeries.

128. P. Wilkinson knowingly and falsely represented to Plaintiffs/the Hadley's, and specific members of the Hadley family, including Lynn Lott and Sandy McKenna

(issue of Mimi's late son Harold, Frank Hadley's nieces) that while probating Elmer J. Wilkinson's estate, they 'paid lots of money to lawyers' to thoroughly review title chains to determine the ownership of the Property.

129. P. Wilkinson and M. Quigley falsely and knowingly claimed ownership of one half of the entire 'Property', including one half of "the Red Cottage" and one half of "the Green Cottage" and demanded Sandy and Lynn convey the 'Red Cottage' to them outright.

130. P. Wilkinson, M.L. Quigley, made these knowingly false statements, intending the Hadley's/Plaintiffs to rely on these knowingly false statements and the Hadley's/Plaintiffs did rely on these false statements.

131. On April 14, 2014, P. Wilkinson and M. Quigley forged or caused to be forged, and recorded or caused to be recorded a deed at Bristol County Registry Book 11053, Page 84-5 purporting to grant to P. Wilkinson for Life, a parcel which could be read to include the "Red Cottage" and the "Green Cottage", along with an interest in the 'whole, large parcel'.

132. Neither P. Wilkinson nor M. Quigley had any valid right title or interest in the 'parcel', and knew they did not have any valid right, title, or interest in the Property.

133. On June 30, 2014, members of the Hadley family, including but not limited to Lynn Lott and Sandy McKenna (Frank Hadley's nieces and Harold Hadley's daughters), in reliance on P. Wilkinson and M. Quigley's knowingly false statements, (and upon information and belief because Sandy and Lynn wanted to 'protect' the "Red Cottage" which they had made improvements on) were induced to execute by false pretenses, a conveyance of the "Green Cottage" to P. Wilkinson and M. Quigley

as a ‘concession’, so P. Wilkinson and M. L. Quigley would not ‘take’ the “Red Cottage”.

134. Sandy McKenna and Lynn Lott—Harold M. Hadley’s daughters and Frank Hadley’s nieces-- relied on these false statements and conveyed half of ‘a parcel’ to their second cousins, once removed, Defendant P. Wilkinson and M. L. Quigley, for ‘love and affection’ on June 24, 2014, recorded at NB Registry Book 11109, Page 3, who in turn ‘conveyed’ whatever interest they had in another ‘parcel’ (which was a forged deed and no valid interest) to Sandy McKenna and Lynn Lott, recorded at NB Registry Book 11109, Page 7.

135. In 2014, Michael S. Perry purported to ‘purchase’ for $10, execute and record as New Bedford Registry Book 11176, Page 103-104, more than 150 acres of property recently discovered to be located on Plaintiffs/the Hadley’s Property.

136. During the same time, several other void and voidable deeds were executed and recorded fraudulently, a non-exhaustive list of which is contained below.

**The rackets continue 2016-2018**

137. On February 3, 2016, Capone endorsed approval for, and members of the Commission including P. Joncas, approved another Order of Conditions for B. Tripp to fill in and otherwise destroy more wetlands to build a garage on land Capone, Joncas, B. Tripp, and others knew to be located on Plaintiffs/the Hadley’s property in furtherance of CCREFS and CSES. (See DEP file no 080-2230)

138. C. Capone, P. Joncas, B. Tripp, and John Doe co-conspirators have been and continue to conspire to seek approval for, recommend for approval, approve and obtain Orders of Conditions and misuse the color of official right in an effort to

wrongfully obtain Property belonging to Plaintiffs/the Hadley's in furtherance of CSES and CCREFS, which they know to be owned by the Hadley's/Plaintiffs, through extortion, fraud, larceny by trick, false pretenses in furtherance of CCREFS and CSES.

**2018**

139. In approximately 2018, R. Hadley, in reliance on Defendants knowingly false representations of material facts and resultant false title records, looked into selling a portion of the Property on behalf of his father, Frank B. Hadley.

140. Plaintiffs/the Hadley's, including R. Hadley reasonably relied on Defendants, particularly P. Wilkinson and M. L. Quigley's knowingly false statements of the material fact of property ownership, and the void and voidable deeds they and Defendants prepared or caused to be prepared with co-conspirators, and property records which resulted therefrom.

141. Plaintiffs/the Hadley's reliance on the false statements of material facts made by Defendants and co-conspirators of CSES and CCREFS caused and continue to cause Plaintiffs/the Hadley's damage as further described herein.

142. R. Hadley/Plaintiffs/the Hadley's, P. Wilkinson and M. L. Quigley retained K. T. Martin to serve as their real estate broker to market and potentially sell part of the Property.

143. K. T. Martin owed a fiduciary duty to Plaintiffs/the Hadley's.

144. K.T. Martin knew Plaintiffs/the Hadley's owned the real property occupied by her, her brother and co-conspirator B. Tripp, her mother and co-conspirator G. Tripp, and other co-conspirators of CSES and CCREFS.

145. K.T. Martin made false statements regarding property ownership or otherwise intentionally omitted material information regarding ownership of Plaintiffs/the Hadley's Property.

146. K. T. Martin breached her fiduciary duty to Plaintiffs/the Hadley's by marketing and selling property she knew to be owned exclusively by Plaintiffs/the Hadley's and giving part of the proceeds therefrom to co-conspirators P. Wilkinson and M.L. Quigley.

147. K. T. Martin's breech caused and is causing Plaintiffs/the Hadley's damage.

148. K.T. Martin's fraudulent statements and material omissions caused and continue to cause Plaintiffs/the Hadley's damage.

149. In 2018, Plaintiffs/the Hadley's, P. Wilkinson, and M. L. Quigley conveyed two parcels of land, recorded at NB Registry Book 12403, Page 98, and Book 12399, Page 104.

150. P. Wilkinson and M. L. Quigley forged deeds and made false representations of material fact regarding ownership of the property, which Plaintiffs/the Hadley's reasonably relied on.

151. P. Wilkinson and M. L. Quigley were unjustly enriched by receiving approximately $150,000 from the proceeds of the sale of land which they knew to be owned exclusively by Plaintiffs/the Hadley's.

152. K.T. Martin wrongly received monies in commission, and likely other 'kickbacks' in the form of monetary payments to her, the exact amount of which shall be uncovered in perforce initial, limited discovery, for facilitating the sale of the two

parcels in furtherance of CCREFS, CSES, and in breach of K. T. Martins fiduciary duty owed to Plaintiffs/the Hadley's and in furtherance of CSES and CCREFS.

**Capone, Joncas, Town, and Conservation Commission members begin extorting money and property, and misusing insurance liability coverage to defend the Admin Appeal and Capone, Joncas, and CSES.**

153. In the Spring of 2018, L. Hadley spent $3,684.85 procuring materials and construction labor to build five phytoremediation floats, also known as floating treatment wetlands, an EPA approved best management practice for mitigating eutrophication in waterbodies, including remediating toxic cyanobacteria blooms which were endangering Plaintiffs/the Hadley's health and safety, and which pose a significant danger to humans and animals, more generally.

154. In the Summer of 2018, L. Hadley temporarily floated five floats attached to 'Mimi's dock' and the buoy where 'the Raft' is usually floating.

155. On July 24, 2018, in reliance on knowingly false statements regarding ownership made by K.T. Martin, B. Tripp, P. Wilkinson, M.L. Quigley, C. Capone, and John Does/other co-conspirators, L. Hadley contacted K.T. Martin to ask for B. Tripp's contact information or alternatively, to see if K. T. Martin could ask her brother (B. Tripp) for permission to put a float in the small pond which feeds into Devol Pond.

156. The small pond in question is located on the Property recently discovered to be owned by the Hadley's/Plaintiffs, at the time thought to be owned by B. Tripp as a result of reliance on the forged deeds, fraudulent representations made by K. T. Martin, B. Tripp, et al., and the approvals/Orders of Conditions granted by C. Capone and Joncas under the color of law in furtherance of the CCREFS and CSES.

157. In a text message on July 25, 2018, using interstate wires in furtherance of CCREFS and CSES, K. T. Martin informed L. Hadley that she spoke with B. Tripp and he would review the literature L. Hadley provided K. T. Martin and circle back.

158. Upon information and belief, K.T. Martin and B. Tripp contacted co-conspirator Joncas to complain about Plaintiffs/the Hadley's in furtherance of CSES and CCREFS.

159. On August 1, 2018, Capone began contacting DEP, DCR (the Massachusetts Department of Conservation and Recreation, his other employer as Plaintiffs/the Hadley's recently discovered), and EEA (Environmental Enforcement Authority) seeking 'enforcement authority', to impose fines, and take 'other action' against Plaintiffs/the Hadley's based on 'anonymous complaints' in furtherance of CCREFS and CSES.

160. Capone attempted to, did, and continues to act under the color of official right to take money, water rights, and other real and personal property for himself and other co-conspirators from the Hadley's/Plaintiffs in furtherance of CSES and CCREFS.

161. Between August 1, 2018 and August 6, 2018, Capone, purporting to act in his official capacity, and an environmental police officer, trespassed on the Property entered 1 Narrow Ave., passing through the large gate, down the ½ mile private Lane, and passing onto the private pond, recently discovered to be owned by the Hadley's/Plaintiffs and others to 'investigate' the 'anonymous complaints' and to 'search' for a potential permit violation, in furtherance of CSES and CCREFS.

162. During email exchanges, using interstate wires, Capone sought permission from the Commonwealth and DEP to levy fines and fees against Plaintiffs/ "the Hadley

family" including making knowingly false statements of material fact using interstate wires alleging Plaintiffs/the Hadley's planted hydrilla in the 'very private' pond despite having no proof or other basis for the specious, unfounded allegations.[19]

163. Capone and other co-conspirators attempted to obtain 'permission' to wrongfully obtain money from Plaintiffs/the Hadley's in furtherance of CSES and CCREFS while purporting to act under the color of official right.

164. At no time between August 1 and August 7, 2018 did Capone, Joncas, or any member of the Conservation Commission, DEP, or DCR contact Plaintiffs/the Hadley's.

165. Capone, Joncas and others did intentionally conspire to violate the Civil Rights Act, et al., did deny and continue to deny Plaintiffs/the Hadley's civil rights purporting to act under the color of official right, as part of and in furtherance of CSES and CCREFS, attempting to extort money, and property interests, including seeking to obtain an interest in the Pond, Lane, etc.

166. On August 6, 2018, L. Hadley followed up via text with K. T. Martin to see if she had spoken with her brother and co-conspirator in CSES and CCREFS, B. Tripp.

167. On August 6, 2018, Capone used interstate wires to send an email to state officials in furtherance of CSES and CCREFS, saying that he would "be removing the floats on [his] own (this week)." See Administrative Record in, e.g., 2022-P-0091.

168. On August 6, 2018, Capone was informed via email from state officials, "unfortunately we do not have ENFORCEMENT powers."

[19] Hydrilla is a highly invasive species; the possession and transport of which can result in significant fines, fees, and potentially incarceration.

169. On the morning of August 8, 2018, Capone was forwarded an email from co-conspirator J. Straub [confirm] containing an email from personnel at DCR to DEP advising Capone and the Commission that the 'plants were native' (and as such did not require a permit and was not a 'fineable offense') and directing him to "work with owners".

170. On August 8, 2018, co-conspirator P. Joncas executed/signed an Enforcement Order directing Plaintiffs/the Hadley's to cease and desist from improving water quality in their private pond.

171. P. Joncas did not provide Plaintiffs/the Hadley's with a copy of the Enforcement Order/EO#1.

172. On August 8, 2018, Capone entered Plaintiffs/the Hadley's real property located at 1 Narrow Ave., drove along the ½ mile Lane on Plaintiffs/the Hadley's private Property, and crossed over the Hadley's/Plaintiffs private Boat Ramp to wrongfully seize and destroy L. Hadley's personal property.

173. On or about August 8, 2018, Capone seized and destroyed L. Hadley's personal property and disposed of it in the Town dumpster at the Highway Department.

174. Capone purported to act under the color of official right by entering the Lane, and the land and waters owned by Plaintiffs/the Hadley's, and seizing and destroying personal property owned by L. Hadley.

175. On August 9, 2018, R. Hadley received an email which Agent and Defendant C. Capone sent using interstate wires in furtherance of CSES and CCREFS. See, e.g., 2022-P-0091.

176. In the email, Capone purported to explain, "I as Conservation Commission for the town of Westport has been given authority [to enter seize and destroy property]".

177. Capone intentionally made this false statements of material facts via interstate wires, which he knew to be false, in furtherance of CSES and CCREFS while purporting to act under the guise of the color of law.

178. Capone, knowingly and intentionally in furtherance of CSES and CCREFS omitted the material fact that he had been informed on August 6, 2018 that neither he nor the Conservation Commission had 'enforcement' authority when emailing R. Hadley a copy of the Enforcement Order, and informing him of Capone's extortionary acts committed under the guise of the color of official right.

179. On August 9, 2018, R. Hadley forwarded the email to his daughter, L. Hadley, and upon receiving the email and EO#1, she traveled to the Westport Highway Department to retrieve her property, which she eventually found, broken, in pieces in the town dumpster.

180. On August 14, 2018, Defendant Conservation Commission knowingly and wrongfully held a Ratification Hearing and unanimously ratified EO#1 and Capone's trespass, and seizure and destruction of property, in furtherance of CSES and intentionally violating the Civil Rights Act, et al., by denying Plaintiffs/the Hadley's constitutional rights including but not limited to due process and equal protection guaranteed under the 4th and 14th amendment, et al. in furtherance of CSES.

181. Plaintiffs/the Hadley's were not notified of the August 14, 2018 Ratification Hearing.

182. On September 25, 2018, October 9, 2018, and October 23, 2018, L. Hadley, acting on behalf of herself and Plaintiff the Devol Pond Association ("DPA") attended Conservation Commission hearings requesting the Conservation Commission remove the (now vacated) EO#1.

183. Defendants knowingly and intentionally violated the Civil Rights Act by denying Plaintiffs/the Hadley's civil rights guaranteed under the United States Constitution.

184. As a condition for removing or otherwise setting aside EO#1, and as Plaintiffs/the Hadley's recently discovered in furtherance of CSES and CCREFS, Capone and co-conspirators including Joncas and other members of the Commission emailed and verbally demanded at meetings in August through October of 2018, that Plaintiffs/the Hadley's make monetary payments to Capone for 'Defendant Town' and 'the state' (referring to the Commonwealth of Massachusetts and DEP).

185. Plaintiffs/the Hadley's were compelled to make and did make these monetary payments to Defendants as a result of threats made by Defendants acting under the color of official right.

186. On October 8, 2018, L. Hadley and R. Hadley filed the initial Complaint in the Admin Appeal seeking certiorari review under G.L. 249 § 4, damages and attorneys fees for the tortious, unconstitutional actions of Capone, Conservation Chair and co-conspirator Joncas, and the Conservation Commission on August 8th and August 14th, 2018.

187. On October 23, 2018, after wrongfully forcing Plaintiffs/the Hadley's to part with their personal property/money, Defendant Commission through its members lifted

EO#1 and issued an (unnecessary) Order of Conditions to Plaintiff L. Hadley acting on behalf of the Devol Pond Association.

188. The Order of Conditions authorized Plaintiffs/the Hadley's and the Devol Pond Association to continue improving the water quality of their private pond.

182.

In November 2018, Plaintiffs served Defendants with a Complaint in Bristol County Superior Court no. 1873CV00907.

**The rackets continue in 2019 and increase in severity**

183. In the Spring of 2019, in reliance on knowingly false representations of material fact made by Capone, and wrongfully compelled to do so by Defendants threats of reprisal under the color of official right, paid $200 not owed to Defendants, seeking to obtain an extension for the Order of Conditions, which Defendants wrongfully required payment for in order to lift EO#1.

184. On May 28, 2019, L. Hadley, acting on behalf of herself and the Devol Pond Association attended a Conservation Commission hearing requesting an extension of the Order of Conditions wrongfully required by Defendant Commission, issued on October 23, 2018.

185. On May 28, 2019, Defendant Commission through its individual, members, intentionally denied Plaintiffs/the Hadley's civil rights guaranteed under the United States Constitution.

186. At the meeting on May 28, 2019, J. Powell (assistant chair for the Commission) noted, 'because of the lawsuit you filed . . ." that Defendants would wrongfully

require further monetary payments to a third party 'consultant' while acting under the guise of the color of official right.

187.Defendants knowingly retaliated against Plaintiffs/the Hadley's for seeking judicial relief in the Admin Appeal, and continued their extortionary and unconstitutional customs and practices by refusing to grant an extension of the unnecessary Order of Conditions unless monetary payments were made by the Devol Pond Association or Plaintiffs.

188.On May 28, 2019, the Commission through its individual members, acting under the color of official right, explained to Plaintiffs/the Hadley's that the only way the Commission would 'grant' an extension for the unnecessary Order of Conditions would be if the Hadley's/Plaintiffs or the Devol Pond Association made monetary payments in the form of a retainer fee and uncapped hourly fee to a consultant to 'oversee' the project.

189. In early June, 2019, L. Hadley attended a Watuppa Water Board meeting, and met with personnel from the neighboring City of Fall River Water Department; the City of Fall River and Watuppa Water Board generously offered to 'monitor' the remediation floats at no cost.

190. On June 25, 2019, the Commission refused to grant the Devol Pond Association an extension with City of Fall River Water Department 'oversight', and instead required as a condition for 'granting an extension' of the Order of Conditions the Devol Pond

Association[20] to pay "their guy" – Mr. Brandon Fanauf, owner of a single member LLC/environmental consultant located in Warwick, Rhode Island.

191. L. Hadley, acting on behalf of the Devol Pond Association, et al., appealed the decision to the DEP..

192. The DEP denied the appeal.

193. At the time, Plaintiffs/the Hadley's were unaware of their their ancient deed chains, which included 'water' as part of the property conveyances, nor were they aware of the unique jurisdictional issues caused by the changing MA/RI state line.

194. On July 9, 2019, Laura Hadley observed and documented a cyanobacteria bloom in Devol Pond and requested an emergency certification and approval pursuant to 310 CMR 10.06(5).

195. The Commission refused and Commission member J. Powell on behalf of the Commission and in furtherance of CSES used interstate wires to send an email on July 10, 2019 wrongfully demanding monetary payments to be made by Plaintiff the Devol Pond Association or Plaintiffs/the Hadley's to 'Ecosystem Solutions, LLC' the single member consulting company based in Warwick, RI.

196. L. Hadley, individually and on behalf of the Devol Pond Association, then cross-checked the language of the state statutes, and determined an Order of Conditions was not required.

[20] The Devol Pond Association is environmental non-profit, community group, with no funding, whose sole purpose for existing is protect the water and environment, located on and constituting Plaintiffs/the Hadley's private property--ie to do the job Capone, the Commission, Town, and State are failing to do...

197. L. Hadley temporarily placed ‘window boxes’ with holes cut in the sides containing the non-invasive, USDA white-listed plants on the shore of the pond, on and in Plaintiffs/the Hadley’s private property.

198. The cyanobacteria bloom quickly dissipated and the water quality improved.

199. At the time, the Hadley’s/Plaintiffs were unaware that they owned water rights and parts of the land and pond, and that Defendants had wrongfully prepared and recorded forged and fraudulent deed chains.

200. Plaintiffs/the Hadley’s were unaware that dozens of ‘parcels’ to land and water owned by Plaintiffs/the Hadley’s showed record title belonging to Defendants and that said ‘title chains’ were procured by forged deeds, false pretenses, fraud, and extortion.

201. In early August 2019, in furtherance of CCREFS, and CSES, Defendant and co-conspirator P. Wilkinson spoke with L. Hadley and threatened that L. Hadley, “had better stop with the float nonsense and leave Chris [Capone] alone, or I’ll kill you myself”.

202.On August 27, 2019, the Commission issued another Enforcement Order (“EO#2”) against ‘Laura Hadley, Devol Pond Association’.

203. L. Hadley and the Devol Pond Association removed the temporary window boxes because of the threat presented by the issuance of EO#2.

204. Plaintiffs/the Hadley’s temporary mitigation efforts using the EPA approved best management practice using *chrysopogan zizaniodes*—a non-invasive plant ‘white listed’ by the USDA as safe and effective for phytoremediation--and removed approximately 30 grams of phosphorus and approximately 90 grams of nitrogen

dissolved in the water column, mitigating the toxic cyanobacteria bloom which threatened the health and safety of Plaintiffs/the Hadley's and their family (including children and pets).

205. The Commission lifted EO#2 shortly thereafter.

206. John Doe Commission member affirmed the ongoing racket CSES and ongoing scheme to deny Plaintiffs/the Hadley's civil rights during a Conservation Commission Meeting in late 2019 by stating something to the effect of, 'there is always next year'.

**The Pattern of Racketeering Continues in 2020 and Plaintiffs/the Hadley's begin to discover the real estate and water fraud and extortion schemes.**

207. On July 12, 2020, Judge McGuire of the Bristol County Superior Court of Massachusetts issued three Orders, which were upheld by Justice Handlin of the Massachusetts Appeals Court in September of 2020.

208. Order 25, held Defendant Town and Defendant Commission liable to Plaintiffs R. Hadley and L. Hadley for civil rights violations and awarded attorney's fees in the amount of $73,955 in accordance with 42 U.S.C. §§ 1983 and 1988.

209. Order 25 also held Capone personally liable for conversion, noted the unique jurisdiction of the Watuppa Ponds and surrounding lands and held the temporary phytoremediation floats improving water quality did not constitute an activity under 310 CMR 10.00, et seq., and as such did not require an Order of Conditions.

210. In late July 2020, L. Hadley temporarily floated the sterile, phytoremediation floats with non-invasive USDA 'white-listed' plants affixed thereto in their private pond, and again toxic cyanobacteria blooms dissipated and water quality improved.

211. In the fall of 2020, L. Hadley removed the temporary floats and measured the biomass growth delta to determine the amount of nutrients removed from the pond, which was approximately 180 grams of nitrogen and approximately 60 grams of phosphorus.

212. In late 2020 and continuing to the Spring of 2021, Plaintiffs/the Hadley's began a comprehensive title review, working in concentric circles outward.

213. The Hadley's/Plaintiffs are still discovering the full extent of the forged deeds, conveyances procured by false pretenses, and other fraudulent deed chains for land and water owned by Plaintiffs/the Hadley's, and damages caused thereby, and require preliminary discovery in this case and the ability to amend this Complaint, because Defendants are in exclusive control and possession of most documents including but not limited to Massachusetts Ch. 61 program applications and signoffs, and financial information.

**2021**

214. In early 2021, the Hadley's/Plaintiffs began to first discover the fraud , that Defendants including Capone, H. McGovern, P. Wilkinson, M.L. Quigley, B. Tripp, K. T. Martin, P. Joncas, M. Perry, M. Ferry, B.&T. Palmer, New Bedford Registry John Does, and other John Does (to be added following requisite initial discovery) are and have prepared and recorded forged deeds for land and water on MA and RI, obtained conveyances by false pretenses, and are actively facilitating fraudulent real estate conveyances in furtherance of CSES and CCREFS, seeking to obtain title to land based on false statements, knowingly made, intended to induce reliance, did induce reliance and continue to cause damage.

215. The full extent of these forged and fraudulent conveyances and recordings are still being uncovered and Plaintiffs require discovery to determine the full extent thereof, involvement by specific co-conspirators and members of these rackets, and the damages resulting therefrom.

216. In January 2021, Plaintiffs R. Hadley and L. Hadley filed a motion in the Admin Appeal indicating that Plaintiffs/the Hadley's conducted a title search.

217. One week later, on February 2, 2021, K. T. Martin, purporting to act as Plaintiffs/the Hadley's real estate broker, and in breech of her fiduciary duties, used interstate wires to notify Plaintiffs/the Hadley's and others of an 'offer' to buy some of Plaintiffs/the Hadley's land on behalf of "Dream Homes LLC".

218. In Section 9 of the 'offer', K. T. Martin notes, "The Selling broker has an ownership interest in Dream Homes LLC".

219. In February of 2021, K.T. Martin used interstate wires to call R. Hadley and offered to pay him $5,000 in cash if he immediately accepted the 'offer' by Dream Homes LLC, then acting on behalf of his father Frank B. Hadley.

220. In April 2021, P. Wilkinson through an attorney sent Plaintiffs/the Hadley's a letter threatening partition of 'the property', title to which was obtained by forgery, false pretenses, and/or fraud.

221. When contacted by counsel for Plaintiffs/the Hadley's, the attorney had withdrawn from representation.

222. In early August 2021, K. T. Martin began destroying trees and migratory bird habitat, and clearing/destroying wetlands located on Plaintiffs/the Hadley's property, located in MA and RI.

223. In the fall of 2021, one of L. Hadley's floats was found smashed on Plaintiffs/the Hadley's property.

224. Between August 13th and August 18th, 2021, two 'game camara's' belonging to Plaintiffs/the Hadley's, monitoring the floats 'disappeared' or were stolen.

225. In the fall of 2021, more than 15 trees on Plaintiffs/the Hadley's property were cut down, and/or 'tagged' for 'removal'.

226. Capone was observed on several occasions in 2021 chopping down trees located on Plaintiffs/the Hadley's property, and in furtherance of the CCREFS and CSES.

227. The trees were located on a portion of Plaintiffs/the Hadley's Property which is designated as habitat for the Canadian Sanicle, which is on the MA endangered species list.

228. In the fall of 2021, counsel for Plaintiffs/the Hadley's issued a cease and desist to P. Wilkinson and M. L. Quigley directing Defendants and their progeny to stop destroying trees and endangered species habitat located on Plaintiffs/the Hadley's property, and cease and desist from entering the Property.

229. In late November of 2021, Plaintiffs/the Hadley's put a combination lock on the gate (which has been locked throughout the winters for at least 68 years) to prevent trespass and protect the property including the water, ecosystem, and migratory bird habitat.

230. L. Hadley spoke with and provided the combination to the lock to D. Diaz.

231. D. Diaz currently resides at 1D Narrow Ave, though the size and ownership of the parcel are in question.

232.Approximately one hour later, cameras observed P. Wilkinson, D. Diaz and others, now known to be co-conspirators congregating on Plaintiffs/the Hadley's Property.

233. Shortly thereafter, the lock and chain on the gate to part of Plaintiffs/the Hadley's property 'disappeared' or was stolen.

234. At some point thereafter, upon information and belief, approximately one month later, a large, historic rock and property bounds marker was moved from the intersection of 'the Old County Road', currently referred to as '177' and what is currently referred Sodom Road, roughly two miles south onto Plaintiffs/the Hadley's Property, and moved and installed guardrails on the portion of what is now referred to as Sodom Road at the end of 'the Lane'.

235. Plaintiffs/the Hadley's recently realized that the historic rock was moved by John Doe CCREFS and CSES co-conspirators in furtherance of the two ongoing rackets CSES and CCREFS, and is currently located on the Property.

**The rackets continue in 2022: increasing threats of violence**

236. On April 10, 2022, Plaintiff L. Hadley and Jane Doe were in the Lane putting up a camara.

237. Capone was exiting the Lane in his vehicle and drove past muttering obscenities.

238. When Capone's vehicle was along side the Hadley's/Plaintiffs vehicle, Capone accelerated quickly in a threatening manner spraying rocks and mud.

239. L. Hadley jumped behind the vehicle to avoid being hit by Capone's vehicle and the flying debris sprayed as a result of Capone's rapid acceleration in speed.

240. Jane Doe immediately responded 'we cannot bring kids down here, that guy is nuts, you shouldn't even bring your dog here, he's totally unhinged [referring to Capone]...'

241. In May 2022, Plaintiffs/the Hadley's were informed that a Notice of Intent was filed by K. T. Martin for 'environmental remediation' on property recently discovered to be owned by Plaintiffs/the Hadley's.

242. On June 7, 2022, Capone recommended for approval, and CCREFS and CSES co-conspirators Joncas, J. Powell, J. McGuigan, and T. Merchant voted to approve an Order of Conditions, in furtherance of CCREFS and CSES.

243. Defendants, including Capone, K.T. Martin, and D. Martin knew the 'title' to property in question is based on forged deed chains, and that the 'parcel' in question is owned by Plaintiffs/the Hadley's.

244. Capone recommended for approval the NOI while acting under the color of official right in furtherance of the common goal to wrongfully obtain property for co-conspirators, K.T. Martin and others, from Plaintiffs/the Hadley's including but not limited to trees and other critical habitat.

245. Defendants including but not limited to K.T. Martin, B. Tripp, Capone, and others began and continue with increasing veracity to cut down trees and destroy critical habitat on land they are attempting to obtain an interest in property via forged deeds, false pretenses, and/or fraud, in furtherance of CCREFS and CSES.

246. B. Tripp, K.T. Martin, Capone, M. Perry, M. Ferry, A. Ferreira, B.&T. Palmer, and John Does continue to destroy trees and habitat located on Plaintiffs/the Hadley's property and is in furtherance of CCREFS and CSES.

247. C. Capone and P. Joncas, and John Does (to be uncovered during discovery) continue to act under the color of law, to wrongfully authorize the destruction of property, and to extort money, water rights, and other real and personal property for themselves, members of Capone's 'family', and Defendants, including John Doe co-conspirators.

248. Upon information and belief, the Town of Westport is disregarding Plaintiffs/the Hadley's property rights and attempting to take water rights and likely an easement under the guise of the color of official right, by misusing the Admin Appeal, and by misusing tax dollars in furtherance of CCREFS and CSES.

249. C. Capone and other co-conspirators of CSES and CCREFS continue to occupy and destroy Plaintiffs/the Hadley's property.

250. On May 27, 2022, during business hours of the Conservation Commission, Capone was observed and photographed on the Hadley's/Plaintiffs property wielding a chainsaw and destroying trees and critical habitat (including habitat of the endangered Canadian sanical).

251. On May 31, 2022, L. Hadley and another member of the Hadley family were sitting on their private dock, on their private pond.

252. Capone approached the edge of the shore and began screaming at the Hadley's/Plaintiffs demanding they move their vehicle (which was parked on the Hadley's/Plaintiffs private property).

253. Capone threatened the Hadley's/Plaintiffs verbally irately exclaiming something to the effect that he would 'play games', and noting that 'to start' the Hadley's/Plaintiffs should 'just try to get out'.

254. Capone then moved his vehicle attempting to block the Hadley's/Plaintiffs car so they would not be able to escape, then went behind a cottage and began making oud banging noises.

255. The Hadley's/ Plaintiffs did not engage verbally or otherwise, and instead called the police/911 to make them aware of the situation and request assistance in case Capone's violence and threats escalated further or they were unable to move their vehicle.

256. A friend of Plaintiffs/the Hadley's arrived and L. Hadley explained the situation.

257. Jane Doe member of the Hadley family was shaking with fear so the Hadley's/Plaintiffs attempted to leave, which they were able to do, and made sure to have their friend follow in case Capone committed further acts of violence or threats.

258. On July 13, 2022, again during normal business hours of the Conservation Commission, Capone was observed wielding a chainsaw and further destroying trees and critical habitat for endangered species and migratory birds located on the Hadley's/Plaintiffs property, in violation of the migratory bird treaty act, et al.

259. On July 16, 2022, at approximately 3:30 PM, the Hadley's/Plaintiffs were sitting on the porch of one of their cottages.

260. Capone and co-conspirator D. Lafarrier were destroying trees and other critical habitat on the Hadley's/Plaintiffs property on the shore of their private pond and Capone exclaimed loudly [referring to the Hadley's] 'they want privacy, I'll give them privacy'.

261.D. Laffarier then loudly responded 'they need to have their f***ing legs broken' [referring to the Hadley's/Plaintiffs].

262. On July 22, 2022, L. Hadley was bringing things from her car into one of the Hadley's/Plaintiffs cottages when Capone drove up on a 'fourwheeler' and began making verbal threats saying something to the effect of 'you will get what is coming to you, and so will he'[referring to Plaintiffs/the Hadley's dog].

**Late 2022—severity and pervasiveness of rackets come to light further—Capone and co-conspirators continue patterns of racketeering including forging documents, attempting to wrongfully obtained property rights by false pretense and authorization of same while acting under the color of official right.**

263. Beginning in 2021 and continuing to date, and likely in perpetuity absent judicial intervention and relief, Plaintiffs/the Hadley's discovered the ongoing pattern of CCREFS co-conspirators 'cross-conveying' and recording parcels to land and water which Defendants knew they did not and do not own, then purporting to 'convey' parcels to other CCREFS co-conspirators.

264. Upon information and belief, Defendant John Doe co-conspirator at the New Bedford Registry of Deeds did knowingly and intentionally record forged conveyances in furtherance of CCREFS.

265. The following are deeds Plaintiffs/the Hadley's recently realized are forgeries, are located in RI not Westport, MA, or were otherwise obtained by false pretenses and recorded, and as such are void ab initio:

a. 9551/234-5

b. 11109/7-10

c. 11053/81-2

d. 11053/84-86

e. 12034/346-47

f. 6066/7-9

g. 11893/207-09

h. 9073+/345-46

i. 9717/148-49

j. 9717/144-45

k. 1721/343

l. 8489/218

m. 12779/341-42

n. 12648/297

o. 1798/229

p. 2709/254-55

q. 11176/103-04

r. 2507/113-114345

s. 1941/350

t. 3802/135

u. 4735/253

v. 5288/151

w. 6010/334

x. 7541/161

y. 9073/345

z. 9717/144

aa. 9717/148

bb. 11893/207

cc. 1780/185 and Tiverton Land Records book 00143, page 290, et seq.

dd. Bristol County Probate book 1964, page 0782 and Tiverton Registry book 225, page 321, et seq.

ee. 1737/887

**Abuse of process of Administrative Appeal**

266. Plaintiffs/the Hadley's filed the Admin Appeal Complaint on October 10, 2018, seeking review in the nature of certiorari pursuant to G.L. 249 § 4 focused solely on Defendants actions between August 8, 2018 through August 14, 2018.

267. Actions brought under G.L. 249 § 4 whether joined with any other claims are governed under Superior Court Standing Order 1-96, which requires expedited review as a matter of law based on a limited Administrative Record.

268. Defendants filed an Answer on November 26, 2018.

269. On February 12, 2019, Defendants filed and served an Administrative Record which did not contain transcripts of the August 14, 2018 Ratification Hearing or notice required by Standing Order 1-96.

270. Plaintiffs filed a motion to correct the Administrative Record to include transcripts of the Ratification Hearing on August 14, 2018.

271.On April 23, 2019, parties filed cross Motions for Judgment on the Pleadings as required by Standing Order 1-96.

272. Defendant Town, Conservation Commission, Joncas, Capone, and John Doe Selectmen co-conspirators are attempting to improperly expand the scope of the proceedings for the ulterior purpose of re-opening settled caselaw of the Watuppa cases regarding water rights.

273. Defendants are also misusing the Admin Appeal for the ulterior purpose of seeking to treat the limited Admin Appeal as 'quiet title' action for Defendant Capone individually, and his family members and co-conspirators in furtherance of CSES and CCREFS, and to 'defend' taking of road/land in RI.

274. In briefs in preparation for, and at a summary judgment hearing on March 9, 2023, Defendants represented to the Bristol County Superior Court that Capone 'owned the cottages known as "1J or 1K Narrow Ave."

275. Neither Defendant Capone nor any of his co-conspirators Defendants and John Does have any valid right, title or interest in the Property.

276. The Property, owned by Plaintiffs/the Hadley's, was not properly subdivided and 'subdivision' previously relied on by Plaintiffs/the Hadley's were obtained by forgery, false pretenses, fraud and/or mistake.

277. The 'right, title, or interest' currently claimed by Capone and his co-conspirators derives from forged cross-conveyances, prepared by Capone, his family members and co-conspirators in CSES and CCREFS and a subdivision plan prepared by Capone and his co-conspirators as part of and in furtherance of CSES and CCREFS.

278. Standing Order 1-96 requires review as a matter of law confined to facts contained in a limited Administrative Record.

279. To date, Defendants Town of Westport, Conservation Commission, Joncas, and Capone, through their attorneys, have conducted extensive discovery, including four depositions of Plaintiffs, document production and interrogatories.

280. Defendant Town, Commission, Capone, and Joncas did not respond to any of Plaintiffs discovery requests, deposition notices, requests for production of documents, or interrogatories.

281. The matter is still pending in Bristol County Superior Court.

**The Hadley's/Plaintiffs begin to discover all of the fraud, and begin to realize the existence of and extent of the rackets and that individuals at DEP, DCR, et al. are acting in furtherance thereof.**

282. In late October 2022, Plaintiffs/the Hadley's learned Capone and Joncas are also employees of MA Department of Conservation and Recreation.

283. As employees/foresters for DCR, Capone and Joncas could individually serve as a single point of contacts and approval for 'chapter 61 liens and encumbrances'.

284. Upon information and belief, Capone and Joncas have approved, are approving, and will continue to approve ch. 61 liens and exercises of rights of first refusal in furtherance of CSES and CCREFS, including extorting land owned by Plaintiffs/the Hadley's and likely others.

285. In November 2022, Plaintiffs/the Hadley's learned Defendant Town, and other John Doe co-conspirators, upon information and belief under the management of Joncas and Capone, and in furtherance of CSES and CCREFS, are attempting to 'identify' properties in the chapter 61 program to 'conserve' using money from the federal infrastructure bill and other tax payer funds.

286. The full extent of forged deeds and conveyances obtained by false pretenses, including chapter 61 liens, are still being discovered and require further discovery.

287. Upon information and belief, several of the 'parcels' with chapter 61 liens are located partly, if not entirely, in RI.

288. Upon information and belief, Capone and Joncas prepared, assisted in preparation of, and/or otherwise recommended or voted to approve ch. 61 liens for properties they and co-conspirators knew to be owned by Plaintiffs/the Hadley's.

289. Upon information and belief, Capone, Joncas, and other co-conspirators intentionally made false representations of material fact or otherwise intentionally omitted material facts in furtherance of CSES and CCREFS.

290. Plaintiffs/the Hadley's require immediate intervention from this Honorable Court to prevent Defendant Town, CSES co-conspirators, and other John Does from extorting real and personal property in furtherance of the rackets, and to prevent the Commonwealth of Massachusetts from annexing parts of Rhode Island, including waters contained therein, thereunder, and flowing thereto.

291. In November 2022, Parties in the Admin Appeal filed cross-motions for summary judgment 'following the close of discovery'.

292. Plaintiffs/the Hadley's realized in late 2022 and continue to realize that Defendant Town, Capone, Joncas, Conservation Commission, John Doe Westport Select Board members, and John Doe co-conspirators are attempting to abuse the process of the Admin Appeal (which was supposed to focus solely on the extortionary, unconstitutional actions through the August 14th, 2018 Ratification Hearing), for the improper purpose of attempting to 're-open' well settled doctrine regarding water ownership, to wrongfully obtain land, water, and other property from Plaintiffs/the Hadley's, and many, many others, including but not limited to the State of Rhode Island, Watuppa Water Board and City of Fall River Water Department, Jane Doe property owners with ancient deed chains, et al. purporting to act under the guise of

the color of official right and by threats in furtherance of the overlapping, ongoing rackets CSES, and CCREFS.

293. To date, Plaintiffs/the Hadley's have been forced to incur, with interest, over $700,000 in attorneys fees and costs attempting to uphold basic constitutional rights in what was and is supposed to be a limited Admin Appeal.

294. Attorney's fees and costs for defense counsel in the Admin Appeal, are being paid for by municipal liability insurance—the cost of which is directly borne by tax-payers, including Plaintiffs/the Hadley's.

295. Defendants are attempting to abuse the Admin Appeal, ignore the law of the case doctrine and to reopen Defendants clear liability for civil rights violations under 42 U.S.C. §§ 1983 and 1988, and Capone's trespass and conversion—illegal search and seizure, without providing Plaintiffs/the Hadley's any notice or the opportunity to be heard in furtherance of CCREFS and CSES.

296. Upon information and belief, Defendant Town and CSES and CCREFS co-conspirators are also attempting to abuse the process of the Admin Appeal to delay Plaintiffs/the Hadley's from resolving the recently discovered extortion and fraudulent 'procurement' of real and personal property interests, including the extensive number of forged deeds for land recently discovered to be owned by Plaintiffs/the Hadley's, based on their many valid deed chains from 1652 to the present, which as recently discovered, also includes water rights (along with many others people, parties, and municipalities).

297. Upon information and belief, John Doe Westport Select Board Members are conspiring with Capone, Joncas, Town of Westport and other John Doe co-

conspirators are currently misusing insurance liability defense funding paid for by taxpayers in the Town of Westport, including Plaintiffs/the Hadley's, in the form of monies paid for deductibles, and skyrocketing premiums resulting from changes to the loss/claims ratio--which directly determine the cost of insurance premiums to abuse the Admin Appeal in furtherance of CCREFS and CSES, for their own personal gain and that of their co-conspirators.

298. Plaintiffs/the Hadley's fear for their safety, and the safety of their family as a result of the many, and increasingly severe threats of violence and harm under the color of official right and pray this Honorable Court for relief accordingly.

## V. CLAIMS FOR RELIEF

### 1. COUNT I The Hobbs Act 18 U.S.C. § 1951

299. The allegations of paragraphs 1 through 299 are incorporated herein by reference.

300. This Count is against Defendant(s) Capone, Joncas, P. Wilkinson, K.T. Martin, D. Martin, B. Tripp, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, Town of Westport, Westport Conservation Commission, MA DEP John Doe Personnel, MA DCR John Doe personnel, J. Straub, M. Bartow, and John Doe, co-conspirators in CCREFS and CSES, to be identified during discovery (the "Count I Defendant(s)").

301. Count I Defendants did knowingly and intentionally induce, attempted to induce, and continue to attempt to induce the Hadley's/Plaintiffs to part with their property including but not limited to real and personal property, including water rights, money, et al.

302. Count I Defendants initially did so with the Hadley's/Plaintiffs consent, but this consent was compelled by the wrongful use or threat of force, violence or fear, and purporting to act under the color of official right.

303. Count I Defendants initially did so by intentionally making false representations of material facts and otherwise intentional omissions of material facts upon which the Hadley's/Plaintiffs reasonably relied.

304. Count I Defendants used and continue to use threat of violence and the power of public office of the Town, Conservation Commission, John Doe DCR and DEP personnel to procure the payments of money, release/relinquishment of water rights and seizure of property not owed to Count I Defendants including but not limited to Capone, Joncas, the Conservation Commission, Town of Westport, or any other public or private official or their office, or any third party consultant, John Doe co-conspirators, et al.

305. For example, Capone took from Plaintiffs/the Hadley's and continues to wrongfully take trees, timber, phytoremediation floats, and other property from land he does not own described more fully herein using threats of violence and under the color of official right.

306. Capone and other Count I Defendants did so and continue to do so knowingly and willfully by extortion, purporting to act under the color of official right and by threats of violence, intimidation, and fear as further set forth herein.

307. Count I Defendants, and John Does took from the Hadley's/Plaintiffs and continues to wrongfully take title to land and encumbrances (via mail and wire fraud), trees,

timber, phytoremediation floats, money and other property described herein acting individually, and using threats of violence, and under the color of official right.

308.Interstate commerce or an item moving in interstate commerce and property located in MA and RI was delayed, obstructed or affected; and

309.At all times Count I Defendants acted knowingly and willfully.

310.As a result of Count I Defendants' actions and the actions of their co-conspirators, interstate commerce, including lumber and other real and personal property located on Plaintiffs/the Hadley's real property also located on the state line in both Massachusetts and Rhode Island, was obstructed, delayed, or affected.

311.WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as further described herein.

**2. COUNT II The Hobbs Act 18 U.S.C. § 1951**

312. The allegations of paragraphs 1 through 313 are incorporated herein by reference.

313. This Count is against Defendant(s) in furthering the CSES: Joncas, Capone, J. Straub, M. Bartow, K.T. Martin, D. Martin, P. Wilkinson, M. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, Westport Conservation Commission, Town of Westport, John Doe Selectmen, and other coconspirator John Does (the "Count II Defendant(s)").

314. Count II Defendants induced and attempt to continue to induce Plaintiffs/the Hadley's to consent to part with real and personal property, including money, land, and water rights.

315. Regarding access to and 'title' of water, the Lane, land, and money paid to the Commission and MA DEP, this consent was obtained by Count II Defendants from

Plaintiffs/the Hadley's until initially discovered in early 2021, by the wrongful use of threat and force, mail and wire fraud, and acting under the color of official right.

316. Count II Defendants did and will continue to prevent or otherwise impede Plaintiffs/the Hadley's enjoyment of, control and protection of their money, land and others real property and personal property including water (quality and quantity), impeding Plaintiffs/the Hadley's efforts to maintain and improve the quality of their property, and further attempting to misuse the power of official right whilst wrongfully preempting and otherwise frustrating the objectives of the Clean Water Act, the Hobbs Act, the Migratory Bird Treaty Act, RICO, et al.

317. Count II Defendants acted intentionally and knowingly.

318. Count II Defendants know and intentional actions are affecting real and personal property located in MA and RI.

319. Count II Defendants continue to attempt to induce Plaintiffs/the Hadley's and other Jane Doe property owners to part with their property rights, and seek to misuse the Admin Appeal whilst purporting to act under the color of official right to wrongfully obtain by extortion property interests in the Lane, boat ramp, pond, docks, waters, structures, and other real and personal property.

320. Specifically, Count II Defendants sent emails and other communications used in furtherance of the extortion schemes CSES and CCREFS, including but not limited to: Capone email on September 23, 2018; Capone email on October 2, 2018 regarding monetary payment demands; Capone's email on October 9, 2018; Capone's email on May 14, 2019; Capone's email July 10, 2019; J. Powell's email July 10, 2019 regarding monetary payment demands to third party consultant in RI;

Capone's email August 8, 2019; Conservation Commission Enforcement Order #2 mailed on or around August 27, 2019 and further communications to be uncovered and revealed when discovery opens in this case.

321. As a result of Count II Defendants actions and the actions of their co-conspirators, interstate commerce, including real and personal property located on the state line in both Massachusetts and Rhode Island, was obstructed, delayed, or affected.

322. As a result of Count II Defendants ongoing extortionary acts, in furtherance of CSES, Plaintiffs/the Hadley's, and likely others, suffered and continue to suffer damages, and increasingly extreme threats and demands.

323. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendant(s) as further described herein.

### 3. Count III: Violation of the Hobbs Act 18 U.S.C. § 1951

324. Plaintiff incorporates by reference and realleges paragraphs 1 through 325 set forth above.

325. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Town of Westport, Conservation Commission, MA DEP John Doe personnel, MA DCR John Doe personnel, and John Doe, co-conspirators in CCREFS and CSES, (the "Count III Defendant(s)").

326. Count III Defendants took and continue attempting to take from the Hadley's/Plaintiffs money, phytoremediation floats, clean water, other water rights, and other real property interests.

327. Count III Defendants continue attempting to wrongfully obtain via mail and wire fraud, extortion, and by abusing the Admin Appeal to wrongfully induce Plaintiffs to part with property rights and interests in the Lane, boat ramp, pond, and/or water, other real property including but not limited to, a 'dock' Capone is attempting to extort for himself and his family and other co-conspirator John Does, and otherwise attempting to wrongfully induce Plaintiffs/the Hadley's to part with the exclusive, unencumbered ownership of the real and personal property interests of Plaintiffs/the Hadley's and likely other Jane Doe property owners, for real and personal property including but not limited to the Lane, land, waters, and forests owned by the Hadley's/Plaintiffs and possibly other Jane Doe property owners, by threats of violence, under the color of official right, et al.

328. Count III Defendants did so and continue to do so knowingly and willfully by extortion under threat of violence and/or color of official right.

329. As a result of Count III Defendants, interstate commerce, including real and personal property located in MA and RI was obstructed, delayed, or affected.

330. Plaintiffs/the Hadley's have and continue to suffer damage as a result of these racketeering acts;

331. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count III Defendant(s) as further described herein.

**4. Count IV Mail Fraud Violations of 18 U.S.C. § 1341**

332. Plaintiffs incorporates by reference and realleges paragraphs 1 through 333 set forth above.

333. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, D. Diaz, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Town of Westport, Conservation Commission, MA DEP John Doe personnel, MA DCR John doe personnel, and John Doe, co-conspirators in CCREFS (the "Count IV Defendant(s)").

334. Count IV Defendants have devised or intended to devise schemes and artifices to defraud Plaintiffs/the Hadley's, and to obtain money and property by means of false or fraudulent pretenses, false representations, forgery, et al.

335. Count IV Defendants used mail and postal services in furtherance of the fraudulent schemes including but not limited to CSES and CCREFS, as particularly described herein.

336. The CCREFS Enterprise/association-in-fact is engaged in and affected interstate commerce by way of said mail fraud.

337. The mail transmissions described herein were made in furtherance of Count IV Defendants' scheme and common course of conduct.

338. To achieve their common goals, Count IV Defendants knowingly and willfully made false representations of material fact, forged and recorded documents, and/or otherwise concealed from Plaintiffs/the Hadley's, and upon information and belief Wspt Assessors Office, the Massachusetts State Courts/Bristol County Superior Court and others the unlawfulness of CSES and CCREFS's conduct and the Hadley's/Plaintiffs rightful title and interest in the real property which was

committed at the instruction of, and through the directions of C. Capone, P. Joncas, P. Wilkinson, K.T. Martin, D. Martin, B. Tripp, M. Quigley, B. Tripp, John Does, and likely others.

339. For example, Count IV Defendants knowingly forged, obtained by false pretenses, and/or fraud, and recorded the deeds found at book and page numbers described herein, upon information and belief, using interstate mail, with the intent to defraud and wrongfully obtain ‘title’ to ‘parcels’ described including but not limited to:

340. P. Wilkinson preparing or causing to be prepared and recording Bristol County Registry of Deeds book 6659, page 202; book 11053, page 81, et seq.; book 11109, page 3; book 4808, page 334; book 9551, page 234; book 12399, page 104; book 12403, page 98; book 11109, page 3, 7 ; book 1663, page 23; book 9156, page 68-69; book 8800, page 264-266, et al.

341. M.L. Quigley preparing or causing to be prepared and recording Bristol County Registry of Deeds book 4808, page 334; book 9551, page 234; book 12399, page 104; book 12403, page 98; book 6659, page 202; book 11053, page 81 and 84; book 11109, page 7; book 1663, page 23; book 9156, page 68-69; book 8800, page 264-266, et al.

342. K. T. Martin and D. Martin, preparing or causing to be prepared and recording Bristol County Registry of Deeds

343. B. Tripp, G. Tripp, A&D Potter preparing or causing to be prepared and recording, including but not limited to ‘parcels’ found at Bristol County Southern District Registry of Deeds book 6066, page 7-9; book 11893, page 207-209; book 9073+, page 34, et seq.; book 9717, page 148-149; book 9717, page 144-145; book 8489,

page218, book 3395, page 97; book 3631, page 20; book 3802, page 135; plan book 136, page 78; book 5757, page 7-9; book 7541, page 161; book 9073, page 345, book 12779, page 341-42, book 2709, page 254-55, book 12648, page 297, book 11893, page 207-09.

344. H. McGovern, E. Ferreira, A. Ferreira, B&T Palmer preparing or causing to be prepared and recording, including but not limited to 'parcels' found at Bristol County Southern District Registry of Deeds book 10633, page 122, et seq., book 10767, page 114, book 1964, page 782, et seq., 12648/297, 1798/229, 2709/254-55.

345. M.&E. Perry, M. & C. Ferry preparing or causing to be prepared and recording, including but not limited to 'parcels' found at Bristol County Southern District Registry of Deeds book 4486, page 290, book 11176, page 109-10, book 2507, page 113-14, et al.

346. To achieve their common goals, Defendants knowingly and willfully concealed from Plaintiffs/the Hadley's, the public, the Bristol County Superior Court, and others the unlawfulness of CCREFS' and CSES's co-conspirators conduct, and the Hadley's/Plaintiffs rightful title and interest in the real property, which was committed at the instruction of, and through the directions of co-conspirators C. Capone, P. Joncas, L. Farias, P. Wilkinson, K.T. Martin, B. Tripp, M. Quigley, B. Tripp, John Does, and likely others.

347. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer damages to their property interests.

348. Because of Defendants' violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

349. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count IV Defendant(s) as further described herein.

**5. COUNT V: Mail Fraud**

350.Plaintiffs incorporates by reference and realleges paragraphs 1 through 351 set forth above.

351. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Town of Westport, Conservation Commission, MA DEP, MA DCR, and John Doe, co-conspirators in CCREFS (the "Count V Defendant(s)").

352. Count V Defendants have devised or intended to devise schemes and artifices to defraud Plaintiffs/the Hadley's, and for obtaining money or property by means of false or fraudulent pretenses, forgery, and knowingly false representations or omissions, et al.

353. Count V Defendants used mail and postal services in furtherance of the fraudulent schemes including but not limited to CSES and CCREFS.

354. The CCREFS Enterprise/association-in-fact is engaged in and affected interstate commerce by way of said mail fraud.

355. The mail transmissions described herein were made in furtherance of Count V Defendants' scheme and common course of conduct.

356. To achieve their common goals, Count V Defendants knowingly and willfully.

357. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer damages to their property interests.

358. Because of Defendants' violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

359. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count V Defendant(s) as further described herein.

### 6. COUNT VI: Violation of 18 U.S.C. § 1343, Wire Fraud

360. Plaintiffs incorporates by reference and realleges paragraphs 1 through 362 set forth above.

361. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, D. Diaz, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Town of Westport, Conservation Commission, MA DEP, MA DCR, and John Doe, co-conspirators in CCREFS (the "Count VI Defendant(s)").

362. The Count VI Defendants voluntarily and intentionally devised or participated in a scheme to defraud another out of money;

363. The Count VI Defendants did so with the intent to defraud.

364. It was reasonably foreseeable that interstate wire communications would be used;

365. Interstate wire communications were in fact used, as stated particularly herein.

366. To achieve their common goals, Count VI Defendants knowingly and willfully.

367. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer damages to their property interests.

368. Because of Defendants' violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

369. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count VI Defendant(s) as further described herein.

7. **COUNT VII: Violation of 18 U.S.C. § 1343, Wire Fraud**

370. Plaintiffs incorporates by reference and realleges paragraphs 1 through 371 set forth above.

371. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, D. Diaz, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Town of Westport, Conservation Commission, MA DEP, MA DCR, and John Doe, co-conspirators in CSES (the "Count VII Defendant(s)").

372. The Count VII Defendants voluntarily and intentionally devised or participated in a scheme to defraud another out of money;

373. The Count VII Defendants did so with the intent to defraud.

374. It was reasonably foreseeable that interstate wire communications would be used;

375. Interstate wire communications were in fact used, as stated particularly herein.

376. To achieve their common goals, Count VII Defendants knowingly and willfully.

377. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer damages to their property interests.

378. Because of Defendants' violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

379. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count VII Defendant(s) as further described herein.

8. **COUNT VIII: Violation of 18 U.S.C. § 1962(a)**

382. Plaintiff incorporates by reference and realleges paragraphs 1 through 372.

383. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, D. Diaz, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Westport Conservation Commission, MA DEP, MA DCR, and John Doe, co-conspirators in CCREFS and CSES, (the "Count VIII Defendant(s)"). set 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the

establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

384. As alleged herein, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

385. As alleged in the preceding section, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

386. At all times relevant hereto, beginning on or around 1976, and continuing to date, and which will continue in the future absent judicial relief and intervention, Count VIII Defendants received income derived from a pattern of racketeering activity and used or invested a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

387. As alleged in the preceding section, on or before January 6, 2000, Defendants formed the CCREFS Enterprise to effectuate Defendants' pattern of racketeering activity, real estate fraud, extortion, mail fraud, wire fraud, et al.

388. All Count VIII Defendants agreed to and did use income received directly from a pattern of racketeering activity to control, establish and operate the CCREFS Enterprise, which was engaged in and affected interstate commerce, including mail and wire fraud, and extortion as defined by 18 U.S.C. § 1341, 18 U.S.C. §1343, 18 U.S.C. § 1951, et al., and for the unlawful purpose of intentionally defrauding the Hadley's/Plaintiffs, to obtain money, real and personal property interests to which they are not entitled.

389. The mail fraud, wire fraud, and extortion committed by Count VIII Defendants is set forth herein and is incorporated by reference.

390. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $1,200,000; said damages to be proven at the time of trial.

391. Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

392. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count VIII Defendant(s) as further described herein.

**9. COUNT IX: Violation of 18 U.S.C. § 1962(d)**

393. Plaintiff incorporates by reference and realleges paragraphs 1 through 392.

394. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, R. Swicker, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Westport Conservation Commission, MA DEP, MA DCR, John Doe Registrar personnel, John Doe Selectmen, and John Doe, co-conspirators in CCREFS and CSES, (the "Count IX Defendant(s)").

395. As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

373. At all relevant times, beginning in approximately 1976, with increasing severity in or around June 1, 2001 following the death of Elmer Wilkinson and Harold Hadley, and continuing to date, the Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d);

374. The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

375. Count IX Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud, extortion, mail fraud, preparing and recording forged deeds, et al.).

376. Defendants have knowingly, willfully and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (wire fraud) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

377. Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

378. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

379. As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $1,200,000 said damages to be proven at the time of trial.

380. Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

381. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count IX Defendant(s) as further described herein.

**10. COUNT X RICO § 1962(b)**

382. The allegations of paragraphs 1 through 380 are incorporated herein by reference.

383. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, R. Swicker, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Westport Conservation Commission, MA DEP, MA DCR, John Doe Registrar personnel, John Doe Selectmen, and John Doe, co-conspirators in CCREFS and CSES (the "Count X Defendant(s)").

384. CCREFS and CSES are enterprises engaged in and whose activities affect interstate commerce.

385. The Count X Defendant(s) acquired and maintain interests in and control of the enterprise through a pattern of racketeering activity.

386. The extortion, mail fraud, wire fraud, et al., further described herein constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

387. The Count X Defendant(s) have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above and herein, in violation of 18 U.S.C. § 1962(b).

388. As direct and proximate result of the Count X Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs/the Hadley's have been injured in their business and property in that: C. Capone is purporting to recommend for approval and P. Joncas and other co-conspirators authorizing the destruction of trees, wetlands, and the building of structures on land which they know the 'record title holder' themselves and their co-conspirators do not own, which they and co-conspirators know they do not own, which Defendants and co-conspirators know to be owned by the Hadley's/Plaintiffs; Capone, Joncas, and Conservation Commission Members extortion--Capone seizing and destroying personal property and wrongly entered real property under the guise of the color of law, co-conspirator Joncas executing EO#1, both extortionary acts subsequent ratification by Commission members including J. McGuigan, J. Powell, G. Greenwood, P. Weinberg, B. Byron, and DCR and DEP employees J. Straub and M. Bartow.

389. As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(b), Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $1,200,000 said damages to be proven at the time of trial.

390.Because of Defendants' violations of 18 U.S.C. § 1962(b), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

391. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count X Defendant(s) as further described herein.

**11. COUNT XI RICO § 1962(d)**

392. The allegations of paragraphs 1 through 392 are incorporated herein by reference.

393. This count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, the Estate of A. Ferreira, B&T Palmer, and R. Swicker (the "Count XI Defendant(s)").

394. As set forth above, the Count XI Defendants agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c).

395. The Count XI Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

396. The Count XI Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

397. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

398. As direct and proximate result of the Count XI Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs/the Hadley's have been injured in their business and property in that: they have and will likely continue to be threatened with physical harm, reprisal under the guise of the color of law, loss of money, damage to real and personal property as the Property is wrongly subdivided and current 'record title holders' according to the Bristol County Registry of Deeds and Town of Westport Assessors office show the Property as being owned by Count XI Defendants, their family members, and co-conspirators; Count XI Defendants did and continue to occupy, pollute, and destroy portions of the Property (some of which is critical habitat for endangered species, threatened species, and several species under the MBTA); and Plaintiffs/the Hadley's have been and a likely to continue to be threatened by Count XI Defendants and their co-conspirators.

399. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count XI Defendant(s) as further described herein.

**12. COUNT XII Civil Conspiracy**

400. The allegations of paragraphs 1 through 399 are incorporated herein by reference.

401. This count is against Defendant(s) in furtherance of CCREFS, P. Joncas, C. Capone, K.T. Martin, D. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, M. Perry, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, the Estate of A. Ferreira, B&T Palmer, and R. Swicker coconspirator John Does (the "Count XII Defendant(s)").

402. As set forth above, the Count XII Defendants entered into agreement with other Count XII Defendants.

403. As set forth above, the Count XII Defendants agreed with other Count XII Defendants to act wrongfully in furtherance of CCREFS.

404. Plaintiffs suffered damages, and continue to suffer damages as a result of the CCREFS.

405. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count XII Defendant(s) as further described herein.

**13. COUNT XIII Civil Conspiracy**

406. The allegations of paragraphs 1 through 405 are incorporated herein by reference.

407. This count is against Defendant(s) in furtherance of CSES, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, K. Carter, B. Bryan, P. Weinberg, G. Greenwood, K. Carter, J. Powell, J. McGuigan, M. Bartow, J. Straub, John Does Selectmen, John Doe DEP and DCR co-conspirators, and coconspirator John Does (the "Count XIII Defendant(s)").

408. As set forth above and herein, the Count XIII Defendants entered into agreement with other Defendants.

409. As set forth above, and in furtherance of the CSES, the Count XIII Defendants agreed with other Count XIII Defendants to act wrongfully in furtherance of the CSES.

410. Plaintiffs/the Hadley's suffered damages, and continue to suffer damages as a result of the wrongful acts committed by Count XIII Defendants in furtherance of CCREFS, and CSES.

411. WHEREFORE, Plaintiffs/the Hadley's requests that this Court enter judgment against the Count XIII Defendant(s) as further described herein.

**14. COUNT XIV Civil Conspiracy**

413. The allegations of paragraphs 1 through 412 are incorporated herein by reference.

414. This count is against Defendant(s) in furtherance of the attempted, in process, CSES and CCREFS, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, Kevin Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan coconspirator John Does (the "Count XIV Defendant(s)").

415. As set forth above, the Count XIV Defendants entered into agreements with other Count XIV Defendants.

416. Count XIV Defendants agreed to and continue to agree to commit wrongful acts including but not limited to mail and wire fraud, extortion using threat of violence and under the color of official right through drafting and executing Enforcement Orders and making threats of force or violence directly and through interstate mail and wires, conspiring to deny Plaintiffs' civil rights guaranteed under the United States Constitution, and Fourth, Fifth, and Fourteenth Amendments thereto by committing, encouraging, or ratifying Capone and others trespass, trespass to chattle, conversion, theft, fraud, false pretenses, extortion, and other acts of racketeering.

417. Count XIV Defendants made overt acts as part of this conspiracy and in furtherance of their agreement.

418. For example, Count XIV Defendants 'subdividing, preparing forged deeds, procuring 'deeds' by false pretenses and fraud, and executing or causing to be executed, and recording or causing to be recorded deeds to land in Massachusetts and

Rhode Island which they knew and know to be owned by Plaintiffs/the Hadley's as further described herein.

419. For example, Count XIV Defendants encouraging or otherwise requesting or endorsing Capone to enter Plaintiffs/the Hadley's property, seize Plaintiffs/the Hadley's property, and destroy Plaintiffs/the Hadley's property, executing or ratifying now vacated Enforcement Orders against Plaintiffs/the Hadley's and others; wrongfully demanding payments to be made by Plaintiffs/the Hadley's to individuals and entities located in Massachusetts and Rhode Island; executing and recording fraudulent deeds in Massachusetts and Rhode Island; requesting seeking and/or approving chapter 61 liens and related tax credits on land in Massachusetts and Rhode Island, on land they knew to be owned by Plaintiffs/the Hadley's, and other wrongful acts further described herein.

420. As set forth above, the Count XIV Defendants agreed with other Count XIV Defendants to act wrongfully in furtherance of the attempted, in process, CSES and CCREFS.

421. Plaintiffs/the Hadley's suffered damages, and continue to suffer damages as a result of the wrongful acts committed by Count XIV Defendants in furtherance of the attempted, in process, CCREFS and CSES.

422. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count XIV Defendant(s) as further described herein.

**15. COUNT XV Abuse of Process**

423. The allegations of paragraphs 1 through 422 are incorporated herein by reference.

424. This count is against Defendant(s) in furtherance of the attempted, ongoing abuse of process of the Admin Appeal against P. Joncas, C. Capone, Town of Westport, Conservation Commission, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, Kevin Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, John Doe Selectmen (to be individually named following preliminary, perforce, limited discovery, and co-conspirator John Does (the "Count XV Defendant(s)").

425. Count XV Defendants are unjustifiably and unreasonably misusing the Admin Appeal process (the cost of which is being paid for by taxpayers in the Town of Westport, including Plaintiffs/the Hadley's).

426. Count XV Defendants misuse and improper use of the limited Admin Appeal process is for the ulterior motive of prolonging the Admin Appeal, attempting to wrongfully obtain water, land, and other real and personal property rights for Capone personally, for his co-conspirators, and for other Count XV Defendants, including but not limited to wrongfully seeking to obtain easement access rights to the Lane, water rights and inverse condemnation via extortion, et al., extortion of a 'dock permit' for Capone, attempting to reopen settled precedent regarding riparian and littoral rights for Count XV Defendants, to misuse insurance defense funds to 'quiet title' to property for Capone individually, and other Count XV Defendants, et al.

427. Count XV Defendants in the course of 'defending' the Admin Appeal have committed numerous acts not proper or within the scope of the limited process required under M.G.L. 249 § 4 and MA Superior Court Standing Order 1-96, as required.

428. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XIV Defendant(s) as further described herein.

**16. COUNT XVI Abuse of Process**

429. The allegations of paragraphs 1 through 428 are incorporated herein by reference.

430. This count is against Defendant(s) in furtherance of the attempted, in process, Admin Appeal abuse of process against P. Joncas, C. Capone, J. Amos, Town of Westport, Conservation Commission, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, Kevin Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, John Does Selectmen (to be individually named following preliminary, perforce, limited discovery), and coconspirator John Does (the "Count XVI Defendant(s)").

431. Count XVI Defendants have an ulterior motive for the Admin Appeal, including attempting to wrongfully obtain water, land, and other real and personal property rights for themselves, Defendants, and other John Doe co-conspirators.

432. Count XVI Defendants in the course of 'defending' the Administrative Appeal have committed numerous acts not proper or within the scope of the process.

433. For example, Administrative Appeals taken in the nature of certiorari are supposed to be governed under M.G.L. 249 § 4, and MA Superior Court Standing Order 1-96, which requires expedited review, based solely on the Administrative Record, with judgment being decided as a matter of law without and discovery, whatsoever.

434. Count XVI Defendants are currently misusing the defense of what was supposed to be a limited Administrative Appeal focused solely on the August 6-14, 2018,

EO#1, Joncas's execution thereof, Capone's trespass, seizure and destruction of property, and the unanimous ratification thereof by Commission members at a secret meeting; Plaintiffs/the Hadley's were provided no advance notice for any of these egregious intentional acts disregarding Plaintiffs/the Hadley's civil rights.

435. Instead, Count XVI Defendants are attempting to further their ulterior motive to wrongfully 'relitigate' to improperly acquire water rights (by, e.g., fraudulently claiming Lake Pogansett aka Devol Pond is a great pond), seeking easement access rights for Capone individually across both the Lane and the boatramp (located on the Hadley's/Plaintiffs private property), and purporting to seek to wrongfully acquire for other Count XVI Defendants and potentially others easement rights over Narrow Ave., the intersection of Narrow Ave with Sodom Road (a public road), the Lane, Lake Pogansett, and the boat ramp, and likely seeking to obtain other property rights.

436. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XVI Defendant(s) as further described herein.

**17. XVII Breach of Fiduciary Duty**

437. The allegations of paragraphs 1 through 436 are incorporated herein by reference.

438. This count is against Defendant(s) the Commonwealth of Massachusetts, the Massachusetts Attorney General Office, DCR, and DEP ("Count XVII Defendants").

439. Count XVII Defendants owed a duty to all residents, property owners and citizens of the Commonwealth and United States of America to uphold and protect constitutional rights, and to administer or cause to be administered the laws of the United States and the laws of the Commonwealth, including but not limited to the

Clean Water Act, the Civil Rights Act, the Migratory Bird Treaty Act, RICO, the Hobbs Act, the Safe Drinking Water Act, et al.

440. The Count XVII Defendants breached this duty by delegating environmental administrative duties to town ‘officials’ without providing any training, guidance or accountability.

441. The Count XVII Defendants breached this duty by failing to supervise local Conservation Commissions, their members, and their agents.

442. Count XVII Defendants breeched this duty by allowing other Defendants further described herein to misuse their entrusted authority for personal gain.

443. Count XVII Defendants’ breech of fiduciary duty caused and continues to cause damage both actually and proximately to the Plaintiffs/the Hadley’s, and Jane Does, to be determined more in discovery.

444. WHEREFORE, Plaintiff/the Hadley’s requests that this Court enter judgment against the Count XVII Defendant(s) as further described herein.

**18. Count XVIII: Violation of 42 U.S.C §1983**

445. The allegations of paragraphs 1 through 444 are incorporated herein by reference.

446. This count is against Defendant(s) in furtherance of the attempted, in process and continuing intentional and willful violation of Plaintiffs Civil Rights and by Defendants, P. Joncas, C. Capone, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, Town of Westport, MA, Westport Conservation Commission, and coconspirator John Does (the “Count XVIII Defendant(s)”).

447. Count XVIII Defendants deprived Plaintiffs/the Hadley's of rights guaranteed by the United States Constitution.

448. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XVIII Defendant(s) as further described herein.

**19. Count XIX: Violation of 42 U.S.C §1983**

449. The allegations of paragraphs 1 through 448 are incorporated herein by reference.

450. This count is against Defendant(s) in furtherance of the attempted, in process and continuing intentional and willful violation of Plaintiffs Civil Rights and by Defendants, P. Joncas, C. Capone, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, Town of Westport, MA, John Doe Selectmen, Westport Conservation Commission, DCR, DEP, Commonwealth of Massachusetts, and coconspirator John Does (the "Count XIX Defendant(s)").

451. Count XIX Defendants knowingly and intentionally violated 42 U.S.C. § 1983.

452. . The acts and failure to act of Capone and Joncas deprived the plaintiff of their particular rights under the laws of the United States and the United States Constitution as explained herein;

453. P. Joncas acted under color of state law;

454. G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, acted under the color of state law

455. P. Joncas had final policymaking authority from defendant Conservation Commission, DEP, and DCR concerning the acts of C. Capone; and

456. P. Joncas ratified C. Capone's acts, that is, P. Joncas knew of and specifically made a deliberate choice to approve via EO#1 C. Capone's acts and the basis for it.

457. G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, and P. Joncas ratified C. Capone's acts, that is, knew of and specifically made a deliberate choice to approve C. Capone and P. Joncas's acts and the basis for it.

458. Count XIX Defendants did not contact or notify Plaintiffs/the Hadley's of suspected allegations of Capone.

459. Count XIX Defendants did not notify or contact Plaintiffs/the Hadley's to provide notice and the opportunity to be heard at Conservation Commission meetings to review the actions and failure to contact or otherwise notify Plaintiffs.

460. Count XIX Defendants knew of and specifically made a deliberate choice to approve EO#1, and Capone's crimes and torts knowing that Plaintiffs/the Hadley's had not been notified of the hearing.

461. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XIX Defendant(s) as further described herein.

**20. Count XX: Inverse Condemnation**

462. The allegations of paragraphs 1 through 461 are incorporated herein by reference.

463. This count is against P. Joncas, C. Capone, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, Town of Westport, MA, John Doe Selectmen, Westport Conservation Commission, DCR, DEP, Commonwealth of Massachusetts, and coconspirator John Does (the "Count XX Defendant(s)").

464. Plaintiffs/the Hadley's own the property currently attempting to be taken.

465. Count XX Defendants did participate and continue to participate in a project to wrongfully take or damage, or otherwise authorizing and approving the taking and damage of Plaintiffs/the Hadley's private property in, on and around Lake Pogansett, sometimes referred to as Devol Pond, including but not limited to moving the historic rock marker onto Plaintiffs/the Hadley's property, relocating 'road layouts' on Narrow Ave (a private path) and Sodom Road (a public road), and impairing the water quality Lake Pogansett and causing other substantial damage to Plaintiffs/the Hadley's property.

466. This is taking and substantially damaging Plaintiffs/the Hadley's Property and causing them damage.

467. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XX Defendant(s) as further described herein.

**21. COUNT XXI Conspiracy to Violate Civil Rights**

468. The allegations of paragraphs 1 through 466 are incorporated herein by reference.

469. This count is against Defendant(s) in furtherance of the attempted, in process and continuing conspiracy to violate Plaintiffs Civil Rights and by Defendants, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, Grace Greenwood, Kevin Carter, Jason Powell, Jacob McGuigan, Town of Westport, MA, Westport Conservation Commission, and coconspirator John Does (the "Count XX Defendant(s)").

470. Count XX Defendants agreed, by words or conduct, to accomplish an unlawful goal and to accomplish a goal through unlawful means.

471. One or more unlawful acts were performed to accomplish the goal and one or more acts were performed to accomplish the unlawful goal.

472. Plaintiff/the Hadley's had damages and losses.

473. Plaintiff's/the Hadley's injuries, damages, and losses were caused by the acts Count XX Defendants performed to accomplish the goal.

474. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XIX Defendant(s) as further described herein.

**22. COUNT XXII Conspiracy to Violate the Hobbs Act**

474. The allegations of paragraphs 1 through 473 are incorporated herein by reference.

475. This count is against Defendant(s) P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, Grace Greenwood, K. Carter, J. Powell, J. McGuigan, Town of Westport, MA, Westport Conservation Commission, and coconspirator John Does (the "Count XXII Defendant(s)").

476. Count XXII Defendants had and have an agreement to commit wrongful acts with an unlawful end and to accomplish a lawful end by unlawful means.

477. Count XXII Defendants committed wrongful acts, including entering and seizing Plaintiffs/the Hadley's property and to accomplish the furth unlawful end of attempting to force Plaintiffs/the Hadley's to part with property under the threat of force under the color of official right.

478. Count XXII Defendants agreement and wrongful acts resulted in damage to the plaintiff.

479. Specifically, Count XXII have and continue to obtain/ attempt to obtain water rights, money, real and personal property from Plaintiffs/the Hadley's acting under the color of official right by forcing Plaintiffs/the Hadley's to pay money and attempting to force Plaintiffs/the Hadley's to part with property rights a give said property and property rights to Count XXII Defendants, John Doe co-conspirators, the Town of Westport, State of Massachusetts to which they are not entitled.

480. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXII Defendant(s) as further described herein.

**23. COUNT XXIII Conspiracy**

481. The allegations of paragraphs 1 through 479 are incorporated herein by reference.

482. This count is against Defendant(s) P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, G. Greenwood, K. Carter, J. Powell, J. McGuigan, Town of Westport, MA, Commonwealth of Massachusetts, Westport Conservation Commission, and coconspirator John Does (the "Count XXIII Defendant(s)").

483. Count XXIII Defendants intended to commit forgery, fraud, extortion, and other crimes.

484. Count XXIII Defendants and their co-conspirators engaged in conduct that constitutes a substantial step toward completing the crimes.

485. Count XXIII Defendants failed to complete the crime.

486. For example, Count XXIII Defendants intended to commit the crime of extortion by attempting to use the power of public office itself to procure the payments of

money to a single member LLC located in Rhode Island, which was not owed to the single member LLC in Rhode Island.

487. Specifically, on July 10, J. Powell took a substantial step and used interstate wires to email the Hadley's attempting to and intending to use the public office, the Westport Conservation Commission, to wrongfully force payments from the Hadley's to Mr. Brandon Faneuf, owner of a Single Member LLC located in Warwick, RI.

488. The uncapped retainer and 'consulting fees' which Count XXIII Defendants sought to extort from Plaintiffs/the Hadley's were not owed to the Conservation Commission, J. Powell, B. Faneuf, or any other third party.

489. Plaintiffs/The Hadley's refused to pay the uncapped monetary payment which Count XX Defendants sought to wrongfully force from Plaintiffs/the Hadley's to B. Faneuf.

490. On August 20, 2019, the Conservation Commission unanimously voted through its members and agent, P. Joncas, C. Capone, J. McGuigan, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, and J. Powell and issued another Enforcement Order ("EO#2) against Plaintiffs/the Hadley's in a further overt act attempting to use the office of the Conservation Commission to force payments from Plaintiffs/the Hadley's to B. Faneuf, purporting to act under the color of official right.

491. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXIII Defendant(s) as further described herein.

**24. COUNT XXIV Breech of Fiduciary Duty and Self Dealing**

492. The allegations of paragraphs 1 through 491 are incorporated herein by reference.

493. This count is against Defendant(s) K.T. Martin, P. Joncas, C. Capone, John Doe Bristol County Registrar of Deeds, Town of Westport, MA, Commonwealth of Massachusetts, Westport Conservation Commission, and coconspirator John Does (the "Count XXIV Defendant(s)").

494. Count XXIV Defendants owed a duty to Plaintiffs/the Hadley's.

495. Count XXIV Defendants breeched this duty.

496. Count XXIV Defendants breech caused Plaintiffs/the Hadley's harm and but for Count XXIV Defendants breech, Plaintiffs/the Hadley's would not have been harmed.

497. Plaintiffs/the Hadley's suffered damage as a result of Count XXIV.

498. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXIII Defendant(s) as further described herein.

**25. COUNT XXV Conspiracy to Violate the Hobbs Act**

499. The allegations of paragraphs 1 through 498 are incorporated herein by reference.

500. This count is against Defendant(s) in furtherance of the attempted, in process and continuing violation of Plaintiffs Civil Rights and attempted extortion by Defendants, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, G. Greenwood, K. Carter, J. Powell, J. McGuigan, Town of Westport, MA, John Doe Selectmen, Westport Conservation Commission, and coconspirator John Does (the "Count XXV Defendant(s)").

501. Count XXV Defendants had and have an agreement to commit wrongful acts with an unlawful end and to accomplish a lawful end by unlawful means.

502. Count XXV Defendants committed wrongful acts, including entering and seizing Plaintiffs/the Hadley's property and to accomplish the furth unlawful end of attempting to force Plaintiffs/the Hadley's to part with property under the threat of force under the color of official right.

503. Count XXV Defendants agreement and wrongful acts resulted in damage to Plaintiffs/the Hadley's.

504. For example, as members and agents of the Conservation Commission, Defendants, P. Joncas, C. Capone, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, Grace Greenwood, K. Carter, J. Powell, J. McGuigan, Town of Westport, MA, Westport Conservation Commission, and coconspirator John Does, have and continue to obtain/ attempt to obtain water rights, money, real and personal property from the Hadley's acting under the color of official right by forcing the Hadley's to pay money to the Town of Westport and State of Massachusetts to which neither were entitled.

505. For example, as John Doe Selectmen, have and continue to obtain/attempt to obtain water, money, real and personal property from Plaintiffs/the Hadley's by abusing the limited Admin Appeal process.

506. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXV Defendant(s) as further described herein.

**26. COUNT XXVI Violation of Plaintiffs' Civil Rights under 42 U.S.C. § 1983**

507. The allegations of paragraphs 1 through 506 are incorporated herein by reference.

508. This count is against Defendant(s) in furtherance of CCREFS and the attempted, in process and continuing violation of Plaintiffs Civil Rights by Defendants, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H.

McGovern, Grace Greenwood, K. Carter, B. Bryan, P. Weinberg, G. Greenwood, K. Carter, J. Powell, J. McGuigan, Town of Westport, MA, Westport Conservation Commission, and coconspirator John Does (the "Count XX Defendant(s)").

509. Count XXVI Defendants acted under the color of state law.

510. Count XXVI Defendants actions and inactions deprived Plaintiffs/the Hadley's constitutional rights.

511. For example, C. Capone did knowingly and intentionally deprive Plaintiffs, the Hadley's Constitutional rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution by entering, seizing, and destroying Laura Hadley's personal property (temporary phytoremediation floats) on August 8, 2018, and entering the Hadley's real property on August 8, 2018 to accomplish his illegal actions.

512. For example, P. Joncas did knowingly and intentionally execute an Enforcement Order acting under the the color of state law on August 8th or 9th 2018.

513. For example, Plaintiffs/the Hadley's were provided no notice of the illegal search and seizure prior to Capone entering, seizing and destroying their property on August 8, 2018.

514. For example, on August 8th or 9th 2018, C. Capone used interstate wires in furtherance of CCREFS, and intentionally denying the Hadley's civil rights while purporting to act under the color of law stating, I as Conservation Commission Agent for the Town of Westport has been given authority to remove the plants you and your daughter placed in Devol Pond . . .", and advising Mr. Hadley that his daughters property could be retrieved from the Westport Highway Department.

515. Capone knew these statements were false and that neither he nor his co-conspirators had enforcement authority.

516. For example, Capone, Count XXVI Defendants, and other CCREFS co-conspirators, intentionally deprived the Hadley's their Constitutional Rights guaranteed under the Fourth Amendment to be free from unreasonable search and seizure, Fifth Amendment granting the right not be deprived of life, liberty or property without due process of the law, and the Fourteen Amendment granting the right to due process and equal protection under the law.

517. For example, on August 14, 2018, the Conservation Commission held a Ratification Hearing where Count XXVI Defendant members of the Commission unanimously ratified the Enforcement Order and Capone's trespass, theft, and destruction of property under the guise of the color of state law.

518. For example, Count XXVI Defendants did not provide the Hadley's with any notice of the hearing or give them the opportunity to be heard.

**27. COUNT XXVI RICO § (c)**

519. The allegations of paragraphs 1 through 519 are incorporated herein by reference. This Count is against Defendant(s) Capone, P. Joncas, P. Wilkinson, M.L. Quigley, K.T. Martin, B. Tripp, M. Perry, B&T Palmer, H. McGovern, M. Perry, J. Powell, J. McGuigan, G. Greenwood, P. Weinberg, B. Byron, J. Amos, and John Doe, co-conspirators in CCREFS, to be identified during discovery (the "Count I Defendant(s)").

520. CCREFS is an enterprise and association in fact engaged in and whose activities affect interstate commerce.

521. The Count XXVII Defendant(s) are employed by or associated-in-fact with the enterprise.

522. Each Count XXVII Defendant, at all relevant times, is and has been a “person” within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, “a legal or beneficial interest in property.”

523. The Count XXVII Defendant(s) agreed to and did conduct and participate in the conduct of the enterprise’s affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding the Hadley’s and others to wrongfully obtain money, water rights, real and personal property located in Massachusetts and Rhode Island through a pattern of racketeering activity. Specifically:

524. **Capone, Joncas and John Does seeking to extort water and land rights under the color of official right as part of ongoing scheme:**

525. For example, Capone, Joncas, and John Does knowingly and deliberately used, and continue to use their official positions, as Conservation Commission Agent for Westport and forester for MA DCR, and as Conservation Commission Chair and forester for MA DCR, seeking to wrongfully obtain land, water rights, personal property, and money to which Capone, Joncas, CCREFS co-conspirators and John Does, have no right.

526. For example, Capone knowingly made false statements of material fact in preparing, approving, recommending for approval, or consulting and otherwise advancing the approval of an ‘interim dock permit’ on land and in water Capone knew to be owned by the Hadley’s.

527. Upon information and belief, Capone acted under the color of official right in recommending for approval an interim 'dock permit' for his father, the late Paul Capone, knowing it was located on Plaintiffs/the Hadley's Property.

528. Count XXVII Defendants banded together to commit a pattern of racketeering they could not accomplish on their own.

529. For example, K.T. Martin and D. Martin prepared and facilitated the execution and recording of deeds on land they knew to be owned by the Hadley's, in furtherance of CCREFS seeking to obtain by fraud and false pretenses land from the Hadley's for themselves and other members of CCREFS, including recording 'parcels' including but not limited to those found at the Bristol County Registry of Deeds at book 6066, page 7-9, book 11893, page 207-09, book 9073, page 345-46, book 9717, page 148, book 9717, page 144-45 which, upon information and belief is located in MA and RI.

530. Upon information and belief, K.T. Martin also facilitated, prepared, or otherwise participated in recording at Bristol County Registry of Deeds book 8489, page 218, which purported to "claim" title to "vacant land" located on Narrow Ave. in Westport for her brother and co-conspirator B. Tripp.

531. K.T. Martin and her brother B. Tripp knew the land was not vacant and that it was owned by Plaintiffs/the Hadley's.

532. K.T. Martin, B. Tripp, and other Count I Defendants intended for the Westport Town Assessors Office, Registry of Deeds, the Hadley's and others to rely on these knowingly false statements of material fact regarding ownership, they did rely on Defendants fraudulent statements and it is causing Plaintiffs/the Hadley's and others damage.

533. C. Capone and P. Joncas approved and/or recommended for approval Orders of Conditions for CCREFS co-conspirators, Count I Defendants, in furtherance of CCREFS

and purporting to authorize the destruction of forests, wetlands and wildlife and building of structures for Count I Defendants on land they knew to be owned by Plaintiffs/the Hadley's in attempt to wrongfully procure land and other rights from Plaintiffs/the Hadley's for CCREFS co-conspirators while acting under the color of official right.

534. For example, C. Capone, B. Tripp, and K.T. Martin conspired to record fraudulent title to property and construct structures on land they knew to be owned by Plaintiffs/the Hadley's, including C. Capone and upon information and belief P. Joncas and other co-conspirators applied for, approved, and/or recommended for approval Orders of Conditions nos. 080-2230, 080-1741, 080-2639, et al.

535. C. Capone currently and knowingly seeks to obtain via use of his official position, under the color of official right the continuation of said dock permit, to wrongfully obtain ownership of land, money and water rights for himself, his family members, Count XXVII Defendants and other coconspirator John Does.

536. Capone seeks to obtain water rights, easement/access rights, and other real and personal property rights for himself, family members and others by misusing his position as Conservation Commission Agent for Westport, and by misusing his position as a forester employed by MA Department of Conservation and Recreation.

537. Capone, Joncas, and co-conspirator John Does misused and continue to misuse their positions, acting under the color of official right, to knowingly and wrongfully approve and otherwise further the approval of chapter 61 'tax breaks' and resultant liens for individuals, including but not limited to, upon information and belief, K.T. Martin, M. Perry, B&T Palmer, H. McGovern, and other co-conspirators John Does on property they do not own, the full extent of which will be determined during discovery in this case.

538. Joncas, Capone, and John Does knowingly and wrongfully approved, recommended for approval, advised on the approval of, or were otherwise involved in the approval process for chapter 61 applications and forestry plans for upon information and belief, and including but limited to K.T. Martin, M. Perry, B&T Palmer, H. McGovern, and other co-conspirator John Does in furtherance of CCREFS, the full extent of which shall be discovered when discovery opens in this case.

539. Count I Defendants attempted to and continue to attempt to obtain title to property for themselves and others via interstate mail and wire fraud, and extortionary acts as defined in the Hobbs Act, and as further described herein.

540. Capone has obtained and continues to take, wrongfully, timber and trees he harvested and continues to harvest on Plaintiffs/the Hadley's land, and enjoyment of water rights he is currently attempting to obtain by wrongful use of threat of force, violence, fear, and under the color of official right.

541. Capone continues, working with co-conspirators, to seek to obtain water rights for himself, his family members and others, acting under the color of official right.

542. Capone continues to attempt to obtain real property rights including an easement over the Hadley's property to which he has no right, for himself and other John Doe, co-conspirators, to be identified during discovery.

543. Beginning in approximately 2003, Capone began and continues to use his position as Conservation Commission Agent, purporting to act under color of law or color of official right in furtherance of CCREFS to extort money and property rights for Count XXVII Defendants.

544. C. Capone and his CCREFS and CSES co-conspirators are currently acting under the color of official right, and using threats of violence to obtain easement access rights for

himself, his family members, and others to "the Lane" a private dirt path located on the Hadley's property.

545. Capone is willfully and knowingly attempting to induce Plaintiffs/the Hadley's to part with their property (water, land, and money) acting under the color of official right, in collusion with co-conspirator Defendants and John Does.

546. Capone purported to act under the color of official right when he seized and destroyed L. Hadley's phytoremediation floats on August 8, 2018.

547. Capone and Joncas, in furtherance of CCREFS and CSES, conspired with other Count I Defendants, and other John Does to wrongfully and intentionally compel Plaintiffs to pay the Commission and Commonwealth of Massachusetts money in August and September 2018, wrongfully acting under the color of official right.

548. Capone, Joncas, and John Does in furtherance of CCREFS are currently attempting to induce Plaintiffs/the Hadley's to part with water rights and other private property, located in both the Commonwealth of Massachusetts and the State of Rhode Island acting under the color of official right.

549. Capone is acting under the color of official right in seeking to obtain an access right to Lake Pogansett (sometimes called "Devol Pond" or "the Devoll's Pond, so called") across the Hadley's land and water, for himself, his family members, and others via a path which serves as a boat ramp for Plaintiffs/the Hadley's and is located on Plaintiffs/the Hadley's private property to which he has no right.

550. Capone is currently, in furtherance of CCREFS, misusing the color of official right to receiving legal defense counsel paid for by tax dollars to which he is not entitled as his actions were and are intentional violations of federal and state statutes.

551. Capone, P. Wilkinson, and other CCREFS co-conspirators, used and continue to use the threat of violence and fear seeking to obtain an interest in land located on Plaintiffs/the Hadley's property in Massachusetts and Rhode Island including Plaintiffs/the Hadley's private property in and under Lake Pogansett.

552. For example, on April 10, 2022, L. Hadley and a family member were in 'the Lane', a private path on the Hadley's property when Capone drove up to their car parked to the side, muttered obscenities and 'peeled out' attempting to spray Plaintiffs/the Hadley's and their car with rocks and gravel in a manner suggesting the threat of further violence and attempting to inspire fear.

553. On another occasion, at approximately 5:10PM on May 31, 2022, Laura and Susan Hadley were sitting on their private dock, on the private pond and Mrs. Hadley's car was parked on the Hadley family's private property located at 1 Narrow Ave. Chris Capone approached the shore and began screaming, something to the effect of, "you had better get your car off my private property. . .you want to play games, I'll play some games. To start, just try to get out . . ." Capone then moved his truck attempting to block in the Hadley's car.

554. Laura Hadley called the police, reported/made them aware of the situation, in case things escalated further and because Susan Hadley was shaking with fear; the Hadley's left shortly thereafter, and a friend who had arrived in the interim followed them out of the Lane, in case Capone further acted on his express threats of violence and because Susan Hadley was afraid.

555. Another act of racketeering by Capone and his co-conspirators occurred, at approximately 3:30pm on July 16, 2022 when Chris Capone began destroying trees along

the shore (on land he doesn't own, which belongs to Plaintiffs/the Hadley's) while loudly discussing and threatening violence with co-conspirator D. Laffarier.

556. As Capone began chopping threes and clearing bushes, Capone was heard loudly exclaiming, "they want privacy, I'll give them privacy" [referring to the Hadley's] as he proceeded to cut trees and bushes located on the Hadley's property; Capone's accomplice and co-conspirator D. LaFarrier then loudly exclaimed "they need to have their f***'ing legs broken."

557. In furtherance of CCREFS, another racketeering activity occurred in August of 2019, when P. Wilkinson threatened L. Hadley by saying that she [Ms. Hadley] "had better leave Chris [Capone] alone and stop with the floats or I'll kill you myself."

558. The real, riparian, littoral, and other property owned by Plaintiffs/the Hadley's are located in Massachusetts and Rhode Island, and as such all related racketeering acts are involved in interstate commerce and involve the unique multistate jurisdiction.

559. Plaintiffs/the Hadley's recently discovered that they, family members, and others (though not including Defendants) own littoral and riparian interests because their chain of title extends from the purchases of the Original Proprietors in 1652 and several title chains explicitly include water rights.

560. Neither C. Capone, P. Joncas, John Does, MA Department of Environmental Protection, town of Westport, nor the Conservation Commission or any other Count XXVII Defendants were owed any money as a result of Plaintiffs/the Hadley's efforts to improve their water quality.

561. Plaintiffs recently learned of and continue to discover the full extent of the CCREFS scheme, which has been intentionally hidden by Defendants.

562. P. Wilkinson, B. Tripp, Capone, K.T. Martin, and John Does pursuant to and in furtherance of the fraudulent scheme, CCREFS committed multiple related acts of mail and wire fraud.

563. For example, B. Tripp made false statements of material fact in recording a deed for 'vacant land' on Narrow Ave. with an eastern boundary described as now or formerly owned by Harold Hadley, found at Bristol County Registry of Deeds book 8489, page 218.

564. B. Tripp knew the land was not vacant, and that it was and still is owned by the Hadley's, and intended for the Westport town assessors office, and others to rely on his knowingly false statements of material fact.

565. The Westport town assessors office, Plaintiffs/the Hadley's and others relied on fraudulent statements made by B. Tripp and other CCREFS co-conspirators, and it is causing Plaintiffs/the Hadley's damage by denying them their property.

566. The property described by B. Tripp at Bristol County Registry of Deeds book 8489, page 218 is likely located in both Massachusetts and Rhode Island.

567. Pursuant to and in furtherance of the fraudulent scheme CCREFS, Count XXVII Defendant(s) committed multiple related acts of extortion, mail and wire fraud, real estate fraud, and other related acts as further described herein.

568. The acts of extortion, mail and wire fraud, and as set forth herein constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

569. The Count XXVII Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

570. As a direct and proximate result of the Count XXVII Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that: they are being derived exclusive use and control of their property, including the water, extensive damage to their property including trees has been committed by Capone and others for which Plaintiffs/the Hadley's have not been compensated, Plaintiffs/the Hadley's were wrongfully forced to pay money Defendant Conservation Commission, DEP, and others, and the Hadley's/Plaintiffs are still being forced to litigate to defend and uphold their basic constitutional and private property rights in the Administrative Appeal, bearing both the direct costs and indirectly as taxpayers .

571. WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXVII Defendant(s) as further described herein.

**28. Count XXVIII Violation of 18 U.S.C. § 1962(c)**

474. Plaintiff incorporates by reference and realleges paragraphs 1 through 572 set forth above.

475. The allegations of paragraphs 1 through 369 are incorporated herein by reference. This Count is against Defendant(s) Capone, Joncas, P. Wilkinson, M.L. Quigley, K.T. Martin, B. Tripp, M. Perry, B&T Palmer, M. Perry, H. McGovern, and John Doe, co-conspirators in CCREFS, to be identified during discovery (the "Count II Defendant(s)").

476. 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c).

477. Each Count XXVIII Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

478. Defendants' activities include several acts of racketeering activity, partly discovered first by Plaintiffs in 2021, which continues to be uncovered, beginning in approximately 1986, and increasing in frequency and severity in approximately 2000.

479. Plaintiffs recently discovered and are still uncovering details of Defendants CSES and CCREFS scheme, which includes several overt acts of fraud, extortion, conspiracy to commit extortion, extortion under the color of official right, et al., and accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. §1961(5).

480. One such act took place on May 15, 1986 when H. McGovern knowingly recorded deeds for land located in Rhode Island and Massachusetts to which he had no valid title in furtherance of the recently discovered CCREFS.

481. H. McGovern knew he did not have valid title to property located in Massachusetts, Bristol County Registry of Deeds book 1964, page 0782 and Tiverton, RI Land Records Book 1964, page 0782, book 001452, page 163, book 0025, page 321, et al.

482. H. McGovern intended for the registry of deeds, town assessor's office, et al. in Massachusetts and Rhode Island, the Hadley's, and others to rely on these false statements of material fact.

483. Plaintiffs/The Hadley's, town assessors' offices, and John Does relied on these false statements of material fact, and it is causing the Hadley's, the State of Rhode Island, and others damage, which is ongoing and getting worse.

484. Another racketeering act took place on July 13, 2004, when the Conservation Commission and Conservation Commission Agent C. Capone, obtained/granted 'interim approval' for a dock license for his father, the late Paul Capone, located on the Hadley's property at 1 Narrow Ave., (NB Registry 7156, Page 50; Dock License Number 10045), extending into Lake Pogansett, sometimes called Sandy Pond, Devol Pond, or the Devoll's Pond, so called, the fresh pond, et al., which is a private pond owned in part by Plaintiffs/the Hadley's.

485. C. Capone knew neither he, nor his father Paul Capone, nor his father's fiancé P. Wilkinson had valid title nor any interest in the property in Westport, MA or in Lake Pogansett, and were only permitted to be there because of a license granted by the late Elmer Wilkinson, P. Wilkinson's father who held a life estate to a portion of the Property; and later, by P. Wilkinson and M. L. Quigley as part of and in furtherance of CCREFS.

486. C. Capone, in his individual capacity and while purporting to act under the color of official right as Agent of the Conservation Commission, in furtherance of CCREFS and CSES, made false representations of the ownership of a 'parcel' to the Conservation Commission, state of Massachusetts, and the Massachusetts Department of Environmental Protection in order to obtain 'interim approval' for a dock, to begin a fraudulent attempt to obtain an interest in Plaintiffs/the Hadley's property through Larceny by Trick and/or Theft by False Pretenses;.

487. Capone intended for the Conservation Commission, the DEP and State of Massachusetts to rely on his false representation of ownership, and that they did rely on these knowingly false statements made by C. Capone in 2004 in furtherance of CCREFS and CSES.

488. Capone sought, received, and approved this Order of Conditions based on false representations of material fact intended to induce reliance, which did induce reliance, and which is causing the Hadley's/Plaintiffs damage.

489. The issuance of the Order of Conditions caused and is causing the Hadley's damage because they do not have use of this portion of their property; and it is part of a larger scheme to acquire an interest in the pond, waters, and land for Capone and his family members, the Town of Westport, Count II Defendants, and John Doe co-conspirators while acting under the color of official right, and via fraud.

490. Another such racketeering act took place on January 7, 2007, when B. Tripp and his parents, Isaac and Geraldine Tripp, recorded a deed for "Vacant Land on Narrow Ave." on land with an 'eastern boundary' listed as "now or formerly owned by Harold Hadley, et ux." [21]

491. Upon information and belief, B. Tripp and his parents I. Tripp and G. Tripp used interstate wires to prepare and file the fraudulent 'conveyance' which purported to claim 'vacant' land, which was at the time, and is still, owned by the Hadley's though record title shows the 'owner' as B. Tripp as a result of the deed B. Tripp fraudulently recorded, which upon information and belief is located partly in MA and partly in RI.

[21] See Bristol County Southern District Registry Book 8489, Page 212 7156, page 50 et seq, and Book, 1678 page, 481-487, specifically 485. NONE recorded in Tiverton. Need to check LC. [CONFIRM/CROSS CHECK CITATIONS]

492. The Hadley's recently discovered property currently occupied by B. Tripp, K. T. Martin, the K.T. Martin Trust, their parents, the late Isaac Tripp, and Geraldine Tripp, H. McGovern, and other John Does is owned in fee simple absolute by the Hadley's/Plaintiffs.

493. In furtherance of the CCREFS and CSES schemes, B. Tripp, I. Tripp, G. Tripp, K.T. Martin prepared and recorded said fraudulent deed intending to obtain title by false pretenses and/or fraud.

494. The property recently discovered to be owned by the Hadley's and currently being occupied by CCREFS and CSES co-conspirators is located in Massachusetts and Rhode Island.

495. Another such racketeering act took place prior to September 15, 2008 when B. Tripp filed a Notice of Intent with the Westport Conservation Commission and MA DEP.

496. Upon information and belief, B. Tripp and other co-conspirators used interstate wires to facilitate the filing the Notice of Intent and obtaining the Order of Conditions.

497. In furtherance of the CCREFS scheme, on or around September 15, 2008, C. Capone and upon information and belief, P. Joncas and other John Does, approved, recommended for approval, or otherwise advanced the approval of an Order of Conditions in their capacities as Agent and Chairman for the Westport Conservation Commission (under the color of law), in furtherance of CCREFS and the CSES 'allowing' B. Tripp to fill in and destroy large amounts of wetlands on land B. Tripp, C. Capone, and John Does knew to be owned by the Hadley's/Plaintiffs.

498. Capone conspired with B. Tripp in furtherance of CCREFS and CSES by purporting to 'authorize' B. Tripp to build a house on the Hadley's/Plaintiffs property. (See DEP file no 080-1741).

499. B. Tripp and Capone knew representations of the material fact regarding property ownership were false and intended for Plaintiffs/the Hadley's, the Conservation Commission, the Commonwealth of Massachusetts, and the DEP to rely on these false statements of material fact.

500. The Hadley's/Plaintiffs relied on these false statements until recently as they had not conducted a comprehensive title search, and relied on Defendants false statements, and resultant false records reflected in town assessors records and property records.

501. Upon information and belief, the Conservation Commission, DEP, State of Rhode Island, and Commonwealth of Massachusetts relied on these false statements of material fact and approved the Order of Conditions, and mistakenly permitted the occupation of Plaintiffs/the Hadley's property by B. Tripp.

502. Until the title search in 2021, the Hadley's, MA DEP, and others relied on these false statements of material fact regarding ownership of the land currently occupied by B. Tripp, K.T. Martin, H. McGovern, P. Wilkinson, M.L. Quigley, M. Perry, and other co-conspirator John Does which caused and continues to cause Plaintiffs/the Hadley's damage.

503. Other such acts of racketeering are described further below and contained herein.

504. All of these acts were continuous over the life of the CCREFS and CSES, are ongoing and continue to escalate in severity.

505. At all times relevant hereto, beginning on or around 1986, increasing in severity in 2000 and continuing indefinitely absent judicial intervention, each Defendant conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

506. On or around 1986, Defendants formed an association-in-fact Enterprise, the Capone Concom Real Estate Fraud Scheme ("CCREFS") described herein as CREFS, within the meaning of 18 U.S.C. § 1961(4).

507. The CCREFS Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding Plaintiffs/the Hadley's, other individual members of the Hadley family, the MA Department of Environmental Protection, Commonwealth of Massachusetts and others by creating and conducting a scheme to obtain title to real property located in MA and RI by fraud, extortion, and other racketeering acts set forth herein.

508. In furtherance of CCREFS and CSES co-conspirators fraudulently recorded deeds to property owned by Plaintiffs/the Hadley's, to file, approve, and obtain chapter 61 liens and related 'tax breaks' from, upon information and belief, C. Capone, P. Joncas, and other John Does, to be discovered during discovery.

509. In furtherance of CCREFS and CSES, Defendants sought and continue to seek to obtain title to property by mail and wire fraud, extortion, and other acts of racketeering to wrongly obtain real property, personal property, and riparian interests.

510. The CCREFS and CSES Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding Plaintiffs/the Hadley's, taxpayers in Westport, MA, other individuals, and the MA

Department of Environmental Protection by abusing the process of litigating Bristol County Superior Court case no. 1983CV00907, 2020-J-0343, 2021-J-0468, and 2022-P-0091, seeking to wrongfully obtain for C. Capone, P. Joncas, John Does, and others real, riparian, and personal property interests to which they are not entitled acting under the color of official right.

511. The CCREFS and CSES Enterprise are ongoing organizations that function as a continuing units.

512. The CCREFS and CSES Enterprise were created and used as a tool to effectuate Defendants' pattern of racketeering activity.

513. All Defendants agreed to and did conduct and participate in the conduct of the CCREFS and CSES Enterprise Enterprise's affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiffs/the Hadley's, and likely others, including but not limited to the Commonwealth of Massachusetts, State of Rhode Island, City of Fall River Water Department, MA DEP, and others.

514. The wire fraud committed by Defendants is based on a scheme developed and carried out by the CCREFS and CSES Enterprises wherein Defendant C. Capone used interstate wires seeking to extort money and property from the Hadley's, including fraudulently electronically filing and 'serving' a now vacated Enforcement Order (using interstate wires) on August 8th or August 9th, 2018.

515. The Hadley's/Plaintiffs were deceived by this communication and the many other fraudulent communications by Capone, Joncas, K.T. Martin, P. Wilkinson, M. Perry, H. McGovern, B. Tripp, D. Martin, and other CCREFS co-conspirators to the

Westport assessors office, members of the Hadley family, the Westport Conservation Commission, the MA DEP, State of Rhode Island, and others to be further uncovered in discovery, surrounding the filing of the Notices of Intent, Orders of Conditions, chapter 61 liens, and other fraudulent filing beginning in approximately 2000, including but not limited to those set forth herein.

516. Capone, as Defendant in the Administrative Appeal, had a duty to disclose that he did not have any valid property interests in or to Lake Pogansett, the Lane, the boat ramp, the water, Laura Hadley's floats, et al.

517. Defendants Capone and Joncas, had a duty to disclose their conflicts of interests to Plaintiffs, the Conservation Commission, MA DEP, and others upon filing of and approving or otherwise recommending for approval Orders of Conditions, Enforcement Orders, and chapter 61 liens on real property located in Massachusetts and Rhode Island.

518. The full extent of chapter 61 liens, Enforcement Orders, Orders of Conditions, et al. and specific details on approvals remains in the sole custody of Defendants and shall be further uncovered when discovery opens in this case.

519. Capone, Joncas, B. Tripp, K.T. Martin, P. Wilkinson, and John Does failures to disclose the real party-in-interest of the property recently discovered to be owned by Plaintiffs/the Hadley's to Plaintiffs/the Hadley's, and to the DEP was done intentionally and with full knowledge of all relevant facts.

520. Defendants C. Capone, P. Joncas, B. Tripp, K.T. Martin, P. Wilkinson, and John Does failure to disclose the real party-in-interest to Plaintiff and to the DEP upon filing the Notices of Intent[22] was fraudulent.

521. Defendant Capone, Joncas, Conservation Commission, and Town of Westport's continued litigation and continue litigation of the Bristol County Superior Court case nos. 1873CV00907 without disclosing the real party-in-interest to Plaintiffs, the MA DEP, the state of Massachusetts, the State of Rhode Island, and others which was and is fraudulent.

522. Defendants used the wires for the transmission, delivery, or shipment of the following by the Defendants or third parties, all of which are related to the CCREFS, and CSES, and they were foreseeably caused to be sent as a result of Defendants' illegal scheme:

523. At all times discussed herein, Count XXVIII Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

## VI. PRAYERS FOR RELIEF

PLAINTIFFS DEMAND TRIAL BY JURY.

---

WHEREFORE, Plaintiff demands judgment as follows:

A. On all Causes of Action, a temporary restraining order or permanent injunction directing Defendants to stay at least 500ft away from Plaintiffs/the Hadley's.

B. On all Causes of Action, enjoin Defendants from entering the Property, including but not limited at 1 Narrow Ave., on Narrow Ave, on and near Sodom Road, including but not limited to that portion of the Property in RI and enjoin the ongoing and escalating threats of violence, trespass to trees, trespass, endangered species habitat destruction, migratory bird habitat destruction, et al.

C. On the First Cause of Action, a judgment declaring all Chapter 61 liens on Plaintiffs/the Hadley's Property and any Property located in RI to be declared void—book and page numbers contained supra, and those to be added following preliminary, limited discovery by Plaintiffs and an amended Complaint.

D. On the First, Second, and Third Causes of Action, an Order upholding the binding precedent set forth in the Watuppa cases.

E. On the First, Second, and Third Causes of Action, judgment declaring that any local or state environmental regulatory organization forcing or attempting to force payments to an individual, a town, a state, and/or any third party constitutes a violation of the Hobbs Act and RICO, and as such is expressly preempted thereby.

F. On the First, Second, and Third Causes of Action, an Order temporarily enjoining ongoing threats by Defendants, enjoining Defendants from taking unconstitutional enforcement actions, and enjoining Defendants from entering, altering, and destroying Plaintiffs/the Hadley's Property.

G. On the First, Second, and Third Causes of Action, an Order declaring that any and all environmental statutes must be administered in accordance with constitutional rights including but not limited those guaranteed in the Constitution and Amendments thereto including but not limited to the 1st, 4th, 5th, 6th, 7th, 9th, 10th, and 14th.

H. On the First, Second, and Third Causes of Action, an Order declaring that local and state administrative employees, volunteers, officers, et al., are not vested with criminal or other enforcement authority and civil authority must be in accordance with the rights provided for in the Constitution of the United States of America.

I. On the First, Second, and Third Causes of Action, and Third Causes of Action, an Order or judgment declaring that any individual, or local or state environmental regulatory organization forcing under the color of official right or otherwise attempting to use the color law to force a property owner of real and/or personal property to part with real and personal property rights (including the exclusive use and stewardship thereof) and/or otherwise compelling property owners to give said real and personal property rights to any individual, town, state, and/or third party, including but not limited to consultants, vendors, et al., constitutes a violation of the Hobbs Act and RICO, and as such is expressly preempted thereby.

J. On the First, Second, and Third Causes of Action, an Order directing a stay of proceedings in the Admin Appeal pending resolution of this matter.

K. First, Second, and Third Causes of Action, or, an award of money damages against Defendants in an amount no less than $2,100,000, plus interest thereon, the full amount to be determined following preliminary, limited discovery by Plaintiffs and an amended Complaint subsequent thereto;

L. On the Fourth, Fifth, Sixth, and Seventh Causes of Action, an Order declaring that all deeds forged and/or procured by false pretenses and fraud are void.

M. On the Fourth, Fifth, Sixth, and Seventh Causes of Action, an Order declaring that the chapter 61 liens and other encumbrances located in MA and RI procured or otherwise authorized in furtherance of CCREFS and CSES are void ab initio.

N. On the Fourth, Fifth, Sixth, and Seventh Causes of Action, an Order declaring the deeds, book and page numbers contained herein for property located in MA and RI 'procured' or otherwise authorized in furtherance of CCREFS and CSES are void ab initio.

O. On the Fourth, Fifth, Sixth, and Seventh Causes of Action, an Order enjoining any destruction or development of Plaintiffs/the Hadley's Property during the pendency of this litigation.

P. On the Fourth, Fifth, Sixth, and Seventh Causes of Action, money damages in an amount to be determined in limited preliminary discovery, and at trial but not less than $6,300,000.

Q. On the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Nineth, Tenth, Eleventh, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, Twentieth, Twenty first, Twenty second, Twenty third, Twentyfourth, Twenty fifth, and Twenty sixth Causes of Action reimbursement of all costs, expenses, and attorneys' fees incurred in connection with this action and the Admin Appeal plus interest thereon (and directing such other and further proceedings to determine the amount thereof).

R. On all Causes of Action, an Order for Defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

S. On all Causes of Action, retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court;

T. On all Causes of Action, enter an Order prohibiting any federal and state funds, either directly or indirectly from being used to exercise the right of first refusal to 'purchase' or otherwise 'conserve' property which is subject to ch. 61 liens and located in Westport, MA and Rhode Island during the pendency of this litigation to stop the ongoing real estate fraud scheme, CCREFS, and CSES, et al.

U. On all Causes of Action an Order declaring void all 'titles' to property obtained by forgery, fraud and/or false pretenses located in MA and RI, including but not limited to book and page numbers referenced herein, to be added following an Amended Complaint after initial, limited, perforce discovery.

V. On all Causes of Action, an Order enjoining Defendants from further entering, altering, alienating, destroying, or otherwise encumbering Plaintiffs real and personal property, impairing water quality or authorizing any discharges into said waters, or in any way impacting the quantity of said water, at any time and during the pendency of this litigation.

W. On all Causes of Action, enter a declaratory judgment upholding private property rights of individuals, to quality and unimpeded quantity of water under as decided by the MA Supreme Judicial Court.[23]

[23] In the Watuppa Cases, supra.

A. On all Causes of Action, an Order declaring void all Orders of Conditions granted by Defendants in furtherance of CSES and CCREFS on property owned by Plaintiffs/the Hadley's, including but not limited to parts of the Property located in RI, the full list thereof to be included in an Amended Complaint following preliminary, limited discovery by Plaintiffs.

X. On all Causes of Action, enter an Order enjoining the extortion of money, water, and other property rights by state environmental officials in MA and by Conservation Commissions and their agents, from individuals who are advancing the objectives of the Clean Water Act, et al., and enjoining Defendants from frustrating the intent of Congress by attempting to extort payments from Plaintiffs/the Hadley's and other property owners who are improving and protecting the environment, thereby impeding Plaintiffs and property owners efforts to advance the objects of the Clean Water Act, Civil Rights Act, and defend Constitutional Rights.

Y. On the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Nineth, Tenth, Eleventh, and Twenty sixth Causes of Action, Order Defendants to pay Plaintiffs treble damages of no less than $10,000,000, plus attorneys fees and costs, and such other damages to be further amended following discovery of amounts by which Defendants have been unjustly enriched as a result of their racketeering activities and other related crimes and torts.

Z. On the Seventeenth Cause of Action, an Order directing local and state regulatory officials to uphold constitutional rights,

AA. On the Twenty Second Cause of Action, an Order directing Defendant Town of Westport, Capone, Joncas, and John Doe co-conspirators to remove the historic rock

marker, any culverts and any guardrails located on Plaintiffs/the Hadley's Property at the intersection of Narrow Ave and Sodom Road and surrounding area; or alternatively, awarding Plaintiffs/the Hadley's damages in an amount to be determined at trial, but not less than $2,121,600.

BB. Enter a declaratory judgment recognizing the doctrine of stare decisis as it relates to watersheds located in MA and RI, Order Defendants to cease and desist from any action or inaction which would impair the quality and quantity of the waters; or alternatively Order Defendants to pay Plaintiffs/the Hadley's and other property owners treble damages of no less than $90,000,000 plus attorneys fees and costs, and such other damages to be further amended following discovery and trial if usurpation of water quality and quantity by the Town of Westport and other co-conspirator Defendants is erroneously permitted or converted into a 'takings'; or

CC. Issue an Order prohibiting the use of town tax dollars for Defendants attorney's fees and costs for this litigation.

DD. Issue a permanent injunction and declaratory relief prohibiting Defendants from frustrating the intent of Congress as set forth in Clean Water Act, Civil Rights Act, the Migratory Bird Treaty Act, the Safe Drinking Water Act, the Endangered Species Act, the Pesticides Control Act, the Hobbs Act, the Constitution and amendments in any way, including but not limited to by attempting to extort payments from Plaintiffs/the Hadley's and other property owners acting in furtherance of federal objectives, or in any way impeding Plaintiffs/the Hadley's and other property owners efforts to advance the objects of the aforementioned federal laws.

EE. On all Causes of Action, Grant additional relief in the interest of justice.

Dated this 10th day of May, 2023

May 10, 2023

By their Attorney,

____/s/ Laura A. Hadley___________

Laura A. Hadley, BBO#688047
Attn: Laura A. Hadley, Attorney at Law
One Lincoln
Twenty Fourth Floor/WeWork
Boston, MA 02110
(774) 644-5661
Lauraahadley@gmail.com