JS 44 (Rev. 10/20)                        **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

The Devol Pond Association, a community group and 501(c)(3), The 2021 Hadley Family

### DEFENDANTS

Chris Capone, Paul Joncas, Pamela Wilkinson, Mary Lou Quigley, Brian Tripp, Karen Tripp Martin, Dean Martin, Geraldine Tripp, the

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bristol
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attn: Laura A. Hadley, Attorney at Law

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [x] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

### V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1962; 18 U.S.C. 1951, et al.

Brief description of cause:
Racketeering and Extortion under threats and acts of violence, and under color of state law, et al.

### VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $   90,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER   1873 CV 00907, et al.

DATE   7Aug2023

SIGNATURE OF ATTORNEY OF RECORD
//s/s/ Laura A. Hadley, Esq./ Laura A. Hadley, Esq.s/ Laura A/. Hadley, Esq.

**FOR OFFICE USE ONLY**

| Print | Save As... | Export as FDF | Print | Reset |

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**     **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.     Example:     U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.**     **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

ATTACHMENT 3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_____ The Devol Pond Association, et al., v. Chris Capone,, et al. _____

_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

☐   I.   160, 400, 410, 441, 535, 830*, 835*, 850, 880, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.

☒   II.   110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

☐   III.   120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 485, 490, 510, 530, 540, 550, 555, 560, 625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.

      *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

      YES ☐      NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

      YES ☐      NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

      YES ☐      NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

      YES ☐      NO ☒

7. Do all of the parties  in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).

      YES ☐      NO ☒

   A.   If yes, in which division do all of the non-governmental parties reside?

      Eastern Division ☐      Central Division ☐      Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division ☐      Central Division ☐      Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

      YES ☒      NO ☐

**(PLEASE TYPE OR PRINT)**

**ATTORNEY'S OR PRO SE'S NAME** ____ Laura A. Hadley, Esq. _____

**ADDRESS** ____ One Lincoln, 24th Floor/WeWork, Boston, MA 02110 _____

**TELEPHONE NO.** ____ (774) 644-5661 _____

**EMAIL ADDRESS** _____ lauraahadley@gmail.com _____

1

The Devol Pond Association
2021 Hadley Family Real Estate Trust
c/o Robert C. Hadley and Laura A. Hadley
246 Durfee Street
Fall River, MA 02720
(774) 644-5661


UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF MASSACHUSETTS


| | |
|---|---|
| The Devol Pond Association, a community group and 501(c)(3), The 2021 Hadley Family Real Estate Trust, the Estate of Mimi, the Estate of the late Robert C. Hadley, Jane Does, Robert C. Hadley, individually and as Trustee for the 2021 Hadley Family Real Estate Trust and as personal representative for the Estate of Mimi and the Estate of the late Robert C Hadley, Laura Hadley, individually and as Trustee, for the 2021 Hadley Family Real Estate Trust, and Jana Does. | Case No.: 23-11042<br><br>Second Amended<br><br>Complaint |

                    Plaintiffs,

          vs.

Chris Capone, Paul Joncas, Pamela Wilkinson,
Mary Lou Quigley, Brian Tripp, Karen Tripp
Martin, Dean Martin, Geraldine Tripp, the
Estate of Paul Capone, Cara Romano, Timothy
Mulrooney, Christine Mulrooney, James
Mulrooney, Jennifer Rezendez, Anothy
Ferreira Jr., Mark Ferreira, Estate of Estelle
Ferreira, Deborah Diaz, Rachel Swicker,
Manual and Caroline Ferry, Mark Bartow, Jim
Straub, Jason Powell, Jacob McGuigan, Grace
Greenwood, Philip Weinberg, Kevin Carter,
Burton Bryan, Dani LaFarrier, Hugh E.
McGovern, Michael J. Perry and Elizabeth
Perry, Brenda and Timothy Palmer, Dream
Homes, LLC, Westport Conservation
Commission, Massachusetts Department of

2

Environmental Protection, Massachusetts
Department of Conservation and Recreation,
and John Does,
                    Defendant(s)

　　　:

## I.    INTRODUCTION

INTRODUCTION: VEHICULAR ASSAULT, THREATS OF VIOLENCE, FALSE

IMPRISONMENT AND BULLYING VIA UNLAWFUL AGENCY ACTION TO TRY TO

COVER UP A WEB OF REAL ESTATE FRAUD


The facts in the present litigation are a sordid tale of just how far people will go to try to

prevent the unearthing of an act of inter-family deceit and fraud. In an effort to try to prevent the

disclosure of this underlying deceit and fraud (and the real estate scheme derived from this deceit

and fraud), defendants have attempted to run over plaintiffs with an automobile, trapped

plaintiffs on their own property, threatened to break plaintiff's legs, threatened to kill plaintiffs,

and subjected plaintiffs to unlawful confiscations and bullying via defendants' position on a local

public agency commission. What makes this story particularly sordid is that the fraud and deceit

and subsequent actions were perpetrated by family members against their own cousins.

As set forth below, since 1652 (for more than three-hundred and fifty years) the Hadley family

and their ancestors and predecessors-in-interest have owned properties on Devol Pond

(sometimes known as Lake Poganssett) currently located primarily in the Town of Westport,

Massachusetts on the Rhode Island state line. The Property, where a collection of lakefront

cottages were located, was referred to as "Cozy Camp" and was a place for cousins and family to

gather for vacations and common meals. In the latter part of the 1900s, the Hadley family

property was owned by Robert C. Hadley and his wife Mildred ("Mimi") Hadley. For decades,

2

3

Robert C. Hadley and Mimi Hadley had allowed Elmer Wilkinson to seasonally occupy of the Hadley properties free of charge in exchange for Elmer looking after the Cozy Camp Property. Elmer Wilkson was the husband of one of the nieces of Robert C. Hadley and Mimi Hadley. It was an arrangement "within the family."

To ensure that Elmer Wilkinson's family could have a summer retreat, Robert C. Hadley and Mimi Hadley granted Elmer and Phyllis Wilkinson a life-estate to a portion of the Property measured from an unfixed point, and later a 3,750 square foot 'parcel' also measured from an unfixed point coupled with an oral license, confirming that Elmer and Phyllis Wilkinson and their family could occupy the part of the Property where his cottage was located until he died and that following his death the right of occupancy and title to all other parts of the Property aside from a floating 3,750 square foot parcel would revert back to the Hadley's. As the Hadley's recently discovered, while Mimi and Robert C. Hadley purchased the Property in a series of transactions, Mimi also inherited it. This cooperative family arrangement allowed Elmer Wilkinson and more importantly his wife Phyllis Wilkinson, the late Robert C. Hadley's niece, to live out the rest of their days while providing Phyllis and Elmer's children, and grandchildren access to the summer oasis without rent in a comfortable and familiar place. A beautiful tale of family taking care of family. Elmer Wilkinson died in 2001, and it is leading up to and during the probate proceedings following Elmer's death that the sordid elements of the story begin.

During the probate proceeding following Elmer Wilkinson's death, several of Elmer's heirs and beneficiaries (including defendants Pamela Wilkinson and Christopher Capone) arranged for fraudulent conveyances to be executed which misrepresented that Elmer Wilkinson had been granted "fee title" to the whole Hadleys' Devol Pond Property ("the Property") rather than a "life estate" (allowing for occupancy during Elmer's life but reversion back to the

4

Hadley's upon Elmer's death). Leading up to and during probate, the fraudulently-procured conveyances to Elmer Wilkinson's heirs and beneficiaries were then recorded in the Bristol County Recorder's office. Upon the fraudulently-procured conveyance and recordation, Christopher Capone, Pamela Wilkinson, other beneficiaries of Elmer Wilkinson's estate and co-conspirators Karen Martin and her brother Brian Tripp then subdivided and conveyed the Hadley property to each other and to others and pocketed a handsome profit in doing so.

In short, the heirs and beneficiaries of Elmer Wilkinson's estate and other co-conspirators knowingly subdivided and sold real estate that they did not own and that was owned by the Hadleys.

Events transpired in the 2018-2022 period that lead the Hadley family to begin to learn of the conveyances that had been fraudulently-procured or forged and recorded up to and following Elmer Wilkinson's death and to learn of the subsequent subdivisions and land sales derived from the original fraud. And it was then that the violence and threats and bullying began to try to dissuade the Hadley's from looking into things further.

As detailed below, defendant Pamela Wilkinson told plaintiff Laura Hadley that if she kept looking into things "I'll kill you myself."

As detailed below, defendant Dana LaFarrier told plaintiffs Laura Hadley and her mother Susan Hadley that they "needed to have their f—cking legs broken" for meddling into these real estate issues.

As detailed below, defendant Christopher Capone told Laura Hadley that if she kept investigating things "you'll get what coming to you, and so will he" (referring to Laura Hadley's dog).

5

As detailed below, defendant Christopher Capone used his automobile to block plaintiffs Laura Hadley and her elderly mother Susan Hadley from using the road to drive off their property, taunting them "just try to get out."

As detailed below, after muttering obscenities to Laura Hadley and her family member, defendant Christopher Capone attempted to run Laura Hadley over with his automobile (she was able to jump out of the way to avoid being hit).

In addition, it turns out that defendant Christopher Capone began working as an agent for the Westport Conservation Commission in 2003 and defendant Paul Joncas serves as chair for the Westport Conservation Commission. As detailed below, defendants Christopher Capone and Paul Joncas unlawfully used and continue to use their public positions with the Westport Conservation Commission to harass and bully the Hadleys, by holding secret unnoticed meeting to issue orders to confiscate the Hadleys' personal property (in violation of the Hadleys' constitutional due process rights), trespassing upon the Hadley's property to cut down trees and access their dock on Devol Pond, to approve habitat destruction and development of land by co-conspirators, to actively impede the Devol Pond Associations successful efforts to improve and protect the waters of Devol Pond, and to impose bogus and excessive fines and fees. All of this done to try to keep the pressure on the Hadleys and other members of the Devol Pond Association to back off on trying to improve water quality and to stop the Hadley's from looking into the earlier fraudulent conveyances, subdivisions and land sales leading up to and following Elmer Wilkinson's' death.

The question of ownership of the disputed Property on, in, and around Lake Pogansett can be resolved via a quiet title count (included in this complaint). However, the numerous incidents of intimidation, violence and abuse to try to cover up the original acts of deceit and

6

fraud constitute racketeering, conspiracy, assault, intentional infliction of emotional distress,

abuse of process, and abuse of agency position and require appropriate judicial redress to set

things right.


## II.    THE PARTIES


1.    Plaintiff, the Devol Pond Association, ("DPA") a community group and

501(c)(3), with a mailing address of Attn: Robert Hadley, 246 Durfee St., Fall River, MA 02720.

2.    Plaintiff Robert C. Hadley, ("R. Hadley") individually and in his capacity as

trustee of the 2021 Hadley Family Real Estate Trust with a mailing address of 246 Durfee Street,

Fall River, MA.

3.    Plaintiff the 2021 Hadley Family Real Estate Trust, a Massachusetts Trust, with a

mailing address of Attn: Robert Hadley 246 Durfee Street, Fall River, MA 02720.

4.    Plaintiff the Estate of Mildred M. Hadley ("Estate of Mimi") through its personal

representative Robert C. Hadley having a mailing address of 246 Durfee Street, Fall River, MA

02720.

5.    Plaintiff the Estate of the late Robert C. Hadley ("Estate of late Robert C.

Hadley") through its personal representative Robert C. Hadley having a mailing address of 246

Durfee Street, Fall River, MA 02720.

6.    Plaintiff Laura A. Hadley, ("L. Hadley") individually and in her capacity as a

trustee of the 2021 Hadley Family Real Estate Trust, with a mailing address of P.O. Box 4021,

Westport MA, 02790.

7

7.      Plaintiff Jane Does, members of the DPA with ancient deed chains, including waters, whose identities are known and unknown, members of the Hadley family and beneficiaries of the 2021 Hadley Family Real Estate Trust, whose identities shall remain confidential for their safety; collectively with the DPA, R. Hadley and L. Hadley hereafter referred to as "Plaintiffs/the Hadley's/DPA/Jane Does" or "Plaintiffs/the Hadley's" for simplicity sake.

8.      Plaintiff Jana Does, unknown owners of yet to be ascertained water and land rights, co-owners of the Greater Watuppa Ponds Watersheds whose chains of title also derive from conveyances to the Original Proprietors and ancient deed chains which included littoral and riparian rights, collectively included with other Plaintiffs, hereinafter referred to as "Plaintiffs".

9.      Defendant Christopher Capone ("C. Capone"), an individual, and in his capacity as Westport Conservation Commission Agent and employee of DCR, resides at 49 Doherty Avenue, Somerset, MA.

10.      Defendant Paul Joncas ("P. Joncas"), an individual and in his capacity as Westport Conservation Commission Chair and employee of MassDCR, resides at 11 Sandpiper Drive, Westport, MA.

11.      Defendant Dani LaFarrier ("D. Lafarrier"), an individual, upon information and belief resides at 435 Cherry Street, Fall River, MA.

12.      Defendant Karen Tripp Martin ("K.T. Martin"), individually, in her capacity as a real estate broker or agent, as trustee for the Karen Martin Nominee Trust, u/t/d May 18, 2010, et al., resides at 51 Amory Petty Way, Westport, MA, although the ownership and jurisdiction of the 'parcels' are in question.

7

8

13.     Defendant Dean Martin ("D. Martin"), individually, resides at 51 Amory Petty Way, Westport, MA, although the ownership, size, and jurisdictions of the 'parcels' are in question.

14.     Defendant Brian J. Tripp ("B. Tripp"), an individual, resides at 115 Narrow Ave., Westport, MA, although the ownership, jurisdiction, and size of the parcel are in question.

15.     Defendant Geraldine Tripp ("G. Tripp"), an individual, resides at 187 Narrow Ave., Westport, MA, although the ownership, size, and jurisdiction of the parcel is in question.

16.     Defendant Dream Homes, LLC ("Dream Homes LLC"), a limited liability company, with a registered agent Jose A. Pacheco, with a principal place of business located at 411 Colombia Street, Fall River, MA 02721.

17.     Defendant Pamela Wilkinson ("P. Wilkinson"), an individual, upon information and belief, owns and resides at 540 Weetamoe Street, Fall River, MA.

18.     Defendant Mary Lou Quigley ("M.L. Quigley"), an individual, resides at 955 Almy Road, Somerset, Massachusetts.

19.     The Estate of Paul Capone, ("Estate of P. Capone") an individual recently deceased, who owned and resided at 49 Doherty Avenue, Somerset, MA.

20.     Upon information and belief, Defendant Christine Mulrooney ("C. Mulrooney") owns and resides at 955 Almy Road, Somerset, Massachusetts.

21.     Upon information and belief, Defendant Timothy Mulrooney ("T. Mulrooney") owns and resides at 955 Almy Road, Somerset, Massachusetts.

22.     Upon information and belief, Defendant James Mulrooney ("J. Mulrooney") owns and resides at 53 Touisset Avenue, Swansea, Massachusetts.

9

23.     Upon information and belief, Defendant Cara Romano ("C. Romano") owns resides at 124 Spruce Street, Somerset, Massachusetts.

24.     Upon information and belief, Defendant Jennifer Wilkinson ("J. Wilkinson") resides at 1633 Highland Avenue, Fall River, Massachusetts.

25.     Defendant Hugh McGovern, an individual, and in his capacity as Trustee of McGovern Properties—Westport & Hinsdale Trust u/t/d December 27, 2021, and in his capacity as Trustee of the H&G Realty Trust u/t/d December 15, 1988 (collectively, "H. McGovern") who upon information and belief resides at 82 Kemp Street, Dunstable, MA.

26.     Defendant Michael Perry, ("M. Perry") an individual and in his capacity as Trustee of the Elizabeth Q. Perry Trust -2009, resides at 592 Sodom Road, Westport, MA, although the size and ownership of the 'parcel' is in question.

27.     Defendant Elizabeth Q. Perry, individually and in her capacity as Trustee of the Elizabeth Q Perry Trust –2009, u/t/d July 8, 2009 (collectively "E. Perry"), resides at 592 Sodom Road, Westport, MA, although the size and ownership of this parcel is in question.

28.     Defendant Anothny Ferreira, Jr., ("A. Ferreira") an individual and in his capacity as estate representative, resides at 42 Narrow Ave, Westport, MA 02790 although the size and ownership of this parcel are in question.

29. Defendant Brenda and Timothy Palmer, ("B&T Palmer") are individuals, and upon information and belief reside at 392 North Avenue, Rochester, MA.

30.     Defendant the Estate of Estelle Ferreira, ("Estate of Ferreira") upon information and belief is represented by her children Brenda Palmer and Anthony Ferreira, Jr., named herein.

9

10

31.     Defendant Mark Ferreira, ("M. Ferreira") an individual, upon information and belief resides at 617 Sodom Rd., Westport, MA, although the size and ownership of this parcel are in question.

32.     Defendants Manuel Ferry III and Caroline Ferry, ("M&C Ferry") individuals residing at 132 Narrow Ave., Westport, MA although the size, ownership and jurisdiction of this parcel are in question.

33.     Defendant Deborah Diaz ("D. Diaz"), an individual resides at 1D Narrow Ave., Westport, MA although the size and ownership of this parcel is in question.

34.      Defendant Rachel Swicker ("R. Swicker"), an individual resides at 7 Stage Rd., Deerfield, MA 01373.

35.     Defendant Jason Powell, ("J. Powell") individually and in his capacity as Conservation Commission Member, resides at 878 Pinehill Road, Westport, MA 02790.

36.     Defendant Jacob McGuigan, ("J. McGuigan") individually and in his capacity as Conservation Commission Member, resides at 210 Drift Road, Westport, MA 02790.

37.     Defendant Grace Greenwood, ("G. Greenwood") individually and in her capacity as Conservation Commission Member, resides at 29 Green Street, Westport, MA 02790.

38.     Defendant Philip Weinberg, ("P. Weinberg") individually and in his capacity as Conservation Commission Member, upon information and belief, resides at 1702 Drift Road, Westport, MA 02790.

39.     Defendant Burton Bryan, ("B. Bryan"), individually and in his capacity as Conservation Commission Member, upon information and belief, resides at 64 Peckham Lane, Westport, MA 02790.

11

40.     Defendant Kevin Carter, ("K. Carter") individually and in his capacity as Conservation Commission Member, upon information and belief, resides at 488 Sodom Road, Westport, MA although ownership and size of the parcel is in question.

41.     Defendant, The Town of Westport, is a town located in the Commonwealth of Massachusetts, having its principal place of business at 816 Main Road, Westport, MA 02790.

42.     Defendant, The Westport Conservation Commission, (the "Commission") is a town agency and seven member board appointed by town Selectmen, having its principle place of business at 856 Main Road, Westport, MA 02790.

43.     Defendant Mark Bartow ("M. Bartow") individually and in his capacity as an employee of the Massachusetts Department of Environmental Protection, upon information and belief resides at 12 Grandview Ave. Mattapoisett, MA 02739.

44.     Jim Straub ("J. Straub") individually and in his capacity as an employee of the Massachusetts Department Conservation and Recreation, upon information and belief resides at 20 E. Princeton Road, Princeton, MA 01541.

45.     Massachusetts Department of Environmental Protection, ("MassDEP") Defendant MassDEP is the state agency responsible for ensuring clean air and water, safe management and recycling of solid and hazardous wastes, timely cleanup of hazardous waste sites and spills, and the preservation of wetlands and coastal resources, and for overseeing local Conservation Commissions. MassDEP's headquarters are located at 100 Cambridge St, Suite 900, Boston, Massachusetts, and MassDEP's Southeast Regional Office responsible for 'overseeing' Defendant Westport Conservation Commission, is located at 20 Riverside Drive, Lakeville, MA 02347.

46.     Massachusetts Department of Conservation and Recreation ("MassDCR") is a state agency with its headquarters located at 10 Park Plaza, Suite 6620, Boston, MA 02114.

12

47.     Plaintiffs, John Does 1-20, including specific Selectboard members and, are individuals not yet known, to be added to an Amended Complaint following preliminary, limited, perforce discovery by Plaintiffs in this matter.

### III.     JURISDICTION AND VENUE

48.     This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) as a federal question, 18 U.S.C. § 1952, et seq., and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

49.     This Court has subject matter jurisdiction as this case involves attempted takings claims under the Fifth and Fourteenth Amendments, and intentional deprivation of Plaintiffs/the Hadley's Civil Rights in violation of 42 U.S.C. §§ 1983, and 1988, as they are Constitutional claims.

50.   Venue is proper in this district pursuant to 18 U.S. Code § 1343 because Defendants devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmissions by means of wire, radio, or television communication in interstate or foreign commerce.

51.   This Court has jurisdiction pursuant to 18 U.S. Code § 1343 because Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

52.   Venue is proper in this district pursuant to 28 U.S. Code § 1331 because this action arises under the Constitution, federal law, Clean Water Act, the Migratory Bird

13

Treaty Act of 1918, and involve real property and water rights in Massachusetts and Rhode Island.

53. This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

54. This Court further has personal jurisdiction over Parties under 28 U.S.C. § 1965(b) because any action brought pursuant to RICO statutes may be brought in a U.S. District Court, and the "ends of justice require" it.

55. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

56. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found and/or transacts his affairs in this District given each defendant's participation in the CCREFS Enterprise, and CSES as further described herein.

57. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c)(3) or the alien-venue rule as codified in Federal question: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

IV.     FACTUAL BACKGROUND COMMON TO ALL COUNTS

Overview

58. As already noted above, in late 2020, the Hadley's/Plaintiffs began a comprehensive title search of the family Property, lovingly referred to as "Cozy Camp" and discovered dozens of fraudulent cross-conveyances, forged and wild deed chains, and 'chapter 61 liens', for properties recently discovered to be owned by Plaintiffs/the

14

Hadley's, the full extent of which is still being uncovered and is set forth more fully herein.

59. Plaintiffs/the Hadley's recently discovered P. Wilkinson and M. Quigley's father, the late Elmer Wilkinson, held a life estate only to part of the Property, a 3,750 square foot parcel measured from an unfixed point coupled with an oral license; and while he managed the Property, ownership reverted back to Plaintiffs/the Hadley's upon his death in 2001.

60. P. Wilkinson, M. Quigley, C. Capone and other Defendants described more fully herein began with increasing severity and veracity knowingly, intentionally, and falsely claiming they owned the property, and recording forged and fraudulent deeds, marketing, selling, and encumbering property recently discovered in 2021 to be owned by Plaintiffs/the Hadley's, continue to do so, and also began extortionary acts to obtain other property interests in facilitation of the recently discovered racket CCREFS[1].

61. John Doe co-conspirators and employees at the Bristol County Registry of Deeds ("Registry of Deeds") recorded these forged and fraudulent conveyances knowing they were fraudulent and/or forged.

62. Alternatively, John Doe employees at the Bristol County Registry of Deeds relied on forged deeds, and deeds procured by false pretenses as stated particularly herein and wrongly recorded same, as described more fully herein.

---

[1] The Capone Concom Real Estate Fraud Scheme (hereinafter "CCREFS") is an association in fact.

15

63. Plaintiffs/the Hadley's and, upon information and belief, the Westport Town Assessors Office reasonably relied on these recorded, forged and fraudulent deeds, and the public records regarding ownership which resulted therefrom.

64. Plaintiffs/the Hadley's recently discovered and continue to uncover, Defendants and others began forging and executing, and continue to forge and execute deeds, and record fraudulent and forged deeds and other transactions for property where 'title' is based on deeds obtained by forgery, false pretenses and fraud.

65.  For example, Defendants knowingly made false representations of material fact, intending to induce reliance, and reasonably inducing reliance to obtain title and possession of real and personal property including land and waters Plaintiffs/the Hadley's learned in 2022 is located in both MA and RI.

66. Plaintiffs/the Hadley's recently learned the Property in question has been owned by their family members[2] (the children of the late Mildred M. Hadley, hereinafter "Mimi", and the late Robert C. Hadley, hereinafter "the Late Robert C." referred to as such to avoid confusion with Plaintiff Robert C. Hadley) since at least 1652; other Jane Does and Jana Does including members of the DPA, likewise hold the unique title via ancient deed chains, still in full force and effect.

67. Defendants have been conspiring to wrongfully extort money and obtain title to real property, riparian rights, and other property by forging deeds and chapter 61 applications, making false representations of material fact, intended to induce

---

[2] The children of the late Mildred M. Hadley, hereinafter "Mimi", and the late Robert C. Hadley, hereinafter "the Late Robert C." referred to as such to avoid confusion with Plaintiff Robert C. Hadley.

16

reliance, which Plaintiffs/the Hadley's relied on, and which caused and continues to cause damage to Plaintiffs/the Hadley's.

68. The Property is one undivided whole owned by Plaintiffs/the Hadley's; while the property was never properly subdivided (as previous 'surveys' were based on forged deeds, and other void and voidable conveyances in furtherance of CCREFS, the current tax assessors records show 'parcels' 'owned' by Defendants, which include several tracts of woodlands, wetlands, water, and structures.

69. Plaintiffs/the Hadley's recently discovered the Property was purchased by Plaintiffs' ancestors and other Original Proprietors in 1652 as part of an undivided whole, claimed and purchased by Philip Taber, et al.

70. While Plaintiffs/the Hadley's previously believed the chains of title derived solely from purchases made by Mimi and the late Robert C. beginning in approximately 1938, Plaintiffs/the Hadley's recently learned Mimi, the late Robert C. their children also inherited interests in the property, including remainder interests which vested sequentially, and to which they now hold title via the doctrine of merger.

71. In addition to those parcels purchased in the 1930's and 1940's Plaintiffs/the Hadley's own other portions of the Property as remaindermen, heirs, grantees from Mimi's 1973-1974 deeds, and bone fide purchasers for value based on their subsequent purchase and exercise of rights of first refusal, et al.

72. Defendants have and continue to forge deeds, record void and voidable deeds, and to market, develop, subdivide, and 'sell' 'parcel's' and 'properties' they knew and know to be owned by the Hadley's/Plaintiffs in furtherance of CCREFS located in MA and RI.

17

### Character of property-- how major problems and racket began to take form

73. Two small sections of the Property, measured from an unfixed point, were subject to a life estate in joint tenancy for the life of Elmer Wilkinson, who also acted as property manager, and his wife Phyllis Wilkinson.[3]

74. Title to the Property reverted back to Plaintiffs/the Hadley's following his death June 1, 2001, aside from a 3,750 square foot parcel measured from an unfixed point coupled with an oral license.

75. Other sections of the Property are currently occupied by Defendants K. T. Martin and B. Tripp and others, which Plaintiffs/the Hadley's recently discovered, title to said 'parcels' derives from documents falsely claiming title to property (often described as 'vacant land' or bounded by unknown owners), which if true would purport to convey title, though because interests represented were based on intentionally false statements of material fact regarding ownership, the deeds were forgeries, and as such, void.

76. Other deeds obtained by fraud and false pretenses, and other void and voidable deeds, were based on 'wild deed chains' derived from fraudulent cross-conveyances to large swaths of land owned by other people, often in neighboring jurisdictions hundreds of years earlier.[4]

77. One consistent pattern involves Defendants knowingly and intentionally forging or otherwise preparing documents with knowledge of the falsity of statements regarding ownership contained therein, purporting to 'cross-convey' property to themselves and

---

[3] See, e.g., New Bedford Registry of Deeds Book 936, Page 253-254 and Book 932, Page 153-154.
[4] See, e.g., New Bedford Registry of Deeds Book 547, Page 265 and Book 547, Page 148-149 (forged cross-conveyances purporting to form basis for other void, forged or wild deed chains as further described herein).

18

family members, which Defendants knew they did not and do not own: including but not limited to conveyances found at New Bedford Registry of Deeds Book 1780, Page 185, et seq.; Book 2709, Page 0254; Book 2257, Page 0246, Book 9156, Page 68-69; Book 4808, Page 334-336; Book 885, Page 246, Book 879, Page 469; Book 6659, Page 202-203; Book 1609, Page 830; Book 1606, Page 1184; Book 4597, Page 234-235; Book 264-266;  Book 1539, Page 1186, and many others as described particularly herein.

78. The property is made up of several large tracts of woodlands, wetlands, fields, and water, and now seasonally occupied structures and some full-time residences, collectively the property which true right title and interest belongs to the Hadley family/2021 Hadley Family Real Estate Trust is collectively referred to as "the Property".

79. The portion of the property known and "Cozy Camp" includes a series of cottages located on and near Lake Pogansett[5].

80. The state line between MA and RI runs through the property; both state lines and town lines changed locations and names many times throughout history.

81. Until approximately 2018, everyone who 'stayed' at Cozy Camp was referred to as a 'cousin' and the Property was understood to be for the benefit of the family, and to

---

[5] Lake Pogansett was the name most commonly used in the 17th and 18th century. At some points throughout history, it was collectively referred to as part of the Watuppa Ponds, now separately referred to as Sawdy, Devol, Stafford, North Watuppa, South Watuppa, etc. The ponds in question have also been referred to as Davol Pond, then the Devoll Pond, so-called, the fresh pond, the fresh ponds, Sandy Pond, and most recently Devol Pond and Sawdy Pond.

19

protect the ecosystem and watershed; accordingly, title to the real property, including

'Cozy Camp' and 'structures' thereon, was not regularly or fully examined.[6]

82. Shortly before Elmer Wilkinson died, and after his death, his daughters, Defendants

P. Wilkinson and M. Quigley began making a series of conveyances and assertions

regarding title that were reasonably relied upon by their distant 'cousins'

Plaintiffs/the Hadley's.

83. Elmer Wilkinson died June 1, 2001; his three children, Hadley Wilkinson, M.

Quigley, and P. Wilkinson spent several years 'probating' and contesting Elmer's

estate.

84. During the probate process, Elmer Wilkinson's daughters Defendant P. Wilkinson

and Defendant M. Quigley, made several intentionally false representations about the

ownership of certain 'parcels' to the Hadley's/Plaintiffs, including but not limited to

R. Hadley, his siblings, and Sandra McKenna and Lynn Lott, Frank Hadley's nieces,

and upon information and belief the New Bedford Registry of Deeds and Westport

Assessor's Office.

85. Defendants' P. Wilkinson, M. Quigley, and others repeated false statements that P.

Wilkinson and M. Quigley 'owned half of everything', referring to land at and around

Cozy Camp, was repeated frequently by Defendants over the course of many years

beginning in approximately 2000, and such knowingly false representations were

---

[6] Plaintiffs commenced a comprehensive title review beginning in late 2020, early 2021, the results of which led to the action before this Court. While surveys and other divisions have taken place over the years, most if not all were based on incomplete title searches, or deed chains and title otherwise procured by forged deed chains, fraud or false pretenses and as such are void or voidable, depending on the deed/chain/survey in question; as described more fully herein.

reasonably relied on by the Hadley's/Plaintiffs, and later by the Registry of Deeds and Westport Assessors Office to the detriment of Plaintiffs/the Hadley's.

86. In reliance on Defendants forged deeds, intentional misstatements of material fact, et al., the Hadley's/Plaintiffs were induced to execute deeds 11109/7-10 and 11053/84-86, and others based on false pretenses, were induced to execute same, or otherwise relied on the series of void and voidable subsequent conveyances, facilitated by Defendants in furtherance of CCREFS.

**The Scheme begins to increase in veracity**

87. Unbeknownst to Plaintiffs/the Hadley's until recently, the Wilkinson's--P. Wilkinson and M. Quigley's interest in the real Property located partly in Westport, MA and partly located in RI, on, near, and including Narrow Ave.[7] and parts of Sodom Road terminated on the death of Elmer J. Wilkinson on June 1, 2001.[8]

88. P. Wilkinson and M. Quigley knew at least as of 2001, though likely earlier, that they had no interest in the Property following the death of their father Elmer Wilkinson evidenced by the initial probate inventory of Elmer Wilkinson, submitted under penalty of perjury to the Bristol County Superior Court in 2001 showing the Wilkinsons, specifically the estate of Elmer Wilkinson, did not own land in Westport, MA. See, Bristol County Probate Court docket no. 01P1849-EP.

89. Beginning in at least 2001, P. Wilkinson, M. Quigley, K. T. Martin, C. Capone, P. Capone, B. Tripp, and others began the association-in-fact CCREFS, conspiring to

---

[7] The 'paths' in the area were referred to as 'old road', 'new road', 'that certain road' et al. throughout history; conveyances in the 1970's describe many different 'Narrow Avenues' including but not limited to Narrow Ave (S), Narrow Ave (SE), Narrow Ave (N), Narrow Ave (NE), etc.
[8] See, New Bedford Registry of Deeds Book 932, Page 253-254 and Book 936, Page 153-154, et al.

21

obtain real and personal property by forging deeds, obtaining deeds by false pretenses and fraud, including facilitating and recording same for land and other property which they knew to be owned by Plaintiffs/the Hadley's, which was done intentionally and in furtherance of CCREFS.

90. In furtherance of CCREFS, Defendants, including K. T. Martin and her husband D. Martin and others 'subdivided' and 'sold' several 'parcels' of land based on forged deeds for property she and other co-conspirators knew to be owned by Plaintiffs/the Hadley's, including but not limited preparing and recording or causing to be recorded those found at New Bedford Registry of Deeds Book 6606, Page 7 et seq.; Book 1941, Page 210; Book 3802, Page 135; Book 5288, Page 151; Book 6010, Page 334; Book 7541, Page 161; Book 9073, Page 345; Book 9717, Page 144 and 148; Book 9073, Page 345; Book 11893, Page 207, et al.

91. For example, K.T. Martin's brother and co-conspirator B. Tripp did knowingly and intentionally forge deeds—preparing or causing to be prepared deeds based on false statements of material fact, for 'vacant land' knowingly and intentionally omitting the material fact the property was owned by the Hadley's/Plaintiffs, which he and other co-conspirators knew to be owned by Plaintiffs/the Hadley's, including but not limited preparing and recording or causing to be recorded those found at New Bedford Registry of Deeds Book 1721, Page 343; Book 8489, Page 218; Book 12894, Page 31, et al.

**2003-2004 Forged Deeds**

92. As recently discovered, increasing in veracity in approximately 2003 in furtherance of CCREFS, P. Wilkinson and M. Quigley, K. T. Martin, C. Capone, B. Tripp and

22

others began working together toward the common goal of extorting land, money, and other real and personal property from Plaintiffs/the Hadley's, including making knowingly false representations and/or omissions about the ownership of real property to the Hadley family/Plaintiffs, upon information and belief, the New Bedford Registry of Deeds, the Town of Westport Assessors offices, and possibly others.

93. Several wild deed chains derive from common forged cross-conveyance including but not limited to for example, Wiliam W. Kirby forging cross-conveyances with his family member Albert E. Kirby found at New Bedford Registry of Deeds Book 547, Page 265-266; Book 547, Page 148-149; Book 547, Page 265, et al.; several of the 'parcels' described therein are located partly and some entirely in RI.

94. For example, the late Evelyn Richer and her daughter Rachel Swicker knowingly and intentionally purported to cross-convey land they knew they did not own using void deed chains, measured from unfixed points to two 'parcels' found at New Bedford Registry of Deeds Book 3873, Page 117 et seq.; Book 1737, Page 887, et seq., et al.

95. For example, H. McGovern cross-conveyed with the late Ronald McDougle, and the late Estelle Ferreira, et al. knowingly recorded deeds for land they knew they did not own, found at New Bedford Registry of Deeds Book 1964, Page 779-784; Book 1984, Page 54-57; Book 2814, Page 169-170; Book 8997, Page 173, et seq., et al.

96. Beginning in at least 2003, K. T. Martin conspired with P. Wilkinson, M. Quigley, C. Capone, and John Does, to wrongfully attempt to obtain title to property by preparing false deeds/forgeries, obtaining deeds by false pretenses and fraud, including filing void and voidable deeds in furtherance of CCREFS.

23

97. In reliance on the knowingly false representations made by Defendants in furtherance of CCREFS, beginning in approximately 2004, the Hadley's/Plaintiffs were tricked into permitting M. Quigley, P. Wilkinson and her partner the late Paul Capone (C. Capone's father) and members of the Wilkinson, Tripp and Capone families, et al., to continue managing the Property, and to occupy cottages and structures which are located on Property recently discovered to be owned by Plaintiffs/the Hadley's, notwithstanding Defendants forged and fraudulent deed chains and subdivisions, etc.

98. In 2003 or 2004, C. Capone performed 'field work' for a survey, upon information and belief, purporting to act on behalf of Sitec Inc., which intentionally omitted the the material fact that the Hadley's/Plaintiffs owned the Property, and falsely represented that Capone, and his co-conspirators owned particular 'parcels' including moving lines to the 'parcels', which he knew to be false, in furtherance of CCREFS.

99. C. Capone made knowingly false statements regarding property boundaries, locations and ownership in furtherance of CCREFS in 2003-2004, and continuing thereafter, including representing that his late father, now represented by the Estate of Paul Capone owned "1 K Narrow Ave" and then later representing that the late Paul Capone owned "1 J Narrow Ave.", and intentionally omitting the material fact that neither he nor his father had any valid right, title, or interest to the real Property owned by Plaintiffs/the Hadley's and knowingly omitting the material fact that the 'parcels' described at book, 12034 page, 346-47 was measured from an unfixed point, based on knowingly false cross-conveyances, and that the Capone's were permitted by oral license to stay at Cozy Camp/the Property in the summer.

24

100.    Plaintiffs/the Hadley's and others reasonably relied on the 'survey' prepared by Capone in furtherance of CCREFS and Capone's knowingly false statements of material fact which caused and continues to cause damage.

101.    The late Elmer Wilkinson (P. Wilkinson's father) granted a license to P. Wilkinson's 'fiance' of 50+ years Paul Capone (recently deceased), C. Capone's father, allowing him to seasonally occupy a cottage located on Plaintiffs/the Hadley's Property.

102.    K. T. Martin, her brother B. Tripp, and other co-conspirators began actively conspiring with M. Quigley, Capone, P. Wilkinson, R. Swicker and others in at least 2003 or 2004 to obtain money and title to property by forged deeds, false pretenses, and fraud.

103.    K.T. Martin began working as a real estate broker in approximately 2003.

104.    K.T. Martin and D. Martin recorded deeds to land and other property located in Rhode Island, yet recorded in Massachusetts only by falsifying/forging deeds representing that K.T. Martin and D. Martin owned land which they knew they did not own, and knowingly recorded the falsified/forged deeds including but not limited to Bristol County Massachusetts Registry book 6066, page 7-9 and book 1941, page 210 et seq.[9]

105.    The late Paul Capone (now represented by the Estate of Paul Capone) and his children, including C. Capone, were permitted on Plaintiffs/the Hadley's Property based on an oral license from Elmer Wilkinson to his daughter's fiancé the late Paul

---

[9] A non-exhaustive list of void and voidable deeds is included below.

25

Capone, and later by P. Wilkinson to co-conspirators as part of and in furtherance of CCREFS.

**2004-2006**

106.     C. Capone began working as the Westport Conservation Commission Agent in 2003 or 2004.

107.     On July 13, 2004, the Conservation Commission and upon information and belief Conservation Commission Agent C. Capone, obtained/granted 'interim approval' for a dock license on Plaintiffs/the Hadley's property at 1 Narrow Ave., (NB Registry 7156, Page 50; Dock License Number 10045), extending into Lake Pogansett, sometimes called Devol Pond, showing the property listed as 1J Narrow Ave.[10]

108.     The application for said dock permit showed the 'property' to the west as being owned by Frank Hadley, which is the same 'parcel' P. Wilkinson purported to 'buy' from co-conspirator R. Swicker, based on the knowingly falsified, wild deed chains from cross-conveyances New Bedford Registry Book 1787, Page 887, et seq.

109.     K.T. Martin, at least as of 2003, was involved in or otherwise facilitated changing 'parcel' locations and boundaries in furtherance of CCREFS, knowingly and intentionally, in collusion with other co-conspirator Defendants, including recording or causing to be recorded a deed on March 3, 2003 at New Bedford Registry Book 6066, Page 7-9, for property which she knew to be owned by Plaintiffs/the Hadley's.

---

10 In the 1600's the Ponds on the property were called "Aponagensett" and later "Pogansett" which means 'little lake by the bigger lake' in Wampanoag. There are two ponds in the vicinity which fit this description. In some historical deeds they are called "the fresh pond or ponds"; in others they are called "Pogansett". Later in the conveyances, there arises a distinction between "Davol Pond" and "Sawdy Pond", with a few other names given to the waterbodies. Thereafter (roughly the 1890's) the two ponds start to be referred to as "Sandy Pond", "Watuppa Ponds", and later "the Devoll Pond, so called" and "Sawdy Pond" with more consistency.

26

110.    Upon information and belief, C. Capone, K.T. Martin, B. Tripp, P. Wilkinson, R. Swicker and other co-conspirators began with increasing veracity in 2003 to 'redraw' boundary lines, prepare knowingly wild deed chains from unfixed points, purporting to 'claim' parts of the Property owned by Plaintiffs/the Hadley's/Jane and Jana Does.

111.    K. T. Martin knew neither she nor the Trust she created to conceal her involvement in CCREFS had any valid right, title or interest in the 'parcel' she recorded or caused to be recorded on March 3, 2003.

112.    R. Swicker knew that neither she nor the Trust she created had any valid right, title or interest in the Property, and she purported to 'sell' whatever interest she had in the Property to conceal her involvement in CCREFS to her fellow CCREFS co-conspirators.

113.    C. Capone knew neither he, nor his father Paul Capone, nor his father's fiancé P. Wilkinson had valid title nor any interest in the Property at Cozy Camp and were only permitted to be there because of a license granted by Elmer and later because of Plaintiffs/the Hadley's and others reliance on the forged deeds or deeds obtained by false pretenses, other void 'conveyances' by P. Wilkinson, M. Quigley, R. Swicker, and other co-conspirators of CCREFS.

114.    C. Capone, in his individual capacity and as Agent of the Conservation Commission, in furtherance of CCREFS, made false representations of the ownership and 'location' of the 'parcel' to the Conservation Commission, the Commonwealth of Massachusetts, Massachusetts Department of Environmental Protection, and others in an attempt to obtain 'interim approval' for a dock, to begin a fraudulent attempt to wrongfully obtain an interest in Plaintiffs/the Hadley's property, including part of the

27

pond through extortion, Larceny by Trick and/or Theft by False Pretenses and acting under the color of official right in furtherance of CCREFS.

115.    C. Capone and other co-conspirators intended for the Conservation Commission, the DEP, State of Massachusetts, Westport Assessors Office, and others to rely on forged deeds, and false representation of material fact that he or his family members or co-conspirators had or have any right, title, or interest in Devol Pond, the Watuppa Ponds, Lake Pogansett or Plaintiffs/the Hadley's Property and other property including land and water in MA and RI.

116.    Upon information and belief, some employees at the MA DEP and State of Massachusetts did rely on these falsified deeds, documents procured by false pretenses and fraud, and the knowingly false statements made by C. Capone, his co-conspirators et al., beginning at least as of 2004 in furtherance of CCREFS.

117.    C. Capone knowingly sought, received, and approved this Order of Conditions based on forged deeds, 'conveyances' obtained by false pretenses, and other false representations of material fact; he intended to induce reliance, did induce reliance, and which are causing Plaintiffs/the Hadley's damage, in an attempt to begin extorting a property interest for himself, his family members, co-conspirators, and Defendants, by misusing his official position.

118.    The issuance of the Interim Approval for Dock License no 10045, (recorded at New Bedford Registry 7156, Page 50) caused and is causing Plaintiffs/the Hadley's damage.

119.    C. Capone, and CCREFS co-conspirators are knowingly and wrongfully attempting to extort an interest in Davol Pond (a private pond) for Conservation

28

Commission Agent/Defendant C. Capone, members of his family and co-conspirators, and purporting to extort then 'give' riparian and littoral rights to the Property, including water and land in the pond to himself, Defendant Town of Westport, and other co-conspirators as described more fully herein.

120.    It is unclear which portions of Plaintiffs/the Hadley's Property currently occupied by Capone, K.T. Martin, D. Martin and their co-conspirators are currently in MA or RI, as the state line appears to have 'shifted' in recent years despite no enabling legislation in either MA or RI authorizing the alleged 'shift' in the location of the state line.

121.    CCREFS co-conspirators, including Capone, K.T. Martin, B. Tripp, et al., alleged 'title chains' are based on wild deeds measured from unfixed point based on falsified cross-conveyances by William W. Kirby and Albert E. Kirby, and others; most of these wild deed chains are for land which was and is located in RI, notwithstanding Defendants 'recording' 'parcels' in MA.

122.    The state line changed several times throughout history; a complete discussion to be included in subsequent motions.

123.    Capone, Joncas, and John Doe co-conspirators, in furtherance of CCREFS, used and continue to use their official positions with the Conservation Commission and MassDCR to approve Orders of Conditions, and Chapter 61, 61A and 61B liens on properties for themselves, family members, Defendants, and other co-conspirators in furtherance of CCREFS.

**Continuity of the Acts 2007-2009**

29

124.     On January 7, 2007, B. Tripp and his parents, the late Isaac Tripp and his wife

Defendant G. Tripp, falsified and recorded a deed for "Vacant Land on Narrow Ave."

partly on land "now or formerly owned by Harold Hadley, et ux." [11]

125.     On September 15, 2008, Capone, and other co-conspirators approved an Order of

Conditions[12], Capone in his capacity as Agent for the Westport Conservation

Commission, in furtherance of CCREFS 'allowing' B. Tripp to destroy and 'fill in'

large amounts of wetlands on land B. Tripp, C. Capone, and other co-conspirators

knew and know to be owned by Plaintiffs/the Hadley's.

126.     C. Capone conspired with B. Tripp in furtherance of CCREFS by purporting to

'authorize' B. Tripp to build a house on Plaintiffs/the Hadley's real property in

furtherance of CCREFS. (See DEP file no 080-1741).

127.     B. Tripp, his sister K.T. Martin, C. Capone, his 'stepmother' P. Wilkinson, and

other co-conspirators intentionally forged deeds or otherwise knew the 'deeds' and

Orders of Conditions were falsified or obtained by false pretenses, and knew

representations of the material fact regarding property ownership were false and

intended for Plaintiffs/the Hadley's, and others to rely on their knowingly false

statements.

128.     Upon information and belief, the Commonwealth of MA, some employees of

MassDEP and others reasonably relied on these false statements of material fact and

the Conservation Commission approved the Order of Conditions; or alternatively

---

[11] See Bristol County Southern District Registry Book 8489, Page 218; and for Plaintiffs/the Hadley's controlling deeds see Book, 1678 page, 481-487.
[12] Book 9174, page 103, Order of Conditions number SE80-1741

conspired with C. Capone and others to wrongfully obtain property interests purporting to act under the color of official right and in furtherance of CCREFS.

129.    Until recently, Plaintiffs/the Hadley's reasonably relied on Defendants false statements of material fact regarding ownership of that portion of the Property including land and water contained thereunder currently occupied by B. Tripp, K.T. Martin, D. Martin, B&T Palmer, A. Ferreira, M. Perry, M&C Ferry, H. McGovern, B&T Palmer, et al., which caused and continues to cause Plaintiffs/the Hadley's damage.[13]

130.    Beginning in approximately 2008, Capone and co-conspirator D. Laferrier started cutting down trees and harvesting wood on Plaintiffs/the Hadley's Property, which Plaintiffs/the Hadley's recently discovered they owned.

131.    Plaintiffs/the Hadley's reasonably relied on falsified deeds, conveyances procured by false pretenses, and other fraudulent statements made by co-conspirators of CCREFS including P. Wilkinson, C. Capone, and others including false representations of material facts or omissions of material facts, and Plaintiffs/the Hadley's reasonably relied on these false statements and material omissions, and in reliance thereon, allowed P. Wilkinson, Capone and others to occupy portions of real and personal property owned by the Hadley's/Plaintiffs (hereinafter collectively, 'the Property').

132.    Defendants intended to establish claims to the properties described in the deeds referenced herein via forgery, larceny by trick, false pretenses, extortion, and fraud, in furtherance of CCREFS.

---

[13] See complete list of book and page numbers contained below.

31

133.     Plaintiffs/The Hadley's allowed Defendants to enter the Property and to engage in the activities described herein in reasonable reliance on the falsified deeds, deeds procured by false pretenses and other false statements and material omissions made by Defendants; and as was consistent with the property being a 'harmonious family compound' where property ownership and use was loosely controlled, if at all.

**Probate Chicanery**

134.     Between 2001 and 2008, P. Wilkinson, M. Quigley, and their brother, the late Hadley B. Wilkinson engaged in a contested probate dispute.

135.     During the contentious probate proceedings, Hadley Wilkinson suffered a heart attack and died on March 6, 2008.

136.     On October 4, 2008, the probate matters of Elmer J. Wilkinson, Robert C. Hadley, Mildred M. Hadley, and Harold M. Hadley were mysteriously 'disposed on conversion'.[14]

137.     The same day, P. Wilkinson dismissed a paternity suit against the father of her adult daughter which had been pending in the same probate court since approximately 1986.

138.     Frank B. Hadley was the sole surviving executor for the Estates of Mildred M. Hadley and the late Robert C. Hadley following the death of his brother Harold in 1999.

---

[14] See Bristol County Probate Record nos.BR93P1693-E1, BR14P1980EA, BR00P0276, and 108892 in 2003; probates were required to contain final recordings as of this date, yet these probate records are incomplete or otherwise require further discovery and subpoenas to obtain final accountings for these matters, documents for which appear to be 'missing' in Bristol County Superior Court Probate Records.

32

139.    Upon information and belief, Frank B. Hadley was not aware of or included in these probate proceedings.

140.    Upon information and belief, no other members of the Hadley family/Plaintiffs were aware of these proceedings nor were they consulted regarding the 'disposal' of these estates.

141.    None of the Hadley's estates contained final accountings, although they were required in October 2008.

**2009**

142.    Bank of America, NA was approved as Trustee of the Elmer Wilkinson Trust (EJW Trust) on May 22, 2009.

143.    On October 28, 2009 Bank of America NA issued a fiduciary deed recorded at NB Registry Book 9551, Page 234 to a 3,750 square foot 'parcel' purporting to be located in Westport on the Property, measured from an unfixed point coupled with an oral license to keep a small seasonal structure on the Property recently discovered to be owned solely by Plaintiffs/the Hadley's because title to a portion of the Property had previously been subject to the life estate for Elmer Wilkinson and reverted back to the Hadley's/Plaintiffs upon his death.

144.    Increasing in frequency an severity in 2009, Defendant K. T. Martin, her husband D. Martin, and others made knowingly made false statements to Plaintiffs/the Hadley's, the Bristol County Registry of Deeds, and the Westport Assessors Office, and likely others, regarding the ownership of 'the Indian Trail'—land and water located west of the cottages, and surrounding land, located on the Property.

33

145.   Upon information and belief, this land and water is located partly, if not entirely in RI.

146.    K.T. Martin and D. Martin intended for Plaintiffs/the Hadley's, and upon information and belief the Town Assessors Office, the Bristol County Registry of Deeds and others to rely on these false statements of material fact and omissions of material facts.

147.   Plaintiffs/the Hadley's reasonably relied on D. Martin and K. T. Martin's false statements and suffered and continue to suffer damages as a result.

**2013-2014 Schemes Continue**

148.   In early 2013, Mary Hadley (Widow of Frank's brother Harold) died.

149.   On March 25, 2014, P. Wilkinson and M. Quigley knowingly falsified and recorded a 'conveyance' at NB Registry Book 111053, Page 81 to M. Quigley for Life, for a 'parcel' purported to be located on the Property.

150.   P. Wilkinson and M. Quigley knew they did not have valid title for this 'parcel' and that the deeds falsely represented they owned the 'parcel'.

151.   P. Wilkinson knowingly and falsely represented to Plaintiffs/the Hadley's, and specific members of the Hadley family, including Lynn Lott and Sandy McKenna (issue of Mimi's late son Harold, Frank Hadley's nieces) that while probating Elmer J. Wilkinson's estate, they 'paid lots of money to lawyers' to thoroughly review title chains to determine the ownership of the Property.

152.   P. Wilkinson and M. Quigley falsely and knowingly claimed ownership of one half of the entire 'Property', including one half of "the Red Cottage" and one half of

34

"the Green Cottage" and demanded Sandy and Lynn convey the 'Red Cottage' to them outright.

153.    P. Wilkinson, M.L. Quigley, made these knowingly false statements, intending the Hadley's/Plaintiffs to rely on these knowingly false statements and the Hadley's/Plaintiffs did reasonably rely on these false statements.

154.    On April 14, 2014, P. Wilkinson and M. Quigley falsified, and recorded or caused to be recorded a deed at Bristol County Registry Book 11053, Page 84-5 purporting to grant to P. Wilkinson for Life, a parcel they falsely claimed included the "Red Cottage" and the "Green Cottage", along with an interest in the 'whole, large parcel'; the description of the Property was, again, measured from an unfixed point.

155.    Neither P. Wilkinson nor M. Quigley had any valid right title or interest in the 'parcel', sometimes referred to as '11A' and knew they did not have any valid right, title, or interest in the Property.

156.    On June 30, 2014, members of the Hadley family, including but not limited to Lynn Lott and Sandy McKenna (Frank Hadley's nieces and Harold Hadley's daughters), in reliance on P. Wilkinson and M. Quigley's knowingly false statements, (and upon information and belief because Sandy and Lynn wanted to 'protect' the "Red Cottage" which they had made improvements on) were induced to execute by false pretenses, a conveyance of Property which they believed to be the "Green Cottage" to P. Wilkinson and M. Quigley as a 'concession', so P. Wilkinson and M. L. Quigley would not 'take' the "Red Cottage".

157.    Sandy McKenna and Lynn Lott—Harold M. Hadley's daughters and Frank Hadley's nieces-- relied on P. Wilkinson and M. Quigley's knowingly false

35

statements and conveyed half of 'a parcel' to their third cousins, Defendant P. Wilkinson and M. L. Quigley, for 'love and affection' on June 24, 2014, recorded at NB Registry Book 11109, Page 3, who in turn 'conveyed' whatever interest they had in another 'parcel' (which was a falsified deed and no valid right, title or interest) to Sandy McKenna and Lynn Lott, recorded at NB Registry Book 11109, Page 7.

158.     In 2014, Michael S. Perry purported to 'purchase' for $10, execute and record as New Bedford Registry Book 11176, Page 103-104, more than 150 acres of property recently discovered to be located on Plaintiffs/the Hadley's Property based on their historic deed chain and the doctrine of merger.

159.    M. Perry knew he did not have valid right title, or interest in the 'parcel'.

160.    During the same time, several other void and voidable deeds were executed and recorded fraudulently, a non-exhaustive list of which is contained below.

**The rackets continue 2016-2018**

161.    On February 3, 2016, Capone endorsed approval for, and members of the Commission including upon information and belief, P. Joncas, approved another Order of Conditions for B. Tripp to fill in and otherwise destroy more wetlands to build a garage on land Capone, Joncas, B. Tripp, and others knew to be located on Plaintiffs/the Hadley's property in furtherance of CCREFS. (See DEP file no 080-2230).

162.    B. Tripp, C. Capone, G. Tripp, and K.T. Martin knowingly concealed and failed to make known that neither B. Tripp nor his sister K.T. Martin, nor his mother G. Tripp had any right, title or interest in the Property; made knowingly false statements, intentionally, with full knowledge of the falsity of their statements regarding the

36

‘vacant’ land owned by Plaintiffs/the Hadley’s which they and other CCREFS co-conspirators were and are attempting to wrongfully obtain in furtherance of CCREFS.

163.     Upon information and belief, no approvals were obtained as required by Section 404 of the Clean Water Act.

164.     C. Capone, P. Joncas, B. Tripp, and John Doe co-conspirators have been and continue to conspire to seek approval for, recommend for approval, approve and obtain Orders of Conditions and misuse the color of official right in an effort to wrongfully obtain Property belonging to Plaintiffs/the Hadley’s in furtherance of CCREFS, which they know to be owned by the Hadley’s/Plaintiffs, through extortion, fraud, larceny by trick, false pretenses in furtherance of CCREFS.

**2018**

165.     In approximately 2018, R. Hadley, in reasonable reliance on Defendants knowingly false representations of material facts and resultant false title records, looked into selling a portion of the Property on behalf of his father, Frank B. Hadley.

166.     Plaintiffs/the Hadley’s, including R. Hadley, and upon information and belief the Registry of Deeds reasonably relied on Defendants, particularly K.T. Martin, C. Capone, P. Wilkinson and M. L. Quigley’s knowingly false statements of the material fact of property ownership and boundaries, Capone’s ‘survey’, and the falsified void and voidable deeds Defendants prepared or caused to be prepared with co-conspirators in furtherance of CCREFS, and property records which resulted therefrom.

37

167.    Plaintiffs/the Hadley's reliance on the false statements of material facts made by

Defendants and co-conspirators of CCREFS caused and continue to cause

Plaintiffs/the Hadley's damage as further described herein.

168.    R. Hadley/Plaintiffs/the Hadley's, P. Wilkinson and M. L. Quigley retained K. T.

Martin to serve as their real estate broker to market and potentially sell part of the

Property in 2018.

169.    K. T. Martin owed a fiduciary duty to Plaintiffs/the Hadley's.

170.    K.T. Martin knew Plaintiffs/the Hadley's owned the real property occupied by

her, her brother and co-conspirator B. Tripp, her mother and co-conspirator G. Tripp,

and other co-conspirators of CCREFS.

171.    K.T. Martin made false statements regarding property ownership of 'the

cornfield' located on the Property) or otherwise intentionally omitted material

information regarding ownership of this 'portion' of Plaintiffs/the Hadley's Property

beginning with increasing veracity in 2018.

172.    K.T. Martin and P. Wilkinson knowingly concealed information that the

Hadley's/Plaintiffs were the sole owners of the Property, and concealment of this

material information was done knowingly and in furtherance of CCREFS.

173.    K. T. Martin breached her fiduciary duty to Plaintiffs/the Hadley's by marketing

and selling property she knew to be owned exclusively by Plaintiffs/the Hadley's and

giving part of the proceeds therefrom to co-conspirators P. Wilkinson and M.L.

Quigley.

174.    K. T. Martin's breech caused and is causing Plaintiffs/the Hadley's damage.

38

175.    K.T. Martin's fraudulent statements and material omissions caused and continue to cause Plaintiffs/the Hadley's damage.

176.    In 2018, Plaintiffs/the Hadley's, P. Wilkinson, and M. L. Quigley conveyed two parcels of land, recorded at NB Registry Book 12403, Page 98, and Book 12399, Page 104.

177.    P. Wilkinson and M. L. Quigley falsified deeds and made false representations of material fact regarding ownership of the property, which Plaintiffs/the Hadley's reasonably relied on.

178.    For example, P. Wilkinson and M.L. Quigley claimed ownership of 'half of everything' based on a deed recorded at NB Registry book 972, page 172, and intentionally and knowingly omitted the life estate limitations incorporated therein recorded at NB Registry Book 936, Page 252-253 and Book 932, Page 153-154, and intentionally omitting the land explicitly excepted from the conveyance.

179.    P. Wilkinson and M. L. Quigley were unjustly enriched by receiving approximately $150,000 from the proceeds of the sale of land which they knew to be owned exclusively by Plaintiffs/the Hadley's.

180.    K.T. Martin wrongly received monies in commission, and likely other 'kickbacks' in the form of monetary payments to her, the exact amount of which shall be uncovered in perforce initial, limited discovery by Plaintiffs as provided by the RICO statutes and caselaw, for K.T. Martin facilitating the sale of 'parcels' in furtherance of CCREFS, and in breach of K. T. Martins fiduciary duty owed to Plaintiffs/the Hadley's and in furtherance of CCREFS.

39

**Capone, Joncas, Town, and Conservation Commission members begin extorting money and property, and misusing insurance liability coverage to defend the Admin Appeal and Capone, Joncas, and CCREFS.**

181.    In the Spring of 2018, L. Hadley spent $3,684.85 procuring materials and

construction labor to build five phytoremediation floats, also known as floating

treatment wetlands, an EPA approved best management practice for mitigating

eutrophication in waterbodies, including remediating toxic cyanobacteria blooms

which were endangering Plaintiffs/the Hadley's/DPA members/Jane Does' health and

safety, and which pose a significant danger to humans and animals, more generally.

182.    In the Summer of 2018, L. Hadley temporarily floated five floats attached to

'Mimi's dock' and the buoy where 'the Raft' is floating during summer months.

183.    On July 24, 2018, in reliance on knowingly false statements regarding ownership

made by K.T. Martin, B. Tripp, P. Wilkinson, M.L. Quigley, C. Capone, and John

Does/other co-conspirators, L. Hadley contacted K.T. Martin to ask for B. Tripp's

contact information or alternatively, to see if K. T. Martin could ask her brother (B.

Tripp) for permission to put a float in the small pond which feeds into Devol Pond.

184.    The small pond in question is located on the Property recently discovered to be

owned by the Hadley's/Plaintiffs, at the time thought to be owned by B. Tripp as a

result of reasonable reliance on the falsified deeds, and fraudulent representations

made by K. T. Martin, B. Tripp, et al., and the approvals/Orders of Conditions

granted  by C. Capone and Joncas under the color of law in furtherance of the

CCREFS.

185.    In 2018, Plaintiffs/the Hadley's were unaware of the falsified deeds and were

unaware they owned the Property, including the small pond.

40

186.    In a text message on July 25, 2018, using interstate wires in furtherance of CCREFS, K. T. Martin informed L. Hadley that she spoke with B. Tripp and he would review the literature L. Hadley provided K. T. Martin and circle back.

187.    Upon information and belief, K.T. Martin and B. Tripp contacted co-conspirator P. Joncas and C. Capone to request they 'take action' against Plaintiffs/the Hadley's in furtherance of CCREFS.

188.    On August 1, 2018, C. Capone began contacting via phone and interstate wires/email the DEP, DCR (the Massachusetts Department of Conservation and Recreation, his other employer as Plaintiffs/the Hadley's recently discovered), and EEA (Environmental Enforcement Authority) seeking 'enforcement authority', to impose fines, and take 'other action' against Plaintiffs/the Hadley's based on 'anonymous complaints' in furtherance of CCREFS.

189.    Capone attempted to, did, and continues to act under the color of official right to take money, water rights, and other real and personal property for himself and other co-conspirators from the Hadley's/Plaintiffs in furtherance of CCREFS.

190.    Between August 1, 2018 and August 6, 2018, C. Capone, purporting to act in his official capacity, and an environmental police officer, trespassed on the Property entered 1 Narrow Ave., passing through the large gate, down the ½ mile private Lane, and passing onto the private pond, recently discovered to be owned by the Hadley's/Plaintiffs and others to 'investigate' the 'anonymous complaints' and to 'search' for a potential permit violation, in furtherance of CCREFS.

41

191.    During the August 2018 email exchanges, using interstate wires, C. Capone sought permission from the Commonwealth and DEP to levy fines and fees against Plaintiffs/ "the Hadley family".

192.    Between at least August 1, 2018 through October 1, 2018, C. Capone made knowingly false statements of material fact using interstate wires alleging Plaintiffs/the Hadley's planted hydrilla in the 'very private' pond despite having no proof or other basis for the specious, unfounded allegations.[15]

193.    Upon information and belief, C. Capone has been and continues to seed, spread or otherwise allow the highly invasive hydrilla to spread in the Pond in furtherance of CCREFS.

194.    Upon information and belief, C. Capone has used and continues to use interstate wires in furtherance of CCREFS in an attempt to wrongfully extort monies from the Hadley's/Plaintiffs by making knowingly false allegations that Plaintiffs/the Hadley's planted the invasive species (which they did not).

195.    Plaintiffs require limited, preliminary discovery of Defendants, particularly Capone's email records to date, prior to filing an amended Complaint.

196.    Capone and other co-conspirators attempted to obtain 'permission' to wrongfully levy fines against Plaintiffs/the Hadley's in furtherance of CCREFS while purporting to act under the color of official right in interstate email communications between August 1, 2018 and October 1, 2018.

---

[15] Hydrilla is a highly invasive species listed on the federal noxious weeds list.

42

197.    At no time between August 1 and August 7, 2018 did Capone, Joncas, or any member of the Conservation Commission, DEP, or DCR contact Plaintiffs/the Hadley's.

198.    Capone, Joncas and others acting under the color of official right, did intentionally conspire to violate the Civil Rights Act, et al., did deny and continue to deny Plaintiffs/the Hadley's civil rights purporting to act under the color of official right, as part of and in furtherance of CCREFS, attempting to extort money, and property interests, including seeking to obtain an interest in the Pond, Lane, etc.

199.    On August 6, 2018, L. Hadley followed up via text with K. T. Martin to see if she had spoken with her brother and co-conspirator in CCREFS, B. Tripp.

200.    On August 6, 2018, Capone used interstate wires to send an email to state officials in furtherance of CCREFS, saying that he would "be removing the floats on [his] own (this week)." See Administrative Record in, e.g., 2022-P-0091.

201.    On August 6, 2018, Capone was informed via email from state officials, "unfortunately we do not have ENFORCEMENT powers."

202.    On the morning of August 8, 2018, Capone was forwarded an email from co-conspirator M. Bartow and J. Straub containing an email from personnel at DCR to DEP advising Capone and the Commission that the 'plants were native' (and as such did not require a permit and was not a 'fineable offense') and directing Capone and the Conservation Commission to "work with owners".

203.    On August 8, 2018, co-conspirator P. Joncas executed/signed an Enforcement Order ("EO#1") directing Plaintiffs/the Hadley's to cease and desist from improving water quality in their private pond.

42

43

204.   P. Joncas did not provide Plaintiffs/the Hadley's with a copy of EO#1.

205.   On August 8, 2018, Capone entered Plaintiffs/the Hadley's real Property located
at and near 1 Narrow Ave., drove along the ½ mile Lane on Plaintiffs/the Hadley's
private Property, and crossed over the Hadley's/Plaintiffs private Boat Ramp to
wrongfully seize and destroy L. Hadley's personal property located on their private
dock.

206.   On or about August 8, 2018, Capone seized and destroyed L. Hadley's personal
property and disposed of it in the Town dumpster at the Highway Department.

207.   Capone purported to act under the color of official right by entering the Lane, and
the land and waters owned by Plaintiffs/the Hadley's, and seizing and destroying
personal property owned by L. Hadley.

208.   On August 9, 2018, R. Hadley received an email which Agent and Defendant C.
Capone sent using interstate wires in furtherance of CCREFS. See, e.g., 2022-P-0091.

209.   In the email, Capone purported to explain, "I as Conservation Commission for the
town of Westport has been given authority [to enter, seize and destroy property]".

210.   Capone intentionally made this false statements of material facts via interstate
wires, which he knew to be false, in furtherance of CCREFS while purporting to act
under the guise of the color of law.

211.   Capone, knowingly and intentionally in furtherance of CCREFS omitted the
material fact that he had been informed on August 6, 2018 that neither he nor the
Conservation Commission had 'enforcement' authority when emailing R. Hadley a
copy of the Enforcement Order, and informing him of Capone's extortionary acts
committed under the guise of the color of official right.

43

44

212.    On August 9, 2018, R. Hadley forwarded the email to his daughter, L. Hadley, and upon receiving the email and EO#1, she traveled to the Westport Highway Department to retrieve her property, which she eventually found, broken, in pieces in the town dumpster.

213.    On August 14, 2018, Defendant Conservation Commission through its members, Defendants P. Joncas, P. Weinberg, B. Bryan, J. Powell and C. Capone knowingly and wrongfully held a Ratification Hearing and unanimously ratified EO#1 and Capone's trespass, and seizure and destruction of property, in furtherance of CCREFS and intentionally violating the Civil Rights Act, et al., by denying Plaintiffs/the Hadley's constitutional rights including but not limited to due process and equal protection guaranteed under the 4th and 14th amendment, et al., in furtherance of CCREFS.

214.    Plaintiffs/the Hadley's were not notified of the August 14, 2018 Ratification Hearing.

215.    On September 25, 2018, October 9, 2018, and October 23, 2018, L. Hadley, acting on behalf of herself and Plaintiff the Devol Pond Association ("DPA") attended Conservation Commission hearings requesting the Conservation Commission remove the EO#1.

216.    Defendants knowingly and intentionally violated the Civil Rights Act by denying Plaintiffs/the Hadley's civil rights guaranteed under the United States Constitution at the 2018 hearings and continuing to date, which are likely to continue absent judicial intervention and redress.

45

217.    As a condition for removing or otherwise setting aside EO#1, and as Plaintiffs/the

Hadley's recently discovered in furtherance of CCREFS, Capone and co-conspirators

including P. Joncas and other members of the Commission emailed and verbally

demanded at meetings in August through October of 2018, that Plaintiffs/the

Hadley's make monetary payments to Capone for 'Defendant Town' and 'the state'

(referring to the Commonwealth of Massachusetts and DEP).

218.    Plaintiffs/the Hadley's were wrongfully compelled to make and did make these

monetary payments to Defendants as a result of threats made by Defendants acting

under the color of official right.

219.    In the fall of 2018, Plaintiffs/the Hadley's were unaware that their chains of title

to the Property extended from the 1600's to date.

220.    On October 8, 2018, L. Hadley and R. Hadley filed the initial Complaint in the

Admin Appeal seeking certiorari review under G.L. 249 § 4, damages and attorneys

fees for the tortious, unconstitutional actions of C. Capone, Conservation Chair and

co-conspirator P. Joncas, and the Conservation Commission through its individual

members on August 8th and August 14th, 2018.

221.    On October 23, 2018, after wrongfully forcing Plaintiffs/the Hadley's to part with

their personal property/money, Defendant Commission through its members lifted

EO#1 and issued an (unnecessary) Order of Conditions to L. Hadley acting on behalf

of the DPA.

222.    The Order of Conditions authorized Plaintiffs/the Hadley's/DPA to continue

improving the water quality of their private pond.

182.

46

In November 2018, Plaintiffs served Defendants with a Complaint in Bristol County Superior Court no. 1873CV00907.

**The rackets continue in 2019 and increase in severity.**

183.    In the Spring of 2019, in reliance on knowingly false representations of material fact made by Capone, and wrongfully compelled to do so by Defendants' threats of reprisal under the color of official right, paid $200 not owed to Defendants, seeking to obtain an extension for the unnecessary Order of Conditions, which Defendants wrongfully required payment for as a condition of lifting EO#1.

184. On May 28, 2019, L. Hadley, acting on behalf of herself and the DPA attended a Conservation Commission hearing requesting an extension of the Order of Conditions wrongfully required by Defendant Commission, issued on October 23, 2018.

185. On May 28, 2019, Defendant Commission through its individual, members, intentionally denied Plaintiffs/the Hadley's and the Devol Pond Association members civil rights guaranteed under the United States Constitution and retaliated against Plaintiffs exercise of Free Speech, et al.

186. At the meeting on May 28, 2019, J. Powell (assistant chair for the Commission) noted, 'because of the lawsuit you filed . . .' that Defendants would wrongfully require further monetary payments to a third party 'consultant' while acting under the guise of the color of official right.

187. Defendants knowingly retaliated against Plaintiffs/the Hadley's for seeking judicial relief in the Admin Appeal, and continued their extortionary and unconstitutional customs and practices by refusing to grant an extension of the unnecessary Order of

47

Conditions unless further monetary payments were made by the Devol Pond Association/Plaintiffs/the Hadley's.

188. On May 28, 2019, the Commission through its individual members, acting under the color of official right, explained to Plaintiffs/the Hadley's that the only way the Commission would 'grant' an extension for the unnecessary Order of Conditions would be if the Hadley's/Plaintiffs/DPA made monetary payments in the form of a retainer fee and uncapped hourly fee to a consultant to 'oversee' the project.

189. In early June, 2019, L. Hadley attended a Watuppa Water Board meeting, and met with personnel from the neighboring City of Fall River Water Department; the City of Fall River and Watuppa Water Board generously offered to 'monitor' the remediation floats at no cost.

190. On June 25, 2019, the Commission refused to grant the DPA/Plaintiffs an extension with City of Fall River Water Department 'oversight', and instead required as a condition for 'granting an extension' of the Order of Conditions the DPA[16] to pay "their guy" – Ecosystem Solutions LLC, specifically the owner and sole member Mr. Brandon Fanauf, for the LLC located in Warwick, Rhode Island.

191. L. Hadley, acting on behalf of the DPA, et al., appealed the decision to the DEP.

192. The DEP denied the appeal.

193. At the time, Plaintiffs/the Hadley's were unaware of their ancient deed chains, which included 'water' as part of the property conveyances, nor were they aware of the unique jurisdictional issues caused by the changing MA/RI state line.

---

[16] The Devol Pond Association is environmental non-profit, community group, with no funding, whose sole purpose for existing is protect the water and environment--ie to do the job Defendant Capone, the Commission, Town, and DEP are failing to do...

48

194. On July 9, 2019, Laura Hadley observed and documented a cyanobacteria bloom in Devol Pond and requested an emergency certification and approval pursuant to 310 CMR 10.06(5).

195. The Commission refused and Commission member J. Powell on behalf of the Commission and in furtherance of CCREFS used interstate wires to send an email on July 10, 2019 wrongfully demanding monetary payments to be made by Plaintiffs to 'Ecosystem Solutions, LLC' the single member consulting company based in Warwick, RI.

196. L. Hadley, individually and on behalf of the DPA, then cross-checked the language of the state statutes, and determined an Order of Conditions was not required.

197. L. Hadley temporarily placed 'window boxes' with holes cut in the sides containing the non-invasive, USDA white-listed plants on the shore of the pond, on and in Plaintiffs/the Hadley's private property.

198. The cyanobacteria bloom quickly dissipated and the water quality improved.

199. At the time, the Hadley's/Plaintiffs were unaware that they owned water rights and parts of the land and pond, and that Defendants had wrongfully prepared and recorded falsified and fraudulent deed chains.

200. Plaintiffs/the Hadley's were unaware that dozens of 'parcels' to Property owned by Plaintiffs/the Hadley's showed record title belonging to Defendants and that said 'title chains' were procured by forged and falsified deeds, and conveyances obtained by false pretenses, fraud, and extortion.

49

201. In early August 2019, in furtherance of CCREFS, Defendant and co-conspirator P. Wilkinson spoke with L. Hadley and threatened that L. Hadley, "had better stop with the float nonsense and leave Chris [Capone] alone, or I'll kill you myself".

202. On August 27, 2019, the Commission issued another Enforcement Order ("EO#2") against 'Laura Hadley, Devol Pond Association'.

203. L. Hadley/DPA/Plaintiffs removed the temporary boxes because of the threat made by Defendants issuing EO#2 under the color of official right.

204. Following removal in response to EO#2, Plaintiffs/the Hadley's measured the temporary mitigation efforts which had been improving the water quality using the EPA approved best management practices including *chrysopogan zizaniodes*—a non-invasive plant 'white listed' by the USDA as safe and effective for phytoremediation—test results of biomass showed that Plaintiffs/DPA removed approximately 30 grams of phosphorus and approximately 90 grams of nitrogen dissolved in the water column, mitigating the toxic cyanobacteria bloom which threatened the health and safety of Plaintiffs/the Hadley's and their family (including children and pets).

205. The Commission, its individual members and co-conspirators of CCREFS actively prevented Plaintiffs/DPA from improving their water quality unless Plaintiffs/DPA made the wrongfully demanded payments to the single member LLC in RI.

206. The Commission lifted EO#2 shortly thereafter.

207. John Doe Commission members affirmed the ongoing racket CCREFS and ongoing scheme to deny Plaintiffs/the Hadley's civil rights during a Conservation

50

Commission Meeting in late 2019 by stating something to the effect of, 'there is always next year'.

**The Pattern of Racketeering Continues in 2020 and Plaintiffs/the Hadley's begin to discover the real estate and water fraud and extortion schemes.**

208. On July 12, 2020, Judge McGuire of the Bristol County Superior Court of Massachusetts issued three Orders, which were upheld by Justice Handlin of the Massachusetts Appeals Court in September of 2020.

209. Order 25, held Defendant Town and Defendant Commission liable to Plaintiffs R. Hadley and L. Hadley for civil rights violations and awarded attorney's fees in the amount of $73,955 in accordance with 42 U.S.C. §§ 1983 and 1988.

210. Order 25 also held Capone personally liable for conversion, noted the unique jurisdiction of the Watuppa Ponds and surrounding lands and held the temporary phytoremediation floats improving water quality did not constitute an activity under 310 CMR 10.00, et seq., and as such did not require an Order of Conditions.

211. In late July 2020, L. Hadley temporarily floated the phytoremediation floats with non-invasive USDA 'white-listed' plants affixed thereto in the pond, and again toxic cyanobacteria blooms dissipated and water quality improved.

212. In the fall of 2020, L. Hadley/Plaintiffs removed the temporary floats and measured the biomass growth delta to determine the amount of nutrients removed.

213. In late 2020 and continuing to the Spring of 2021, Plaintiffs/the Hadley's began a comprehensive title review, working in concentric circles outward.

214. The Hadley's/Plaintiffs are still discovering the full extent of the falsified deeds, conveyances procured by false pretenses, and other fraudulent deed chains for land and water owned by Plaintiffs/the Hadley's/DPA members/Jane and Jana Does,

51

located in MA and RI, and damages caused thereby, and require preliminary

discovery in this case and the ability to amend this Complaint, because Defendants

are in exclusive control and possession of evidence including but not limited to

emails, MA Ch. 61 program applications and signoffs, and financial information.

**2021**

215. In early 2021, the Hadley's/Plaintiffs began to first discover the fraud, that

Defendants including Capone, H. McGovern, P. Wilkinson, M.L. Quigley, B. Tripp,

K. T. Martin, P. Joncas, M. Perry, M. Ferry, B.&T. Palmer, New Bedford Registry

John Does, and other John Does (to be added following requisite initial discovery)

are and have prepared and recorded forged deeds for land and water on MA and RI,

obtained conveyances by false pretenses, and are actively facilitating fraudulent real

estate conveyances in furtherance of CCREFS, seeking to obtain title to land and

money based on false statements, knowingly made, intended to induce reliance, did

induce reliance and continue to cause damage.

216. In January 2021, Plaintiffs R. Hadley and L. Hadley filed a motion in the Admin

Appeal indicating that Plaintiffs/the Hadley's conducted a title search.

217. One week later, on February 2, 2021, K. T. Martin, purporting to act as Plaintiffs/the

Hadley's real estate broker, and in breech of her fiduciary duties, used interstate

wires to notify Plaintiffs/the Hadley's and others of an 'offer' to buy some of

Plaintiffs/the Hadley's land on behalf of "Dream Homes LLC".

218.    In Section 9 of the 'offer', K. T. Martin notes, "The Selling broker has an

ownership interest in Dream Homes LLC".

52

219.    In February of 2021, K.T. Martin used interstate wires to call R. Hadley and offered to pay him $5,000 in cash if he, at the time on behalf of his father Frank, immediately accepted the 'offer' by her company Dream Homes LLC.

220. In April 2021, P. Wilkinson through an attorney sent Plaintiffs/the Hadley's a letter threatening partition of 'the property', title to which was obtained by forgery, false pretenses, and/or fraud.

221. When contacted by counsel for Plaintiffs/the Hadley's, the attorney had withdrawn from representation.

222. In early August 2021, K. T. Martin began destroying trees and migratory bird habitat, and clearing/destroying wetlands located on the part of Plaintiffs/the Hadley's property, likely located partly, if not entirely in RI.

223. In the fall of 2021, one of L. Hadley's floats was found smashed on the Property.

224. Between August 13th and August 18th, 2021, two 'game camara's' belonging to Plaintiffs/the Hadley's, monitoring the floats 'disappeared' or were stolen.

225. In the fall of 2021, more than 15 trees on Plaintiffs/the Hadley's property were cut down, and/or 'tagged' for 'removal' by C. Capone and his co-conspirators.

226. C. Capone was observed on several occasions in 2021 chopping down trees located on Plaintiffs/the Hadley's property, and in furtherance of the CCREFS.

227. The trees were located on a portion of Plaintiffs/the Hadley's Property which was designated as habitat for the Canadian Sanicle, a MA endangered species.

228. In the fall of 2021, counsel for Plaintiffs/the Hadley's issued a cease and desist to P. Wilkinson and M. L. Quigley directing Defendants and their relative, including C.

53

Capone to stop destroying trees and endangered species habitat located on Plaintiffs/the Hadley's property, and cease and desist from entering the Property.

229. In late November of 2021, Plaintiffs/the Hadley's put a combination lock on the gate (which has been locked throughout the winters for at least 68 years) to prevent trespass and protect the Property including the watershed, ecosystem, and migratory bird habitat.

230. L. Hadley spoke with and provided the combination to the lock to D. Diaz.

231. D. Diaz currently resides at 1D Narrow Ave, though the size and ownership of the parcel are in question.

232. Approximately one hour later, cameras observed P. Wilkinson, D. Diaz and others, now known to be co-conspirators, congregating on Plaintiffs/the Hadley's Property.

233. Shortly thereafter, the lock and chain on the gate to part of Plaintiffs/the Hadley's property was stolen, likely by D. Diaz as she was the only other person besides Plaintiffs with the combination to the lock that was stolen or otherwise disappeared.

234. At some point thereafter, upon information and belief, approximately one month later, a large, historic rock and property bounds marker was moved from the intersection of 'the Old County Road', currently referred to as 'route 177' and what is currently referred to as Sodom Road, roughly two miles south onto Plaintiffs/the Hadley's Property, and moved and installed guardrails on the portion of what is now referred to as Sodom Road at the end of 'the Lane'.

235. Plaintiffs/the Hadley's recently realized that the historic rock was moved by John Doe CCREFS co-conspirators in furtherance of the racket CCREFS, and is currently located on Plaintiffs/the Hadley's Property, which is causing them damage.

54

236. Plaintiffs require initial limited discovery to determine the identities of other co-conspirators, including emails and other communications as to who authorized and who executed the movement of the historic property marker.

**The rackets continue in 2022: increasing threats and acts of violence.**

237. On April 10, 2022, Plaintiff L. Hadley and Ulysses Sallum were in the Lane putting up a camara.

238. C. Capone was exiting the Lane in his vehicle and drove past muttering obscenities.

239. Capone then rapidly accelerated his vehicle driving toward L. Hadley.

240. L. Hadley jumped behind the Hadley's vehicle to avoid being hit by Capone's vehicle.

241. Mr. Sallum immediately responded 'we cannot bring kids down here, that guy is nuts, you shouldn't even bring your dog here, he's totally unhinged [referring to Capone]...'

242. In May 2022, Plaintiffs/the Hadley's were informed that a Notice of Intent was filed by K. T. Martin for 'environmental remediation' on property recently discovered to be owned by Plaintiffs/the Hadley's.

243. On June 7, 2022, Capone recommended for approval, and CCREFS co-conspirators Joncas, J. Powell, J. McGuigan, and T. Merchant voted to approve an Order of Conditions, in furtherance of CCREFS.

244. Defendants, including Capone, K.T. Martin, and D. Martin knew the 'title' to property in question is based on falsified deed chains, and that the 'parcel' in question is owned by Plaintiffs/the Hadley's.

55

245. Capone recommended for approval the NOI while acting under the color of official right in furtherance of the common goal of CCREFS to wrongfully obtain property for co-conspirators, K.T. Martin and others, from Plaintiffs/the Hadley's including but not limited to trees and other critical habitat in furtherance of CCREFS.

246. Defendants including but not limited to K.T. Martin, B. Tripp, Capone, and others began and continue with increasing veracity to cut down trees and destroy critical habitat on land they are attempting to obtain an interest in the Property via forged and falsified deeds, conveyances obtained by false pretenses, and/or fraud, in furtherance of CCREFS.

247. B. Tripp, K.T. Martin, Capone, M. Perry, M. Ferry, A. Ferreira, B.&T. Palmer, and John Does continue to destroy trees and habitat located on Plaintiffs/the Hadley's Property in furtherance of CCREFS.

248. C. Capone and P. Joncas, and John Does (to be uncovered during discovery) continue to act under the color of law, to wrongfully authorize the destruction of property, and to extort money, water rights, and other real and personal property for themselves, members of Capone's 'family', and Defendants, including John Doe co-conspirators.

249. Upon information and belief, the Town of Westport is intentionally violating the Civil Rights Act and the Hobbs Act by knowingly disregarding Plaintiffs/the Hadley's constitutional rights, including property rights whilst attempting to take water and likely an easement under the guise of the color of official right, by misusing the Admin Appeal, and by misusing tax dollars in furtherance of CCREFS.

56

250. C. Capone and other co-conspirators of CCREFS continue to occupy and destroy Plaintiffs/the Hadley's Property.

251. On May 27, 2022, during business hours of the Conservation Commission, Capone was observed and photographed on the Hadley's/Plaintiffs property wielding a chainsaw and destroying trees and critical habitat (including habitat of the endangered Canadian sanical).

252. On May 31, 2022, L. Hadley and Susan Hadley were sitting on their private dock, on their private pond.

253. Capone approached the edge of the shore and began screaming at the Hadley's/Plaintiffs demanding they move their vehicle (which was parked on the Hadley's/Plaintiffs private Property).

254. Capone threatened the Hadley's/Plaintiffs verbally irately exclaiming that he 'can play games', and noting that 'to start' the Hadley's/Plaintiffs should 'just try to get out'.

255. Capone then moved his vehicle to block the Hadley's/Plaintiffs car so they would not be able to escape, then went behind a cottage and began making loud, threatening, banging noises.

256. The Hadley's/ Plaintiffs did not engage verbally or otherwise, and instead called the police/911 to make them aware of the situation and request assistance in case Capone's violence and threats escalated further or they were unable to escape.

257. A friend of Plaintiffs/the Hadley's arrived and L. Hadley explained the situation.

57

258. Susan Hadley was shaking with fear so the Hadley's/Plaintiffs attempted to leave, which they were able to do, and made sure to have their friend follow in case Capone committed further acts of violence.

259. On July 13, 2022, again during normal business hours of the Conservation Commission, Capone was observed wielding a chainsaw and destroying trees and critical habitat for endangered species and migratory birds located on the Hadley's/Plaintiffs property, in violation of the Migratory Bird Treaty Act, et al.

260. On July 16, 2022, at approximately 3:30 PM, the Hadley's/Plaintiffs were sitting on the porch of one of their cottages.

261. Capone and co-conspirator D. Lafarrier were destroying trees and other critical habitat on the Hadley's/Plaintiffs Property on the shore of their private pond and Capone exclaimed loudly [referring to the Hadley's] 'they want privacy, I'll give them privacy'.

262. D. Laffarier then loudly responded 'they need to have their f***ing legs broken' [referring to the Hadley's/Plaintiffs].

263. On July 22, 2022, L. Hadley was bringing things from her car into one of the Hadley's/Plaintiffs cottages when Capone drove up on a 'fourwheeler' and began making verbal threats saying 'you will get what is coming to you, and so will he'[referring to Plaintiffs/the Hadley's dog].

**Late 2022—severity and pervasiveness of rackets come to light further—Capone and co-conspirators continue patterns of racketeering including forging documents, attempting to wrongfully obtained property rights by false pretense and authorization of same while acting under the color of official right.**

264.     Beginning in 2021 and continuing to date, and which will continue in perpetuity absent judicial intervention and relief, Plaintiffs/the Hadley's discovered the ongoing

pattern of CCREFS co-conspirators 'cross-conveying' falsified deeds and recording these knowingly false deeds for 'parcels' which Defendants knew they did not and do not own, then purporting to 'convey' parcels to other CCREFS co-conspirators.

265. John Doe Registry personnel and employees at the Westport Assessors Office owed a duty to Plaintiffs not to record obviously , breeched this duty, which actually and proximately caused and continues to cause Plaintiffs harm and damages.

266. Alternatively, John Doe Registry personnel reasonably relied on the falsified deeds knowingly prepared by Defendants and CCREFS co-conspirators, which is causing the Hadley's/Plaintiffs damage.

267.   The following are deeds Plaintiffs/the Hadley's recently realized are forgeries or falsely purport to convey title to land, some of which is located in RI, not Westport, MA, or were otherwise obtained by false pretenses and recorded, and as such are void ab initio; for purposes of pleading with particularity, the dates recorded, parties, and signatures contained therein are hereby incorporated by reference:

    a.  9551/234-5

    b.  11109/7-10

    c.  11053/81-2

    d.  11053/84-86

    e.  12034/346-47

    f.  6066/7-9

    g.  11893/207-09

    h.  9073+/345-46

    i.  9717/148-49

59

j.   9717/144-45

k.   1721/343

l.   8489/218

m.  12779/341-42

n.   12648/297

o.   1798/229

p.   2709/254-55

q.   11176/103-04

r.   2507/113-114345

s.   1941/350

t.   3802/135

u.   4735/253

v.   5288/151

w.  6010/334

x.   7541/161

y.   9073/345

z.   9717/144

aa. 9717/148

bb. 11893/207

cc. 1737/887

dd. 1780/185 and Tiverton Land Records book 00143, page 290, et seq.

ee. Bristol County Probate book 1964, page 0782 and Tiverton Registry book
    225, page 321, et seq.

60

**Abuse of process of Administrative Appeal**

268. Plaintiffs/the Hadley's filed the Admin Appeal Complaint on October 10, 2018, seeking review in the nature of certiorari pursuant to G.L. 249 § 4 focused solely on Defendants actions between August 8, 2018 through August 14, 2018.

269. Actions brought under G.L. 249 § 4 whether joined with any other claims are governed under Superior Court Standing Order 1-96, which requires expedited review as a matter of law based on a limited Administrative Record.

270. Defendants filed an Answer on November 26, 2018.

271. On February 12, 2019, Defendants filed and served an Administrative Record which did not contain transcripts of the August 14, 2018 Ratification Hearing or notice required by Standing Order 1-96.

272. Plaintiffs filed a motion to correct the Administrative Record to include transcripts of the Ratification Hearing on August 14, 2018.

273. On April 23, 2019, parties filed cross Motions for Judgment on the Pleadings as required by Standing Order 1-96.

274. Defendant Town, Conservation Commission, Joncas, Capone, and John Doe Selectmen co-conspirators are attempting to improperly expand the scope of the proceedings for the ulterior purpose of wrongfully obtaining easement access rights on Plaintiffs/the Hadley's Property, and other real and personal property from Plaintiffs/the Hadley's, and in furtherance of CCREFS.

275. Defendants are also misusing the Admin Appeal and attempting to expand the scope of the limited Admin Appeal for the ulterior purpose of seeking to treat the limited

61

Admin Appeal as 'quiet title' action for Defendant Capone individually, and his family members and co-conspirators in furtherance of CCREFS, using tax dollars.

276. In briefs in preparation for, and at a summary judgment hearing on March 9, 2023, Defendants represented to the Bristol County Superior Court that Capone 'owned the cottages known as "1J or 1K Narrow Ave."

277. Neither Defendant Capone nor any of his co-conspirators Defendants and John Does have any valid right, title or interest in the Property.

278. The Property, owned by Plaintiffs/the Hadley's, was not properly subdivided and 'subdivision' previously relied on by Plaintiffs/the Hadley's were obtained by a survey Capone prepared himself, which contained false representations which he knew to be false regarding Property ownership and boundary lines, and derived from falsified deed chains, conveyances obtained by false pretenses, fraud and/or mistake.

279. The 'right, title, or interest' currently claimed by Capone and his co-conspirators derives from forged cross-conveyances, prepared by Capone, his family members and co-conspirators in CCREFS and a subdivision plan prepared by Capone and his co-conspirators as part of and in furtherance of CCREFS in approximately 2004.

280. Standing Order 1-96 requires review as a matter of law confined to facts contained in a limited Administrative Record.

281. To date, Defendants Town of Westport, Conservation Commission, Joncas, and Capone, through their attorneys, have conducted extensive discovery, including four depositions of Plaintiffs, document production and interrogatories; discovery is not permitted under Superior Court Standing Order 1-96, which governs Admin Appeal procedure, and requires limited review based solely on the Administrative Record.

62

282. Defendant Town, Commission, Capone, and Joncas did not respond to any of Plaintiffs discovery requests, deposition notices, requests for production of documents, or interrogatories.

283. The matter is still pending in Bristol County Superior Court.

**The Hadley's/Plaintiffs begin to discover all of the fraud, and begin to realize the existence of and extent of the racket and that individuals at MassDEP, MassDCR, et al. are acting in furtherance thereof.**

284. In late October 2022, Plaintiffs/the Hadley's learned Capone and Joncas are also employees of MassDCR.

285. As employees/foresters for DCR, Capone and Joncas could individually serve as a single point of contacts and approval for 'chapter 61 liens and encumbrances'.

286. Upon information and belief, Capone and Joncas have approved, are approving, and will continue to approve ch. 61 liens and exercises of rights of first refusal in furtherance of CCREFS, including extorting land they know to be owned by Plaintiffs/the Hadley's and likely others.

287. In November 2022, Plaintiffs/the Hadley's learned Defendant Town, and other John Doe co-conspirators, upon information and belief under the management of Joncas and Capone, and in furtherance of CCREFS, are attempting to 'identify' properties in the chapter 61 program to 'conserve' using money from the federal infrastructure bill and other tax payer funds.

288. The full extent of forged and falsified deeds and conveyances obtained by false pretenses, including chapter 61 liens, are still being discovered and necessitates preliminary, limited discovery by Plaintiffs.

63

289. Upon information and belief, several of the 'parcels' with chapter 61 liens are located partly, if not entirely, in RI.

290. Upon information and belief, Capone and Joncas prepared, assisted in preparation of, and/or otherwise recommended or voted to approve ch. 61 liens for properties they and co-conspirators knew to be owned by Plaintiffs/the Hadley's in furtherance of CCREFS.

291. Plaintiffs/the Hadley's require immediate intervention from this Honorable Court to prevent Defendant Town, CCREFS co-conspirators, and other John Does from continuing to extort real and personal property in furtherance of CCREFS, and to prevent the Town of Westport, MA from annexing parts of Rhode Island, including waters contained therein, thereunder, and flowing thereto and therefrom.

292. In November 2022, Parties in the Admin Appeal filed cross-motions for summary judgment 'following the close of discovery'.

293. Plaintiffs/the Hadley's were not permitted to conduct any discovery whatsoever, despite timely serving discovery requests on Defendants in the Admin Appeal.

294. Plaintiffs/the Hadley's realized in late 2022 and continue to realize that Defendant Town, Capone, Joncas, Conservation Commission, John Doe Westport Select Board members, and John Doe co-conspirators are attempting to abuse the process of the Admin Appeal (which was supposed to focus solely on the unconstitutional actions/search and seizure through the secret August 14th, 2018 Ratification Hearing), for the improper purpose of attempting to wrongfully obtain land, water, and other property from Plaintiffs/the Hadley's, and likely many, many others, including but not limited to the State of Rhode Island, Jane and Jana Doe property

64

owners with ancient deed chains, et al. purporting to act under the guise of the color of official right and by threats in furtherance of the ongoing racket CCREFS.

295. To date, Plaintiffs/the Hadley's have been forced to incur, with interest, over $700,000 in attorneys fees and costs attempting to uphold basic constitutional rights in what was and is supposed to be a limited Admin Appeal.

296. Attorney's fees and costs for defense counsel in the Admin Appeal, are being paid for by municipal liability insurance—the cost of which is directly borne by tax-payers, including Plaintiffs/the Hadley's.

297. Defendants are attempting to abuse the Admin Appeal, ignore the law of the case doctrine and the doctrine of collateral estoppel, for the ulterior motive of reopening Defendants clear liability for civil rights violations under 42 U.S.C. §§ 1983 and 1988, and Capone's trespass and conversion—illegal search and seizure, without providing Plaintiffs/the Hadley's any notice or the opportunity to be heard in furtherance of CCREFS.

298. Upon information and belief, Defendant Town and CCREFS co-conspirators are also attempting to abuse the process of the Admin Appeal to delay Plaintiffs/the Hadley's from addressing and resolving the recently discovered extortion and fraudulent 'procurement' of real and personal property interests, including voiding or having declared void the extensive number of forged deeds for land recently discovered to be owned by Plaintiffs/the Hadley's, based on their many valid, overlapping deed chains from 1652 to the present.

299. Upon information and belief, John Doe Westport Select Board Members are conspiring with Capone, Joncas, Town of Westport and other John Doe co-

conspirators are currently misusing insurance liability defense funding paid for by taxpayers in the Town of Westport, including Plaintiffs/the Hadley's, in the form of monies paid for deductibles, and skyrocketing premiums resulting from changes to the loss/claims ratio--which directly determine the cost of insurance premiums to abuse the Admin Appeal in furtherance of CCREFS, for their own personal gain and that of their co-conspirators.

**Open-ended CCREFS scheme continues**

300. Continuing in May and into June 2023, CCREFS co-conspirators, upon information and belief other unknowing parties, continued facilitating further development of Plaintiffs/the Hadley's Property.

301.  Upon information and belief, C. Capone, P. Joncas, B&T Palmer and likely others conspired to recommended for approval and obtain approval to destroy habitat, and build homes on Property, recently discovered to be owned by Plaintiffs/the Hadley's in furtherance of CCREFS.

302. Upon information and belief, B&T Palmer knew they had no valid right title or interest to the Property located at the intersection of Sodom Road and Narrow Ave. in Westport, and sold the 'property' to conceal their involvement in CCFRES and in furtherance of CCREFS, wrongly obtained $800,000 to the detriment of Plaintiffs/the Hadley's.

303.Upon information and belief, in late July of 2023, C. Capone caused to be erected stones and stakes on Plaintiffs/the Hadley's Property in furtherance of CCREFS, and continues to wrongly occupy and destroy Plaintiffs/the Hadley's Property.

66

304. Plaintiffs/the Hadley's fear for their safety, and the safety of their family as a result of the many, and increasingly severe threats of violence, acts of assault and battery, and other threats of harm under the color of official right and pray this Honorable Court for relief accordingly.

V.       CLAIMS FOR RELIEF

**1. COUNT I The Hobbs Act 18 U.S.C. § 1951**

305. The allegations of paragraphs 1 through 304 are incorporated herein by reference.

306. This Count is against Defendant(s) Capone, Joncas, P. Wilkinson, M. Quigley, H. McGovern, K.T. Martin, D. Martin, B. Tripp, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Bryan, K. Carter, P. Weinberg, Town of Westport, Westport Conservation Commission, MassDEP John Doe co-conspirators, MassDCR John Doe co-conspirators, J. Straub, M. Bartow, and John Doe, co-conspirators in CCREFS, to be further identified during discovery (the "Count I Defendant(s)").

307. Count I Defendants did knowingly and intentionally induce, attempted to induce, and continue to attempt to induce the Hadley's/Plaintiffs to part with their property including but not limited to real and personal property.

308. Count I Defendants initially did so with the Hadley's/Plaintiffs consent, but this consent was compelled by the wrongful use or threat of force, violence or fear, and purporting to act under the color of official right.

309. Count I Defendants initially did so by intentionally making false representations of material facts and otherwise intentional omissions of material facts upon which the Hadley's/Plaintiffs reasonably relied; as more particularly described herein.

67

310. Count I Defendants used and continue to use threat of violence and the power of public office of the Town, Conservation Commission, MassDCR and MassDEP to wrongfully procure the payments of money, attempting to usurp property rights and seize property not owed to Count I Defendants including but not limited to Capone, Joncas, the Conservation Commission, Town of Westport, or any other public or private official or their office, or any third party consultant, John Doe co-conspirators, et al.

311. For example, Capone took from Plaintiffs/the Hadley's and continues to wrongfully take from the Hadley's/Plaintiffs trees, timber, phytoremediation floats, and other property from land he does not own described more fully herein using threats of violence and under the color of official right.

312. Capone and other Count I Defendants did so and continue to do so knowingly and willfully by extortion, purporting to act under the color of official right and by threats of violence, intimidation, and fear as further set forth herein.

313. Regarding access to the Lane, land, and money paid to the Commission and MassDEP, this consent was obtained by Count I Defendants from Plaintiffs/the Hadley's until initially discovered in early 2021, by the wrongful use of threat and force, fraud, mail and wire fraud, and acting under the color of official right.

314. Count I Defendants, and John Does took from the Hadley's/Plaintiffs and continues to wrongfully take title to land and encumbrances (via mail and wire fraud), trees, timber, phytoremediation floats, money and other property described herein acting individually, and using threats of violence, and under the color of official right.

68

315. Count I Defendants did and will continue to prevent or otherwise impede Plaintiffs/Devol Pond Association Members/the Hadley's enjoyment of, control and protection of their money, land and others real property and personal property, and impeding Plaintiffs/Devol Pond Association Members/the Hadley's efforts to maintain and improve the quality of their property, and further attempting to misuse the power of official right whilst wrongfully preempting and otherwise frustrating the objectives of the Clean Water Act, the Hobbs Act, the Migratory Bird Treaty Act, RICO, et al.

316. Count I Defendants continue to attempt to induce Plaintiffs/the Hadley's and other Jane Doe property owners to part with their property rights, and seek to misuse the Admin Appeal whilst purporting to act under the color of official right to wrongfully obtain by extortion property interests in the Lane, boat ramp, pond, docks, waters, structures, and other real and personal property.

317. Specifically, Count I Defendants sent emails and other communications used in furtherance of the extortion scheme CCREFS, including but not limited to: Capone email on September 23, 2018; Capone email on October 2, 2018 regarding monetary payment demands; Capone's email on October 9, 2018; Capone's email on May 14, 2019; Capone's email July 10, 2019; J. Powell's email July 10, 2019 regarding monetary payment demands to third party consultant in RI; Capone's email August 8, 2019; Conservation Commission Enforcement Order #2 mailed on or around August 27, 2019 and further communications to be uncovered and revealed following limited preliminary discovery by Plaintiffs and subsequently an amended complaint.

69

318. Count I Defendants took and continue attempting to take from the Hadley's/Plaintiffs money, phytoremediation floats, clean water, and other real and personal property interests, to which they are not entitled.

319. Count I Defendants continue attempting to wrongfully obtain via mail and wire fraud, extortion, and by abusing the Admin Appeal seeking to wrongfully induce Plaintiffs to part with property rights and interests in the Lane, Narrow Ave., boat ramp, pond, water, other real and personal property.

320. For example, Capone, by threats of violence, mail and wire fraud, and misusing his authority under the color of official right, Count I Defendants are attempting to wrongfully obtain from Plaintiffs a property interest for themselves and John Doe co-conspirators, property interests to which they are not entitled including but not limited to a 'dock' located on Plaintiffs/the Hadley's Property, easement access rights, and real and personal property including Narrow Ave., the Lane, the Boat ramp, and 'parcels' of land measured from unfixed points.

321. Count I Defendants are attempting to wrongfully induce Plaintiffs/the Hadley's/DPA members/Jane and Jana Does to part with the exclusive, unencumbered ownership of the real and personal property interests of for real and personal property located in Westport, MA, Tiverton, RI, and likely Fall River, MA, and Adamsville, RI, including but not limited to the Lane, Narrow Ave., land, waters, and forests owned by the Hadley's/Plaintiffs and other Jane and Jana Does property owners, by threats of violence and by actions purported to be taken under the color of official right, such as issuing EO#1 and EO#2, unanimously ratifying Capone's seizure and destruction of L. Hadley's floats with no notice or hearing

70

against the guidance of state officials, wrongfully demanding payments of an uncapped retainer from DPA members/Plaintiffs to a single member LLC in RI, and other acts of extortion as further described herein.

322. Interstate commerce or an item moving in interstate commerce and property located in MA and RI was delayed, obstructed or affected; and

323. At all times Count I Defendants acted knowingly and willfully.

324. As a result of Count I Defendants' actions and the actions of their co-conspirators, interstate commerce, including lumber and other real and personal property located on Plaintiffs/the Hadley's real property also located on the state line in both Massachusetts and Rhode Island, was obstructed, delayed, or affected.

325. Plaintiffs/the Hadley's have and continue to suffer damage as a result of these racketeering acts;

326. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as further described herein.

## 2. COUNT II Mail Fraud Violations of 18 U.S.C. § 1341

327. Plaintiffs incorporates by reference and realleges paragraphs 1 through 326 set forth above.

328. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, D. Diaz, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Town of Westport, Conservation Commission, MassDEP John Doe personnel, MassDCR John doe personnel, and John Doe, co-conspirators in CCREFS (the "Count II Defendant(s)").

71

329. Count II Defendants have devised or intended to devise schemes and artifices to defraud Plaintiffs/the Hadley's, and to obtain money and property by means of false or fraudulent pretenses, false representations, forgery, et al.

330. Count II Defendants used mail and postal services in furtherance of the fraudulent schemes including but not limited to CCREFS, as particularly described herein.

331. The CCREFS Enterprise/association-in-fact is engaged in and affected interstate commerce by way of said mail fraud.

332. The mail transmissions described herein were made in furtherance of Count II Defendants' scheme and common course of conduct.

333. To achieve their common goals, Count II Defendants knowingly and willfully made false representations of material fact regarding property ownership, forged or otherwise falsified and recorded deeds as stated herein, and/or otherwise concealed from Plaintiffs/the Hadley's, and upon information and belief the Westport Tax Assessors Office, the Massachusetts State Courts/Bristol County Superior Court and others the unlawfulness of CCREFS's conduct and the Hadley's/Plaintiffs/DPA members/Jane and Jana Does rightful title and interest in the real and personal property which was committed at the instruction of, and through the directions of C. Capone, P. Joncas, P. Wilkinson, K.T. Martin, D. Martin, B. Tripp, M. Quigley, B. Tripp, John Does, and likely others.

334. For example, Count II Defendants knowingly forged and/or falsified deeds, and obtained conveyances by false pretenses, and/or fraud, and recorded the deeds found at book and page numbers described supra, on the dates referenced in those deeds,

72

upon information and belief, using interstate mail, with the intent to defraud and wrongfully obtain 'title' to 'parcels' described including but not limited to:

335. For example, P. Wilkinson preparing or causing to be prepared and recorded at Bristol County Registry of Deeds book  6659, page 202; book 11053, page 81, et seq.; book 11109, page 3; book 4808, page 334; book 9551, page 234; book 12399, page 104; book 12403, page 98; book 11109, page 3, 7 ; book 1663, page 23; book 9156, page 68-69; book 8800, page 264-266, et al.

336. For example, R. Swicker preparing or causing to be prepared and recorded at Bristol County Registry of Deeds book 6659, page 202; book 3873, page 116; book 1737, page 887, et al.

337. For example, M.L. Quigley preparing or causing to be prepared and recording Bristol County Registry of Deeds book 4808, page 334; book 9551, page 234; book 12399, page 104; book 12403, page 98; book 6659, page 202; book 11053, page 81 and 84; book 11109, page 7; book 1663, page 23; book 9156, page 68-69; book 8800, page 264-266, et al.

338. For example, B. Tripp, G. Tripp, K.T. Martin and D. Martin preparing or causing to be prepared and recording deeds, on date of recordings, which they knew to be falsified or forged and falsely claiming ownership of parcels they knew to be owned by Plaintiffs/the Hadleys, including but not limited to 'parcels' described and recorded at Bristol County Southern District Registry of Deeds book 6066, page 7-9; book 11893, page 207-209; book 9073+, page 34, et seq.; book 9717, page 148-149; book 9717, page 144-145; book 8489, page218, book  3395, page 97; book 3631, page 20; book 3802, page 135; plan book 136, page 78; book 5757, page 7-9; book

73

7541, page 161; book 9073, page 345, book 12779, page 341-42, book 2709, page 254-55, book 12648, page 297, book 11893, page  207-09.

339. For example, H. McGovern, E. Ferreira, A. Ferreira, B&T Palmer did knowingly prepare falsified or forged deeds, or otherwise prepared or caused to be prepared and recorded, on the date of recording, deeds they knew to be false, including but not limited to 'parcels' found at Bristol County Southern District Registry of Deeds book 10633, page 122, et seq., book 10767, page 114, book 1964, page 782, et seq., 12648/297, 1798/229, 2709/254-55.

340. M.&E. Perry, M. & C. Ferry knowingly and falsely prepared or caused to be prepared and recorded, on the dates recorded, falsified or forged deeds for land they knew they did not own including but not limited to 'parcels' described and recorded at Bristol County Southern District Registry of Deeds book 4486, page 290, book 11176, page 109-10, book 2507, page 113-14, et al.

341. Upon information and belief, John Does Registry of Deeds personnel relied on the knowingly false deeds recorded by Count II Defendants in furtherance of CCREFS.

342. Upon information and belief, Westport Tax Assessors office personnel did reasonably rely on Count II Defendants knowingly false representations regarding property ownership and/or forged deeds.

343. Until recently, Plaintiffs/the Hadley's relied on the property ownership and boundaries which Count II Defendants falsely represented and caused to be recorded.

344. Count II Defendants knew these deeds were falsified and/or forged and intended for them to be relied upon by Registry of Deeds Personnel, Westport Assessors Office

74

Personnel, Plaintiffs, and they were relied upon, which caused and continues to cause the Hadley's/Plaintiffs damage.

345. To achieve their common goals, Defendants knowingly and willfully concealed from Plaintiffs/the Hadley's, the Westport Tax Assessors Office, the Bristol County Superior Court, and others the unlawfulness of CCREFS' co-conspirators conduct, and the Hadley's/Plaintiffs rightful title and interest in the real property, which was committed at the instruction of, and through the directions of co-conspirators C. Capone, P. Joncas, P. Wilkinson, K.T. Martin, B. Tripp, M. Quigley, B. Tripp, John Does, and likely others.

346. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $10,654,744, said damages to be proven at the time of trial.

347. Because of Defendants' violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

348. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendant(s) as further described herein.

### 3. COUNT III: Mail Fraud

349. Plaintiffs incorporates by reference and realleges paragraphs 1 through 348 set forth above.

350. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, R. Swicker, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira,

75

M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, Dream Homes LLC, J.

Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow,

Town of Westport, Conservation Commission, and John Doe, co-conspirators in

CCREFS (the "Count III Defendant(s)").

351. Count III Defendants have devised or intended to devise schemes and artifices to

defraud Plaintiffs/the Hadley's, and for obtaining money or property by means of

false or fraudulent pretenses, forgery, and knowingly false representations or

omissions, et al.

352. Count III Defendants used mail and postal services in furtherance of the fraudulent

schemes including but not limited to CCREFS.

353. The CCREFS Enterprise/association-in-fact is engaged in and affected interstate

commerce by way of said mail fraud.

354. The mail transmissions described herein were made in furtherance of Count III

Defendants' scheme and common course of conduct, including recording or causing

to be recorded, the deeds whose book and page numbers are described herein,

knowing Count III Defendants did not have any valid right, title, or interest in those

properties.

355. To achieve their common goals, Count III Defendants knowingly and willfully

entered into agreements to wrongfully obtain money, land, and other real and

personal property from Plaintiffs/the Hadley's and took acts in furtherance of this

agreement and the common goal of CCREFS.

356. As a direct and proximate consequence of the conduct of Count III Defendants and

each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their

76

business and property, causing Plaintiffs to suffer damages to their property interests, and causing Plaintiffs to suffer monetary damages in an amount not less than $10,654,744, said damages to be proven at the time of trial.

357. Because of Defendants' violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

358. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count III Defendant(s) as further described herein.

### 4.  COUNT IV: Violation of 18 U.S.C. § 1343, Wire Fraud

359. Plaintiffs incorporates by reference and realleges paragraphs 1 through 358 set forth above.

360. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, R. Swicker, B. Tripp, K. T. Martin, D. Martin, Dream Homes, LLC, H. McGovern, A. Ferreira, D. Diaz, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Town of Westport, Conservation Commission, MA DEP, MA DCR, and John Doe, co-conspirators in CCREFS (the "Count IV Defendant(s)").

361. The Count IV Defendants voluntarily and intentionally devised or participated in a scheme to defraud the DPA members/Plaintiffs/the Hadleys/Jane and Jana Does out of money and other real and personal property.

362. The Count IV Defendants did so with the intent to defraud.

363. It was reasonably foreseeable that interstate wire communications would be used;

364.  Interstate wire communications were in fact used, as stated particularly herein.

77

365. To achieve their common goals, Count IV Defendants knowingly and willfully.

366. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their business and property, causing the DPA members/Plaintiffs/the Hadley's to suffer damages to their property interests, and causing Plaintiffs/DPA members/the Hadley's/Jane and Jana Does to suffer monetary damages in an amount not less than $30,000,000 said damages to be proven at the time of trial.

367. Because of Defendants' violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees.

368. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count IV Defendant(s) as further described herein.

**5.     COUNT V: Violation of 18 U.S.C. § 1343, Wire Fraud**

369. Plaintiffs incorporates by reference and realleges paragraphs 1 through 368 set forth above.

370. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, Dream Homes, LLC, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, the Estate of Estelle Ferreira, B&T Palmer, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Town of Westport, Conservation Commission, and John Doe, co-conspirators in CCREFS (the "Count V Defendant(s)").

78

371. The Count V Defendants voluntarily and intentionally devised or participated in a scheme to defraud another out of money and other real and personal property interests;

372. The Count V Defendants did so with the intent to defraud.

373. It was reasonably foreseeable that interstate wire communications would be used;

374.  Interstate wire communications were in fact used, as stated particularly herein.

375. To achieve their common goals, Count V Defendants knowingly and willfully.

376. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer damages to their property interests causing the DPA members/Plaintiffs/the Hadley's to suffer damages to their property interests, and causing Plaintiffs/DPA members/the Hadley's/Jane and Jana Does to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial.

377. Because of Defendants' violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

378. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count V Defendant(s) as further described herein.

**6.   COUNT VI: Violation of 18 U.S.C. § 1962(a), RICO**

373. Plaintiff incorporates by reference and realleges paragraphs 1 through 378.

374. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, D. Diaz, M.

79

Perry, E. Perry, M&C Ferry, the Estate of P. Capone, the Estate of Estelle Ferreira, J.

Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow,

MassDCR, Westport Conservation Commission, and John Doe Selectmen, and John

Doe co-conspirators in CCREFS, (the "Count VI Defendant(s)").

375. As alleged herein, each Defendant, at all relevant times, is and has been a "person"
within the meaning of 18 U.S.C. § 1961(3).

376. As alleged in the preceding section, Defendants' conduct constitutes a "pattern" of
racketeering activity. 18 U.S.C. § 1961(5).

377. At all times relevant hereto, beginning on or around 1976, increasing in severity
around 2000, and continuing to date, and which will continue in the future absent
judicial relief and intervention.

378. Count VI Defendants received income derived from a pattern of racketeering
activity and used or invested a part of such income or the proceeds of such income in
the establishment and operation of an enterprise that is engaged in, or the activities of
which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

379. As alleged in the preceding section, on or before January 6, 2000, Defendants
formed the CCREFS Enterprise to effectuate Defendants' pattern of racketeering
activity, real estate fraud, extortion, mail fraud, wire fraud, et al.

380. All Count VI Defendants agreed to and did use income received directly from a
pattern of racketeering activity to control, establish and operate the CCREFS
Enterprise, which was engaged in and affected interstate commerce, including mail
and wire fraud, and extortion as defined by 18 U.S.C. § 1341, 18 U.S.C. §1343, 18
U.S.C. § 1951, et al., and for the unlawful purpose of intentionally defrauding the

80

Plaintiffs/DPA members/the Hadley's, to obtain money, real and personal property to which they are not entitled.

381. Specifically, Defendants wrongfully demanded and received payments of and then invested and used money wrongfully demanded from and paid by Plaintiffs/DPA members/the Hadley's for NOI#080-2400 in September 2018 and May 2019.

382. Specifically, C. Capone, P. Joncas, and individual conservation commission members approving Orders of Conditions in furtherance of their common scheme CCREFS, including but not limited to OOC #080-2638, 080-2639, 080-2683, 080-2684, 080, 2230, 080-1741, 080-2683, 080, 2684 and others as further described herein.

383. Specifically, C. Capone and P. Joncas approving or otherwise facilitating 'ch. 61 liens' on property for co-conspirators to be fully described following limited discovery by Plaintiffs and an amended complaint, as all ch. 61 applications and details are in the exclusive control of Defendants.

384. The mail fraud, wire fraud, and extortion committed by Count VI Defendants is set forth herein and is incorporated by reference.

385. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial.

386. Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit and the Admin Appeal, including reasonable attorneys' fees.

81

387. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count VI Defendant(s) as further described herein.

### 7. COUNT VII: Violation of 18 U.S.C. § 1962(d)

388. Plaintiff incorporates by reference and realleges paragraphs 1 through 387.

389. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, B&T Palmer, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, R. Swicker, the Estate of Estelle Ferreira, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Westport Conservation Commission, Town of Westport, John Doe Selectmen, and John Doe, co-conspirators in CCREFS, (the "Count VII Defendant(s)").

390. As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

391. At all relevant times, beginning in approximately 1976, with increasing severity in or around June 1, 2001 following the death of Elmer Wilkinson and Harold Hadley, and continuing to date, the Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d);

392. The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

82

393. Count VII Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud, extortion, mail fraud, preparing and recording forged deeds, et al.).

394. Defendants have knowingly, willfully and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (wire fraud) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

395. Specifically, for example, P. Joncas executing EO#1; C. Capone extorting, seizing and destroying L. Hadley's floats; Conservation Commission by and through its individual members ratifying EO#1 and Capone's theft and destruction of property; J. Powell demanding uncapped retainer fee to be paid to single member LLC in RI; Conservation Commission by and through its members executing EO#2; Capone working with co-conspirators to perform 'surveys' of the Property in furtherance of CCREFS; C. Capone, P. Joncas, Conservation Commission by and through its individual members approving and continuing to approve Orders of Conditions and habitat destruction on Property owned by Plaintiffs to help co-conspirators in CCREFS steal real and personal Property belonging to Plaintiffs; P. Wilkinson threatening to kill Plaintiff L. Hadley; C. Capone's assault and battery on April 10, 2021, C. Capone's false imprisonment and intentional infliction of emotional distress on and other such racketeering acts as further described herein.

83

396. Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

397. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

398. As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744 said damages to be proven at the time of trial.

399. Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit and the Admin Appeal, including reasonable attorneys' fees.

400. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count VII Defendant(s) as further described herein.

### 8. COUNT VIII RICO § 1962(b)

401. The allegations of paragraphs 1 through 400 are incorporated herein by reference.

402. This Count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, R. Swicker, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Westport Conservation Commission, MassDCR, MassDEP, John Doe Selectmen, and John Doe, co-conspirators in CCREFS (the "Count VIII Defendant(s)").

84

403. CCREFS is an enterprise engaged in and whose activities affect interstate commerce.

404. The Count VIII Defendant(s) acquired and maintain interests in and control of the enterprise through a pattern of racketeering activity.

405. The extortion, mail fraud, wire fraud, et al., further described herein constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

406. The Count VIII Defendant(s) have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above and herein, in violation of 18 U.S.C. § 1962(b).

407. As direct and proximate result of the Count VIII Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs/the Hadley's have been injured in their business and property in that:

408. C. Capone is continuing to recommend for approval and P. Joncas and other co-conspirators continue to approve the destruction of trees, wetlands, and the building of structures on land which they know the 'current title holder according to the Westport Assessors Office', Defendants and their co-conspirators do not own, which they and co-conspirators know they do not own, which Defendants and co-conspirators know to be owned by the Hadley's/Plaintiffs/Jane and Jana Does;

409. Capone, Joncas, and Conservation Commission Members extortion--Capone seizing and destroying personal property and wrongly entered real property under the guise of the color of law, co-conspirator Joncas executing EO#1, both extortionary acts subsequent ratification by Commission members including J. McGuigan, J. Powell,

85

G. Greenwood, P. Weinberg, B. Byron, and MassDCR and MassDEP employees J. Straub and M. Bartow, and other such acts of racketeering as described herein.

410. As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(b), Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial.

411. Because of Defendants' violations of 18 U.S.C. § 1962(b), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit and the Admin Appeal, including reasonable attorneys' fees.

412. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count VIII Defendant(s) as further described herein.

## 9. COUNT IX RICO § 1962(d)

413. The allegations of paragraphs 1 through 412 are incorporated herein by reference.

414. This count is against Defendant(s) P. Wilkinson, C. Capone, P. Joncas, M. L. Quigley, B. Tripp, K. T. Martin, D. Martin, Dream Homes LLC, H. McGovern, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, the Estate of A. Ferreira, B&T Palmer, R. Swicker, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Westport Conservation Commission, MassDCR, MassDEP, John Doe Selectmen, and John Doe, co-conspirators in CCREFS (the "Count IX Defendant(s)").

415. As set forth above, the Count IX Defendants agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c).

86

416. The Count IX Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

417. The Count IX Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

418. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

419. As direct and proximate result of the Count IX Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs/the Hadley's have been injured in their business and property in that: they have and will likely continue to be threatened with physical harm, reprisal under the guise of the color of law, loss of money, damage to real and personal property as the Property is wrongly subdivided and current 'record title holders' according to the Bristol County Registry of Deeds and Town of Westport Assessors office show the Property as being owned by Count IX Defendants, their family members, and co-conspirators; Count IX Defendants did and continue to occupy, pollute, and destroy portions of the Property (some of which is critical habitat for endangered species, threatened species, and several species under the MBTA); and Plaintiffs/the Hadley's have been and a likely to continue to be threatened by Count IX Defendants and their co-conspirators.

87

420. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count IX Defendant(s) as further described herein.

**10. COUNT X Civil Conspiracy**

421. The allegations of paragraphs 1 through 420 are incorporated herein by reference.

422. This count is against Defendant(s) in furtherance of CCREFS, P. Joncas, C. Capone, K.T. Martin, D. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, M. Perry, A. Ferreira, M. Perry, E. Perry, M&C Ferry, the Estate of P. Capone, the Estate of A. Ferreira, B&T Palmer, R. Swicker, J. Powell, J. McGuigan, G. Greenwood, B. Byron, P. Weinberg, J. Straub, M. Bartow, Westport Conservation Commission, MassDCR, MassDEP, John Doe Selectmen, and John Doe, co-conspirators in CCREFS (the "Count X Defendant(s)").

423. As set forth above, the Count X Defendants entered into agreement with other Count X Defendants.

424. As set forth above, the Count X Defendants agreed with other Count X Defendants to act wrongfully in furtherance of CCREFS.

425. Plaintiffs suffered damages, and continue to suffer damages as a result of the CCREFS.

426. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count X Defendant(s) as further described herein.

**11. COUNT XI Civil Conspiracy**

427. The allegations of paragraphs 1 through 426 are incorporated herein by reference.

428. This count is against Defendant(s) in furtherance of CCREFS, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, K. Carter, B.

88

Bryan, P. Weinberg, G. Greenwood, K. Carter, J. Powell, J. McGuigan, M. Bartow, J. Straub, John Does Selectmen, John Doe MassDEP and MassDCR co-conspirators, and coconspirator John Does (the "Count XI Defendant(s)").

429. As set forth above and herein, the Count XI Defendants entered into agreement with other Defendants.

430. As set forth above, and in furtherance of CCREFS, the Count XI Defendants agreed with other Count XI Defendants to act wrongfully in furtherance of CCREFS and continue to suffer damages as a result of the wrongful acts committed by Count XI Defendants in furtherance of CCREFS.

431. WHEREFORE, Plaintiffs/the Hadley's requests that this Court enter judgment against the Count XI Defendant(s) as further described herein.

### 14. COUNT XII Civil Conspiracy

432. The allegations of paragraphs 1 through 431 are incorporated herein by reference.

433. This count is against Defendant(s) in furtherance of the attempted, in process, CCREFS, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, Kevin Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan coconspirator John Does (the "Count XII Defendant(s)").

434. As set forth above, the Count XII Defendants entered into agreements with other Count XII Defendants.

435. Count XII Defendants agreed to and continue to agree to commit wrongful acts including but not limited to mail and wire fraud, extortion using threat of

89

violence and under the color of official right through drafting and executing

Enforcement Orders and making threats of force or violence directly and through

interstate mail and wires, conspiring to deny Plaintiffs' civil rights guaranteed

under the United States Constitution, and Fourth, Fifth, and Fourteenth

Amendments thereto by committing, encouraging, or ratifying Capone and others

trespass, trespass to chattle, conversion, theft, fraud, false pretenses, extortion,

and other acts of racketeering.

436.     Count XII Defendants made overt acts as part of this conspiracy and in

furtherance of their agreement.

437.     For example, Count XII Defendants 'subdividing, preparing forged deeds,

procuring 'deeds' by false pretenses and fraud, and executing or causing to be

executed, and recording or causing to be recorded deeds to land in Massachusetts

and Rhode Island which they knew and know to be owned by Plaintiffs/the

Hadley's as further described herein.

438.     For example, Count XII Defendants encouraging or otherwise requesting

or endorsing Capone to enter Plaintiffs/the Hadley's property, seize Plaintiffs/the

Hadley's property, and destroy Plaintiffs/the Hadley's property, executing or

ratifying EO#1 and EO#2 against Plaintiffs/DPA/the Hadley's and others;

wrongfully demanding payments to be made by Plaintiffs/the Hadley's to

individuals and entities located in Massachusetts and Rhode Island as further set

forth herein; executing and recording fraudulent deeds in Massachusetts and

Rhode Island book and page references described herein on dates of recording;

requesting seeking and/or approving chapter 61 liens and related tax credits on

land in Massachusetts and Rhode Island, on land they knew to be owned by Plaintiffs/the Hadley's, and other wrongful acts further described herein.

439.     As set forth above, the Count XII Defendants agreed with other Count XII Defendants to act wrongfully in furtherance of the attempted, in process, CCREFS.

440.      Plaintiffs/the Hadley's suffered damages, and continue to suffer damages as a result of the wrongful acts committed by Count XII Defendants in furtherance of the attempted, in process, CCREFS.

441.     WHEREFORE, Plaintiff requests that this Court enter judgment against the Count XII Defendant(s) as further described herein.

**13. COUNT XIII Abuse of Process**

442.     The allegations of paragraphs 1 through 441 are incorporated herein by reference.

443.     This count is against Defendant(s) in furtherance of the attempted, ongoing abuse of process of the Admin Appeal against P. Joncas, C. Capone, Town of Westport, Conservation Commission, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, John Doe Selectmen (to be individually named following preliminary, perforce, limited discovery by Plaintiffs) and co-conspirator John Does (the "Count XIII Defendant(s)").

444.     Count XIII Defendants are unjustifiably and unreasonably misusing the Admin Appeal process (the cost of which is being paid for by taxpayers in the Town of Westport, including Plaintiffs/the Hadley's).

445.     Count XIII Defendants misuse and improper use of the limited Admin Appeal process is for the ulterior motive of prolonging the Admin Appeal, attempting to wrongfully obtain water, land, and other real and personal property rights for Capone personally, for his co-conspirators, and for other Count XIII Defendants, including but not limited to wrongfully seeking to obtain easement access rights to the Lane, water rights and inverse condemnation via extortion, et al., extortion of a 'dock permit' for Capone, attempting to extort riparian and littoral rights for Count XIII Defendants, to misuse insurance defense funds to 'quiet title' to property for Capone individually, and other Count XIII Defendants, et al.

446.     Count XIII Defendants in the course of 'defending' the Admin Appeal have committed numerous acts not proper or within the scope of the limited process required under M.G.L. 249 § 4 and MA Superior Court Standing Order 1-96, as required.

447.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XIII Defendant(s) as further described herein.

**15.  COUNT XIV Abuse of Process**

448.     The allegations of paragraphs 1 through 447 are incorporated herein by reference.

449.     This count is against Defendant(s) in furtherance of the attempted, in process, Admin Appeal abuse of process against P. Joncas, C. Capone, J. Amos, Town of Westport, Conservation Commission, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P.

92

Weinberg, J. Powell, J. McGuigan, John Does Selectmen (to be individually named following preliminary, perforce, limited discovery), and coconspirator John Does (the "Count XIV Defendant(s)").

450.     Count XIV Defendants have an ulterior motive for the Admin Appeal, including attempting to delay Plaintiffs discovery of CCREFS, and to wrongfully obtain water, land, and other real and personal property rights for themselves, Defendants, and other John Doe CCREFS co-conspirators.

451.     Count XIV Defendants in the course of 'defending' the Administrative Appeal have committed numerous acts not proper or within the scope of the process.

452.      For example, Administrative Appeals taken in the nature of certiorari are supposed to be governed under M.G.L. 249 § 4, and MA Superior Court Standing Order 1-96, which requires expedited review, based solely on the Administrative Record, with judgment being decided as a matter of law without and discovery, whatsoever.

453.     Count XIV Defendants are currently attempting to wrongfully and in furtherance of CCREFS, expand the scope of the Admin Appeal, which was focused on the events, crimes, torts and racketeering acts of August 6-14, 2018, including P. Joncas executing EO#1, Capone's trespass, seizure and destruction of floats, and the unanimous ratification thereof by Commission members at a secret meeting where Plaintiffs/the Hadley's were provided no advance notice for any of these egregious intentional acts disregarding Plaintiffs/the Hadley's civil rights.

93

454.     Instead, Count XIV Defendants are attempting to further their ulterior motive to wrongfully extort real and personal property rights (by, e.g., fraudulently claiming Lake Pogansett aka Devol Pond is a great pond), seeking easement access rights for Capone individually across both the Lane and the boatramp (located on the Hadley's/Plaintiffs private property), and purporting to seek to wrongfully acquire for other Count XIV Defendants and potentially others easement rights over Narrow Ave., the intersection of Narrow Ave with Sodom Road (a public road), the Lane, Lake Pogansett, and the boat ramp, and likely seeking to obtain other property rights.

455.     Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial, plus attorneys fees and costs incurring bringing this suit and the Admin Appeal.

456.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XIV Defendant(s) as further described herein.

**16. XVII Breach of Fiduciary Duty**

457.     The allegations of paragraphs 1 through 456 are incorporated herein by reference.

458.     This count is against Defendant(s) the Commonwealth of Massachusetts, the Massachusetts Attorney General Office, MassDCR, and MassDEP ("Count XVII Defendants").

459.     Count XVII Defendants owe a duty to all residents, property owners and citizens of the Commonwealth and United States of America to uphold and

94

protect constitutional rights, and to administer or cause to be administered the laws of the United States and the laws of the Commonwealth, including but not limited to the Clean Water Act, the Civil Rights Act, the Migratory Bird Treaty Act, RICO, the Hobbs Act, the Safe Drinking Water Act, et al.

460.     The Count XVII Defendants breached this duty by delegating environmental administrative duties to town 'officials' without providing any training, guidance, oversight or accountability.

461.     The Count XVII Defendants breached this duty by failing to supervise local Conservation Commissions, their members, and their agents.

462.     Count XVII Defendants breeched this duty by allowing other Defendants further described herein to misuse their entrusted authority for personal gain.

463.     Count XVII Defendants' breech of fiduciary duty caused and continues to cause damage both actually and proximately to the Plaintiffs/the Hadley's, and Jane Does, to be determined more in discovery.

464.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XVII Defendant(s) as further described herein.

**17. Count XVIII: Violation of 42 U.S.C §1983**

465.      The allegations of paragraphs 1 through 464 are incorporated herein by reference.

466.      This count is against Defendant(s) in furtherance of the attempted, in process and continuing intentional and willful violation of Plaintiffs Civil Rights and by Defendants, P. Joncas, C. Capone, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, Town of Westport, MA, Westport

95

Conservation Commission, and coconspirator John Does (the "Count XVIII Defendant(s)").

467.        Count XVIII Defendants intentionally deprived Plaintiffs/the Hadley's/DPA members/Jane and Jana Does of rights guaranteed by the United States Constitution.

468.        WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XVIII Defendant(s) as further described herein.

**19. Count XIX: Violation of 42 U.S.C §1983**

469.        The allegations of paragraphs 1 through 468 are incorporated herein by reference.

470.         This count is against Defendant(s) in furtherance of the attempted, in process and continuing intentional and willful violation of Plaintiffs Civil Rights and by Defendants, P. Joncas, C. Capone, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, Town of Westport, MA, John Doe Selectmen, Westport Conservation Commission, and coconspirator John Does (the "Count XIX Defendant(s)").

471.        Count XIX Defendants knowingly and intentionally violated 42 U.S.C. § 1983.

472.        .        The acts and failure to act of Capone and Joncas deprived the plaintiff of their particular rights under the laws of the United States and the United States Constitution as explained herein;

473.                P. Joncas acted under color of state law;

474.        C. Capone acted under the color of state law;

96

475.      G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, acted under the color of state law

476.      P. Joncas had final policymaking authority from defendant Conservation Commission, MassDEP, and MassDCR concerning the acts of C. Capone; and

477.      P. Joncas ratified C. Capone's acts, that is, P. Joncas knew of and specifically made a deliberate choice to approve via EO#1 C. Capone's trespass, seizure and destruction of Plaintiffs Property and floats, and the basis for it.

478.      G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, and P. Joncas ratified C. Capone's acts, that is, knew of and specifically made a deliberate choice to approve C. Capone and P. Joncas's acts and the basis for it.

479.      Count XIX Defendants did not contact or notify Plaintiffs/the Hadley's of suspected allegations of Capone.

480.      Count XIX Defendants did not notify or contact Plaintiffs/the Hadley's to provide notice and the opportunity to be heard at Conservation Commission meetings to review the actions and failure to contact or otherwise notify Plaintiffs.

481.      Count XIX Defendants knew of and specifically made a deliberate choice to approve EO#1, and Capone's crimes and torts knowing that Plaintiffs/the Hadley's had not been notified of EO#1 or the Ratification Hearing.

482.      Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial, plus attorneys fees and costs incurring bringing this suit and the Admin Appeal.

97

483.      WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XIX Defendant(s) as further described herein.

**20. Count XX: Inverse Condemnation**

484.      The allegations of paragraphs 1 through 483 are incorporated herein by reference.

485.       This count is against P. Joncas, C. Capone, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, J. Powell, J. McGuigan, Town of Westport, MA, John Doe Selectmen, Westport Conservation Commission, and coconspirator John Does (the "Count XX Defendant(s)").

486.      Plaintiffs/the Hadley's own the property currently attempting to be taken.

487.      Count XX Defendants did participate and continue to participate in a project to wrongfully take or damage, or otherwise authorizing and approving the taking and damage of Plaintiffs/the Hadley's private property in, on and around Lake Pogansett, sometimes referred to as Devol Pond, including but not limited to moving the historic rock marker onto Plaintiffs/the Hadley's property, relocating 'road layouts' on Narrow Ave (a private path) and Sodom Road (a public road), and impairing the water quality Lake Pogansett and causing other substantial damage to Plaintiffs/the Hadley's property.

488.      This is taking and substantially damaging Plaintiffs/the Hadley's Property and causing them damage.

489.      Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than

98

$40,654,744, said damages to be proven at the time of trial, plus attorneys fees and costs incurring bringing this suit and the Admin Appeal.

490.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XX Defendant(s) as further described herein.

**21. COUNT XXI Conspiracy to Violate Civil Rights**

491.     The allegations of paragraphs 1 through 490 are incorporated herein by reference.

492.     This count is against Defendant(s) in furtherance of the attempted, in process and continuing conspiracy to violate Plaintiffs Civil Rights and  by Defendants, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, Grace Greenwood, Kevin Carter, Jason Powell, Jacob McGuigan, Town of Westport, MA, Westport Conservation Commission, and coconspirator John Does (the "Count XX Defendant(s)").

493.     Count XX Defendants agreed, by words or conduct, to accomplish an unlawful goal and to accomplish a goal through unlawful means.

494.     One or more unlawful acts were performed to accomplish the goal and one or more acts were performed to accomplish the unlawful goal.

495.     Plaintiff/the Hadley's had damages and losses.

496.     Plaintiff's/the Hadley's injuries, damages, and losses were caused by the acts Count XX Defendants performed to accomplish the goal.

497.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XIX Defendant(s) as further described herein.

99

### 22.        COUNT XXII Conspiracy to Violate the Hobbs Act

498.        The allegations of paragraphs 1 through 497 are incorporated herein by

reference.

499.        This count is against Defendant(s) P. Joncas, C. Capone, K.T. Martin, P.

Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B.

Bryan, P. Weinberg, Grace Greenwood, K. Carter, J. Powell, J. McGuigan, Town

of Westport, MA, Westport Conservation Commission, and coconspirator John

Does (the "Count XXII Defendant(s)").

500.        Count XXII Defendants had and have an agreement to commit wrongful

acts with an unlawful end and to accomplish a lawful end by unlawful means.

501.        Count XXII Defendants committed wrongful acts, including entering and

seizing Plaintiffs/the Hadley's property and to accomplish the furth unlawful end

of attempting to force Plaintiffs/the Hadley's to part with property under the threat

of force under the color of official right.

502.        Count XXII Defendants agreement and wrongful acts resulted in damage

to the plaintiff.

503.        Specifically, Count XXII have and continue to obtain/ attempt to obtain

water rights, money, real and personal property from Plaintiffs/the Hadley's

acting under the color of official right by forcing Plaintiffs/the Hadley's to pay

money and attempting to force Plaintiffs/the Hadley's to part with property rights

a give said property and property rights to Count XXII Defendants, John Doe co-

conspirators, the Town of Westport, to which they are not entitled.

100

504.     Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial, plus attorneys fees and costs incurring bringing this suit and the Admin Appeal.

505.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXII Defendant(s) as further described herein.

## 23. COUNT XXIII Conspiracy

506.     The allegations of paragraphs 1 through 505 are incorporated herein by reference.

507.     This count is against Defendant(s) P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, G. Greenwood, K. Carter, J. Powell, J. McGuigan, Town of Westport, MA, Commonwealth of Massachusetts, Westport Conservation Commission, and coconspirator John Does (the "Count XXIII Defendant(s)").

508.     Count XXIII Defendants intended to commit forgery, fraud, extortion, and other crimes.

509.     Count XXIII Defendants and their co-conspirators engaged in conduct that constitutes a substantial step toward completing the crimes.

510.     Count XXIII Defendants failed to complete the crime.

511.     For example, Count XXIII Defendants intended to commit the crime of extortion by attempting to use the power of public office itself to procure the payments of money to a single member LLC located in Rhode Island, which was not owed to the single member LLC in Rhode Island.

512.     Specifically, on July 10, J. Powell took a substantial step and used interstate wires to email the Hadley's attempting to and intending to use the public office, the Westport Conservation Commission, to wrongfully force payments from DPA/Plaintiffs/the Hadley's to Mr. Brandon Faneuf, owner of a Single Member LLC located in Warwick, RI.

513.     The uncapped retainer and 'consulting fees' which Count XXIII Defendants wrongfully sought to extort from Plaintiffs/DPA members/Jane and Jana Does/the Hadley's were not owed to the Conservation Commission, J. Powell, B. Faneuf, or any other third party.

514.     Plaintiffs/The Hadley's refused to pay the uncapped monetary payment which Count XX Defendants sought to wrongfully force from Plaintiffs/the Hadley's to B. Faneuf.

515.     On August 20, 2019, the Conservation Commission unanimously voted through its members and agent, P. Joncas, C. Capone, J. McGuigan, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, and J. Powell and issued another Enforcement Order ("EO#2) against Plaintiffs/the Hadley's in a further overt act attempting to use the office of the Conservation Commission to force payments from Plaintiffs/the Hadley's to B. Faneuf, purporting to act under the color of official right.

516.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXIII Defendant(s) as further described herein.

## 24. COUNT XXIV Breech of Fiduciary Duty and Self Dealing

517.      The allegations of paragraphs 1 through 516 are incorporated herein by reference.

518.      This count is against Defendant(s) K.T. Martin, P. Joncas, C. Capone, John Doe Bristol County Registrar of Deeds, Town of Westport, MA, Commonwealth of Massachusetts, Westport Conservation Commission, and coconspirator John Does (the "Count XXIV Defendant(s)").

519.      Count XXIV Defendants owed a duty to Plaintiffs.

520.      Count XXIV Defendants breeched this duty.

521.      Count XXIV Defendants breech caused Plaintiffs harm and but for Count XXIV Defendants breech, Plaintiffs would not have been harmed.

522.      Plaintiffs have suffered damage as a result of Count XXIV.

523.      WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXIII Defendant(s) as further described herein.

## 25. COUNT XXV Conspiracy to Violate the Hobbs Act

524.      The allegations of paragraphs 1 through 523 are incorporated herein by reference.

525.      This count is against Defendant(s) in furtherance of the attempted, in process and continuing violation of Plaintiffs Civil Rights and attempted extortion by Defendants, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B. Tripp, H. McGovern, G. Greenwood, K. Carter, B. Bryan, P. Weinberg, G. Greenwood, K. Carter, J. Powell, J. McGuigan, Town of Westport, MA, John Doe Selectmen, Westport Conservation Commission, and coconspirator John Does (the "Count XXV Defendant(s)").

103

526.     Count XXV Defendants had and have an agreement to commit wrongful

acts with an unlawful end and to accomplish a lawful end by unlawful means.

527.     Count XXV Defendants committed wrongful acts, including entering and

seizing Plaintiffs/the Hadley's property and to accomplish the furth unlawful end

of attempting to force Plaintiffs/the Hadley's to part with property under the threat

of force under the color of official right.

528.     Count XXV Defendants agreement and wrongful acts resulted in damage

to Plaintiffs/the Hadley's.

529.     For example, as members and agents of the Conservation Commission,

Defendants, P. Joncas, C. Capone, G. Greenwood, K. Carter, B. Bryan, P.

Weinberg, Grace Greenwood, K. Carter, J. Powell, J. McGuigan, Town of

Westport, MA, Westport Conservation Commission, and coconspirator John

Does, have and continue to obtain/ attempt to obtain water rights, money, real and

personal property from the Hadley's acting under the color of official right by

forcing the Hadley's to pay money to the Town of Westport and State of

Massachusetts to which neither were entitled.

530.     For example, as John Doe Selectmen, have and continue to obtain/attempt

to obtain water, money, real and personal property from Plaintiffs/the Hadley's by

abusing the limited Admin Appeal process.

531.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter

judgment against the Count XXV Defendant(s) as further described herein.

**26. COUNT XXVI Violation of Plaintiffs' Civil Rights under 42 U.S.C. § 1983**

104

532.        The allegations of paragraphs 1 through 531 are incorporated herein by

reference.

533.        This count is against Defendant(s) in furtherance of CCREFS and the

attempted, in process and continuing violation of Plaintiffs Civil Rights by

Defendants, P. Joncas, C. Capone, K.T. Martin, P. Wilkinson, M.L. Quigley, B.

Tripp, H. McGovern, Grace Greenwood, K. Carter, B. Bryan, P. Weinberg, G.

Greenwood, K. Carter, J. Powell, J. McGuigan, Town of Westport, MA, Westport

Conservation Commission, and coconspirator John Does (the "Count XX

Defendant(s)").

534.        Count XXVI Defendants acted under the color of state law.

535.        Count XXVI Defendants actions and inactions deprived Plaintiffs/the

Hadley's constitutional rights.

536.        For example, C. Capone did knowingly and intentionally deprive

Plaintiffs, the Hadley's Constitutional rights guaranteed under the Fourth, Fifth,

and Fourteenth Amendments to the U.S. Constitution by entering, seizing, and

destroying Laura Hadley's personal property (temporary phytoremediation floats)

on August 8, 2018, and entering the Hadley's real property on August 8, 2018 to

accomplish his illegal actions.

537.        For example, P. Joncas did knowingly and intentionally execute an

Enforcement Order acting under the the color of state law on August 8th or 9th

2018.

538.     For example, Plaintiffs/the Hadley's were provided no notice of the illegal search and seizure prior to Capone entering, seizing and destroying their property on August 8, 2018.

539.     For example, on August 8th or 9th 2018, C. Capone used interstate wires in furtherance of CCREFS, and intentionally denying the Hadley's civil rights while purporting to act under the color of law stating, I as Conservation Commission Agent for the Town of Westport has been given authority to remove the plants you and your daughter placed in Devol Pond . . .", and advising Mr. Hadley that his daughters property could be retrieved from the Westport Highway Department.

540.     Capone knew these statements were false and that neither he nor his co-conspirators had enforcement authority.

541.     For example, Capone, Count XXVI Defendants, and other CCREFS co-conspirators, intentionally deprived the Hadley's their Constitutional Rights guaranteed under the Fourth Amendment to be free from unreasonable search and seizure, Fifth Amendment granting the right not be deprived of life, liberty or property without due process of the law, and the Fourteen Amendment granting the right to due process and equal protection under the law.

542.     For example, on August 14, 2018, the Conservation Commission held a Ratification Hearing where Count XXVI Defendant members of the Commission unanimously ratified the Enforcement Order and Capone's trespass, theft, and destruction of property under the guise of the color of state law.

543.     For example, Count XXVI Defendants did not provide the Hadley's with any notice of the hearing or give them the opportunity to be heard.

## 27. COUNT XXVII RICO § (c)

544.     The allegations of paragraphs 1 through 543 are incorporated herein by reference.

545.     This Count is against Defendant(s) Capone, P. Joncas, P. Wilkinson, M.L. Quigley, K.T. Martin, D. Martin, B. Tripp, A. Ferreira, M. Perry, E. Perry, M&C Ferry, B&T Palmer, H. McGovern, R. Swicker, J. Powell, J. McGuigan, G. Greenwood, P. Weinberg, K. Carter, B. Byron, Town of Westport, Westport Conservation Commission, and John Doe, co-conspirators in CCREFS, to be identified during discovery limited initial discovery by Plaintiffs and an amended complaint (the "Count XXVII Defendant(s)").

546.     CCREFS is an enterprise and association in fact engaged in and whose activities affect interstate commerce.

547.     The Count XXVII Defendant(s) are employed by or associated-in-fact with the enterprise.

548.     Each Count XXVII Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

549.     The Count XXVII Defendant(s) agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and others to wrongfully obtain money, water rights, real and personal property located in

Massachusetts and Rhode Island through a pattern of racketeering activity. Specifically:

550.    **Capone, Joncas and John Does seeking to extort water and land rights under the color of official right as part of ongoing scheme:**

551.    For example, Capone, Joncas, and John Does knowingly and deliberately used, and continue to use their official positions, as Conservation Commission Agent for Westport and forester for MassDCR, and as Conservation Commission Chair and forester for MassDCR, seeking to wrongfully obtain land, water, personal property, and money to which Capone, Joncas, CCREFS co-conspirators and John Does, have no right.

552.    For example, Capone knowingly made false statements of material fact in preparing, approving, recommending for approval, or consulting and otherwise advancing the approval of an 'interim dock permit' on land and in water Capone knew to be owned by Plaintiffs/the Hadley's.

553.    Upon information and belief, Capone acted under the color of official right in recommending for approval an interim 'dock permit' for his father, the late Paul Capone, knowing it was located on Plaintiffs/the Hadley's Property.

554.    Count XXVII Defendants banded together to commit a pattern of racketeering they could not accomplish on their own.

555.    For example, K.T. Martin and D. Martin prepared and facilitated the execution and recording of deeds on land they knew to be owned by Plaintiffs/the Hadley's, in furtherance of CCREFS seeking to obtain by fraud and false pretenses land from the Hadley's for themselves and other members of CCREFS, including recording 'parcels' including but not limited to those found at the Bristol County

108

Registry of Deeds at book 6066, page 7-9, book 11893, page 207-09, book 9073, page 345-46, book 9717, page 148, book 9717, page 144-45 which, upon information and belief is located in both MA and RI.

556.     Upon information and belief, K.T. Martin also facilitated, prepared, or otherwise participated in recording at Bristol County Registry of Deeds book 8489, page 218, which purported to "claim" title to "vacant land" located on Narrow Ave. in Westport for her brother and co-conspirator B. Tripp.

557.     K.T. Martin and her brother B. Tripp knew the land was not vacant and that it was owned by Plaintiffs/the Hadley's.

558.     K.T. Martin, B. Tripp, and other Count XXVII Defendants intended for the Westport Town Assessors Office, Registry of Deeds, Plaintiffs/the Hadley's and others to rely on these knowingly false statements of material fact regarding ownership, they did rely on Defendants knowingly false statements and it is causing Plaintiffs/the Hadley's and others damage.

559.     C. Capone and P. Joncas approved and continue to approve or recommended for approval Orders of Conditions including but not limited to those for CCREFS co-conspirators, Count XXVII Defendants, in furtherance of CCREFS and purporting to authorize the destruction of forests, wetlands and wildlife and building of structures for Defendants on land they knew to be owned by Plaintiffs/the Hadley's/Jane and Jana Does in attempt to wrongfully procure land and other rights from Plaintiffs/the Hadley's for CCREFS co-conspirators while acting under the color of official right.

560.     For example, C. Capone, B. Tripp, and K.T. Martin conspired to record fraudulent title to property and construct structures on land they knew to be owned by Plaintiffs/the Hadley's, including C. Capone and upon information and belief P.

109

Joncas and other co-conspirators applied for, approved, and/or recommended for approval Orders of Conditions nos. 080-2230, 080-1741, 080-2639, et al.

561.     C. Capone currently and knowingly seeking to obtain via use of his official position, under the color of official right the continuation of said dock permit, to wrongfully obtain ownership of land, money and water rights for himself, his family members, Count XXVII Defendants and other coconspirator John Does.

562.     Capone seeks to obtain for himself and other CCREFS co-conspirators, water rights, easement/access rights, and other real and personal property rights for himself, family members and Defendants and John Doe c0-conspirators by misusing his position as Conservation Commission Agent for Westport, and by misusing his position as a forester employed by MassDCR, by facilitating ch. 61 liens, and approving or recommending for approval Orders of Conditions in furtherance of CCREFS.

563.     Capone, Joncas, and co-conspirator John Does misused and continue to misuse their positions, acting under the color of official right, to knowingly and wrongfully approve and otherwise further the approval of chapter 61 'tax breaks' and resultant liens for individuals, including but not limited to, upon information and belief, K.T. Martin, M. Perry, B&T Palmer, H. McGovern, and other co-conspirators John Does on property they do not own, the full extent of which will be determined during limited preliminary discovery by Plaintiffs necessary because Defendants are in exclusive possession and control of certain evidence.

564.     Joncas, Capone, and John Does knowingly and wrongfully approved, recommended for approval, advised on the approval of, or were otherwise involved in the approval process for chapter 61 applications and forestry plans for upon

110

information and belief, and including but limited to K.T. Martin, M. Perry, B&T

Palmer, H. McGovern, and other co-conspirator John Does in furtherance of

CCREFS, the full extent of which shall be discovered when discovery opens in this

case.

565.    Count I Defendants attempted to and continue to attempt to obtain title to

property for themselves and others via interstate mail and wire fraud, and

extortionary acts as defined in the Hobbs Act, and as further described herein.

566.    Capone has obtained and continues to take, wrongfully, timber and trees he

harvested and continues to harvest on Plaintiffs/the Hadley's land, and enjoyment of

water rights he is currently attempting to obtain by wrongful use of threat of force,

violence, fear, and under the color of official right.

567.    Capone continues, working with co-conspirators, to seek to obtain property

rights for himself, his family members and others, acting under the color of official

right.

568.    Capone continues to attempt to obtain real property rights including an

easement over Plaintiffs/the Hadley's property to which he has no right, for himself

and other John Doe, co-conspirators, to be identified during discovery.

569.    Beginning in approximately 2003, Capone began and continues to use his

position as Conservation Commission Agent, purporting to act under color of law or

color of official right in furtherance of CCREFS to extort money and property rights

for Count XXVII Defendants.

570.    C. Capone and his CCREFS co-conspirators are currently acting under the

color of official right, and using threats of violence to obtain easement access rights

111

for himself, his family members, and others to "the Lane" a private dirt path located on the Plaintiffs/the Hadley's private property.

571.     Capone is willfully and knowingly attempting to induce Plaintiffs/the Hadley's to part with their property (water, land, and money) acting under the color of official right, in collusion with co-conspirator Defendants and John Does, including moving the historic rock marker from the intersection of route 177 and Sodom Road onto Plaintiffs/the Hadley's Property.

572.     Capone purported to act under the color of official right when he seized and destroyed L. Hadley's phytoremediation floats on August 8, 2018.

573.     Capone and Joncas, in furtherance of CCREFS, conspired with other Count XXVII Defendants, and other John Does to wrongfully and intentionally compel Plaintiffs to pay the Commission and Commonwealth of Massachusetts money in August and September 2018, wrongfully acting under the color of official right.

574.     Capone, Joncas, and John Does in furtherance of CCREFS are currently attempting to induce Plaintiffs/the Hadley's to part with water rights and other private property, located in both the Commonwealth of Massachusetts and the State of Rhode Island acting under the color of official right and by approving Orders of Conditions for coconspirators in furtherance of CCREFS.

575.     Capone is acting under the color of official right in seeking to obtain an access right to Lake Pogansett (sometimes called "Devol Pond" or "the Devoll's Pond, so called") across Plaintiffs/the Hadley's/Jane and Jana Does property, for himself, his family members, and others via a path which serves as a boat ramp for Plaintiffs/the Hadley's and is located on Plaintiffs/the Hadley's private property to which he has no right.

112

576.     Capone is currently, in furtherance of CCREFS, misusing the color of official

right to receiving legal defense counsel paid for by tax dollars to which he is not

entitled as his actions were and are intentional violations of federal and state statutes.

577.     Capone, P. Wilkinson, and other CCREFS co-conspirators, used and continue

to use the threat of violence and fear seeking to obtain an interest in Plaintiffs real and

personal property located on Plaintiffs/the Hadley's Property in Massachusetts and

Rhode Island.

578.     For example, on April 10, 2022, L. Hadley and a family member were in 'the

Lane', a private path on the Hadley's property when Capone muttered obscenities

then rapidly accelerated causing L. Hadley to jump behind her vehicle to avoid being

hit by Capone's car and then the subsequent spray of rocks and dirt.

579.     On another occasion, at approximately 5:10PM on May 31, 2022, Laura and

Susan Hadley were sitting on their private dock, and Susan Hadley's car was parked

on the Hadley family's Property located at and under Narrow Ave., and specifically 1

Narrow Ave. Chris Capone approached the shore and began screaming threats that,

"you had better get your car off my private property. . .you want to play games, I'll

play some games. To start, just try to get out . . ."

580.     Capone then moved his truck attempting to block in Susan Hadley's car, and

to confine Susan and Laura Hadley to a bounded area against their will.

581.     Laura Hadley called the police, reported/made them aware of the situation, in

case things escalated further and because Susan Hadley was shaking with fear; the

Hadley's left shortly thereafter, and a friend who had arrived in the interim followed

them out of the Lane, in case Capone further acted on his express threats of violence

and because Susan Hadley was afraid.

113

582.     Another act of racketeering by Capone and his co-conspirators occurred, at approximately 3:30pm on July 16, 2022 when Chris Capone began destroying trees along the shore (on land he doesn't own, which belongs to Plaintiffs/the Hadley's) while loudly discussing and threatening violence with co-conspirator D. Laffarier.

583.     As Capone began chopping threes and clearing bushes, Capone was heard loudly exclaiming, "they want privacy, I'll give them privacy" [referring to the Hadley's] as he proceeded to cut trees and bushes located on the Hadley's property; Capone's accomplice and co-conspirator D. LaFarrier then loudly exclaimed "they need to have their f***'ing legs broken."

584.     In furtherance of CCREFS, another racketeering activity occurred in August of 2019, when P. Wilkinson threatened L. Hadley by saying that she  [Ms. Hadley] "had better leave Chris [Capone] alone and stop with the floats or I'll kill you myself."

585.     The real, riparian, littoral, and other property owned by Plaintiffs/the Hadley's/Jane and Jana Does are located in Massachusetts and Rhode Island, and as such all related racketeering acts are involved in interstate commerce and involve the unique multistate jurisdiction.

586.     Plaintiffs/the Hadley's recently discovered that they, family members, and others (though not including Defendants) own littoral and riparian interests because their chain of title extends from the purchases of the Original Proprietors in 1652 and several of their title chains explicitly include water rights.

587.     Neither C. Capone, P. Joncas, John Does, MA Department of Environmental Protection, town of Westport, nor the Conservation Commission

114

or any other Count XXVII Defendants were owed any money as a result of Plaintiffs/the Hadley's efforts to improve their water quality.

588.     Plaintiffs recently learned of and continue to discover the full extent of the CCREFS scheme, which has been intentionally hidden by Defendants.

589.     Count XXVII Defendants and John Does pursuant to and in furtherance of the fraudulent scheme, CCREFS committed multiple related acts of mail and wire fraud.

590.     For example, B. Tripp made false statements of material fact in recording a deed for 'vacant land' on Narrow Ave. with an eastern boundary described as now or formerly owned by Harold Hadley, found at Bristol County Registry of Deeds book 8489, page 218.

591.     B. Tripp knew the land was not vacant, and that it was and still is owned by Plaintiffs/the Hadley's, and intended for the Westport town assessors office, and others to rely on his knowingly false statements of material fact.

592.     The Westport town assessors office, Plaintiffs/the Hadley's and others relied on fraudulent statements made by B. Tripp and other CCREFS co-conspirators, and it is causing Plaintiffs/the Hadley's damage by denying them their property.

593.     The property described by B. Tripp at Bristol County Registry of Deeds book 8489, page 218, upon information and belief, is likely located in both Massachusetts and Rhode Island.

115

594.     Pursuant to and in furtherance of the fraudulent scheme CCREFS, Count XXVII Defendant(s) committed multiple related acts of extortion, mail and wire fraud, real estate fraud, and other related acts as further described herein.

595.     The acts of extortion, mail and wire fraud, and as set forth herein constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

596.     The Count XXVII Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

597.     As a direct and proximate result of the Count XXVII Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that: they are being derived exclusive use and control of their property, extensive damage to their property including trees has been committed by Capone and others for which Plaintiffs/the Hadley's have not been compensated, Plaintiffs/the Hadley's were wrongfully forced to pay money Defendant Conservation Commission, DEP, and others, and the Hadley's/Plaintiffs are still being forced to litigate to uphold their basic constitutional and private property rights in the Administrative Appeal, bearing both the direct costs as Plaintiffs, and indirectly as taxpayers bearing Defendants costs and fees for defending the Admin Appeal.

598.     Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial, plus attorneys fees and costs incurring bringing this suit and the Admin Appeal.

116

599.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXVII Defendant(s) as further described herein.

## 28. Count XXVIII Violation of 18 U.S.C. § 1962(c)

600.     Plaintiff incorporates by reference and realleges paragraphs 1 through 599 set forth above.

601.     The allegations of paragraphs 1 through 369 are incorporated herein by reference. This Count is against Defendant(s) Capone, Joncas, P. Wilkinson, M.L. Quigley, K.T. Martin, B. Tripp, M. Perry, B&T Palmer, M. Perry, H. McGovern, and John Doe, co-conspirators in CCREFS, to be identified during discovery (the "Count XXVIII Defendant(s)").

602.     18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated

with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c).

603.     Each Count XXVIII Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

604.     Defendants' activities include several acts of racketeering activity, partly discovered first by Plaintiffs in 2021, which continues to be uncovered, beginning in approximately 1976, and increasing in frequency and severity in approximately 2000.

117

605.     Plaintiffs recently discovered and are still uncovering details of Defendants CCREFS scheme, which includes several overt acts of fraud, extortion, conspiracy to commit extortion, extortion under the color of official right, et al., and accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. §1961(5).

606.     One such act took place on May 15, 1986 when H. McGovern knowingly recorded deeds for land located in Rhode Island and Massachusetts to which he had no valid title in furtherance of the recently discovered CCREFS.

607.     H. McGovern knew he did not have valid title to property located in Massachusetts, Bristol County Registry of Deeds book 1964, page 0782 and Tiverton, RI Land Records Book 1964, page 0782, book 001452, page 163, book 0025, page 321, et al.

608.     H. McGovern intended for the registry of deeds, town assessor's office, et al. in Massachusetts and Rhode Island, Plaintiffs/the Hadley's, and others to rely on these false statements of material fact.

609.     Plaintiffs/The Hadley's, town assessors' offices, and John Does relied on these false statements of material fact, and it is causing the Hadley's, the State of Rhode Island, and others damage, which is ongoing and getting worse.

610.     Another racketeering act took place on July 13, 2004, when the Conservation Commission and Conservation Commission Agent C. Capone, obtained/granted 'interim approval' for a dock license for his father, the late Paul Capone, located on the Hadley's property at 1 Narrow Ave., (NB Registry 7156, Page 50; Dock License Number 10045), extending into Lake Pogansett,

118

sometimes called Sandy Pond, Devol Pond, or the Devoll's Pond, so called, the

fresh pond, et al., which is a private pond owned in part by Plaintiffs/the

Hadley's/Jane and Jana Does.

611.     C. Capone knew neither he, nor his father Paul Capone, nor his father's

fiancé P. Wilkinson had valid title nor any interest in the property in Westport,

MA or in Lake Pogansett, and were only permitted to be there because of a

license granted by the late Elmer Wilkinson, P. Wilkinson's father who held a life

estate to a portion of the Property and served as property manager; and later, by P.

Wilkinson and M. L. Quigley as part of and in furtherance of CCREFS.

612.     C. Capone, in his individual capacity and while purporting to act under the

color of official right as Agent of the Conservation Commission, in furtherance of

CCREFS, made false representations of the ownership of a 'parcel' to the

Conservation Commission, state of Massachusetts, and the Massachusetts

Department of Environmental Protection in order to obtain 'interim approval' for

a dock, to begin a fraudulent attempt to obtain an interest in Plaintiffs/the

Hadley's property through Larceny by Trick and/or Theft by False Pretenses;.

613.     Capone intended for the Conservation Commission, the DEP and State of

Massachusetts to rely on his false representation of ownership, and that they did

rely on these knowingly false statements made by C. Capone in 2004 in

furtherance of CCREFS.

614.     Capone sought, received, and approved this Order of Conditions based on

false representations of material fact intended to induce reliance, which did induce

reliance, and which is causing the Hadley's/Plaintiffs damage.

615.     The issuance of the Order of Conditions caused and is causing the

Hadley's damage because they do not have use of this portion of their property;

and it is part of a larger scheme to acquire property interests for Capone and his

family members, the Town of Westport, Count XXVIII Defendants, and John Doe

co-conspirators while acting under the color of official right, and via fraud.

616.     Another such racketeering act took place on January 7, 2007, when B.

Tripp and his parents, Isaac and Geraldine Tripp, recorded a deed for "Vacant

Land on Narrow Ave." on land with an 'eastern boundary' listed as "now or

formerly owned by Harold Hadley, et ux." [17]

617.     Upon information and belief, B. Tripp and his parents I. Tripp and G.

Tripp used interstate wires to prepare and file the fraudulent 'conveyance' which

purported to claim 'vacant' land, which was at the time, and is still, owned by the

Hadley's though record title shows the 'owner' as B. Tripp as a result of the deed

B. Tripp fraudulently recorded, which upon information and belief is located

partly in MA and partly in RI.

618.     Plaintiffs/the Hadley's recently discovered property currently occupied by

B. Tripp, K. T. Martin, the K.T. Martin Trust, their parents, the late Isaac Tripp,

and Geraldine Tripp, H. McGovern, and other John Does is owned by

Plaintiffs/the Hadley's/Jane and Jana Does.

619.     In furtherance of the CCREFS scheme, B. Tripp, I. Tripp, G. Tripp, K.T.

Martin prepared and recorded deeds knowingly they had no valid right, title, or

---

[17] See Bristol County Southern District Registry Book 8489, Page 212  7156, page 50 et seq, and Book, 1678 page, 481-487, specifically 485. NONE recorded in Tiverton.

120

interest in the property, and intending to obtain title by false pretenses, forgery, and/or fraud.

620.     The property recently discovered to be owned by the Hadley's and currently being occupied by CCREFS co-conspirators is located in Massachusetts and Rhode Island.

621.     Another such racketeering act took place prior to September 15, 2008 when B. Tripp filed a Notice of Intent with the Westport Conservation Commission and MassDEP.

622.     Upon information and belief, B. Tripp and other co-conspirators used interstate wires to facilitate the filing the Notice of Intent and obtaining the Orders of Conditions.

623.     In furtherance of the CCREFS scheme, on or around September 15, 2008, C. Capone and upon information and belief, P. Joncas and other John Does, approved, recommended for approval, or otherwise advanced the approval of an Order of Conditions in their capacities as Agent and Chairman for the Westport Conservation Commission (under the color of law), in furtherance of CCREFS 'allowing' B. Tripp to fill in and destroy large amounts of wetlands on land B. Tripp, C. Capone, and John Does knew to be owned by the Hadley's/Plaintiffs.

624.     Capone conspired with B. Tripp in furtherance of CCREFS by purporting to 'authorize' B. Tripp to build a house on the Hadley's/Plaintiffs property. (See DEP file no 080-1741).

625.     B. Tripp and Capone knew representations of the material fact regarding property ownership were false and intended for Plaintiffs/the Hadley's, the

Conservation Commission, the Commonwealth of Massachusetts, and the DEP to rely on these false statements of material fact.

626. The Hadley's/Plaintiffs relied on these false statements until recently as they had not conducted a comprehensive title search, and relied on Defendants false statements, and resultant false records reflected in town assessors records and property records.

627. Upon information and belief, the Conservation Commission, MassDEP, State of Rhode Island, and Commonwealth of Massachusetts relied on these false statements of material fact and approved the Order of Conditions, and mistakenly permitted the occupation of Plaintiffs/the Hadley's property by B. Tripp.

628. Until the title search began in late 2020 and continuing thereafter, the Hadley's, MassDEP, and others relied on these false statements of material fact regarding ownership of the land currently occupied by B. Tripp, K.T. Martin, H. McGovern, P. Wilkinson, M.L. Quigley, M. Perry, and other co-conspirator John Does which caused and continues to cause Plaintiffs/the Hadley's damage.

629. Other such acts of racketeering are described further below and contained herein.

630. All of these acts were continuous over the life of the CCREFS, are ongoing and continue to escalate in severity.

631. At all times relevant hereto, beginning on or around 1976, increasing in severity in 2000 and continuing indefinitely absent judicial intervention, each Defendant conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

122

632.     On or around 1986, Defendants formed an association-in-fact Enterprise, the Capone Concom Real Estate Fraud Scheme ("CCREFS") described herein as CCREFS, within the meaning of 18 U.S.C. § 1961(4).

633.     The CCREFS Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding Plaintiffs/the Hadley's/Jane and Jana Does, other individual members of the Hadley family, the MA Department of Environmental Protection, Commonwealth of Massachusetts and others by creating and conducting a scheme to obtain title to real property located in MA and RI by fraud, extortion, and other racketeering acts set forth herein.

634.     In furtherance of CCREFS co-conspirators fraudulently recorded deeds to property owned by Plaintiffs/the Hadley's, to file, approve, and obtain chapter 61 liens and related 'tax breaks' from, upon information and belief, C. Capone, P. Joncas, and other John Does, to be discovered during initial limited discovery by Plaintiffs and added to an amended complaint.

635.     In furtherance of CCREFS, Defendants sought and continue to seek to obtain title to property by mail and wire fraud, extortion, and other acts of racketeering to wrongly obtain real property, personal property, and riparian interests.

636.     The CCREFS Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding Plaintiffs/the Hadley's, taxpayers in Westport, MA, other individuals, and the MA Department of Environmental Protection by abusing the process of litigating

123

Bristol County Superior Court case no. 1983CV00907, 2020-J-0343, 2021-J-0468, and 2022-P-0091, seeking to wrongfully obtain for C. Capone, P. Joncas, John Does, and others real, riparian, and personal property interests to which they are not entitled acting under the color of official right.

637.    The CCREFS Enterprise are ongoing organizations that function as a continuing units.

638.    The CCREFS Enterprise were created and used as a tool to effectuate Defendants' pattern of racketeering activity.

639.    All Defendants agreed to and did conduct and participate in the conduct of the CCREFS Enterprise's affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiffs/the Hadley's, and likely others, including but not limited to the Commonwealth of Massachusetts, State of Rhode Island, MassDEP, and others.

640.    The wire fraud committed by Defendants is based on a scheme developed and carried out by the CCREFS Enterprises wherein Defendant C. Capone used interstate wires seeking to extort money and property from Plaintiffs/the Hadley's, including fraudulently electronically filing and 'serving' a now vacated Enforcement Order (using interstate wires) on August 8th or August 9th, 2018.

641.    The Hadley's/Plaintiffs were deceived by this communication and the many other fraudulent communications by Capone, Joncas, K.T. Martin, P. Wilkinson, M. Perry, H. McGovern, B. Tripp, D. Martin, and other CCREFS co-conspirators to the Westport assessors office, members of the Hadley family, the

124

Westport Conservation Commission, the MA DEP, State of Rhode Island, and others to be further uncovered in discovery, surrounding the filing of the Notices of Intent, Orders of Conditions, chapter 61 liens, and other fraudulent filing beginning in approximately 2000, including but not limited to those set forth herein.

642.     Capone, as Defendant in the Administrative Appeal, had a duty to disclose that he did not have any valid property interests in Westport or to Lake Pogansett, the Lane, the boat ramp, the water, Laura Hadley's floats, et al.

643.     Defendants Capone and Joncas, had a duty to disclose their conflicts of interests to Plaintiffs, the Conservation Commission, MassDEP, and others upon filing of and approving or otherwise recommending for approval Orders of Conditions, Enforcement Orders, and chapter 61 liens on real property located in Massachusetts and Rhode Island, in furtherance of CCREFS.

644.     The full extent of chapter 61 liens, Enforcement Orders, Orders of Conditions, et al. and specific details on approvals remains in the sole custody of Defendants and shall be further uncovered when discovery opens in this case.

645.     Capone, Joncas, B. Tripp, K.T. Martin, P. Wilkinson, and John Does failures to disclose the real party-in-interest of the property recently discovered to be owned by Plaintiffs/the Hadley's to Plaintiffs/the Hadley's, and to the MassDEP was done intentionally and with full knowledge of all relevant facts.

125

646.     Defendants C. Capone, P. Joncas, B. Tripp, K.T. Martin, P. Wilkinson, and John Does failure to disclose the real party-in-interest to Plaintiff and to the MassDEP upon filing the Notices of Intent[18] was fraudulent.

647.     Defendant Capone, Joncas, Conservation Commission, and Town of Westport's continued litigation and continue litigation of the Bristol County Superior Court case nos. 1873CV00907 without disclosing the real party-in-interest to Plaintiffs, the MA DEP, the state of Massachusetts, the State of Rhode Island, and others which was and is fraudulent.

648.     Defendants used the wires for the transmission, delivery, or shipment of the communications by the Defendants or third parties, all of which are related to the CCREFS, and they were foreseeably caused to be sent as a result of Defendants' illegal scheme.

649.     At all times discussed herein, Count XXVIII Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

650.     Plaintiffs/the Hadley's have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $40,654,744, said damages to be proven at the time of trial, plus attorneys fees and costs incurring bringing this suit and the Admin Appeal.

---

126

651.    Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are

liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost

of this suit and the Admin Appeal, including reasonable attorneys' fees.

652.     WHEREFORE, Plaintiff requests that this Court enter judgment against

the Count XXVIII Defendant(s) as further described herein.

### 29. Count XXIX Assault

653.    Plaintiff incorporates by reference and realleges paragraphs 1 through 652

set forth above.

654.    This Count is against Defendant Capone.

655.    Capone performed several acts including trying to hit L. Hadley with his

car; and intentionally blocking Plaintiffs vehicle which created a reasonable

apprehension of imminent harmful and offensive contact with Plaintiffs.

656.    Capone intended to put Plaintiffs in apprehension.

657.    Capone's actions caused damage, and did place Plaintiffs in apprehension

of imminent harmful and offensive contact.

658.    WHEREFORE, Plaintiff/the Hadley's requests that this Court enter

judgment against the Count XXIX Defendant(s) as further described herein.

### 30. Count XXX Battery

659.    Plaintiff incorporates by reference and realleges paragraphs 1 through 658

set forth above.

660.    This Count is against Defendant Capone.

127

661.     Capone caused harmful an offensive contact with Plaintiffs person by rapidly accelerating in his vehicle causing L. Hadley to be forced to jump out of the way so she would not be hit by Capone's vehicle.

662.     Capone intended to cause the harmful and offensive contact.

663.     Capone's acts caused Plaintiffs damage and harm.

664.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXX Defendant(s) as further described herein.

**31. Count XXXI False Imprisonment**

665.     Plaintiff incorporates by reference and realleges paragraphs 1 through 664 set forth above.

666.     This Count is against Defendant Capone.

667.     Capone intentionally moved his vehicle to block Plaintiffs car, to confine Plaintiffs to a bounded area.

668.     Capone intended to confine and restrain as evidenced by his statement 'just try to get out'.

669.     Capone's act actually and proximately caused Plaintiffs to suffer harm and distress.

670.     WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXXI Defendant(s) as further described herein.

**32. Count XXXII Intentional Infliction of Emotional Distress**

671.     Plaintiff incorporates by reference and realleges paragraphs 1 through 670 set forth above.

128

672.    This Count is against Defendants Capone, P. Wilkinson, and D. LaFarrier ("Count XXXII Defendants")

673.    Count XXXII Defendants engaged in extreme and outrageous conduct.

674.    For example, P. Wilkinson threatening that "[L. Hadley] had better leave Chris alone . . .or I'll kill you myself . . ."

675.    For example, Capone making several physical and verbal threats to Plaintiffs as explained more fully herein.

676.    For example, D. LaFarrier exclaiming that Plaintiffs "need to have their F***ing legs broken . . ."

677.    Count XXXII Defendants intended to cause Plaintiffs severe emotional distress.

678.    Count XXXII Defendants actually and proximately caused Plaintiffs severe emotional distress.

679.    Count XXXII Defendants extreme and outrageous conduct caused Plaintiffs damage.

680.    WHEREFORE, Plaintiff/the Hadley's requests that this Court enter judgment against the Count XXXII Defendant(s) as further described herein.


## VI.    PRAYERS FOR RELIEF

PLAINTIFFS DEMAND TRIAL BY JURY.

WHEREFORE, Plaintiff demands judgment as follows:

A.    On all Causes of Action, a temporary restraining order or permanent injunction directing Defendants to stay at least 500ft away from Plaintiffs/the Hadley's.

129

B.      On all Causes of Action, enjoin Defendants from entering the Property, including but not limited at 1 Narrow Ave., on Narrow Ave, on and near Sodom Road, remove the historic rock marker, sign, and guardrails and place them back at the intersection of Route 177 and Sodom Road, and including but not limited to that portion of the Property in RI; and enjoin the ongoing and escalating threats of violence, trespass to trees, trespass, endangered species habitat destruction, migratory bird habitat destruction, et al.

C.      On Count I, enter an Order declaring all Chapter 61 liens on Plaintiffs/the Hadley's Property and any of that portion of the Property located in RI to be declared void— book and page numbers contained supra, and to be added following preliminary, limited discovery by Plaintiffs and an amended Complaint.

D.      On Counts I, II, and III, enter an Order declaring that any local or state environmental regulatory organization forcing or attempting to force payments to an individual, a town, a state, and/or any third party constitutes a violation of the Hobbs Act and RICO, and as such is expressly preempted thereby.

E.      On all Counts, enter an Order temporarily enjoining ongoing threats by Defendants, enjoining Defendants from any unconstitutional takings, enforcement actions, fines and/or fees against Plaintiffs, and enjoining Defendants from entering, altering, and destroying Plaintiffs/the Hadley's Property.

F.      On all Counts, enter an Order declaring that any and all environmental statutes must be administered in accordance with constitutional rights including but not limited those guaranteed in the Constitution and Amendments thereto including but not limited to the 1st, 4th, 5th, 6th, 7th, 9th, 10th, and 14th.

130

G.    On all Counts, enter an Order declaring that local and state administrative employees, volunteers, officers, et al., are not vested with criminal or other enforcement authority and civil authority must be in accordance with the rights provided for in the Constitution of the United States of America.

H.    On all Counts, enter an Order or judgment declaring that any individual, or local or state environmental regulatory organization forcing under the color of official right or otherwise attempting to use the color law to force a property owner of real and/or personal property to part with real and personal property rights (including the exclusive use and stewardship thereof) and/or otherwise compelling property owners to give said real and personal property rights to any individual, town, state, and/or third party, including but not limited to consultants, vendors, et al., constitutes a violation of the Hobbs Act and RICO, and, as such, is expressly preempted thereby.

I.    On all Counts, enter an Order directing a stay of proceedings in the Admin Appeal pending resolution of this matter.

J.    On Counts I, II, and III, enter an Order awarding money damages against Defendants in an amount no less than $10,000,000, plus interest thereon, plus attorneys fees and costs, the full amount to be determined following preliminary, limited discovery by Plaintiffs and an amended Complaint subsequent thereto;

K.    On Counts IV, V, VI, and VII, enter an Order declaring that all deeds forged and/or procured by false pretenses and fraud, book and page numbers described herein are void.

131

L. On Counts IV, V, VI, and VII, enter an Order declaring that the chapter 61 liens and other encumbrances located in MA and RI procured or otherwise authorized in furtherance of CCREFS are void ab initio.

M. On Counts IV, V, VI, and VII, enter an Order declaring the deeds, book and page numbers contained herein for property located in MA and RI 'procured' or otherwise authorized in furtherance of CCREFS are void.

N. On Counts IV, V, VI, and VII, enter an Order enjoining any destruction, development, conveyancing and/or encumbering of Plaintiffs/the Hadley's Property during the pendency of this litigation.

O. On Counts IV, V, VI, and VII, award money damages to Plaintiffs in an amount to be determined in limited preliminary discovery, and at trial but not less than $10,411,060.

P. On Counts I, II, III, IV, V, VI, VII, VIII, IV, X, XI, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV, XXVI, XXVII, XXVIII, XXIX, XXX, XXXI, and XXXII, order Defendants to reimburse Plaintiffs for all costs, expenses, and attorneys' fees incurred in connection with bringing this action and the Admin Appeal plus interest thereon (and directing such other and further proceedings to determine the amount thereof).

Q. On all Counts, enter an Order for Defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

R. On all Counts, retain jurisdiction of this action and the Admin Appeal and any subsequent state court proceedings wherever located, in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement

132

and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

S.     On all Counts, enter an Order prohibiting any federal and state funds, either directly or indirectly from being used to exercise the right of first refusal to 'purchase' or otherwise 'conserve' property which is subject to ch. 61 liens and located on Plaintiffs Property in MA and RI during the pendency of this litigation to stop the ongoing real estate fraud scheme, CCREFS, et al.

T.     On all Counts, enter an Order declaring void all 'titles' to property obtained by forgery, fraud and/or false pretenses located in MA and RI, including but not limited to book and page numbers referenced herein, to be added following an amended complaint after initial, limited, perforce discovery by Plaintiffs.

U.     On all Counts, enter an Order enjoining Defendants from further entering, altering, alienating, destroying, or otherwise encumbering Plaintiffs real and personal property, impairing water quality, authorizing any discharges into said waters, or in any way impacting the quantity of said water, at any time and during the pendency of this litigation.

V.     On all Counts, enter an Order or declaratory judgment upholding private property rights of individuals, to quality and unimpeded quantity of water under as decided by the MA Supreme Judicial Court.[19]

W.     On all Counts, enter an Order declaring void all Orders of Conditions granted by Defendants in furtherance of CCREFS on property owned by Plaintiffs/the Hadley's,

---

[19] In the Watuppa Cases, supra.

including but not limited to parts of the Property located in RI, the full list thereof to be included in an Amended Complaint following preliminary, limited discovery by Plaintiffs.

X.    On all Counts, enter an Order enjoining the extortion of money, water, and other property rights by state environmental officials in MA and by Conservation Commissions and their agents, from individuals who are advancing the objectives of the Clean Water Act, Safe Drinking Water Act, or otherwise improving the quality of the natural environment, and enjoining Defendants from frustrating the intent of Congress by attempting to extort payments from Plaintiffs/the Hadley's and other property owners who are improving and protecting the environment, thereby impeding Plaintiffs and property owners efforts to advance the objects of the Clean Water Act, Civil Rights Act, and defend Constitutional Rights.

Y.    On Counts I, II, III, IV, V, VI, VII, VIII, XIX, X, XI, and XII, Order Defendants to pay Plaintiffs treble damages of no less than $121,964,100, plus attorneys fees and costs, and such other damages to be further amended following discovery of amounts by which Defendants have been unjustly enriched as a result of their racketeering activities and other related crimes and torts.

Z.    On Count VII enter an Order directing local and state regulatory officials to uphold constitutional rights, and enjoining 'enforcement' by local and state administrative officials in accordance with controlling precedent.

AA.    On Count XXII, enter an Order directing Defendant Town of Westport, Capone, Joncas, and John Doe co-conspirators to remove the historic rock marker, any culverts and any guardrails located on Plaintiffs/the Hadley's Property at the

134

intersection of Narrow Ave and Sodom Road, anywhere on Narrow Ave., and

surrounding area; or alternatively, awarding Plaintiffs/the Hadley's damages in an

amount to be determined at trial, but not less than $2,121,600.

BB.   On all Counts, enter a declaratory judgment Order Defendants to cease and desist

from any action or inaction which would impair the quality and quantity of the

waters; or alternatively Order Defendants to pay Plaintiffs/the Hadley's and other

property owners treble damages of no less than $90,000,000 plus attorneys fees and

costs, and such other damages to be further amended following discovery and trial if

usurpation of water quality and quantity by the Town of Westport and other co-

conspirator Defendants is erroneously permitted or converted into a 'takings'; or

CC.   On all Counts, issue an Order prohibiting the use of town tax dollars for Defendants

attorney's fees and costs for this litigation.

DD.   On all Counts, issue a permanent injunction and declaratory relief prohibiting

Defendants from frustrating the intent of Congress as set forth in Clean Water Act,

Civil Rights Act, the Migratory Bird Treaty Act, the Safe Drinking Water Act, the

Endangered Species Act, the Pesticides Control Act, the Hobbs Act, the Constitution

and amendments, in any way, including but not limited to by attempting to extort

payments from Plaintiffs/the Hadley's/DPA and other property owners acting in

furtherance of federal objectives, or in any way impeding Plaintiffs/the

Hadley's/DPA and other property owners efforts to advance the objects of the

aforementioned federal laws.

135

EE.   On Counts XXIX, XXX, XXXI, XXXII, issue a permanent injunction requiring

Defendants to stay at least 500ft away from Plaintiffs, and award Plaintiffs damages

in an amount proven at trial, but not less than $10,000 for each act as set forth herein.

FF.   Alternatively, grant Plaintiffs leave to conduct limited discovery and file an amended

complaint.

GG.   On all Counts, Grant additional relief in the interest of justice.


Dated this 8th day of August, 2023


By their Attorney,

August 8, 2023

_____/s/ Laura A. Hadley_____

Laura A. Hadley, BBO#688047
Attn: Laura A. Hadley, Attorney at Law
One Lincoln
Twenty Fourth Floor/WeWork
Boston, MA 02110
(774) 644-5661
Lauraahadley@gmail.com

# UNITED STATES DISTRICT COURT
### for the
## DISTRICT OF MASSACHUSETTS

---

**DEVOL POND ASSOCIATION, ET AL.**

*Plaintiff*

v.

Civil Action No.: **1:23−CV−11042−IT**

**CHRIS CAPONE, ET AL.**

*Defendant*

---

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Massachusetts Department of Environmental Protection

MassDEP's headquarters 100 Cambridge Street, Suite 900, Boston, Massachusetts, 02114 and MassDEP's Regional located at 20 Riverside Drive, Lakeville, MA 02347

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) −−− or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) −−− you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

---

**ROBERT M. FARRELL**

*CLERK OF COURT*

**/s/ − Savannah Cook**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023−05−15 12:11:32**, Clerk USDC DMA

Civil Action No.: **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____                   _____
         Date                                                            *Server's Signature*

                                                        _____
                                                                        *Printed name and title*


                                                        _____
                                                                        *Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**

*Plaintiff*

v.

**CHRIS CAPONE, ET AL.**

*Defendant*

Civil Action No.: **1:23−CV−11042−IT**

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Jim Straub , MA Department of Conservation and Recreation
200 Central Street Apt. 12
Stoneham, MA 02180

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) −−− or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) −−− you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

 **/s/ − Savannah Cook**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023−05−15 12:11:32**, Clerk USDC DMA

Civil Action No.: **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____
Date

_____
*Server's Signature*

_____
*Printed name and title*


_____
*Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**

*Plaintiff*

v.

Civil Action No.: **1:23−CV−11042−IT**

**CHRIS CAPONE, ET AL.**

*Defendant*

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Jim Straub , MA Department of Conservation and Recreation
139 Franklin Street
Stoneham, MA 02180

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) −−− or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) −−− you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

 **/s/ − Savannah Cook**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023−05−15 12:11:32**, Clerk USDC DMA

Civil Action No.:  **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.



_____                    _____
          Date                                              *Server's Signature*

                                             _____
                                                          *Printed name and title*



                                             _____
                                                          *Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**

*Plaintiff*

v.

**CHRIS CAPONE, ET AL.**

*Defendant*

Civil Action No.: **1:23–CV–11042–IT**

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

 Massachusetts Department of Conservation and Recreation
State Transportation Building
10 Park Plaza, Suite 6620
Boston, MA 02116.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) ––– or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) ––– you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

 **/s/ – Savannah Cook**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023–05–15 12:11:32**, Clerk USDC DMA

Civil Action No.: **1:23–CV–11042–IT**

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____          _____
            Date                                                      *Server's Signature*

                                         _____
                                                          *Printed name and title*


                                         _____
                                                              *Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**
_____
*Plaintiff*

v.

**CHRIS CAPONE, ET AL.**
_____
*Defendant*

Civil Action No.: **1:23‑CV‑11042‑IT**

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Jim Straub , MA Department of Conservation and Recreation
State Transportation Building,
10 Park Plaza, Suite 6620
Boston, MA 02114

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) ––– or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) ––– you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**
_____
*CLERK OF COURT*

**/s/ – Savannah Cook**
_____
*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023‑05‑15 12:11:32**, Clerk USDC DMA

Civil Action No.: **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____
Date

_____
*Server's Signature*

_____
*Printed name and title*


_____
*Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**

_Plaintiff_

v.

**CHRIS CAPONE, ET AL.**

_Defendant_

Civil Action No.: **1:23–CV–11042–IT**

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

James Mulrooney

53 Touisset Ave.
Swansea, MA 02777

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) ––– or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) ––– you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

_CLERK OF COURT_

**/s/ – Savannah Cook**

_Signature of Clerk or Deputy Clerk_

**ISSUED ON 2023–05–15 12:11:32**, Clerk USDC DMA

Civil Action No.:  **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.


I declare under penalty of perjury that this information is true.



_____          _____
              Date                                                 *Server's Signature*

                                               _____
                                                               *Printed name and title*


                                               _____
                                                                 *Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**

*Plaintiff*

v.

Civil Action No.:  **1:23–CV–11042–IT**

**CHRIS CAPONE, ET AL.**

*Defendant*

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Mary Lou Quigley

955 Almy Road
Somerset, MA 02726

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) ––– or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) ––– you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

**/s/ – Savannah Cook**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023–05–15 12:11:32,** Clerk USDC DMA

Civil Action No.: **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____          _____
         Date                                                                      *Server's Signature*

                                            _____
                                            *Printed name and title*


                                            _____
                                            *Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**
_____
*Plaintiff*

v.

**CHRIS CAPONE, ET AL.**
_____
*Defendant*

Civil Action No.:  **1:23–CV–11042–IT**

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Christine Mulrooney

955 Almy Road
Somerset, MA 02726

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) ––– or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) ––– you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**
_____
*CLERK OF COURT*

 **/s/ – Savannah Cook**
_____
*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023–05–15 12:11:32**, Clerk USDC DMA

Civil Action No.:  **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____                    _____
Date                                                         *Server's Signature*

                                                           _____
                                                           *Printed name and title*


                                                           _____
                                                           *Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**

_Plaintiff_

v.

**CHRIS CAPONE, ET AL.**

_Defendant_

Civil Action No.: **1:23–CV–11042–IT**

# SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

Timothy Mulrooney

955 Almy Road
Somerset, MA 02726

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) ––– or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) ––– you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

_CLERK OF COURT_

**/s/ – Savannah Cook**

_Signature of Clerk or Deputy Clerk_

**ISSUED ON 2023–05–15 12:11:32**, Clerk USDC DMA

Civil Action No.: **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____
Date

_____
*Server's Signature*

_____
*Printed name and title*


_____
*Server's Address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**DEVOL POND ASSOCIATION, ET AL.**

*Plaintiff*

v.

Civil Action No.:  **1:23−CV−11042−IT**

**CHRIS CAPONE, ET AL.**

*Defendant*

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Westport Conservation Commission
856 Main Rd.  Westport, MA 02790

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) −−− or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) −−− you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Laura A. Hadley, Esq.
One Lincoln,
24th Floor/WeWork
Boston, MA 02110

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

**/s/ − Savannah Cook**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2023−05−15 12:11:32**, Clerk USDC DMA

Civil Action No.: **1:23–CV–11042–IT**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____             _____
        Date                                              *Server's Signature*

                                  _____
                                              *Printed name and title*


                                  _____
                                              *Server's Address*

Additional information regarding attempted service, etc: