**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |
| DEVOL POND ASSOCIATION ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 23-11042-MJJ |
| ) | |
| CHRIS CAPONE ET AL., ) | |
| ) | |
| Defendants. ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |

## <u>MEMORANDUM OF DECISION</u>

July 8, 2024

JOUN, D.J.

Plaintiffs, the Devol Pond Association, the 2021 Hadley Family Real Estate Trust, the Estate of Mildred M. Hadley, the Estate of the late Robert C. Hadley, Robert C. Hadley, Laura Hadley ("Attorney Hadley" or "Plaintiffs' Counsel"), and Jane and Jana Does (all plaintiffs collectively, "the Hadleys" or "Plaintiffs") have filed suit against the Town of Westport ("the Town"),[1] the Town's Conservation Commission ("the Commission"), Paul Joncas (as "the Chair" and a "Member" of the Commission) and other Members of the Commission (collectively, the "Commission Members"),[2] Christopher J. Capone ("Agent Capone," individually and in his capacity as an employee of the Commission), Pamela Wilkinson, Mary Lou Quigley, Dani LaFarrier, the Massachusetts Department of Environmental Protection (the

---

[1] While the operative Complaint omitted the Town from its caption, the Complaint referenced the Town as a Defendant, and the Town filed a response. [Doc. No. 82 at ¶ 19; Doc. No. 96].

[2] These other persons are Jason Powell, Jacob McGuigan, Grace Greenwood, Philip Weinberg, Burton Bryan, and Kevin Carter.

"DEP"), the Massachusetts Department of Conservation and Recreation (the "DCR"), Mark

Bartow (individually and in his capacity as a DEP employee) and Jim Straub (individually and in

his capacity as a DCR employee) (collectively, the "Commonwealth Individuals"), Pierce David

& Perritano LLP and two of its attorneys (collectively, the "Attorney Defendants"),[3] and John

Does 1–20 (all defendants collectively, the "Defendants"). The Hadleys bring claims against the

Defendants for violations of the federal Racketeering Influenced and Corrupt Organizations Act

("RICO"), violations of the Hadleys' federally protected rights under 42 U.S.C. § 1983 ("Section

1983"), violations of federal criminal laws for mail and wire fraud and extortion, abuse of

process, breach of fiduciary duty, and fraud.

In essence, the Hadleys contend that for over twenty years the Defendants have

participated in a sprawling conspiracy to defraud the Hadleys of real estate in Massachusetts and

Rhode Island, including land on Devol Pond and related water and other property rights. As

alleged, this scheme has involved, among other things, recorded deeds that were created or

obtained through fraud, death threats, an attempt to run over Attorney Hadley with a car, and

fraud on a Massachusetts court in which overlapping claims are pending. In addition,

government-affiliated Defendants allegedly engaged in the illegal search and seizure of

phytoremediation rafts placed by the Hadleys on Devol Pond, and these Defendants conditioned

further phytoremediation efforts by the Hadleys on payments for third-party monitoring.

Now, all the defendants that have appeared (the "Moving Defendants") have moved to

dismiss all claims against them, with the Attorney Defendants also moving for Rule 11 sanctions

against the Hadleys. For their part, the Hadleys have moved to disqualify the Attorney

---

[3] The individual attorneys are Justin Amos and David Cloherty. [Doc. No. 82 at ¶¶ 25–27].

Defendants and for the Court to issue various orders to exercise "superintendence" over the pending state court case.

## I.   LEGAL STANDARD

### A.   <u>Motion to Dismiss</u>

In evaluating a motion to dismiss for failure to state a claim, the Court must determine whether a complaint contains enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting this review, the Court "ignores statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then takes the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and sees if they plausibly narrate a claim for relief." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up). "[G]auging a pleaded situation's plausibility is a context-specific job that compels [the Court] to draw on [its] judicial experience and common sense." *Id.*

### B.   <u>Motion for Sanctions</u>

"Civil Rule 11 requires that a motion filer 'certif[y] that to the best of the [filer]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,' the filing does not offend the rule's commands, [including that]: the filing's 'legal contentions' must be 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law,' and the filing's 'factual contentions' must 'have evidentiary support' or a 'likely' prospect of it." *Eldridge v. Gordon Bros. Grp., L.L.C.*,

863 F.3d 66, 87 (1st Cir. 2017) (citing Fed. R. Civ. P. 11(b)(2)–(3)). Therefore, "[u]nder Rule 11, a court may impose sanctions on a lawyer 'for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose.'" *In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021) (quoting *CQ Int'l Co. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 60 (1st Cir. 2011)). "A claim is frivolous when it is either not well-grounded in fact or unwarranted by existing law or a good faith argument for an extension, modification or reversal of existing law." *Id.* (cleaned up).

"In determining whether a lawyer has offended Rule 11, a court generally must use an objective standard, asking what is reasonable under the circumstances." *Id*. "Factors to be considered include the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information." *Id.* (cleaned up). "Typically, some degree of fault is required, but the fault need not be a wicked or subjectively reckless state of mind; rather, an individual must, at the very least, be culpably careless to commit a violation." *Id.* at 34–35 (cleaned up). "[T]o warrant sanctions, it is not enough that the filer's claim lacked merit—it must be so *plainly unmeritorious* as to warrant the imposition of sanctions." *Zell v. Ricci*, 957 F.3d 1, 19 (1st Cir. 2020) (cleaned up).

### C. <u>Motion to Disqualify Counsel</u>

A district court "has the duty and responsibility of supervising the conduct of attorneys who appear before it," *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984), which "includes the inherent authority to disqualify counsel," *Eaves v. City of Worcester*, No. 12-cv-10336, 2012 WL 6196012, at *2 (D. Mass. Dec. 11, 2012). "[D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Carta ex rel. Est. of Carta v. Lumbermens Mut. Cas.*

4

*Co.*, 419 F. Supp. 2d 23, 28–29 (D. Mass. 2006). "[T]he burden rests on the party seeking

disqualification to establish the need to interfere with the [attorney-client] relationship." *Mansor*

*v. JPMorgan Chase Bank, N.A.*, No. 12-cv-10544, 2017 WL 4159935, at *2 (D. Mass. Sept. 19,

2017) (cleaned up).

## II.   FACTUAL BACKGROUND

The following fact allegations are drawn from the Hadleys' operative Complaint, the

parties' filings summarizing the allegations, and Massachusetts court records in *Hadley v. Town*

*of Westport*, No. 1873CV00907 (Bristol Cty. Sup. Ct.), which are subject to judicial notice.[4]

### A.   The Disputed Ownership of the Devol Pond Property

#### 1.   The Devol Pond Property

The Hadleys assert an ownership interest in certain real property adjacent to Narrow

Avenue in Westport, Massachusetts (but which spans across the border of Massachusetts and

Rhode Island) and portions of Devol Pond (the "Property").[5] [Doc. No. 82 at pp. 2–3, ¶¶ 42–43,

93]. Decades ago, the Hadleys' predecessors in interest, the late Robert C. Hadley and Mimi

Hadley, granted Elmer Wilkinson a life estate and oral license to a portion of the Property in

exchange for Mr. Wilkinson serving as a caretaker for the Property. [*Id.* at p. 3]. Mr. Wilkinson

in turn granted Paul Capone, Agent Capone's father, an oral license to access this property in the

summer and keep a seasonal structure there. [*Id.* at p. 3, ¶ 53].

---

[4] *See Guardado v. United States*, 76 F.4th 17, 24 (1st Cir. 2023) ("tak[ing] judicial notice of . . . state court docket entries"); *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[5] The Hadleys note that this body of water has been known by a variety of names, including Lake Poganssett. [Doc. No. 82 at 2, ¶ 42]. For ease of reference, the Court will refer to it as Devol Pond.

### 2.  **The Disputed Ownership**

In connection with probate proceedings after Mr. Wilkinson's death in 2001, the Hadleys claim that Mr. Wilkinson's daughters, Pamela Wilkinson and Mary Lou Quigley, along with Agent Capone, "forged conveyances and made knowingly false assertions regarding title," and "forged deeds and procured deeds by false pretenses" that were relied upon by the Hadleys, the New Bedford Registry of Deeds, and the Town's Assessor's Office. [*Id.* at p. 4, ¶¶ 45–48]. These Defendants then allegedly "misrepresented that Elmer Wilkinson had been granted 'fee title' to the whole Hadleys' [Property] rather than a 'life estate'" that would revert back to the Hadleys upon Mr. Wilkinson's death. [*Id.* at p. 4].

On October 4, 2008, the probate matters of Elmer Wilkinson, the late Robert C. Hadley, Mildred M. Hadley, and Harold M. Hadley (the brother of Plaintiff Robert C. Hadley, who died in 1999) were "disposed on conversion." [*Id.* at ¶¶ 56–57]. Neither the Hadleys nor Frank B. Hadley, "the sole surviving executor for the Estates of Mildred M. Hadley and the late Robert C. Hadley," had been aware of these probate proceedings. [*Id.* at ¶¶ 56–59]. Moreover, the Estates of Mildred M. Hadley and the late Robert C. Hadley did not contain any final accounting. [*Id.* at ¶ 60].

Around 2003 or 2004, Agent Capone conducted certain survey work. [*Id.* at ¶ 49]. The Hadleys claim that Agent Capone has lacked any valid ownership interest in any portion of the Property, but he, the Attorney Defendants, and unspecified other Defendants have represented that Agent Capone's late father, Paul Capone, held such an interest, which Agent Capone now holds. [*Id.* at ¶¶ 49–52, 217]. In addition, the Hadleys allege, on information and belief, that soon after October 2018, Agent Capone, Ms. Wilkinson, and unidentified co-conspirators began subdividing the Property based on forged deeds. [*Id.* at ¶¶ 61, 218].

Between late 2020 and Spring 2021, the Hadleys "began a comprehensive title review" concerning the Property. [*Id.* at ¶ 208]. "[R]ecently," the Hadleys claim to have learned that Agent Capone and Chair Joncas have been approving Chapter 61, 61A, and 61B liens on the Property, for their personal gain.[6] [*Id.* at ¶ 209].

### B.    The Conflict Concerning Phytoremediation Floats on Devol Pond

#### 1.    The Hadleys' Phytoremediation Floats

The Hadleys allege that around 2008, Agent Capone and unidentified others "polluted or authorized the pollution of" the Property, including Devol Pond. [*Id.* at ¶ 62]. From 2008 through 2018, cyanobacteria blooms made Devol Pond toxic during the summertime. [*Id.* at ¶ 63]. In 2009, the Hadleys and other unidentified property owners formed the Devol Pond Association and began working with experts to improve Devol Pond's water quality. [*Id.* at ¶ 64]. Then, in the summer of 2018, Attorney Hadley placed on Devol Pond five phytoremediation floats, which are an "EPA approved best management practice for mitigating toxic cyanobacteria blooms." [*Id.* at ¶¶ 65–66].

#### 2.    Agent Capone and the Commission's Initial Enforcement Actions

On August 1, 2018, Agent Capone began emailing and calling the DEP,[7] DCR, and the "Environmental Enforcement Authority," seeking enforcement authority to fine and take other action against the Hadleys. [*Id.* at ¶¶ 67, 69–71, 76]. These communications by Agent Capone included an allegation that the Hadleys had planted hydrilla, "a highly invasive species listed on

---

[6] The Hadleys do not fully explain this allegation, but it apparently refers to a Massachusetts program giving "preferential tax treatment to landowners who maintain their property as open space for timber production, agriculture or recreation." Forest Tax Program Chapter 61, https://www.mass.gov/info-details/forest-tax-program-chapter-61 (last visited July 7, 2024); *see also* M.G.L. c. 61, § 1, *et seq.*; *id.* at c. 61A, § 1, *et seq.*; *id.* at c. 61B, § 1, *et seq.*

[7] The Hadleys alleged that the DEP's Southwest Regional Office is "responsible for 'overseeing' [the Commission]." [Doc. No. 82 at ¶ 23].

the federal noxious weeds list," in Devol Pond. [*Id.* at ¶¶ 70, 72]. The Hadleys assert, "[u]pon information and belief," that Agent Capone and unidentified others "continue[] to seed[,] spread or allow the hydrilla to spread" in Devol Pond. [*Id.* at ¶ 71].

Between August 1, 2018, and August 6, 2018, Agent Capone entered the Property in his official capacity to search for violations. [*Id.* at ¶ 68]. On August 6, 2018, Agent Capone emailed DEP, DCR, Jim Straub, and Mark Bartow that he would be removing the floats that week. [*Id.* at ¶ 76]. That day, Mr. Straub stated to Mr. Bartow on an email chain that included Agent Capone: "we [DCR and DEP] do not have ENFORCEMENT powers." [*Id.* at ¶ 77]. On August 8, 2018, Mr. Straub and Mr. Bartow conveyed to Agent Capone their personnel's conclusion that certain "plants were native." [*Id.* at ¶ 78].

On August 8, 2018, Chair Joncas issued an Enforcement Order, which directed the Hadleys to cease and desist from conducting their phytoremediation activities on Devol Pond. [*Id.* at ¶ 79]. That day, Agent Capone again entered the Property, seizing and destroying Attorney Hadley's personal property on Devol Pond, including the phytoremediation floats. [*Id.* at ¶¶ 80–81, 273]. None of the Defendants contacted or gave any notification to the Hadleys before the Enforcement Order or Agent Capone's seizure activities on the Hadleys' Property. [*Id.* at ¶ 275]. The next day, Agent Capone emailed Robert Hadley a copy of the Enforcement Order, stating that he had authority from the Commission to enter, seize, and destroy property. [*Id.* at ¶¶ 82–86, 227]. After Mr. Hadley forwarded the email to his daughter, Attorney Hadley, she found her personal property "broken, in pieces in the town dumpster." [*Id.* at ¶ 87].

Neither Mr. Bartow and Mr. Straub, nor any other DEP or DCR personnel acted to stop Agent Capone and Chair Jonas or hold them accountable for these actions. [*Id.* at ¶¶ 85, 227].

On August 14, 2018, the Commission held a hearing at which the Commission members unanimously ratified the Enforcement Order and Agent Capone's seizure of Attorney Hadley's personal property. [*Id.* at ¶¶ 88, 227]. Neither the Commission nor its members notified the Hadleys of this hearing in advance. [*Id.* at ¶¶ 88, 227, 276]. Attorney Hadley, on behalf of herself and the Devol Pond Association, then attended three Commission meetings over the following two months or so, requesting that the Commission remove the Enforcement Order. [*Id.* at ¶ 89]. The Commission refused to do so, unless the Hadleys made certain payments to Agent Capone for the Town, the Commonwealth of Massachusetts, and the DEP. [*Id.* at ¶¶ 89–91]. The Hadleys made the payments. [*Id.* at ¶ 92].

### 3.  The Filing of a Lawsuit in Massachusetts Superior Court

In early October 2018, Attorney Hadley and Robert Hadley filed a lawsuit in Massachusetts Superior Court in Bristol County, seeking certiorari review of the Enforcement Order and bringing tort and constitutional claims for damages concerning the actions of Agent Capone and the Commission in early August 2018. [*Id.* at ¶¶ 94, 96, 210]; *see also Hadley v. Town of Westport*, No. 1873CV00907 (Bristol Cty. Sup. Ct.).

### 4.  The Commission's Order of Conditions

On October 23, 2018, the Commission lifted the Enforcement Order and issued an "Order of Conditions" that allowed the Hadleys to continue their phytoremediation activities. [*Id.* at ¶ 95]. On May 28, 2019, Attorney Hadley, on behalf of herself and the Devol Pond Association, attended a Commission hearing to request an extension of the Order of Conditions, for which she made a $200 payment. [*Id.* at ¶¶ 182–83]. Member Powell told her that payments to a third-party consultant, Ecosystem Solutions, LLC, would be required for the requested extension due to the pending lawsuit in Superior Court. [*Id.* at ¶¶ 185–87]. About a month later, the Commission refused a proposal by the Hadleys for the neighboring city of Watuppa and its Water Board to

monitor the Hadleys' remediation floats for free. [*Id.* at ¶¶ 188–89]. When Attorney Hadley appealed this decision to the DEP, on behalf of the Devol Pond Association, the DEP denied the appeal. [*Id.* at ¶¶ 190–91].

On July 9, 2019, Attorney Hadley requested approval from the Commission to take emergency action based on a documented cyanobacteria bloom. [*Id.* at ¶¶ 193–94]. Refusing the request, the Commission responded the following day to repeat the requirement of payment to the third-party consultant. [*Id.* at ¶ 194]. Attorney Hadley then took the legal position that an Order of Conditions was not required for the phytoremediation activities. [*Id.* at ¶ 195].

### 5.  The Hadleys' Continued Phytoremediation Efforts

Attorney Hadley proceeded to place temporary boxes containing non-invasive, USDA-white-listed plants on Devol Pond's shore. [*Id.* at ¶ 196]. The cyanobacteria bloom soon dissipated and the water quality improved. [*Id.* at ¶ 197]. Later testing indicated that the Hadleys' phytoremediation efforts helped mitigate the cyanobacteria bloom. [*Id.* at ¶ 202].[8]

In early August 2019, Ms. Wilkinson told Attorney Hadley that she "had better stop with the float nonsense and leave [Agent Capone] alone, or I'll kill you myself." [*Id.* at ¶ 199].[9] Then on August 27, 2019, the Commission issued a Second Enforcement Order against the Hadleys, which required that the temporary boxes be removed. [*Id.* at ¶¶ 200–01]. Shortly after this, however, the Commission lifted the Second Enforcement Order. [*Id.* at ¶ 204].

---

[8] In late July 2020, Attorney Hadley also placed temporary, phytoremediation floats with non-invasive, USDA-white-listed plants in Devol Pond. [*Id.* at ¶ 207]. Again, cyanobacteria blooms in Devol Pond dissipated and the water quality improved. [*Id.*].

[9] Relatedly, the Hadleys also allege that at unspecified times, Agent Capone "attempt[ed] to run [Attorney Hadley] over with his vehicle," he "attempt[ed] to trap Plaintiffs and prevent their use of their driveway," [*id.* at ¶ 294; *see also id.* at pp. 2, 6], and he told Attorney Hadley that "if she kept investigating things 'you'll get what coming [sic] to you, and so will he' (referring to Plaintiffs' dog)," [*id.* at p. 5]. Also at an unspecified time, Defendant Dani LaFarrier told Attorney Hadley and her mother "that they 'needed to have their f—cking legs broken' for meddling into these real estate issues." [*Id.*].

C.      **The Superior Court Litigation**

The Hadleys claim that the Town, the Commission, and the Attorney Defendants committed various litigation improprieties in the Superior Court action, including by making false statements to the court. [*Id.* at ¶¶ 214–24]. Most saliently, the Hadleys assert that the Attorney Defendants committed fraud by seeking to quiet title to a portion of the Property through allegedly fraudulent claims by Agent Capone and other unidentified co-conspirators. [*Id.* at ¶¶ 214–19]. The Hadleys also allege that the Attorney Defendants misrepresented: (1) that the Commission, Agent Capone, and the other Commission members had enforcement authority, including for the seizure of the Hadleys' property, and (2) that Devol Pond is a "great pond" as defined under Massachusetts law.[10] [*Id.* at ¶¶ 227, 281–84]. Other alleged improprieties include that the Town and Commission funded the Attorney Defendants' litigation defense of them and Agent Capone, which could benefit Agent Capone personally, and that these Defendants engaged in discovery prohibited by law and did not respond to some of the Hadleys' discovery requests. [*Id.* at ¶¶ 215, 218–21].

In sum, the Hadleys claim that through wrongful litigation activities these Defendants attempted to both delay the Hadleys' discovery of a real estate fraud scheme and to extort tens of millions of dollars in real and personal property and litigation costs from the Hadleys. [*Id.* at ¶¶ 220–24, 251, 253].

---

[10] The Hadleys presumably refer to a "great pond" being defined as a pond "containing in [its] natural state more than ten acres of land." M.G.L. c. 91, § 35. "With limited exceptions, the waters of a great pond and the land that comprises the bed of the pond to the natural low water mark belong to the Commonwealth, and the ponds are held in trust for certain public uses." *Opinion of Justs. to Senate*, 474 Mass. 1201, 1203 (2016); *see also* 310 Mass. Code Regs. § 9.02 ("*Great Pond* means any pond which contained more than ten acres in its natural state, as calculated based on the surface area of lands lying below the natural high water mark. The title to land below the natural low water mark is held by the Commonwealth in trust for the public . . . .").

11

### III.  PROCEDURAL HISTORY

The Hadleys filed an original Complaint on May 10, 2023, [Doc. No. 1], and a First Amended Complaint on July 3, 2023, [Doc. No. 5]. Without the Court's leave or the assent of the parties, the Hadleys filed a Second Amended Complaint on August 8, 2023. [Doc. No. 6]. After a hearing on October 6, 2023 regarding an initial series of motions to dismiss and other motions, the Court granted the Hadleys leave to file a further amended complaint, not to exceed 50 pages. [Doc. Nos. 78–79].

The Hadleys filed a Third Amended Complaint, styled as the Fourth Amended Complaint,[11] on November 3, 2023. [Doc. No. 82]. This operative Complaint brings claims against twenty named Defendants, *see supra*, at 1–2, for RICO violations (Counts I–IV), common law abuse of process (Count V), breach of fiduciary duty (Count VI), violations of Section 1983 (Counts VII–VIII), common law fraud (Count IX(a)),[12] and violations of federal criminal statutes for mail and wire fraud and extortion (Counts IX(a)–(b)).[13]

On November 30, 2023, Agent Capone, the Attorney Defendants, the Town and Commission, and the Commission Members filed motions to dismiss all claims against them. [Doc. Nos. 92, 94, 96, 98].  On December 1, 2023, Mr. Bartow, Mr. Straub, Christopher J. Capone,[14] DCR, and DEP (collectively, the "Commonwealth Defendants") also filed a motion to

---

[11] For ease of reference, the Court refers to this operative complaint as the Fourth Amended Complaint (or "the Complaint").

[12] The Complaint erroneously repeats Count IX. For ease of reference, the Court refers to the Complaint's first Count IX as "Count IX(a)" and the Complaint's second Count IX as "Count IX(b)."

[13] The Fourth Amended Complaint dropped various claims and dismissed various individual defendants that had been included in earlier versions of the complaint.

[14] The Commonwealth Defendants represent that Christopher R. Capone, a DCR employee and not a Town employee, is not the same person as Christopher J. Capone (i.e., Agent Capone). [Doc. No. 100 at 1 n.1]. Christopher R. Capone submitted a declaration that he works as a forester in a geographic region that does not encompass Westport, Massachusetts. [Doc. No. 101-1 at 2].

dismiss all claims against them. [Doc. No. 100]. That same day, Ms. Wilkinson and Ms. Quigley also filed motions to dismiss all claims against them. [Doc. Nos. 102, 104]. And on December 21, 2023, the Attorney Defendants filed a motion for sanctions against the Hadleys, including Attorney Hadley. [Doc. No. 110].

On December 29, 2023, the Hadleys filed oppositions to the motions to dismiss filed by Ms. Wilkinson, Ms. Quigley, and the Commonwealth Defendants. [Doc. Nos. 112–13]. That day, the Hadleys also filed three apparently duplicative motions to disqualify the Attorney Defendants. [Doc. Nos. 114–16]. On January 11, 2024, the Attorney Defendants filed their opposition to the Hadleys' motions to disqualify them. [Doc. No. 117].

On January 29, 2024, the Hadleys filed a motion for superintendence and to vacate orders. [Doc. No. 118]. The Town, the Commission, Agent Capone, and the Commission Members filed their opposition to this motion the next day, [Doc. No. 119], with a supplemental filing made on February 7, 2024, [Doc. No. 121]. The Commonwealth Defendants filed their opposition to the Hadleys' motion for superintendence on February 8, 2024. [Doc. No. 122].

On February 26, 2024, the Court denied the Hadleys' request to stay the deadlines for their responses to all motions to dismiss filed by the Attorney Defendants. [Doc. No. 124]. The Hadleys filed their oppositions to these motions to dismiss and their opposition to the Attorney Defendants' motion for sanctions on March 11, 2024. [Doc. Nos. 126–27]. On March 13, 2024, the Commission Members and Agent Capone, the Attorney Defendants, and the Town and Commission filed replies in support of their motions to dismiss. [Doc. Nos. 128–30]. That day, the Attorney Defendants also filed a reply in support of their motion for sanctions. [Doc. No. 131].

A hearing on these motions was held on March 20, 2024. [Doc. No. 132].

## IV.  ANALYSIS

### A.  <u>Motion to Disqualify</u>

As a preliminary matter, the Hadleys have moved to disqualify the Attorney Defendants from representing any Defendants but themselves in this action. [Doc. Nos. 114–16]. The Hadleys primarily contend as follows: *first*, the Town's funding of Agent Capone's representation by the Attorney Defendants constitutes extortion; *second*, the Attorney Defendants allegedly committed fraud on this Court and the Massachusetts Superior Court by arguing that Agent Capone has a property interest in real estate that the Hadleys dispute, and that Town officials had certain enforcement authority that the Hadleys also dispute;[15] and *third*, the Attorney Defendants' actions relating to some discovery disputes in the Superior Court litigation "harass[ed]" the Hadleys. [Doc. No. 116 at 12]. The Attorney Defendants reject these claims as "malicious, bad faith accusations" and rely on their responses to them in other briefing. [Doc. No. 117 at 6]. To the extent the Hadleys might suggest that the Attorney Defendants are conflicted by defending this action's claims against both themselves and other defendants, the Attorney Defendants also cite written waivers having been executed by those defendants.

The Hadleys' claims lack merit. They neither clearly articulate how something as unremarkable as a municipality's payment for the legal defense of its employee relating to their employment could amount to extortion, nor offer any legal support for this highly questionable theory. And the Hadleys fail to make any meaningful evidentiary showing that the Attorney Defendants committed fraud against this Court or any court. *See Mansor v. JPMorgan Chase Bank, N.A.*, No. 12-cv-10544, 2017 WL 4159935, at *2 (D. Mass. Sept. 19, 2017) ("[T]he burden rests on the party seeking disqualification to establish the need to interfere with the [attorney-

---

[15] The fraud allegations against the Attorney Defendants generally track those in the Complaint. *See supra*, Section II.C.

client] relationship." (cleaned up)); *Torres v. Bella Vista Hosp., Inc.*, 914 F.3d 15, 19–20 (1st

Cir. 2019) (explaining that "fraud on the court" means "fraud that seriously affects the integrity

of the normal process of adjudication, defiles the court itself, and prevents the judicial machinery

from performing its usual function—for example, bribery of a judge or jury tampering" (cleaned

up)); *Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir. 1989) (holding that fraud

on the court must "be demonstrated[] clearly and convincingly").

The Hadleys have failed to submit evidence to demonstrate that the Attorney Defendants

have engaged in anything but routine, in-bounds litigation activity, so the Court rejects the

unsubstantiated claims of fraud. *See, e.g.*, *Nw. Bypass Grp. v. U.S. Army Corps of Engineers*, 488

F. Supp. 2d 22, 32–33 (D.N.H. 2007) (denying motion to disqualify, in part, as "lack[ing] a valid

premise" due to "allegations of criminal conduct [being] far-fetched"); *Emigrant Residential

LLC v. Pinti*, No. 19-cv-12258, 2023 WL 8719964, at *14 (D. Mass. Dec. 18, 2023)

("Defendants have failed to adduce any evidence that would meet the high burden that is

necessary to establish that . . . attorneys have committed fraud on the Court."). Likewise, no

discovery abuse or conflict of interest that would warrant a disqualification has been sufficiently

described, much less evidenced. *See Mansor*, 2017 WL 4159935, at *2; *Rivera Molina v. Casa

La Roca, LLC*, 546 F. Supp. 3d 108, 110 (D.P.R. 2021) ("[D]isqualifying a party's chosen

attorney is a serious matter which could not be supported by the mere possibility of a conflict."

(cleaned up)).

The Hadleys have sought drastic, disfavored relief—disqualification of their adversaries'

chosen counsel—without evidencing anything beyond ordinary litigation circumstances. *Cf.

Addamax Corp. v. Open Software Found., Inc.*, 151 F.R.D. 504, 508–09 (D. Mass. 1993) (noting

that disqualification of counsel is "undeniably a harsh measure . . . . [,] [which] 'can be tactical in

nature, designed to harass opposing counsel'" (quoting *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984))). The Court will deny the motion and below addresses the issue of sanctions against the Hadleys for filing it. *See infra*, Section IV.D.

### B.   Motions to Dismiss

#### 1.   Sovereign Immunity

The Commonwealth Defendants argue that sovereign immunity under the Eleventh Amendment bars all claims against them in their official capacities because Congress has not abrogated the Eleventh Amendment with respect to any of these claims, and the Commonwealth Defendants have not consented to suit or waived immunity from it. [Doc. No. 101 at 8–12]. In response, the Hadleys contend that sovereign immunity under the Eleventh Amendment covers neither RICO claims nor claims involving allegations of fraud against a court. [Doc. No. 113 at 4–5]. Since the Eleventh Amendment lacks such carve outs, it immunizes the Commonwealth Defendants from the Hadleys' federal claims.

"The Eleventh Amendment generally bars suits against states[.]" *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021); *see* U.S. Const. amend. XI (immunizing states from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State"); *Sinapi v. Rhode Island Bd. of Bar Examiners*, 910 F.3d 544, 553 (1st Cir. 2018) (recognizing it to be "well established that [Eleventh Amendment] immunity also applies to suits brought by a state's own citizens" (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)). This immunity extends to "instrumentalities of the state, such as state agencies," *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (citing *Regents of the Univ. of Cal.*

16

*v. Doe,* 519 U.S. 425, 429–30 (1997)), and state officials in their official capacities,[16] *see Davidson v. Howe*, 749 F.3d 21, 27 (1st Cir. 2014).

But exceptions can apply. Congress may "abrogate[] a state's sovereign immunity through 'appropriate legislation.'" *Id.* at 28 (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011)). A state may also "waive its sovereign immunity by consenting to suit." *Id.* (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).[17] And state officials can be sued in their official capacities for equitable relief "to conform future conduct to the requirements of federal law" (but not relief that would in effect be damages or restitution). *Town of Barnstable*, 786 F.3d at 138; *see also Ex parte Young,* 209 U.S. 123, 159–60 (1908)).

To start with the federal claims against DEP and DCR,[18] the Eleventh Amendment plainly bars them. Congress has not abrogated state sovereign immunity with respect to any of the claims. *See Jafri v. New Hampshire Supreme Ct. Comm. on Character & Fitness*, No. 22-1802, 2023 WL 7294994, at *1 (1st Cir. Oct. 23, 2023) ("Congress did not unequivocally express an intent to abrogate Eleventh Amendment immunity in § 1983[.]" (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979))); *Harihar v. U.S. Bank Nat'l Ass'n*, No. 15-cv-11880, 2017 WL 1227924, at *14 (D. Mass. Mar. 31, 2017) (holding that "Congress has not abrogated . . .

---

[16] State officials can be sued in their individual capacities, although common-law immunities often still protect such officials. *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 76 (1st Cir. 2019) (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)).

[17] Specifically, a court "will find waiver only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Davidson*, 749 F.3d at 28 (cleaned up)). "Other than by an express statement, a state can waive its immunity by clear declaration that it intends to submit itself to the jurisdiction of a federal court, by participating in a federal program that requires waiver of immunity as an express condition, or by affirmative litigation conduct." *Id.* (cleaned up).

[18] The Hadleys do not dispute DEP's and DCR's statuses as state agencies subject to Eleventh Amendment immunity. So, the Court assumes that they are for purposes of this analysis. *See Brait Builders Corp. v. Massachusetts, Div. of Cap. Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011).

sovereign immunity with respect to claims under . . . RICO").[19] The Hadleys offer no authority for permitting RICO claims or claims for "fraud on the court" to proceed against a defendant state or state agency (or state officer in an official capacity), nor is the Court aware of any such authority. [Doc. No. 113 at 5].[20] And, as the Hadleys do not contest, the Commonwealth has neither consented to this suit nor waived sovereign immunity from it. [Doc. No. 101 at 10]. Therefore, the Court will dismiss all federal claims against DEP and DCR based on the Eleventh Amendment.

By the same token, the federal claims for damages against the Commonwealth Individuals in their official capacities must be dismissed too, *J.R. v. Gloria*, 593 F.3d 73, 82 (1st Cir. 2010); *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 662 (1st Cir. 2010) ("To the extent that [state officials] are sued in their official capacities, they stand in the shoes of the state and enjoy the same immunity as does [an arm of state government]."); but the federal claims against these defendants for equitable relief turn on the *Ex parte Young* exception. The key question is "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Shibinette*, 16 F.4th at 903 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). As the Commonwealth Defendants note, the Complaint focuses back to 2018 with respect to the Commonwealth Individuals' challenged actions. [Doc. No. 101 at 12]. The Hadleys have not argued otherwise. So, the Court will dismiss all claims against the Commonwealth Individuals in their official capacities. *See Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) ("[*Ex parte*] *Young* has been

---

[19] *See also Anand v. Commonwealth*, No. 23-CV-87, 2023 WL 7301995, at *6 n.5 (E.D. Va. Nov. 3, 2023) (collecting cases).

[20] While the Hadleys cite two cases analyzing allegations that a government entity formed part of a RICO *enterprise*, [Doc. No. 113 at 4–5], neither case involved RICO claims against a *defendant* government entity—much less a defendant *state* governmental entity.

focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past[.]”).

### 2.  <u>Statutes of Limitations</u>

#### i.  <u>RICO Claims</u>

There is a four-year statute of limitations for civil RICO claims. *Álvarez-Maurás v. Banco Popular of Puerto Rico*, 919 F.3d 617, 622 (1st Cir. 2019) (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987)). The limitations period begins to run, or in other words a claim accrues, “when a plaintiff knew or should have known of his injury.” *Id.* at 625 (quoting *Rodriguez v. Banco Central*, 917 F.2d 664, 666 (1st Cir. 1990)). This discovery rule “means ‘discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.’” *Id.* at 626 (quoting *Lares Group, II v. Tobin*, 221 F.3d 41, 44 (1st Cir. 2000)). To analyze the issue, the First Circuit has looked by analogy to the context of securities fraud, considering whether “sufficient storm warnings would lead a reasonable investor to check carefully into the possibility of fraud,” *id.* (quoting *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002)), or whether a “plaintiff possessed such knowledge as would alert a reasonable investor to the possibility of fraud,” *id.* (quoting *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987)).

The equitable doctrine of fraudulent concealment may, however, temporarily toll this statute of limitations “during such time that the perpetrator purposefully and successfully conceals his or her misconduct from its victim.” *Id.* A plaintiff may invoke fraudulent concealment by showing:

1) wrongful concealment by defendants of their actions; and
2) failure of the [plaintiff] to discover, within the limitations period, the operative facts which form the basis of the cause of action;
3) despite the [plaintiff’s] diligent efforts to discover the facts.

*Id.* (citing *Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir. 1984)). This showing must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189–90 (1st Cir. 2006); *e.g.*, *Humana, Inc. v. Biogen, Inc.*, 666 F. Supp. 3d 135, 146 (D. Mass. 2023) (holding that complaint allegations were inadequate under Fed. R. Civ. P. 9(b) to toll the running of the limitations period for RICO claims based on fraudulent concealment).

The Hadleys first filed this action on May 10, 2023. [Doc. No. 1]. The operative Complaint alleges a sprawling, decades-long scheme to defraud the Hadleys of real estate, which has more recently (since late 2018) involved disputed phytoremediation efforts on Devol Pond and a Massachusetts state court lawsuit arising from that dispute. As framed by the Complaint, the RICO counts focus on these more recent events. To the extent the RICO claims seek any relief for activity predating the four-year, look-back period (that is, before May 10, 2019), however, they are time-barred—unless the discovery rule delayed their accrual or fraudulent concealment paused the running of their limitations period long enough for the claims to have still been live on May 10, 2019.[21]

The Complaint challenges various actions concerning the disputed phytoremediation efforts that predate May 10, 2019. This includes actions from August through October 2018 relating to communications between Agent Capone and DEP and DCR about alleged hydrilla on Devol Pond, Chair Joncas' initial Enforcement Order, Agent Capone's seizure of the Hadleys' phytoremediation floats, the Commission's ratification of these acts and the Commission's

---

[21] Given how vague any intended RICO claims would be if based on the underlying allegations of real estate fraud, the Court declines to reach whether any dismissal would be appropriate for such claims due to the statute of limitations. Instead, the viability of these potential claims is addressed below with respect to the sufficiency of their pleading. *Infra*, Section IV.B.3.i.1.

requirement that the Hadleys make certain payments for an extension of the Order of Conditions. [Doc. No. 82 at ¶¶ 67–72, 76–77, 79–92, 227, 273, 275–76]. Without a doubt, the Hadleys knew their alleged injuries from these actions soon after they occurred. Indeed, in October 2018, Attorney Hadley and Robert Hadley filed suit in Massachusetts Superior Court concerning these disputed events. [*Id.* at ¶¶ 94, 96, 210]; *Hadley v. Town of Westport*, No. 1873CV00907 (Bristol Cty. Sup. Ct.). Therefore, the Court will dismiss all the Hadleys' RICO claims concerning these actions, because neither the discovery rule nor the doctrine of fraudulent concealment can resuscitate these claims.

### ii. Section 1983 Claims

A three-year statute of limitations applies for Section 1983 claims in Massachusetts. *See Fincher v. Town of Brookline*, 26 F.4th 479, 485–86 (1st Cir. 2022) (explaining that Section 1983 generally borrows the limitations period "found in the general personal injury statute of the jurisdiction in which the claim arises," which is three years in Massachusetts); *see also* M.G.L. c. 260, § 2A ("Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues.").[22] While courts look to relevant state law for any tolling principles applicable to a Section 1983 claim, federal law governs when the claim accrues. *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020). As with RICO claims, a federal discovery rule delays the accrual of a Section 1983 claim "until the plaintiff knows, or should know," of the acts comprising the violation of law at issue, including "both the fact of his or her injury and the injury's likely causal connection with the putative defendant." *Id.* at 136.

---

[22] The Complaint has referenced some part of the Property being in Rhode Island. [Doc. No. 82 at p. 4]. Although the Hadleys do not address this in their briefing, even if any Section 1983 claims arose there, it would not impact the operative limitations period. *See Riggs v. Curran*, 863 F.3d 6, 10 (1st Cir. 2017) (holding that Rhode Island's three-year statute of limitations for personal injury actions governs Section 1983 claims).

Given that the Hadleys first filed this action on May 10, 2023, [Doc. No. 1], any Section 1983 claims predating the three-year, look-back period (that is, before May 10, 2020) are time-barred—unless the discovery rule delays their accrual until May 10, 2020, or later. The Court already determined that the Hadleys knew of their injuries for the RICO claims concerning the phytoremediation-related actions that predate May 10, 2019, soon after they occurred. *Supra*, Section IV.B.2.i. Likewise, the Court concludes that the Hadleys knew of their injuries (and likely causal connections to the putative defendants) for the Section 1983 claims concerning this subject and timeframe, soon after the injuries occurred.

Between May 10, 2019 and May 10, 2020, the Complaint has alleged that the Commission sought to require payment by the Hadleys for a third-party consultant in order to continue phytoremediation activities on Devol Pond, [Doc. No. 82 at ¶¶ 95, 182–83, 185–91, 193–94]; and the Commission issued (but soon lifted) a Second Enforcement Order against the Hadleys concerning phytoremediation activities on Devol Pond, [*id.* at ¶¶ 200–01, 204]. Here too, there is no doubt that the Hadleys were aware of the relevant facts soon after any alleged injuries occurred.[23] So, the Court will dismiss any Section 1983 claims concerning phytoremediation-related actions that pre-date May 10, 2020.

### 3.  RICO Claims

#### i.  Sufficiency under Section 1962(c)

"The RICO statute prohibits those 'associated with any enterprise' that operates in interstate commerce from 'conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Lerner v. Colman*, 26 F.4th

---

[23] The Court rejects the Hadleys' claim that any defendant's legal position as to the Commission agents' enforcement authority or any of the Watuppa Ponds' status as a "great pond" plausibly amounts to fraud or might otherwise delay the accrual of Section 1983 claims under the discovery rule or any applicable doctrine of fraudulent concealment or equitable tolling. [Doc. No. 113 at 5–7].

71, 77 (1st Cir. 2022) (quoting 18 U.S.C. § 1962(c)). "Any person injured in his business or

property by reason of a violation of [S]ection 1962" may bring a suit for treble damages, costs,

and attorney's fees. 18 U.S.C. § 1964(c). Accordingly, "to state a civil RICO claim, a plaintiff

must allege 'a violation of section 1962' and an injury 'by reason of' that violation." *Lerner*, 26

F.4th at 77 (quoting 18 U.S.C. § 1964(c)). "The underlying [S]ection 1962 violation in turn

requires demonstrating: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity.'" *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "'Racketeering

activity' encompasses a long list of qualifying predicate offenses, including mail and wire fraud"

and extortion as alleged in the Complaint. *Id.* at 84; *see also* 18 U.S.C. § 1961(1).

    Mail or wire fraud requires a showing that a defendant "engaged in a scheme to defraud

with the specific intent to defraud and that [the defendant] used the United States mails and/or

the interstate wires in furtherance of the scheme." *Efron v. UBS Fin. Servs. Inc. of Puerto Rico*,

96 F.4th 430, 438 (1st Cir. 2024). "In particular, the scheme *must be intended to deceive* another,

by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct."

*Id.* (cleaned up). And a RICO complaint must "state with particularity the circumstances

constituting fraud" under Federal Rule of Civil Procedure 9(b). *Lerner*, 26 F.4th at 84 (quoting

Fed. R. Civ. P. 9(b)).

    "The Hobbs Act prohibits interference with interstate commerce through robbery or

extortion," or attempting or conspiring to do so. *United States v. Brissette*, 919 F.3d 670, 672 (1st

Cir. 2019) (cleaned up); *see* 18 U.S.C. § 1951(a). Under the Hobbs Act, "extortion" means "the

obtaining of property from another, with his consent, induced by wrongful use of actual or

threatened force, violence, or fear, or under color of official right." *Id.* at § 1951(b)(2). A

showing of Hobbs Act extortion requires: "(i) that the defendant induced someone to part with

property; (ii) that the defendant knowingly and willfully did so by extortionate means; and (iii) that the extortionate transaction affected interstate commerce." *United States v. Cruzado-Laureano*, 404 F.3d 470, 480 (1st Cir. 2005). It must be shown that a defendant "knew that he was not legally entitled to the property that he either received or attempted to receive." *United States v. Didonna*, 866 F.3d 40, 47 (1st Cir. 2017) (cleaned up). Moreover, "[t]he 'induced by wrongful use of actual or threatened force, violence, or fear' prong of the offense delineates a distinct form of extortion from the 'under color of official right' prong. *Brissette*, 919 F.3d at 672 (citing *Evans v. United States*, 504 U.S. 255, 263–64, 264 n.13 (1992)).[24]

As for a "pattern of racketeering activity," it requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). But two or more predicate acts may not suffice for a pattern of racketing activity, unless they are "'related' and 'amount to or pose a threat of continued criminal activity.'" *Schultz v. R.I. Hosp. Tr. Nat'l Bank, N.A.*, 94 F.3d 721, 731 (1st Cir. 1996) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989)). The latter, "continuity" requirement can be shown in two ways. *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 528 (1st Cir. 2015). First, "[u]nder the 'closed' approach, a plaintiff would have to prove a 'closed period of repeated conduct' that 'amounted to . . . continued criminal activity.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 237, 241). Or, second, "under the 'open-ended' approach, a plaintiff could satisfy the continuity requirement by showing 'past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 237, 241).

---

[24] *See also United States v. Cruz-Arroyo*, 461 F.3d 69, 73 (1st Cir. 2006) (holding that extortion under color of official right requires a showing "that the defendant, a public official, has received an emolument that he was not entitled to receive, with knowledge that the emolument was tendered in exchange for some official act").

### 1.   **The Real Estate Fraud Scheme**

As the Court has noted, while the Complaint refers to a sprawling scheme to defraud the Hadleys of real estate, the RICO counts focus on disputed phytoremediation-related actions and state court litigation. The Hadleys' briefing sheds little light on the precise scope of their RICO claims. But for sake of completeness, the Court will address whether the Complaint adequately states any RICO claims concerning an underlying real estate fraud scheme. In short, it does not.

The Complaint alleges that sometime around or after 2001, Agent Capone, Ms. Wilkinson, and Ms. Quigley forged deeds and conveyances, obtained deeds under false pretenses, and misrepresented their ownership of real estate, that is, the Property at issue here. [Doc. No. 82 at p. 4, ¶¶ 45–48]. After October 2018, Agent Capone, Ms. Wilkinson, and unidentified others allegedly began subdividing the property based on the forged deeds. [*Id.* at ¶¶ 61, 218]. At an unspecified time, the Complaint also contends that Agent Capone and Chair Joncas approved Chapter 61, 61A, and 61B liens on the Property, for their personal benefit. [*Id.* at ¶ 209].

Nothing here plausibly makes out a Section 1962(c) violation. Indeed, the Hadleys do not clearly articulate how any of these allegations could do so. Therefore, the Court will dismiss any RICO claims seeking relief under Section 1962(c) for this alleged scheme to commit real estate fraud. *See Giuliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005) (explaining that "generic allegations of common law fraud that do not implicate the mails or wires . . . do not constitute racketeering activity under RICO," and refusing to "imply or read into the amended complaint the mail or wire connection where it is not alleged specifically").

## 2.   **The Phytoremediation-Related Actions**

Turning to the phytoremediation-related actions within the statute of limitations, no

RICO claims under Section 1962(c) have been plausibly alleged with respect to them either. The

Complaint alleges that in mid-2019, the Commission sought to require that the Hadleys pay for a

third-party consultant to monitor their phytoremediation activities on Devol Pond. [*Id.* at ¶¶ 95,

182–83, 185–91, 193–94]. In August 2019, the Commission issued a Second Enforcement Order

against the Hadleys, requiring that they remove temporary phytoremediation boxes from Devol

Pond; but the Commission soon lifted this order. [*Id.* at ¶¶ 200–01, 204]. During that timeframe,

Ms. Wilkinson also allegedly told Attorney Hadley that she "had better stop with the float

nonsense and leave [Agent Capone] alone, or I'll kill you myself." [*Id.* at ¶ 199].

### a.   **Racketeering Activity**

Here too, nothing makes out a Section 1962(c) violation. None of the three predicate acts

alleged in the Complaint (mail fraud, wire fraud, and extortion under the Hobbs Act) are

plausibly shown. While Commission Member Powell allegedly emailed the Hadleys once

concerning the Commission's payment requirement, the Hadleys do not claim to have complied

with or to have been deceived by these communications. Nor have the Hadleys plausibly alleged

how the communications were fraudulent. *See Efron*, 96 F.4th at 438 (requiring that wire fraud

"be intended to deceive another, by means of false or fraudulent pretenses, representations,

promises, or other deceptive conduct" (cleaned up)); *Petrosyan v. Maserati N. Am., Inc.*, No. 19-

cv-12425, 2020 WL 2104789, at *5 (D. Mass. May 1, 2020) (finding that mail or wire fraud had

not been alleged with the required particularity because the plaintiff did "not identify precisely

which statements amount to alleged misrepresentations and how these representations amount to

a 'scheme' with the intent to defraud"). No other allegations put mail or wire fraud at issue.

As for extortion, the Hadleys have not plausibly alleged that the Commission and Commission Members were not entitled to require the payment. *See Ocasio v. United States*, 578 U.S. 282, 285 (2016) (explaining that, to prove extortion under color of official right, it must be shown "that a public official has obtained a payment *to which he was not entitled*" (emphasis added)); *United States v. Correia*, 55 F.4th 12, 29 (1st Cir. 2022) (same); *cf. Lu v. Menino*, 98 F. Supp. 3d 85, 100 (D. Mass. 2015) (determining that a government official's "ability and authority" to act precluded a "color of official right" extortion claim). Moreover, the Complaint does not allege that the Commission, the Commission Members, or Ms. Wilkinson obtained any property from the Hadleys as needed to show extortion. *See Brissette*, 919 F.3d at 678 ("[T]he Hobbs Act extortion provision's 'obtaining of property' element requires proof of "the acquisition of property' – '[t]hat is,' proof that 'the victim part[ed] with his property[.]'" (quoting *Sekhar v. United States*, 570 U.S. 729, 735 (2013))). To the contrary, the Hadleys have apparently refused to make the demanded payments.

### b.  Pattern of Racketeering Activity

At the risk of gilding the lily, the Commission's single effort to impose a payment requirement and a lone email about it also scarcely rise to the required pattern of racketeering activity. *See Giuliano*, 399 F.3d at 390 (affirming that plaintiffs failed to adequately allege a pattern of racketeering activity based on a limited "scheme to fraudulently procure ownership of a single piece of property from one individual victim and his company" (cleaned up)); *Petrosyan*, 2020 WL 2104789, at *5 ("A single effort, even when made up of multiple communications, actions or behaviors does not constitute a pattern sufficient to plead a RICO violation."); *see also infra*, Section IV.B.3.i.3.b.[25] The Court will not belabor the analysis further

---

[25] Given the Hadleys' refusal to pay, it is also unclear how they could show RICO standing through a "direct relation" between an injury and the alleged extortion. *George Lussier Enterprises, Inc. v. Subaru of New England,*

by addressing other requirements for these claims' sufficiency. Any RICO claims seeking relief under Section 1962(c) for the allegations relating to the Commission's payment requirement will be dismissed.

### 3.  The Superior Court Litigation

Lastly, none of the alleged litigation activities in Massachusetts Superior Court raise plausible RICO claims. The Complaint alleges various litigation improprieties by the Town, Commission, and Attorney Defendants, which include: making false statements to the Superior Court, [*id.* at ¶¶ 214–24], seeking to quiet title to a portion of the Property through fraudulent claims, [*id.* at ¶¶ 214–19], misrepresenting the enforcement authority of the Commission, Agent Capone, and the other Commission members, [*id.* at ¶¶ 227, 281–84], misrepresenting that Devol Pond is a "great pond" as defined under Massachusetts law, [*id.* at ¶ 282], the funding of the Attorney Defendants' litigation activities by the Town, [*id.* at ¶¶ 218, 227, 235, 239], and engaging in disputed discovery practices, [*id.* at ¶¶ 215, 218–21].

### a.  Racketeering Activity

Generally, federal courts reject RICO claims predicated on litigation conduct being cast as mail or wire fraud or extortion. *See Langan v. Smith*, 312 F. Supp. 3d 201, 205–07 (D. Mass. 2018) (collecting cases); *see also Gabovitch v. Shear*, 70 F.3d 1252 (Table), 1995 WL 697319, at *2 (1st Cir. 1995) (unpublished per curiam) (concluding that "proffering false affidavits and testimony to [a] state court" does not constitute a predicate act of extortion or mail fraud).[26] Such

---

*Inc.*, 393 F.3d 36, 51 (1st Cir. 2004); *see also Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 14 (1st Cir. 2007) ("The plaintiffs cannot press a RICO claim based on attempts at extortion that did not succeed in harming them.").

[26] *See also Dias v. Bogins*, 134 F.3d 361 (Table), 1998 WL 13089, at *1 (1st Cir. 1998) (unpublished per curiam) (holding that a threat of litigation could not be a predicate racketeering act, because "it is not extortion under federal law"); *but see Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51–52 (1st Cir. 2000) ("assum[ing] that the filing of frivolous suits may constitute RICO extortion in some instances").

claims implicate serious concerns for the broader legal system and administration of justice. *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (collecting cases and noting that if RICO claims predicated on litigation activity were permitted, "every unsuccessful lawsuit could spawn a retaliatory action, . . . . such claims would erode the principles undergirding the doctrines of res judicata and collateral estoppel," and they "would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts" (cleaned up)).[27] The Hadleys' motion to disqualify the Attorney Defendants based in part on RICO claims against them illustrates yet another troubling dimension to these concerns. Some RICO claims predicated on litigation activity have still survived, however, when "part of a larger extortive scheme," *Langan*, 312 F. Supp. 3d at 206, or "some other pattern of racketeering activity," *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 163 (D. Conn. 2000); *see also Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 70–71 (E.D.N.Y. 2020) (collecting cases).

Although the Hadleys fail to raise the point, the Complaint does reference a few instances of non-litigation activity by Agent Capone and Ms. LaFerrier—particularly verbal threats of harm to Attorney Hadley, her mother, and her dog, along with other threatening conduct—that could be characterized as related to the litigation and seeking to extort property at issue. [Doc. No. 82 at p. 5, ¶ 294]. Still, the Court cannot conclude that these stray, non-litigation incidents reach the greater scope and significance reflected in the exceptional cases that have allowed RICO claims predicated on litigation activity. This is especially so, given the compelling concerns that courts have expressed with these sorts of claims. *See Kim*, 884 F.3d at 104.

---

[27] *See also Gabovitch*, 1995 WL 697319 at *3 ("In essence, simply by alleging that defendants' litigation stance in the state court case was 'fraudulent,' plaintiff is insisting upon a right to relitigate that entire case in federal court (while the case remains pending in the state appellate court). The RICO statute obviously was not meant to endorse any such occurrence.").

### b.  Pattern of Racketeering Activity

The Hadleys failed to argue in their briefing that threats by Agent Capone and Ms. LaFerrier and the threatening conduct by Agent Capone plausibly raise predicate offences. Even assuming these were predicate acts, however, such sporadic incidents would not make out a pattern of racketeering activity because they only plausibly encompass a lone endeavor to target or obtain property. *See Giuliano*, 399 F.3d at 390; *Petrosyan*, 2020 WL 2104789, at *5; *supra*, Section IV.B.3.i.2.b. What is more, even if both the litigation activities and threats had plausibly constituted predicate offences, those RICO claims would still fail the continuity requirement for any pattern of racketeering activity. Although again, the Hadleys failed to argue that their RICO claims satisfy this test.

### i.  Closed-Ended Pattern

"[A] closed-ended pattern sometimes can be established by examining only the number of alleged predicate acts and the duration of the alleged racketeering activity." *Giuliano*, 399 F.3d at 387. The Supreme Court and First Circuit have defined the test within this "fairly flexible concept" by general parameters. *Home Orthopedics Corp.*, 781 F.3d at 529 (quoting *H.J. Inc.*, 492 U.S. at 239). "[W]hen a plaintiff has only alleged a few predicate acts (i.e., sporadic activity), or when the acts span only a few weeks or months, closed continuity cannot be established[.]" *Id.* (cleaned up). "At the other end of the spectrum, . . . where the temporal duration of the alleged activity and the alleged number of predicate acts are so extensive that common sense compels a conclusion of continuity, closed-ended continuity should be found." *Id.* (cleaned up).

In "squishier cases," when the "duration and extensiveness of the alleged conduct does not easily resolve the issue," courts should "look to other indicia of continuity." *Id.* (cleaned up).

These indicia have included: "whether the defendants were involved in multiple schemes, as opposed to one scheme with a singular objective; whether the scheme affected many people, or only a closed group of targeted victims; and whether the scheme had the potential to last indefinitely, instead of having a finite nature." *Id.* (cleaned up). But courts should ultimately "take a natural and commonsense approach . . . to determine whether the specific fact pattern of the case . . . suggests the kind of broad or ongoing criminal behavior at which the RICO statute was aimed." *Id.* (cleaned up).

The Hadleys allege a narrow scheme focused entirely on defrauding and extorting them of real estate and related property, which simply does not amount to "broad or ongoing" criminality or a closed pattern. The alleged predicate acts are not "so extensive that common sense compels a conclusion of continuity." *Giuliano*, 399 F.3d at 387 (cleaned up). And while the Complaint's allegations might go beyond sporadic activity, they only "concern[] a single, narrow scheme targeting few victims." *Id.* at 390. The First Circuit has consistently found this fails to satisfy continuity. *Id.*

With respect to the Superior Court litigation, the Complaint contends that various Defendants committed fraud and extortion to secure real estate and other property interests that some Defendants fraudulently took from the Hadleys. All these alleged unlawful actions only plausibly arise from a sole "event," or "transaction," or "financial endeavor," that is, securing fraudulent claims to the Hadleys' property. *Home Orthopedics Corp.*, 781 F.3d at 530. Weighing this single effort, together with the Hadleys being a closed group of targeted victims and the finite limit to the implicated Defendants' actions towards this lone real estate scheme, decisively forecloses any finding that the Hadleys have plausibly alleged a closed-ended pattern. *See id.*[28]

---

[28] *See also Giuliano*, 399 F.3d at 390–91 (concluding that a "scheme to fraudulently procure ownership of a single piece of property from one individual victim and his company" fell "squarely within our precedent rejecting closed-

### ii. **Open-Ended Pattern**

For much the same reasons, the Complaint also fails to adequately allege an open-ended

pattern through the required "'threat of' future criminal activity—that is, 'a realistic prospect of

continuity over an open-ended period yet to come.'" *Id.* at 531 (quoting *Feinstein v. Resolution*

*Trust Corp.,* 942 F.2d 34, 45 (1st Cir. 1991)). This "necessitates a showing that the racketeering

acts themselves include a specific threat of repetition extending indefinitely into the future [or] . .

. are part of an ongoing entity's regular way of doing business." *Id.* (quoting *Feinstein,* 942 F.2d

at 45 (cleaned up)). Yet nothing in the Complaint or the Hadleys' briefing indicates that if

Defendants succeed in settling their claims to the property at issue, extortion and fraud that has

been directed solely toward that result would continue indefinitely. *See e.g.*, *Giuliano*, 399 F.3d

at 391 (finding no open-ended continuity when, "[o]nce achieved, the illegal scheme, as alleged,

would end."); *Mani v. United Bank*, 498 F. Supp. 2d 406, 412 (D. Mass. 2007) ("Plaintiff has

failed to plead open-ended continuity because the only scheme alleged in the complaint involves

the one-time expropriation of her land."). "Lawsuits, by their very nature, are not indefinite——

once one side prevails (or the parties settle), the case is over." *Home Orthopedics Corp.*, 781

F.3d at 531 (cleaned up). And the Hadley do not argue, much less show, that the alleged

"racketeering acts were a part of the defendants' regular way of doing business." *Giuliano*, 399

---

ended continuity" (cleaned up)); *Efron v. Embassy Suites (Puerto Rico), Inc*, 223 F.3d 12, 21 (1st Cir. 2000)
(holding that alleged acts "compris[ing] a single effort, over a finite period of time, to wrest control of a particular
[business venture] from a limited number of [victims] . . . . cannot be a RICO violation"); *Gonzalez-Morales v.*
*Hernandez-Arencibia*, 221 F.3d 45, 52 (1st Cir. 2000) (concluding that defendants' institution of multiple legal
proceedings "d[id] not convert what [wa]s essentially a single episode into the kind of pattern that demonstrates a
threat of continued activity"); *Apparel Art Int'l, Inc. v. Jacobson,* 967 F.2d 720, 723 (1st Cir. 1992) (Breyer, C.J.)
(explaining that courts "have consistently held that a single episode does not constitute a 'pattern,' even if that single
episode involves behavior that amounts to several crimes"); *Langan*, 312 F. Supp. 3d 201, 208 (D. Mass. 2018)
("[A]lthough Plaintiff posits '140 or more' predicate acts as part of the alleged scheme, the nucleus of his complaint
is the allegedly extortive and fraudulent . . . litigation.").

F.3d at 391. Any RICO claims seeking relief under Section 1962(c) concerning the Superior Court litigation and related threats will be dismissed.

### ii.  Sufficiency of Other Section 1962 Claims

All the RICO claims brought under Section 1962 require an underlying pattern of racketeering activity. *See RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 330 (2016) ("RICO's § 1962 sets forth four specific prohibitions aimed at different ways in which a *pattern of racketeering activity* may be used to infiltrate, control, or operate 'a[n] enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.'" (emphasis added)).[29] Because the Court has determined that the Complaint fails to adequately allege such a pattern of racketeering activity for Section 1962(c) claims, all other RICO claims fail too, and will be dismissed. *See Lerner*, 26 F.4th at 77 n.2 (holding that plaintiff "cannot argue that [Section 1962(b) and Section 1962(d)] claims would survive if her complaint failed to allege an underlying pattern of racketeering activity").[30]

### 4.  Section 1983 Claims

"Federal law creates a cause of action under 42 U.S.C. § 1983, which allows a plaintiff to sue persons acting under color of state law for constitutional transgressions or other violations of federal law." *Martin v. Somerset Cnty.*, 86 F.4th 938, 943 (1st Cir. 2023). The Complaint contains two counts citing violations of Section 1983. As far as the Court can gather, Count VIII alleges claims based on phytoremediation-related actions from August 2018 through October

---

[29] *See also Compagnie De Reassurance D'Ile de france v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995), *as amended on denial of reh'g* (July 12, 1995) ("[I]n proving a right to recover for a RICO violation premised upon § 1962(a), the plaintiffs had to prove that they were harmed by reason of [defendant's] use or investment of income derived from *a pattern of racketeering activity*[.]" (emphasis altered)); *id.* at 92 ("Under § 1962(b), the plaintiffs had to show that they were harmed by reason of [defendant's] acquisition or maintenance of control of an enterprise *through a pattern of racketeering activity*." (emphasis added)).

[30] *See also Efron*, 223 F.3d at 21 ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the [section 1962(d)] conspiracy claim also fails.").

2018. [Doc. No. 82 at ¶¶ 267–79]. The statute of limitations extinguished those claims. *Supra*,

Section IV.B.2.ii. And the Complaint does not appear to raise any basis for other Section 1983

claims within the statute of limitations.

In Count VII, however, the Complaint alleges vaguely that Agent Capone, the

Commission, Commission Members, the Town, and unidentified "others" deprived the Hadleys

of unidentified rights under the U.S. Constitution. [Doc. No. 82 at ¶¶ 263–66]. The Hadleys do

not offer any clarity in their briefing as to the specific nature or scope of the Section 1983 claims

under Count VII. In fact, the Hadleys present nothing to oppose Defendants' argument that no

constitutional violation has been plausibly stated by the Complaint. [Doc. No. 97 at 3–11; Doc.

No. 99 at 17–18; Doc. No. 101 at 16–17]. As things stand, any Section 1983 claims under Count

VII plainly fail. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . .

. . a short and plain statement of the claim showing that the pleader is entitled to relief[.]");

*Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 46 (1st Cir. 2011) ("[T]he plain

statement . . . requires more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." (cleaned up)). Therefore, the Court will dismiss all the remaining Section 1983

claims.[31]

### 5.  Mail Fraud, Wire Fraud, and Hobbs Act Extortion

In Counts IX(a) and IX(b), the Complaint alleges claims under the federal criminal

statutes for mail fraud, wire fraud, and Hobbs Act extortion. [Doc. No. 82 at ¶¶ 280–97].

Defendants contend that no private cause of action may be brought directly under these criminal

---

[31] The Complaint does not appear to bring federal claims under Count VI for breach of fiduciary duty. The Defendants' briefing assumes these are state claims. [Doc. No. 101 at 22 n.15]. And the Hadleys' Opposition briefing does not contest this or offer any clarification as to Count VI's nature or legal basis. So, the Court assumes Count VI is brought under state law. But even were Count VI meant to bring federal claims, it plainly fails to state any federal claims for essentially the same reasons as with the Section 1983 claims, and the apparent lack of legal authority for such claims.

statutes. [Doc. No. 93 at 12–13; Doc. No. 95 at 18–19; Doc. No. 99 at 18; Doc. No. 101 at 21; Doc. No. 105 at 15]. In response, the Hadleys appear to concede as much, claiming to have only brought RICO claims based on predicate violations of these criminal statutes. [Doc. No. 126 at 9]. So, the Court will dismiss any claims directly under the federal criminal statutes for mail fraud, wire fraud, or Hobbs Act extortion. *See Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408–09 (8th Cir. 1999) (holding that no private right of action exists under the federal criminal statutes for mail fraud, wire fraud, and Hobbs Act extortion); *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019) (same for mail fraud and Hobbs Act extortion); *Laverty v. Massad*, No. 08-cv-40126, 2009 WL 10730425, at *6 (D. Mass. July 9, 2009) (same for mail and wire fraud.").[32]

### 6. Claims Against Dani LaFarrier

The Complaint's sole allegation concerning Defendant Dani LaFarrier is that she said Attorney Hadley and her mother "'needed to have their f—cking legs broken' for meddling into these real estate issues." [Doc. No. 82 at p. 5]. None of the counts specify Ms. LaFarrier as a Defendant. While she has not appeared or moved to dismiss, the Court will *sua sponte* dismiss any federal claims against her in the interests of judicial economy.

Certainly, "[s]ua sponte dismissals are strong medicine, and should be dispensed sparingly." *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002) (quoting *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 33 (1st Cir. 2001)). But "[i]f it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand." *Gonzalez-Gonzalez*, 257 F.3d at 37. So it is here.

---

[32] Given the stated grounds for dismissing all federal claims against the Moving Defendants, the Court does not reach the other grounds for dismissal of these claims raised by Defendants in their briefing.

The Court has determined that the Complaint fails to plausibly allege any timely Section 1983 claims, or a pattern of racketeering as required to state any RICO claims. The Moving Defendants' arguments with respect to these issues apply with equal, if not greater, force to any Section 1983 claims or RICO claims against Ms. LaFarrier. And the Hadleys have had ample notice of these deficiencies in their Complaint as to all Defendants and opportunity not only to respond but also to amend—and yet they have still failed to do so adequately.[33] A fifth bite at the pleading apple would be futile. Any Section 1983 and RICO claims against Ms. LaFarrier in the Complaint "are patently meritless and beyond all hope of redemption."[34] *Id.*; *see also Schubert v. City of Springfield*, 589 F.3d 496, 504 (1st Cir. 2009) (affirming *sua sponte* dismissal of Section 1983 claims against city because they depended on a liability finding against a police officer, which had been precluded by summary judgment); *Relf v. Pender*, No. 21-cv-11734, 2023 WL 349849, at *5 (D. Mass. Jan. 20, 2023) (*sua sponte* dismissing claims against non-moving defendant when dispositive argument made by moving defendants was applicable to all defendants).[35]

### 7.  Request for Discovery

In their Opposition briefing, the Hadleys requested leave to conduct limited discovery before any dismissal of their claims because unspecified "knowledge and evidence to plead with

---

[33] The Court notes the Hadleys have previously alleged that Ms. LaFarrier also cut down trees on the Hadleys' property with Agent Capone. [Doc. No. 1 at p. 5, ¶¶ 260, 556]. Even if considered, that allegation would not impact this analysis.

[34] The same goes for any other federal claims that the Hadleys intended to bring. *See supra*, at 33 n. 31.

[35] *See also Barbosa v. Massachusetts*, No. 14-cv-13439, 2017 WL 2262121, at *1 (D. Mass. Apr. 11, 2017) ("Given that the claims alleged against defendants . . . stem from the same factual predicate as, and are identical to, those asserted against the Previously Dismissed Defendants, which the court found to be untenable . . . , the court recommends that these claims be dismissed *sua sponte*."); *Jimenez-Tapia v. Santander Bank PR*, 257 F. Supp. 3d 193, 198 (D.P.R. 2017) (dismissing claims *sua sponte* when plaintiffs "had ample opportunity to amend their complaint," and "[t]he inadequacy of the[ir] responses [to motions to dismiss] provide[d] evidence that an amendment to the complaint would be equally futile").

more particularity is in the exclusive possession and control of Defendants." [Doc. No. 112 at 4 (citing *New Eng. Data Services v. Becher*, 829 F.2d 286, 291 (1st Cir. 1987)); *see also* Doc. No. 113 at 1 n.1, 9–10 (same)]. But the First Circuit "has never applied *Becher* in a case, like this one, where the complaint fell short not only of Rule 9(b)'s heightened particularity requirements but also of the ordinary plausibility standard." *Douglas v. Hirshon*, 63 F.4th 49, 59 (1st Cir. 2023). Here, as in *Douglas*, "it is not simply the details the plaintiffs lack, but the substance of a RICO claim." *Id.* (cleaned up). Accordingly, "*Becher* discovery is unwarranted."[36] *Id.*; *see also Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 11 (1st Cir. 2007) ("[Rule 9(b)] does not permit a complainant to file suit first, and subsequently to search for a cause of action.").

### 8. <u>Leave to Amend or Supplement the Complaint</u>

Also in their Opposition briefing, the Hadleys requested leave to file an amended complaint, "[g]iven the complexity of the ongoing racket" and "the continuously unfolding additional RICO predicate acts." [Doc. No. 113 at 10]. Such a bare-bones request holds "no legal significance." *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022). The Hadleys had notice of the Moving Defendants' motions to dismiss, and the substantially similar motions that were filed well in advance of the last opportunity granted by the Court to file the Fourth Amended Complaint. If the Hadleys had anything else to add, they should have already done so, or moved to add it in conjunction with their Opposition briefing. *See Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015); *Mathew v. Citigroup Global Markets Inc.*, No. 23-cv-12302, 2024 WL 3030513, at *8 (D. Mass. June 17, 2024) ("It is fair to say that plaintiffs were both put on

---

[36] By the same token, given the Court's analysis of the Complaint's RICO claims, it cannot be concluded that a plausible claim has been "indicated by the complaint or that there is information likely to be under the defendants' control that would provide [a] missing link" to justify otherwise discovery. *Douglas*, 63 F.4th at 60 (citing *Menard v. CSX Transportation, Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (cleaned up)).

notice of the deficiencies of their approach and chose to ignore them."). Having already extended the Hadleys an opportunity to file the Fourth Amended Complaint after Defendants filed the initial round of motions to dismiss, [Doc. No. 79], the Court denies any request to file a *fifth* complaint.

For substantially the same reasons, the Court also denies the Hadleys' motion to supplement or amend the Complaint, [Doc. No. 145], which they filed months after the most recent motions to dismiss ripened and the Court held a hearing on them. The motion's skeletal argument does not adequately justify the delay in its filing. *See Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend."); *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015) ("[L]eave to supplement may be withheld when the request would unduly delay resolution of the case . . . . [,] [there would be] prejudice to the opposing party, [or there was] unreasonable delay in attempting to supplement[.]"). Nor does the motion explain how any additional factual allegations would cure the deficiencies identified by the Moving Defendants' motions to dismiss. Having assessed the limited information submitted by the Hadleys and considering the Court's analysis of the motions to dismiss, leave to file a fifth complaint would be "an exercise in futility." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006); *see Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 327–28 (1st Cir. 2008) (affirming denial of leave to amend when plaintiff "failed to allege any facts that would suffice to avoid dismissal" and  "given what [was] already alleged in [a] second amended complaint, . . . any additional amendment would be futile"); *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (same, due to "relators' repeated failure to cure the deficiencies in their pleadings[:] . . . . Plaintiffs do not get a fourth chance to try to get it right."); *PharMerica Corp.*,

809 F.3d at 7 ("[T]he futility of supplementation . . . may suffice to ground a denial of a Rule 15(d) motion.").

9. **State Law Claims**

With the dismissal of all federal claims in this case, the Court will exercise its "discretion to decline to exercise supplemental jurisdiction" over the remaining state claims. *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). The Court has "take[n] into account considerations of judicial economy, convenience, fairness to the litigants, and comity." *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012). Given the early stage of this litigation, it is the "usual case," in which the balance of factors weighs toward declining to exercise supplemental jurisdiction. *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see Lambert v. Fiorentini*, 949 F.3d 22, 29 (1st Cir. 2020) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." (cleaned up)).[37] The Court will dismiss all the Hadleys' state law claims.

C. **Plaintiffs' Motion for Superintendence**

The Hadleys have moved the Court to exercise "superintendence" over the Superior Court proceedings, including by vacating various orders allegedly obtained by fraud on the court, entering final judgment on other orders, and enjoining the state court case entirely. [Doc. No. 118]. Here again, the Hadleys largely label their losses in Massachusetts state court as "fraud" on

---

[37] *See also Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 546 n.5 (1st Cir. 2021) ("Once the district court concluded that the plaintiff had failed to plead a plausible claim under section 1983, it appropriately declined to exercise supplemental jurisdiction over the plaintiff's state-law claims[.]"); *Lerner v. Colman*, 26 F.4th 71, 76 (1st Cir. 2022) ("Absent the[] federal [RICO] claims, [plaintiff] can point us to no reason why the district court's decision dismissing the state-law claims without prejudice would be improper.").

the court and some Defendants' defense of that suit as "extortion." But again, the Hadleys fail to substantiate these serious charges with any cogent legal argument or meaningful evidentiary proffer. Like the motion to disqualify, this motion plainly fails to justify the extraordinary relief it seeks.[38]

The Hadleys may seek review of the Massachusetts court orders in the ordinary course: by availing themselves of remedies or appeals in the state court system, and ultimately "through a petition for writ of certiorari to the Supreme Court of the United States" for review of any final decisions. *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 665 (1st Cir. 2010) (citing 28 U.S.C. § 1257) ("The lower federal courts cannot be used as a substitute forum for federal appellate review of final decisions of state courts.").

### D.   Sanctions

The Attorney Defendants have moved for Rule 11 sanctions, arguing that the Hadleys' claims against them were frivolous. [Doc. No. 111]. "Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." *CQ Int'l Co. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 60 (1st Cir. 2011); *see also In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021) ("Factors to be considered include the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information." (cleaned

---

[38] While some Defendants have invoked *Younger* or *Rooker-Feldman* abstention as a bar to the relief sought in the motion, [Doc. Nos. 119, 122], the Court does not conclude that either doctrine applies so broadly here. *See Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015) ("[O]nly three types of state proceedings trigger *Younger* abstention: (i) criminal prosecutions, (ii) civil proceedings that are akin to criminal prosecutions, and (iii) proceedings that implicate a State's interest in enforcing the orders and judgments of its courts. If a proceeding does not fit within this taxonomy, *Younger* abstention will not lie." (cleaned up)); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) ("Circumstances fitting within the *Younger* doctrine, we have stressed, are 'exceptional' . . . . [Generally,] '[t]he pendency of an action in a state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" (cleaned up)); *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 663–64 (1st Cir. 2010) ("It is a condition precedent to the application of the *Rooker–Feldman* doctrine that, at the time the federal-court suit is commenced, the state-court proceedings have ended.").

up)). Considering the *Ames* factors, the Court has not found the Hadleys' claims so patently

unreasonable or meritless to conclude they were frivolous or that the Hadleys filed the Complaint

for an improper purpose. *See Protective Life Ins. Co. v. Dignity Viatical Settlement Partners,*

*L.P.*, 171 F.3d 52, 58 (1st Cir. 1999) ("The mere fact that a claim ultimately proves unavailing,

without more, cannot support the imposition of Rule 11 sanctions."). With respect to the RICO

claims in particular, the Attorney Defendants did not ultimately demonstrate a lack of good-faith

basis for bringing the RICO claims based on litigation activity qualifying as predicate acts,[39] or

for the litigation privilege's non-applicability to RICO claims.[40] Some of the Hadleys' claims

may have been "manifestly weak," but "weak is not synonymous with frivolous." *Efron v. UBS*

*Fin. Servs. Inc. of Puerto Rico*, 96 F.4th 430, 440 (1st Cir. 2024) (cleaned up).

    Given the Hadleys' several motions leveling serious charges against the Attorney

Defendants without meaningful evidence, however, the Court admonishes the Hadleys that their

filings—particularly the motion to disqualify and the motion for superintendence—reflect an

alarming lack of attention to the needed legal or evidentiary support, which implicates a question

of recklessness. No party moved for Rule 11 sanctions based on these motions. And the Court

does not conclude that that motions are extreme enough to find bad faith and exercise its inherent

authority at this point. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) ("[M]ost

relevant here, a court may assess attorney's fees when a party has acted in bad faith, vexatiously,

wantonly, or for oppressive reasons[,] [including] . . . . if a court finds that fraud has been

practiced upon it, or that the very temple of justice has been defiled, . . . [or] when a party shows

---

[39] *See Kim v. Kimm*, 884 F.3d 98, 106–07 (2d Cir. 2018) (affirming denial of sanctions because "[a]t the time [plaintiff] filed this suit, there was no binding precedent in this Circuit as to whether litigation activities could serve as predicate acts for purposes of RICO," and "some courts had endorsed the viability of some such claims").

[40] The Court's analysis did not reach the Attorney Defendants' litigation privilege argument, [Doc. No. 95 at 8–10], but the Attorney Defendants' briefing by no means showed that it would be frivolous to contest the application of this state-law immunity to federal RICO claims.

bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order[.]" (cleaned up)); *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993) ("This power should be used sparingly and reserved for egregious circumstances."). But the motions fall well below expectations for filings by an officer of the court or member of this District's bar. Should such filings persist in this Session, sanctions can be anticipated whether by motion or *sua sponte* under Rule 11(c)(3), 28 U.S.C. § 1927, or the Court's inherent authority.

## V.    CONCLUSION

For the above reasons, the Hadleys' Motion to Disqualify, Motion for Superintendence, and Motion to Amend are <u>DENIED</u>. The Moving Defendants' Motions to Dismiss are <u>GRANTED</u>. The Court also *sua sponte* dismisses all federal claims against Defendant Dani LaFarrier. All federal claims, including the RICO claims, Section 1983 claims, mail fraud claims, wire fraud claims, and Hobbs Act extortion claims are dismissed with prejudice. All state claims are dismissed without prejudice. The Attorney Defendants' Motion for Rule 11 Sanctions is <u>DENIED</u>.


SO ORDERED.


/s/ Myong J. Joun_____
United States District Judge